**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MICHIGAN WELFARE RIGHTS ORGANIZATION, *et al.* | ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) ) No. 1:20-cv-3388-EGS |
| DONALD J. TRUMP, *et al.*, | ) ) ) ) |
| *Defendants.* | ) ) |

**DEFENDANT REPUBLICAN NATIONAL COMMITTEE'S
MEMORANDUM IN SUPPORT OF ITS
<u>MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. SUMMARY OF FACTS ..................................................................................................... 2

    a. The Parties ................................................................................................................ 2

    b. Potential Witnesses .................................................................................................. 3

    c. Plaintiffs' Allegations and the Location of Other Relevant Evidence .................... 5

III. LEGAL STANDARD .......................................................................................................... 6

    a. Transfer Pursuant to 28 U.S.C. § 1404(a) ................................................................ 6

IV. ARGUMENT ........................................................................................................................ 8

    a. Transfer to the Eastern District of Michigan is Warranted Under 28 U.S.C. § 1404(a) ................................................................................................................... 8

        i. This Case Could Have Been Brought in the Eastern District of Michigan ... 8

        ii. A Large Majority of Witnesses Are Located in the Eastern District of Michigan ........................................................................................................ 9

        iii. Plaintiffs' Choice of Venue is Not Entitled to Deference ........................... 11

        iv. Other Private Interest Factors Weigh in Favor of Transfer ........................ 11

        v. Public Interest Factors Support Transfer ..................................................... 13

V. CONCLUSION ................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009) .............................................................. 11

*Alvarez v. CIGNA Corporation*, No. 06-145,

   2006 WL 8460104, (D.D.C. 2006) (Sullivan, J.) .................................................................. 11,12

*Beall v. Edwards Lifesciences LLC*, 310 F. Supp. 3d 97

   (D.D.C. 2018) (Sullivan, J.) ................................................................................................ 7,9,11,13

*Bergmann v. U.S. Dept. of Transp.*, 710 F. Supp. 2d 65

   (D.D.C. 2010) (Sullivan, J.) ................................................................................................... 11,12

*Berry v. U.S. Dep't of Justice*, 49 F. Supp. 3d 71 (D.D.C. 2014) ...................................................... 7

*Chauhan v. Napolitano*, 746 F. Supp. 2d 99 (D.D.C. 2010) (Sullivan, J.). ................................. 11

*Claasen v. Brown*, No. 94-1018, 1996 WL 79490 (D.D.C. Feb. 16, 1996) ................................ 10

*Dean v. Eli Lilly & Co.*, 515 F. Supp. 2d 18 (D.D.C. 2007) (Sullivan, J.). ................................. 11

*Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68 (D.D.C. 2005). ................................................... 7

*Hi Tech Pharmaceuticals, Inc. v. Federal Trade Commission*,

   6 F. Supp. 3d 95 (D.D.C. 2013) (Sullivan, J.) ........................................................................... 12

*Hunter v. Washington Metro. Area Transit Auth.*, No. CV 09-697 (EGS),

   2009 WL 10693204 (D.D.C. Aug. 4, 2009) (Sullivan, J.) ........................................................... 9

*Mazzarino v. Prudential Ins. Co. of Am.,* 955 F. Supp. 2d 24 (D.D.C. 2013) .............................. 12

*Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42 (D.D.C. 2006) ............................................... 7

*Pyrocap Int'l. Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92 (D.D.C. 2003) ............................ 9,10

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ................................................................... 7

*Treppel v. Reason*, 793 F. Supp. 2d 429 (D.D.C. 2011) ......................................................... 12, 13

*Van Dusen v. Barrack*, 376 U.S. 612 (1964). ................................................................................ 7

*Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000) ................................................. 11

*Winmar Construction, Inc. v. JK Moving & Storage, Inc.*,

   291 F. Supp. 3d 88 (D.D.C. 2018) ........................................................................................ 12

**Statutes**

28 U.S.C. § 1391(b) ........................................................................................................................ 6

28 U.S.C. § 1391(b)(2) ................................................................................................................... 8

28 U.S.C. § 1404(a) ................................................................................................................ passim

42 U.S.C. § 1985 ............................................................................................................................ 1

**Other Authorities**

Voting Rights Act .......................................................................................................................... 1

**Rules**

Fed. R. Civ. P. 45(c)(1) ................................................................................................................ 10

I.  **INTRODUCTION**

Pursuant to 28 U.S.C. § 1404(a), Defendant Republican National Committee respectfully moves to transfer this case to the United States District Court for the Eastern District of Michigan. Plaintiffs Michigan Welfare Rights Organization ("MWRO"), NAACP, Maureen Taylor, Nicole L. Hill, and Teasha K. Jones filed this case in the District of Columbia, where no Plaintiff resides, and almost no relevant witnesses or evidence are located. While Plaintiffs' Amended Complaint alleges events occurring in at least six states, Plaintiffs could and should have filed this action in the Eastern District of Michigan, where almost all of the Plaintiffs reside and where a significant amount of the alleged activity giving rise to Plaintiffs' claims occurred. Indeed, a detailed review of the Amended Complaint reveals that there is almost *no* connection between Plaintiffs' claims and the District of Columbia. For the convenience of the parties and witnesses, and in the interest of justice, this Court should transfer this case to the Eastern District of Michigan.

Plaintiffs' lawsuit alleges violations of the Voting Rights Act and 42 U.S.C. § 1985 based on conduct alleged to have occurred throughout the country, but with a particular emphasis on events in Detroit, Michigan around the 2020 election. Detroit is located in the Eastern District of Michigan, and the sources of evidence and witnesses relevant to Plaintiffs' case are primarily in that district. Plaintiffs also make claims regarding numerous third parties, including state and local election officials in Michigan. None of the officials mentioned in Plaintiffs' Amended Complaint are located in the District of Columbia. Keeping this case in a district where neither Plaintiffs nor witnesses reside would invite unnecessary logistical hurdles and would hinder the expedient resolution of the case.

In addition, this litigation should not continue in the District of Columbia because the alleged events giving rise to Plaintiffs' claims occurred outside this venue. Plaintiffs plead extensive allegations related to their conduct and the conduct of Defendants and others in

1

Michigan. For example, Plaintiffs claim that Defendants and their volunteers in Detroit worked to disenfranchise Plaintiffs and their members by seeking to prevent the counting of votes and the certification of the election there. Additionally, based on the Amended Complaint, each of the individual Plaintiffs resides and voted in Detroit, Plaintiff MWRO is headquartered there, and Plaintiffs MWRO and NAACP have members there. Furthermore, Plaintiffs include numerous allegations in the Amended Complaint regarding the actions of Michigan election officials. The Defendants' alleged conduct in the District of Columbia forms only a de minimis portion of the overall factual allegations.

In sum, the interests of justice and convenience of the parties and witnesses all favor transferring this case to Michigan. Accordingly, this litigation should be transferred to the Eastern District of Michigan.

## II. SUMMARY OF FACTS

### a. The Parties

Plaintiff MWRO is the Michigan state chapter of the National Welfare Rights Union and is based in Detroit, Michigan. Am. Compl. ¶ 7. MWRO has extensive contacts with Detroit and the Eastern District of Michigan and has members who reside in Detroit and voted in the 2020 election. *Id.* Plaintiffs Maureen Taylor, Nicole L. Hill, and Teasha K. Jones reside in Detroit and casted their votes for President in the 2020 election. *Id.* at ¶¶ 8-10. Plaintiff NAACP has members who voted in the 2020 election in Michigan and is based in Baltimore, Maryland. *Id.* at ¶ 12.

Defendant Donald J. Trump was the 45th President of the United States and resides in Palm Beach, Florida. Am. Compl. ¶ 13. Donald J. Trump for President, Inc. is the principal campaign committee for President Donald J. Trump's 2020 reelection campaign with headquarters at 725 Fifth Avenue, 15th Floor, New York City, New York. *Id.* at ¶ 14. The

Republican National Committee is a national political party with its principal place of business at 310 First Street S.E., Washington D.C. *Id.* at ¶ 15.

### b. Potential Witnesses

The overwhelming majority of potential fact witnesses in this case reside outside of Washington, D.C. Should this case proceed, these witnesses would likely testify regarding the alleged actions of Plaintiffs, Defendants, and state and local officials throughout the United States including in Michigan. The following is a partial list of potential witnesses:

**MWRO Members:** These individuals are located in Detroit, Michigan. Plaintiffs have made allegations regarding voting and election activities related to these members in Detroit. Am. Compl. ¶ 7. These individuals will likely testify regarding these allegations.

**Maureen Taylor, Nicole L. Hill, and Teasha K. Jones**, who reside in Detroit, Michigan. Plaintiffs have made allegations regarding voting and election activities related to these individuals in Detroit. Am. Compl. ¶¶ 8-10. These individuals would likely testify regarding these allegations.

**NAACP Members:** These individuals are located in Michigan. Plaintiffs have made allegations regarding voting and election activities related to these members in Michigan. Am. Compl. ¶¶ 11-12. These individuals would likely testify regarding these allegations.

**President Donald J. Trump:** The former president resides in Palm Beach, Florida. Plaintiffs have made allegations that President Trump made certain statements and took certain actions related to the 2020 election. *See*, *e.g.*, Am. Compl. ¶¶ 22-23.

**RNC State and Regional Staff:** The individuals responsible for overseeing day-to-day operation of the RNC's field operations are located across the country. Plaintiffs have alleged that Defendants took certain actions related to voting and the election in Michigan and certain other states. *See*, *e.g.*, Am. Compl. ¶¶ 61-78. The overwhelming

3

majority of RNC staff responsible for the day-to-day field operations of the RNC in Michigan during the period preceding and following the 2020 General Election live in or near Michigan. These individuals would likely testify regarding the RNC's election activities in Michigan and certain other states.

**Donald J. Trump for President, Inc. State Staff:** These individuals are located in Michigan and certain other states. Plaintiffs have made allegations that Defendants took certain actions related to voting and the election in Michigan and certain other states. *See*, *e.g.*, Am. Compl. ¶¶ 61-78. These individuals would likely testify regarding the Trump campaign's election activities in Michigan and certain other states.

**Wayne County Canvassers:** These individuals are located in Wayne County, Michigan. Plaintiffs have made allegations regarding these officials and the 2020 election. Am. Compl. ¶¶ 33, 35, 41-47. These individuals will likely testify regarding the 2020 election.

**State Election Officials:** These individuals are located in Detroit, Michigan; Lansing, Michigan; and throughout the country in various other states. Plaintiffs have made allegations regarding these officials and the 2020 election. *See*, *e.g.*, Am. Compl. ¶¶ 32-33, 35, 41-47, 51-52, 54. These individuals would likely testify regarding the 2020 election.

**State Election Workers:** These individuals are located in Detroit, Michigan; Lansing, Michigan; and throughout the country. Plaintiffs have made allegations that Defendants took certain actions related to these individuals. Am. Compl. ¶¶ 30, 34. These individuals would likely testify regarding the 2020 election, the counting of votes, and the certification of the election.

**RNC and Trump Campaign State Volunteers:** These individuals are located in Detroit, Michigan and throughout the country in various other states. Plaintiffs have made

allegations regarding these individuals and the 2020 election. *See*, *e.g.*, Am. Compl. ¶¶ 34, 61-66. These individuals may be called to testify regarding the 2020 election.

### c. Plaintiffs' Allegations and the Location of Other Relevant Evidence

The majority of the alleged events underlying Plaintiffs' claims took place in Michigan. To begin, almost all Plaintiffs reside in Michigan, the individual Plaintiffs voted there, and the other Plaintiffs have members who voted there. *See*, *e.g.*, Am. Compl. ¶¶ 7-12. Plaintiffs specifically claim that Defendants' actions in the days immediately following the 2020 General Election ultimately harmed Plaintiffs and their members in Michigan. *See*, *e.g.*, *id.* at ¶¶ 7-12, 80, 83-85. Plaintiffs also claim that the actions of Defendants and their supporters in Michigan harmed Plaintiffs and form the basis for Plaintiffs' claims in this case. *See*, *e.g.*, *id.* at ¶¶ 33, 34, 35, 38. In fact, Plaintiffs devote eight full paragraphs of their Amended Complaint to events alleged to have occurred in Wayne County, Michigan, relating to the certification of the vote in that county. *See id.* at ¶¶ 41-47, 49. Plaintiffs also allege that fundraising dollars were directed to the Michigan Republican Party and that one Defendant produced and distributed training materials in Michigan. *See id.* at ¶¶ 64, 68. And Plaintiffs allege that Defendants' actions underlying Plaintiffs' claims were "directed at" Detroit. *Id.* at ¶ 78.

The following chart tabulates allegations in the Amended Complaint by location and confirms that most of the events underlying Plaintiffs' claims occurred in Michigan:

| Location | Number of Allegations |
|---|---|
| Michigan | 44 |
| Arizona | 14 |
| Georgia | 11 |
| Wisconsin | 10 |
| Pennsylvania | 6 |

5

| | |
|---|---|
| Washington, D.C. | 4 |
| Nevada | 3 |
| **Total Relevant Allegations:** | 92 |

The majority, or at least a plurality, of the evidence relating to Plaintiffs' claims is located in Michigan. This evidence includes documents and communications related to voting, the counting of votes, and the certification of the 2020 general election. These documents include, for example, voter files, meeting minutes, meeting notes, and other election-related materials held by state and local officials in Michigan. To the extent that these election-related documents are not located in Michigan, they are distributed throughout the country, predominantly in state capital cities. These records and documents are critical to Defendants as they will show that no disenfranchisement or other illegal activity occurred in the 2020 election. Information from state and local election departments may also be necessary in order for Defendants to effectively defend themselves in this action.

### III. LEGAL STANDARD

#### a. Transfer Pursuant to 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) authorizes a court to transfer an action to any other district where it might have been brought "for the convenience of the parties and witnesses, in the interest of justice." Pursuant to 28 U.S.C. § 1391(b), a suit may be brought in a judicial district: (1) where "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) where "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) if there is no judicial district where the case may be brought as provided by the first two categories, where "any defendant is subject to the court's personal jurisdiction."

District courts have broad discretion under § 1404(a) to transfer a case based on an "individualized case-by-case consideration of convenience and fairness." *Berry v. U.S. Dep't of Justice*, 49 F. Supp. 3d 71, 74 (D.D.C. 2014) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *see also Beall v. Edwards Lifesciences LLC*, 310 F. Supp. 3d 97, 102-103 (D.D.C. 2018) (Sullivan, J.); *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 45 (D.D.C. 2006). The purpose of §1404(a) "is to prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public from unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The moving party bears the burden of establishing that transfer is proper. *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 71 (D.D.C. 2005).

To justify a transfer, defendants must make two showings. *Id.* First, they must establish that the plaintiff could have brought suit in the proposed transferee district. *Id.* at 71-72. Second, defendants must demonstrate that considerations of convenience and the interests of justice weigh in favor of a transfer. *Id.* at 72; *Berry*, 49 F. Supp. 3d at 75.

"To determine whether 'considerations of convenience and the interests of justice weigh in favor of a transfer,' courts consider several private-interest factors, including: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." *Beall*, 310 F. Supp. 3d at 103. Courts also consider whether certain public-interest factors weigh in favor of transfer, including "(1) the transferee's familiarity with the governing laws, (2) the relative congestion of each court, and (3) the local interest in deciding local controversies at home." *Id.*

7

IV. **ARGUMENT**

   a. **Transfer to the Eastern District of Michigan is Warranted Under 28 U.S.C. § 1404(a)**

      i. **This Case Could Have Been Brought in the Eastern District of Michigan**

Plaintiffs could have brought this action in the Eastern District of Michigan. Pursuant to 28 U.S.C. § 1391(b)(2), a lawsuit "may be brought in" a judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." Here, a substantial part of the events or omissions giving rise to the claims occurred in Detroit, Michigan, which is situated in the Eastern District of Michigan. Thus, venue is proper there under § 1391(b)(2), and the first requirement for transfer under 28 U.S.C. § 1404(a) is met.

As Plaintiffs admit throughout their Amended Complaint, a substantial part of the alleged events or omissions giving rise to their claims occurred in the Eastern District of Michigan. Plaintiff MWRO is based in Detroit and has "members who reside in Detroit in Wayne County, Michigan, voted in the November 2020 election, and cast a ballot for President." Am. Compl. ¶ 7. With respect to MWRO, Plaintiffs allege that Defendants "have sought to prevent the complete counting and certification of validly cast ballots for President in Wayne County." *Id.* Plaintiffs Maureen Taylor, Nicole L. Hill, and Teasha K. Jones reside and voted in Detroit, and Plaintiffs allege that Defendants "sought to disenfranchise and disregard the lawfully cast votes" of these Plaintiffs. *Id.* at ¶¶ 8-10. And Plaintiff NAACP "has members across the country who voted in the 2020 election and who plan to vote in future elections, including in Michigan," where Plaintiffs allege Defendants took actions to disenfranchise those members. *Id.* at ¶ 12. All of these alleged actions related to voting occurred in the Eastern District of Michigan, which includes Wayne County and Detroit, and have given rise to Plaintiffs' claims.

8

Plaintiffs also make numerous allegations relating to the actions and omissions of Michigan officials purportedly giving rise to Plaintiffs' claims. *See*, *e.g.*, *id.* at ¶¶ 33, 35, 37, 41-49. These officials include Wayne County election officials as well as Michigan lawmakers. *See id.* at ¶¶ 41-48. Further, Plaintiffs complain of alleged actions by individuals in Michigan directed toward Michigan residents and officials. *See*, *e.g.*, *id.* at ¶¶ 35-37, 41-49. And Plaintiffs make allegations related to actions taken towards the Michigan State Board of Canvassers. *Id.* at ¶ 49. Plaintiffs also point to training materials allegedly developed and distributed by Defendants in Michigan as the basis for their claims. *Id.* at ¶ 64. Finally, Plaintiffs claim that Defendants "encouraged volunteers and supporters to engage in conduct intended to and that did result in intimidation, harassment, and coercion of election officials" in Detroit. *Id.* at ¶ 78. Because a large portion of the alleged facts contained in the amended complaint occurred in the Eastern District of Michigan, this case clearly could have been brought in that venue.

## ii. A Large Majority of Witnesses Are Located in the Eastern District of Michigan

The second requirement for transfer under 28 U.S.C. § 1404(a) is also satisfied here, as the private and public interest factors confirm that considerations of convenience and the interests of justice weigh in favor of transferring this case to the Eastern District of Michigan. To begin, almost all the material witnesses in this case, including many of the Plaintiffs, are located in that district. *See Beall*, 310 F. Supp. 3d at 105-106. This Court has held that convenience of the witnesses is the most critical factor to examine under a Section 1404(a) analysis. *See Pyrocap Int'l. Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 97 (D.D.C. 2003).

With regard to the convenience of the witnesses, the Court considers "the availability of compulsory process to command the attendance of unwilling witnesses, and the cost of obtaining the attendance of willing witnesses." *Hunter v. Washington Metro. Area Transit Auth.*, No. CV 09-697 (EGS), 2009 WL 10693204, at *3 (D.D.C. Aug. 4, 2009) (Sullivan, J.). Courts have

9

consistently transferred actions when the majority of witnesses live near the transferee forum, or when the witnesses may not be subject to the subpoena power of the transferor court. *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 98 (D.D.C. 2003) (quoting *Claasen v. Brown*, No. 94-1018, 1996 WL 79490, at *6 (D.D.C. Feb. 16, 1996)). This Court should continue that practice. Many of the key witnesses with crucial knowledge or information regarding the underlying facts of this case reside beyond the 100–mile limit of the subpoena power of this Court, and therefore could not be compelled to appear as witnesses within this District if unwilling to appear voluntarily. *See* Fed. R. Civ. P. 45(c)(1) (permitting subpoenas to be served on individuals within 100 miles of the place specified for a deposition, hearing, or trial). In contrast, many of the critical witnesses in this case reside within the subpoena power of the Eastern District of Michigan. As such, any unwilling witnesses could be compelled to testify if this matter were transferred to the proposed forum.

Moreover, transferring this matter to the Eastern District of Michigan would substantially reduce the costs to obtain the attendance of willing witnesses. It would be highly burdensome both to the parties and to the witnesses themselves to bring all the witnesses into a court more than five hundred miles away from where they reside. Further, few potential witnesses for any party to this case live or work in the District of Columbia. Since critical witnesses, including almost all Plaintiffs reside in the Eastern District of Michigan, the convenience of the witnesses compels the transfer of this case. These witnesses should not be forced to travel half-way across the country for the trial of this case in the District of Columbia. Plaintiffs should not be permitted to proceed with this action in a forum that is inconvenient for many material fact witnesses. Thus, the availability of these fact witnesses in Michigan, which is the most important factor in a Section 1404(a) analysis, strongly weighs in favor of transfer.

### iii. Plaintiffs' Choice of Venue is Not Entitled to Deference

While Plaintiffs' venue choice is typically afforded deference, *see Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000), the deference accorded to Plaintiffs' choice here is substantially reduced by the fact that Plaintiffs do not reside in Washington, D.C. and lack any apparent connection to that venue. *See Bergmann v. U.S. Dept. of Transp.*, 710 F. Supp. 2d 65, 71-72 (D.D.C. 2010) (Sullivan, J.) ("Substantially less deference is warranted, however, when a plaintiff chooses a forum other than his home forum."); *Alvarez v. CIGNA Corporation*, No. 06-145, 2006 WL 8460104, at *1 (D.D.C. 2006) (Sullivan, J.). Any deference due to Plaintiffs' choice is further weakened because, as discussed above, "most of the relevant events giving rise to [their] claims occurred elsewhere." *Beall*, 310 F. Supp. 3d at 103 (citing *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009)); *Bergmann*, 710 F. Supp. 2d at 72-73; *see also Chauhan v. Napolitano*, 746 F. Supp. 2d 99 (D.D.C. 2010) (Sullivan, J.). Plaintiffs' claims lack the required "substantial connection" to their chosen venue. *Dean v. Eli Lilly & Co.*, 515 F. Supp. 2d 18, 21 (D.D.C. 2007) (Sullivan, J.). ("Because Eli Lilly is seeking transfer from a district where no plaintiffs reside to a district where at least some plaintiffs reside and because there is no substantial connection between the plaintiffs' claims and the District of Columbia, the plaintiffs' forum choice warrants little deference."). The *Dean* court's analysis is applicable here, where no Plaintiff resides in Washington, D.C., almost all of the Plaintiffs reside in the Eastern District of Michigan, and most of the relevant events occurred in that district.

### iv. Other Private Interest Factors Weigh in Favor of Transfer

Each of the other private interest factors weighs in favor of transferring the case. Regarding the second factor, Defendants prefer to litigate this case in the Eastern District of Michigan, where the claims arose. Defendants have legitimate reasons for preferring the Eastern District of Michigan. Transferring the case will "lead to increased convenience overall,"

11

*Mazzarino v. Prudential Ins. Co. of Am.,* 955 F. Supp. 2d 24, 31 (D.D.C. 2013), as much of the evidence and witnesses related to Plaintiffs' claims are in Defendants' preferred venue. *See Alvarez*, 2006 WL 8460104, at *2.

Regarding the third factor, as this Court has pointed out, claims "arise" under 28 U.S.C. § 1404(a) in the location "where most of the significant events giving rise to the claims occurred." *Treppel v. Reason*, 793 F. Supp. 2d 429, 436–37 (D.D.C. 2011) (citations omitted). As discussed above, significant events giving rise to the alleged claims in this case took place in Michigan, including the alleged factual predicates for both of Plaintiffs' claims. *See Winmar Construction, Inc. v. JK Moving & Storage, Inc.*, 291 F. Supp. 3d 88, 93 (D.D.C. 2018). Further, Plaintiffs make "no suggestion that the major decisions and alleged wrongdoing by defendants took place in the District." *Alvarez*, 2006 WL 8460104, at *2. Finally, much of the evidence regarding Plaintiffs' claims, including materials regarding the votes cast by Plaintiffs and their members as well as materials relating to Defendants' and election officials' activities, is located in the transferee venue. *See Beall*, 310 F. Supp. 3d at 106.

This is similar to this Court's decision in *Bergmann*, where the Court granted a motion to transfer and noted that the "only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here … is charged with generally regulating and overseeing the [administrative] process." *Bergmann*, 710 F. Supp. 2d at 73. This case's only real connection to Washington, D.C. is that a national campaign committee with one of its headquarters there generally works to elect Republican candidates. *See Hi Tech Pharmaceuticals, Inc. v. Federal Trade Commission*, 6 F. Supp. 3d 95, 100 (D.D.C. 2013) (Sullivan, J.) ("The only tie to the District of the Columbia seems to be that the FTC is headquartered here, which is not sufficient, on its own, for this Court to maintain jurisdiction."). Nearly all of the relevant events giving rise to Plaintiffs' specific claims took place elsewhere. In sum, the private interest factors support the

conclusion that considerations of convenience and the interest of justice weigh in favor of a transfer.

### v. Public Interest Factors Support Transfer

Courts also consider whether certain public interest factors weigh in favor of transfer, including "(1) the transferee's familiarity with the governing laws, (2) the relative congestion of each court, and (3) the local interest in deciding local controversies at home." *Beall*, 310 F. Supp. 3d at 103. Regarding the first factor, "[b]ecause all federal courts are presumed to be equally familiar with the law governing statutory claims," this factor does not weigh against transfer to the Eastern District of Michigan. *Id.* at 106. And the second factor also does not weigh against transfer because this "Court has not dealt or familiarized itself with the underlying merits of the case and because the case is in its earliest stages." *Id.* Finally, the third factor weighs in favor of transfer because a clear majority of the operative events took place in the transferee venue. *See Treppel*, 793 F. Supp. 2d at 439-40.

## V. CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court transfer this action to the Eastern District of Michigan.

Dated: February 9, 2021　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 *s/ Harmeet K. Dhillon*
　　　　　　　　　　　　　　　　　　　　　　Harmeet K. Dhillon
　　　　　　　　　　　　　　　　　　　　　　Mark P. Meuser
　　　　　　　　　　　　　　　　　　　　　　DHILLON LAW GROUP INC.
　　　　　　　　　　　　　　　　　　　　　　177 Post Street, Suite 700
　　　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94108
　　　　　　　　　　　　　　　　　　　　　　(415) 433-1700
　　　　　　　　　　　　　　　　　　　　　　harmeet@dhillonlaw.com
　　　　　　　　　　　　　　　　　　　　　　mmeuser@dhillonlaw.com

　　　　　　　　　　　　　　　　　　　　　　Tyler R. Green (D.C. Bar #982312)
　　　　　　　　　　　　　　　　　　　　　　Cameron T. Norris
　　　　　　　　　　　　　　　　　　　　　　CONSOVOY MCCARTHY PLLC
　　　　　　　　　　　　　　　　　　　　　　1600 Wilson Blvd., Ste. 700
　　　　　　　　　　　　　　　　　　　　　　Arlington, VA 22209
　　　　　　　　　　　　　　　　　　　　　　(703) 243-9423
　　　　　　　　　　　　　　　　　　　　　　tyler@consovoymccarthy.com
　　　　　　　　　　　　　　　　　　　　　　cam@consovoymccarthy.com


　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　　　　　　*Republican National Committee*

14