**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MICHIGAN WELFARE RIGHTS
ORGANIZATION, *et al.*,

      *Plaintiffs,*

v.

DONALD J. TRUMP, *et al.*,

      *Defendants.*

Case No. 1:20-cv-03388-EGS

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ ii

Background ....................................................................................................................... 2

Legal Standard ................................................................................................................ 4

Argument ......................................................................................................................... 5

   I.   The Private Interest Factors Favor Keeping The Case In This Court. ............... 6

     A.   The Case Should Stay In This Court Because Key Claims Arose In This District. ..... 6

     B.   The Convenience Factors Favor Keeping This Case In This Court. ......................... 10

     C.   Plaintiffs' Choice Of This Court Should Be Granted Deference. ............................ 14

   II.   The Public Interest Factors Also Favor Keeping The Case In This Court. .................... 17

Conclusion ..................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*\*Accurso v. Fed. Bureau of Prisons*,
   Case No. 17-CV-02626 (APM), 2018 WL 4964501 (D.D.C. Oct. 15, 2018) ................ *passim*

*Alvarez v. CIGNA Corporation*,
   Civil Action No. 06-145 (EGS), 2006 WL 8460104 (D.D.C. 2006) ......................................15

*\*Aracely, R. v. Nielsen*,
   319 F. Supp. 3d 110 (D.D.C. 2018) ................................................................................. *passim*

*Beall v. Edwards Lifesciences LLC*,
   310 F. Supp. 3d 97 ....................................................................................................15, 16

*Bergmann v. United States Department of Transportation*,
   710 F. Supp. 2d 65 (D.D.C. 2010) ...................................................................................8, 9, 15

*Chauhan v. Napolitano*,
   746 F. Supp. 2d 99 (D.D.C. 2010) ...........................................................................................15

*Dean v. Eli Lilly & Co.*,
   515 F. Supp. 2d 18 (D.D.C. 2007) ...........................................................................................16

*Fund For Animals v. Norton*,
   352 F. Supp. 2d 1 (D.D.C. 2005) ............................................................................................18

*Garcia v. Acosta*,
   393 F. Supp. 3d 93 (D.D.C. 2019) ................................................................................4, 10, 11

*Hi Tech Pharmaceuticals, Inc. v. Federal Trade Commission*.
   6 F. Supp. 3d 95 (D.D.C. 2013) ..........................................................................................8, 9

*Hunter v. Washington Metro. Area Transit Auth.*,
   No. CV 09-697 (EGS), 2009 WL 10693204 (D.D.C. Aug. 4, 2009) ...............................13, 14

*\*Jalloh v. Underwood*,
   300 F. Supp. 3d 151 (D.D.C. 2018) ....................................................................1, 4, 14, 15

*Pyrocap Int'l Corp. v. Ford Motor Co.*,
   259 F. Supp. 2d 92 (D.D.C. 2003) ...................................................................................13, 14

*Treppel v. Reason*,
   793 F. Supp. 2d 429 (D.D.C. 2011) .................................................................................17, 18

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)............................................................................................4, 12

**Federal Rule**

Federal Rule of Civil Procedure 26(a) ............................................................12

**Statutes**

28 U.S.C. § 1404(a) .......................................................................................4, 12

42 U.S.C. § 1985(3) ..............................................................................................2

52 U.S.C. § 10307(b) ...........................................................................................2

**Other Authorities**

Amy Gardner & Paulina Firozi, *Here's the Full Transcript and Audio of the Call
  Between Trump and Raffensperger*, Wash. Post (Jan. 5, 2021)........................3, 4, 9

Maria Peñaloza, *Trump Supporters Storm U.S. Capitol, Clash with Police*,
  NPR.org (Jan. 6, 2021) ..................................................................................4, 9

U.S. Courts, Table C—U.S. District Courts, Civil Statistical Tables for the Federal
  Judiciary (June 30, 2020) ……………………………………………………………17

Defendants Republican National Committee ("RNC"), Donald J. Trump for President, Inc. (the "Trump Campaign"), and Donald J. Trump (collectively, "Defendants"), ask this Court to transfer this case to the Eastern District of Michigan. (RNC's Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Mot. to Transfer"), Dkt. No. 21 at 1.[1]) Defendants do not (and cannot) satisfy their "burden to show decisively that transfer is proper" because the relevant private and public interests weigh strongly against transfer. *Jalloh v. Underwood*, 300 F. Supp. 3d 151, 155-56 (D.D.C. 2018) (citations omitted).

Notwithstanding Defendants' characterizations, this case does not implicate claims or conduct that occurred, or witnesses that are located, exclusively or even primarily in the Eastern District of Michigan. To the contrary, this case arises from allegations that Defendants engaged in a broad-ranging conspiracy to disenfranchise voters across the United States. That conspiracy was developed in and directed from the District of Columbia and it was executed across numerous states—including, but crucially not at all limited to, Michigan. The RNC participated in the conspiracy from its headquarters at 310 First Street SE, Washington, D.C., 20003.  And former-President Trump, a natural person, committed complained-of acts while residing at 1600 Pennsylvania Avenue, NW, Washington, D.C., 20500. These facts alone lead to the conclusion that Defendants' Motion is an effort to forum shop.

---

[1] Shortly after the RNC filed its Motion to Transfer and Memorandum in support thereof, the Trump Campaign and President Trump filed a notice of joinder to the RNC's motion stating that they both "adopt[ed] and incorporate[d] the RNC's motion and memorandum in support thereof and the arguments and authorities set forth therein as if their own." (Donald J. Trump and Donald J. Trump for President, Inc.'s Notice of Joinder in Mot. to Transfer Venue Filed by Defendant Republican National Committee, Feb. 9, 2021, Dkt. No. 22 at 1.)

Because Defendants have failed to demonstrate that transfer is appropriate, and because all relevant private and public interest factors weigh in favor of retaining jurisdiction in this District, Plaintiffs respectfully request that this Court deny Defendants' Motion to Transfer.

## BACKGROUND

Plaintiffs' Amended Complaint alleges that the Defendants violated the Voting Rights Act, 52 U.S.C. § 10307(b) ("the VRA") and the Ku Klux Klan Act, 42 U.S.C. § 1985(3) ("the KKK Act") by systematically seeking to disenfranchise voters in numerous states during and after the 2020 election cycle. (Am. Compl., Dec. 21, 2020, Dkt. No. 8, ¶¶ 76-85.) Plaintiffs include the NAACP, suing on behalf of its members nationwide. (*See id.* ¶¶ 11-12.)

As alleged in the Amended Complaint, during and after the election cycle, then-President Trump (who lived in the White House), the Trump Campaign (which had substantial operations in Washington, D.C.), and the RNC (which maintains its headquarters in Washington, D.C.), coordinated their efforts from the District of Columbia to disenfranchise voters in an effort to ensure that then-President Trump stayed in power despite losing the 2020 Presidential Election. (*See, e.g.*, *id.* ¶¶ 35-37.) The Amended Complaint further alleges that Defendants' disenfranchisement efforts included a variety of activities in and related to Washington, D.C. (*id.* ¶ 38), Wisconsin (*id.* ¶¶ 26-31), Arizona (*id.* ¶¶ 33, 54-55, 60, 68), Georgia (*id.* ¶¶ 32, 52, 63, 68-69), Pennsylvania (*id.* ¶¶ 53, 68), and Nevada (*id.* ¶¶ 33, 68), in addition to Michigan (*id.* ¶¶ 35-49, 68), that either constituted, contributed to, or facilitated violations of the VRA and the KKK Act. (*Id.* ¶¶ 76-85.)

The Amended Complaint alleges that, among their other nationwide activities, Defendants—acting in the District of Columbia—did the following: encouraged their supporters to slow and attempt to stop vote counting efforts in tightly contested states (*id.* ¶¶ 1, 21-34), pressured state and local officials not to certify election results (*id.* ¶¶ 1, 35), raised baseless

challenges to the validity of legally cast ballots (*id.* ¶¶ 1, 29), and engaged media campaigns designed to intimidate and misinform voters and election officials (*e.g.*, *id.* ¶¶ 22-24, 38). Plaintiffs also allege that Defendants distributed training videos in multiple battleground states calculated to lead Trump supporters to interfere with vote counting (*id.* ¶¶ 63-66) and coordinated fundraising and recruited volunteers for Republican state committees in *all* 50 states and the District of Columbia through TrumpVictory.com that were instrumental to Defendants' efforts to disenfranchise voters in multiple states (*id.* ¶¶ 67-70). Plaintiffs further allege that Defendants directed conduct toward multiple states other than Michigan, such as Wisconsin, where Trump Campaign volunteers interfered with vote recounts (*id.* ¶¶ 25-31), as well as Georgia, Nevada, and Arizona, where Trump supporters threatened state recount efforts by attempting to intimidate state officials (*id.* ¶¶ 32-33).

Plaintiffs allege that other key actions occurred in the District of Columbia, including then-President Trump meeting with the leaders of the Michigan State Senate and Michigan State House at the White House to discuss election recount and certification efforts (*id.* ¶ 48), and his personal attorney repeating false allegations of voter fraud and openly discussing disenfranchising voters during a press conference at the RNC's headquarters in the District of Columbia (*id.* ¶¶ 38, 72).

Moreover, after the Amended Complaint was filed, Defendants' efforts to interfere with the 2020 Presidential Election continued, including then-President Trump, while physically located in the District of Columbia, placing a telephone call to the Georgia Secretary of State in which he urged Secretary Brad Raffensperger to "find 11,780 votes" in an effort to somehow undo his loss in Georgia.[2] Also taking part in that call were District of Columbia lawyer Cleta Mitchell

---

[2] Amy Gardner & Paulina Firozi, *Here's the Full Transcript and Audio of the Call Between Trump and Raffensperger*, Wash. Post (Jan. 5, 2021), https://www.washingtonpost.com/politics/trump-

and Mark Meadows, who was the White House Chief of Staff.[3] Defendants' efforts culminated in

an insurrection at the United States Capitol in Washington, D.C., where a large number of people

attempted to overturn the results of the 2020 Presidential Election.[4]

## LEGAL STANDARD

Defendants bear the "heavy burden of establishing that [P]laintiffs' choice of forum is

inappropriate" such that this Court should transfer this case out of this District pursuant to 28

U.S.C. § 1404(a).[5] *Jalloh*, 300 F. Supp. 3d at 155-56 (citing *Thayer/Patricof Educ. Funding L.L.C.*

*v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002)); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d

110, 127 (D.D.C. 2018); *see also Garcia v. Acosta*, 393 F. Supp. 3d 93, 108 (D.D.C. 2019);

*Accurso v. Fed. Bureau of Prisons*, Case No. 17-CV-02626 (APM), 2018 WL 4964501, at *2

(D.D.C. Oct. 15, 2018). To satisfy this burden, Defendants "must show that considerations of

convenience and the interest of justice weigh in favor of transfer." *Jalloh*, 300 F. Supp. 3d at 155

(internal quotation marks and citations omitted). Section 1404(a) is meant to be a "judicial

housekeeping measure" rather than a "forum-shopping instrument." *Van Dusen v. Barrack*, 376

U.S. 612, 636 (1964).

Provided that a case could have been brought in the proposed forum, a court evaluating a

motion to transfer "weighs case-specific factors related to both the public and private interests at

stake." *Id.* As to private interests, courts may consider factors such as: (1) the locations where

claims arose; (2) convenience factors (such as the convenience of the parties or witnesses and the

---

raffensperger-call-transcript-georgia-vote/2021/01/03/2768e0cc-4ddd-11eb-83e3-322644
d82356_story.html.

[3] *Id.*

[4] Maria Peñaloza, *Trump Supporters Storm U.S. Capitol, Clash with Police*, NPR.org (Jan. 6, 2021),      https://www.npr.org/sections/congress-electoral-college-tally-live-updates/2021/01/06/953616207/diehard-trump-supporters-gather-in-the-nations-capital-to-protest-election-resul.

[5] 28 U.S.C. § 1404(a) permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."

ease of access to sources of proof); (3) each party's preferred forum. *See Aracely*, 319 F. Supp. 3d at 128-30. Courts also consider the following public interest factors: (1) the transferee district's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home. *See id.* at 130 (citation omitted). Where a defendant engages in misconduct that was directed from a central location but that occurs in a subsidiary location (or in numerous subsidiary locations), the place from which the misconduct was directed is a proper forum for the action. *Id.* at 120, 128-29; *Accurso*, 2018 WL 4964501 at *2.

## ARGUMENT

The relevant private factors—where the claims arose, convenience factors, and the parties' preferred forums—favor keeping this action in this District. The same is true of the relevant public factors. This Court is the appropriate forum for this case, and transfer would be inappropriate.

Defendants' failure to meet their burden to show otherwise becomes apparent once one recognizes that the Motion to Transfer fundamentally misconstrues the Amended Complaint as being almost entirely limited to Defendants' efforts to interfere with vote certification in Wayne County, Michigan. (*See, e.g.*, RNC's Mem. in Support of its Mot. to Transfer ("Mem. in Support"), Dkt. No. 21-1 at 5-6, 8-9.) A fair reading of the Amended Complaint makes clear that, although some egregious examples of Defendants' improper actions during and after the 2020 election cycle occurred in Michigan, the alleged conduct emanated substantially from the District of Columbia and extended far beyond Michigan.

As Plaintiffs demonstrate below, as to the public factors, Defendants cannot meet their burden to show that the claims arose in the Eastern District of Michigan by counting the number of times particular states are mentioned in the Amended Complaint. (*Id.* at 5-6.) Nor can they meet their burden to show that convenience factors favor transfer by noting that many of the Plaintiffs

reside in the Eastern District of Michigan. (*Id.* at 5.) Those Plaintiffs have little firsthand knowledge regarding the gravamen of the Amended Complaint, the conspiracy that emanated from Washington, D.C. Those Plaintiffs are victims of a conspiracy to disenfranchise them, not its authors. Witnesses and documents relevant to this litigation are located across the country, in multiple states, with key witnesses and documents located in the District of Columbia. For the same reasons, Defendants cannot meet their burden to overcome the deference given to Plaintiffs' choice of forum.

Further, as demonstrated below, Defendants offer no reason to think that any public factor favors transfer. Indeed, Plaintiffs demonstrate that the balance of those factors favors keeping the action in this Court.

## I.   The Private Interest Factors Favor Keeping The Case In This Court.

All of the private factors favor keeping this action in this District. *First*, the claims arose in this District because so many key actions occurred and were orchestrated from this District. *Second*, convenience factors favor keeping this action in this District precisely because those key actions arose in and were orchestrated in this District, meaning that much of the relevant evidence and many of the relevant witnesses are in this District. *Third*, Plaintiffs' choice of this district as their forum deserves deference because this action is so closely tied to this District.

### A.   The Case Should Stay In This Court Because Key Claims Arose In This District.

While some events alleged in the Amended Complaint necessarily took place outside of the District of Columbia, including the conduct that took place in Michigan and the many other localities across the country targeted by Defendants' disenfranchisement efforts, Plaintiffs have alleged that those efforts were developed in and directed from the District of Columbia. That was where President Trump resided and made key phone calls, invitations, and media statements throughout this period and where the RNC was headquartered and hosted a key press conference

by his attorneys. (*See, e.g.*, Am. Compl., Dkt. No. 8, ¶ 38 (press conference), ¶ 48 (summoning Michigan state legislators), ¶ 23 (President Trump's tweets).) By ignoring those allegations and focusing almost exclusively on the allegations in the Amended Complaint that relate to the Eastern District of Michigan, Defendants fail to address the fundamental point that Plaintiffs' Amended Complaint—indeed, even the portions of the Amended Complaint concerning Defendants' efforts to disenfranchise voters in Michigan—arises out of activities centered in Washington, D.C. Accordingly, the Defendants have failed to demonstrate why the Eastern District of Michigan would be a more appropriate venue than the District of Columbia.

*Aracely* and *Accurso* are instructive. In *Aracely*, the plaintiffs claimed that the defendants violated their constitutional rights by detaining them in Texas without a bond hearing and by routinely and systematically failing to abide by a binding, official agency directive. 319 F. Supp. 3d at 120. Instead, the defendants applied an unwritten, unconstitutional policy promulgated by top policy makers. *Id.* The defendants moved to transfer from this District based, in part, on the contention that the plaintiffs suffered an injury in the Southern District of Texas. *Id.* at 128. The court found that this factor supported the position that the District of Columbia was the proper venue because plaintiffs had challenged the application of a purported policy that supposedly emanated from an agency located in the District of Columbia. *Id.* at 128-29.

In *Accurso*, the plaintiff sued the Federal Bureau of Prisons ("BOP") challenging a BOP policy under the Religious Freedom Restoration Act. 2018 WL 4964501 at *1. The defendants argued that transfer was appropriate because the plaintiff was incarcerated in the Northern District of Texas and because that is where the plaintiff's alleged injuries occurred. *Id.* at *2. The court found the defendants' arguments on this factor to be unpersuasive, noting that, among other things, the plaintiff was challenging a national policy. *Id.*

Plaintiffs' case is similar to both *Aracely* and *Accurso* in that, although Plaintiffs suffered injuries in jurisdictions other than the District of Columbia, Plaintiffs' injuries were the result of Defendants' actions executed from the District of Columbia in service of a coordinated strategy to disenfranchise voters.

Trying to justify transferring the case, Defendants cite to *Bergmann v. United States Department of Transportation*, 710 F. Supp. 2d 65, 73 (D.D.C. 2010) (Sullivan, J.), and *Hi Tech Pharmaceuticals, Inc. v. Federal Trade Commission*. 6 F. Supp. 3d 95, 100 (D.D.C. 2013) (Sullivan, J.). Neither case is on point. Unlike those cases, the instant action is not connected to the District of Columbia solely because this District is the location of a defendant's headquarters and it does not involve claims wholly arising out of the proposed transferee forum. *Compare with Bergmann*, 710 F. Supp. 2d 72-73 (granting transfer where "the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here . . . is charged with generally regulating and overseeing the [administrative] process" and almost all of the challenged acts occurred in the transferee forum); *Hi Tech*, 6 F. Supp. 3d at 99-100 (granting transfer where the only connection to the District of Columbia was the location of defendant Federal Trade Commission's headquarters and all claims arose from an enforcement action in the transferee forum).

Indeed, in sharp contrast with *Bergmann* and *Hi Tech*, Plaintiffs have alleged that the District of Columbia was the operational center of Defendants' scheme, which, by its nature, was not limited to the Eastern District of Michigan. (*See*, *e.g.*, Am. Compl., Dkt. No. 8, ¶¶ 38, 72 (describing a press conference at the RNC's headquarters in the District of Columbia where Rudy Giuliani discussed Defendants' strategy to disenfranchise voters in Michigan), *id.* ¶ 48 (noting that then-President Trump summoned Michigan legislators to the White House to discuss Michigan

election results).) Plaintiffs have alleged that Defendants' actions were connected to multiple states, as opposed to a single forum separate from this one. (*See*, *supra* "Background" at 2-3 (describing allegations in Amended Complaint related to conduct aimed at Michigan, Wisconsin, Pennsylvania, Georgia, Arizona, and Nevada).) In fact, Plaintiffs have alleged that Defendants' scheme had nationwide implications. (*See, e.g., id.* ¶ 20 ("Defendants engaged in a conspiracy, executed through a coordinated effort, to disenfranchise voters . . . ."), ¶ 75 (describing continuing nationwide scope of Defendants' future activities if not enjoined); ¶¶ 76-85 (discussing the claims against Defendants and summarizing the sweeping nature of Defendants' conspiracy against Black voters across America).). *Contra Bergmann*, 710 F. Supp. 2d 72-73; *Hi Tech*, 6 F. Supp. 3d at 99-100.

Further, events that occurred after Plaintiffs filed the Amended Complaint support Plaintiffs' position that the District of Columbia has been the center of Defendants' conspiracy and that the aims of the conspiracy extend far beyond the Eastern District of Michigan. Those events include then-President Trump's phone call to the Georgia Secretary of State in which he urged Secretary Raffensperger to "find 11,780 votes" to overturn the election results in that state[6] and the January 6, 2021, insurrection at the United States Capitol aimed to overturn the 2020 Presidential Election.[7]

Plaintiffs have alleged sufficient facts to demonstrate that actions giving rise to their claims occurred in the District of Columbia and concern conduct impacting multiple forums, not just the Eastern District of Michigan. This factor weighs against transfer.

---

[6] *See* Gardner, *supra* note 2.
[7] *See* Peñaloza, *supra* note 3.

**B.  The Convenience Factors Favor Keeping This Case In This Court.**

Convenience factors include the convenience of the parties, convenience of the witnesses, and the ease of access to sources of proof. *Aracely*, 319 F. Supp. 3d at 128-30. These factors favor keeping the case in this Court because so much of Defendants' coordinated effort to disenfranchise Americans was based in this District and thus much of the evidence and many of the witnesses will be found in this District as well. Defendants have not demonstrated how such convenience considerations for witnesses in the Eastern District of Michigan outweigh convenience considerations in the District of Columbia, or in any other forum in which Defendants attempted to interfere with the results of the election.

In *Accurso*, the court found that convenience weighed against transfer because the plaintiff's challenge to a BOP policy likely would require significant testimony and evidence from D.C.-based BOP officials. 2018 WL 4964501 at *2. In contrast, the court recognized that the prison officials where plaintiff was incarcerated in Texas likely did not exercise discretion in executing the policy at issue, and found that their testimony was less likely to be critical to resolving the matter than the testimony of witnesses located in the District of Columbia. *Id.*

In *Aracely*, the court found that the convenience factors were in equipoise. 319 F. Supp. 3d at 129-30. There, the court recognized that witnesses and evidence were located in California and Texas, as they were also located in the District of Columbia. *Id.* at 129. The court, however, noted that "the government officials who allegedly established, developed, and promoted the policy at the heart of [the] case, and the documents related thereto, [would] likely be found, if at all, in the District of Columbia." *Id.*

*Garcia* is also instructive here. 393 F. Supp. 3d 93. There, the plaintiffs challenged a Department of Labor's policy and practice related to certifying employers to hire H-2A workers at wages lower than the applicable prevailing wages. *Id.* at 99. The Department of Labor sought

transfer to the Northern District of Illinois in part because it contended the events at issue took place in Chicago, Illinois. *Id.* at 108-09. The court disagreed, finding that the plaintiffs were, in fact, challenging the general execution of the policy and practice, and that the case was not about the erroneous adjudication of a particular application. *Id.* at 109. The court then found that any inconvenience the defendants suffered because witnesses and evidence could be found in Chicago was outweighed by the fact that the plaintiffs challenged the applications of a national policy, and the fact that senior officials who crafted the policy and documents related to the policy were presumably located in the District of Columbia. *Id.*

The Amended Complaint and this Opposition make clear that Plaintiffs complain of more than just a few instances of conduct that violated the VRA and the KKK Act in the Eastern District of Michigan. Plaintiffs complain of a systematic and coordinated effort, based out of the District of Columbia, to disenfranchise voters. Like the courts found in *Accurso*, *Aracely*, and *Garcia*, it is presumed that there are material witnesses to and evidence reflecting the development, coordination, and execution of these efforts located in the District of Columbia, a forum from which all three Defendants operated, and a forum that the RNC calls home. For example, material witnesses and evidence concerning the RNC's own campaign policies, communications among Defendants, and other communications about 2020 election cycle activities are presumably accessible from the RNC's headquarters in the District of Columbia.

Defendants strain to contend that the Eastern District of Michigan is the most convenient forum for the parties, primarily because some potential witnesses, including the three individual Plaintiffs, are located in Michigan. (Mem. in Support, Dkt. No. 21-1 at 9-10.) Defendants' position, however, is flawed. Those individual Plaintiffs have limited relevant evidence. The key facts in this case involve the conspiracy to disenfranchise voters or discount votes, which involves

activities about which the individual Plaintiffs have no relevant testimony. Further, Defendants ignore the potential inconvenience for witnesses and inconvenience caused by the collection of documents in other forums like the District of Columbia, Arizona, Wisconsin, Georgia, Pennsylvania, or Nevada, should this Court grant Defendants' transfer request. There are state officials and key witnesses for both parties in those forums, and Defendants make no effort to explain how or why the Eastern District of Michigan might alleviate any inconvenience related to these forums. Indeed, Defendants have not yet made their disclosures under Federal Rule of Civil Procedure 26(a) as to the location of any of the key witnesses.[8] Accordingly, Defendants have yet to disclose where any witnesses with relevant information related to Defendants' nationwide practices and activities reside, other than to say that some are "located across the country" and others are located in "various other states." (Mem. in Support, Dkt. No. 21-1 at 3-4.)

Defendants obfuscate the lack of relevant information by identifying the witnesses from the RNC and Trump Campaign as follows—"RNC State and Regional Staff" (focusing on staff in Michigan), Trump Campaign "State Staff" (same), and "RNC and Trump Campaign State Volunteers" (same). (Mem. in Support, Dkt. No. 21-1 at 3-5.) But it is Defendants' burden to establish that transfer is appropriate. And Defendants themselves are the ones with information on where relevant witnesses are located. They have chosen to not provide any of this information with

---

[8] Apart from the balance of interests weighing against transfer, Plaintiffs respectfully contend that transfer is inappropriate given the early stage of this litigation. Transfers pursuant to 28 U.S.C. § 1404(a) are meant to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public from unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. at 616. There is currently an Amended Complaint pending. Plaintiffs expect Defendants to file responsive pleadings in the near term. Additionally, parties have not exchanged any Rule 26 disclosures. Motions to dismiss may limit the scope of this action, and Rule 26 disclosures may shift how this Court evaluates that balance of public and private interests. If this Court transfers this case to the Eastern District of Michigan prior to the resolution of any motion to dismiss or the disclosure of information under Rule 26, the parties may file additional motions to transfer, thereby incurring unnecessary inconvenience and expense and wasting time, energy, and money.

any degree of specificity and instead to rely solely on the location of some Plaintiffs, whose own knowledge is of limited importance in these proceedings.

Furthermore, Defendants offer no relevant facts or analysis to support their position that the Eastern District of Michigan is a more appropriate venue because some Plaintiffs reside there. Defendants suggest that much discovery will be taken from Plaintiffs. (*Id.* at 3, 9-10.) But Defendants fail to describe what discovery they will need or how obtaining testimony from this District would be difficult—particularly in light of the fact that as Plaintiffs, the District of Columbia has jurisdiction over all of them. Indeed, given the allegations in the Amended Complaint, it seems that very little discovery will need to be taken from Plaintiffs. As to the individual Plaintiffs, the only relevant question would appear to be whether they voted and evidence related to their injuries, including stigmatic injuries. For the organizational Plaintiffs, the question will be whether some of their members voted and evidence relevant to their injuries, including diversion of resources.

Defendants further fail to acknowledge that there will be documents and key witnesses located at the RNC's headquarters in the District of Columbia that are material to Plaintiffs' case. Defendants likewise fail to acknowledge that transfer would result in Plaintiffs' facing the same challenges related to compliance with court proceedings about which Defendants assert concerns, including the availability of compulsory process to command the attendance of unwilling witnesses and the cost of obtaining those witnesses. (Mem. in Support, Dkt. No. 21-1 at 9-10 (citing *Hunter v. Washington Metro. Area Transit Auth.*, No. CV 09-697 (EGS), 2009 WL 10693204, at *3 (D.D.C. Aug. 4, 2009) (Sullivan, J.); *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 98 (D.D.C. 2003)).) *Hunter* and *Pyrocap* are inapposite. In *Pyrocap*, the court considered compulsory process particularly important where many of the key witnesses were

13

located in the Eastern District of Michigan. 259 F. Supp. 2d at 98. In *Hunter*, the court found that the availability of the compulsory process was a neutral factor in its analysis because the relevant witnesses were likely within the subpoena power of the court and the transferee court. 2009 WL 10693204 at *3. Here, Plaintiffs have identified that there are likely multiple RNC officials and representatives of the other Defendants in this District, and that there are likely officials and other individuals in other states who will serve as material witnesses. Indeed, Defendants acknowledge that potential witnesses are "located across the country," which does not support venue in the Eastern District of Michigan any more than in the District of Columbia. (Mem. in Support, Dkt. No. 21-1 at 3.) Additionally, Plaintiffs have not indicated that any of the witnesses over which they have control are unlikely to appear, and Defendants have not indicated that other material witnesses are unlikely to appear voluntarily. *See Hunter*, 2009 WL 10693204 at *3 (noting that neither of the parties had argued that any of the witnesses were unavailable or unwilling to testify).

It is clear that Defendants have failed to demonstrate that the balance of convenience issues weighs in favor of transfer.

### C. Plaintiffs' Choice Of This Court Should Be Granted Deference.

A plaintiff's choice of forum is ordinarily given significant deference. *Aracely*, 319 F. Supp. 3d at 128 (citations omitted); *Jalloh*, 300 F. Supp. 3d at 156 (citations omitted). Defendants argue that this Court should not give such deference here because no Plaintiff resides in the District of Columbia (Mem. in Support, Dkt. No. 21-1 at 11), but that argument misses the mark. First, Plaintiff NAACP does have members who reside in the District of Columbia. Second, and more fundamentally, Plaintiffs' choice of forum is entitled to substantial weight because the District of Columbia has "meaningful ties to this controversy." *Jalloh*, 300 F. Supp. 3d at 156 (denying transfer where "[d]efendants have not shown that this is an extraordinary case where their choice of forum should receive deference").

In *Jalloh*, the plaintiff, a Maryland resident, sued defendants in the District of Columbia for violating his Fourth Amendment rights. *Id.* at 154. Defendant police officers had approached the plaintiff while he was in the District of Columbia and followed him in their vehicles until he stopped in Maryland. *Id.* There, they pulled him out of his car and proceeded to beat him. *Id.* After plaintiff sued the defendants in the District of Columbia, the defendants moved to transfer the case to the District of Maryland. *Id.* The court found that that the parties' forum selection weighed against transfer, even though the plaintiff lived in Maryland, because (1) the District of Columbia had "meaningful ties to [the] controversy" and (2) the defendants had not shown that this was an extraordinary case requiring the court to defer to their choice of forum. *Id.* at 156. Here, Defendants' efforts to disenfranchise Plaintiffs and other voters in multiple states are centered in the District of Columbia, through Defendants' coordination. The RNC is headquartered in Washington, D.C., and then-President Trump lived in Washington, D.C., until January 20, 2021, when his term as President ended. Plaintiffs' Amended Complaint clearly alleges "meaningful ties" to the District of Columbia. *Jalloh*, 300 F. Supp. 3d at 156.

Defendants focus on *Beall v. Edwards Lifesciences LLC*, 310 F. Supp. 3d 97 (Sullivan, J.).[9] *Beall*, however, actually supports keeping this case in the District of Columbia. In *Beall*, the court found that the defendant's choice of forum had more weight than the plaintiff's, in part because

---

[9] Defendants also cite to *Bergmann*, 710 F. Supp. 2d at 72-73, *Chauhan v. Napolitano*, 746 F. Supp. 2d 99 (D.D.C. 2010) (Sullivan, J.), and *Alvarez v. CIGNA Corporation,* Civil Action No. 06-145 (EGS), 2006 WL 8460104, at *1 (D.D.C. 2006) (Sullivan, J.), all of which are distinguishable. *Bergmann* is a case where all of the challenged acts occurred in the transferee forum. 710 F. Supp. 2d at 72-73. *Chauhan* considered a scenario where most of the contested actions arose in Texas and where there was very little involvement on the behalf of federal officials in the District of Columbia. 746 F. Supp. 2d at 103-04. And in *Alvarez*, the Court transferred the case because all of the acts happened in one or two forums, with all relevant documents located in Philadelphia, Pennsylvania. 2006 WL 8460104 at *1. In contrast, as shown in this Opposition, the focal point of Defendants' actions was the District of Columbia, and operative events occurred in the District of Columbia and across the nation.

the defendant had a strong connection to the transferee forum. *Id.* at 104. There, the defendant's headquarters were located in the transferee forum, the discriminatory policies at issue were created there, and the retaliatory actions were taken there. *Id*. Conversely, here, none of the Defendants has a strong connection to the Eastern District of Michigan. The RNC is headquartered in the District of Columbia; the former President lived in the District of Columbia and engaged in the activities giving rise to this case from the District of Columbia; the conspiracy to deprive individuals of the right to vote was hatched in the District of Columbia; and many of Defendants' actions, including press conferences, rallies, and meetings with and calls to state officials, occurred in the District of Columbia. Indeed, even insofar as it relates to Michigan, the President summoned the Michigan State Senate and State House leaders to the District of Columbia for a meeting at the White House, where he attempted to pressure these officials to overturn the results of the Presidential Election in Michigan. (Am. Compl., Dkt. No. 8, ¶ 48.)

Defendants also rely heavily on *Dean v. Eli Lilly & Co.*, 515 F. Supp. 2d 18 (D.D.C. 2007) (Sullivan, J.). There, the plaintiffs brought claims in this District related to the prescription, purchase of, ingestion of, and exposure to a prescription drug in Massachusetts. *Id.* at 20. The plaintiffs sought to resolve the controversy in the court because of the defendants' lobbying efforts in the District of Columbia. *Id.* at 21. The court found that the defendants' lobbying efforts in the District of Columbia were not connected to the claims, defenses, or facts of the case, and ruled that transfer was appropriate. *Id.* at 21-22 (discussion of lobbying efforts), 25 (granting transfer). Here, however, the District of Columbia served as the center of Defendants' efforts to disenfranchise voters, and Defendants' actions in this forum have directly contributed to violations of the Voting Rights Act and the KKK Act across the nation. (Am. Compl., Dkt. No. 8, ¶¶ 76-80.) Transfer would be inappropriate.

**II.    The Public Interest Factors Also Favor Keeping The Case In This Court.**

Defendants' conclusory arguments regarding the public interest factors utterly fail to meet their burden to show that *any* relevant public interest factor favors transferring this action, whether it be the transferee district's familiarity with the governing law, the relative congestion of the courts of the potential transferor and potential transferee, or the local interest in deciding local controversies at home. *Aracely*, 319 F. Supp. 3d at 130.

Defendants' lack of analysis on these factors tacitly acknowledges that Defendants cannot meet their burden on those points. As to the transferee district's familiarity with governing laws, as Defendants point out, all federal courts are presumed to be familiar with federal statutes such as the VRA and the KKK Act (Mem. in Support, Dkt. No. 21-1 at 13), which does not weigh in favor of transferring this action from this Court to the Eastern District of Michigan or any other court. As to the relative congestion of the courts, Defendants argue only that this Court has not yet familiarized itself with the merits given that the case is in early states. (*Id.*) This also does not weigh in favor of transfer, nor do the publicly reported caseloads of the districts.[10]

As to the local interest in deciding local controversies at home, Defendants assert that this factor weighs in favor of transfer because "a clear majority of the operative events took place in the [Eastern District of Michigan]." (Mem. in Support, Dkt. No. 21-1 at 13.) In support of their position, Defendants cite *Treppel v. Reason*, 793 F. Supp. 2d 429 (D.D.C. 2011). But that case is easily distinguished. There, the court found that this factor weighed in favor of transfer because a majority of the meetings and decisions related to the shareholder derivative suit occurred in the Eastern District of Virginia and because the claims were brought under Virginia law. *Id.* at 440. In

---

[10] *See, e.g.*, U.S. Courts, Table C—U.S. District Courts, Civil Statistical Tables for the Federal Judiciary (June 30, 2020) (noting that the District of Columbia and the Eastern District of Michigan have roughly equivalent numbers of civil cases pending), https://www.uscourts.gov/statistics/table/c/statistical-tables-federal-judiciary/2020/06/30.

contrast, as set forth above, it is simply not true that the weight of key events occurred in the Eastern District of Michigan. Moreover, rather than adjudicating state law claims with which the transferee venue would be more familiar, this case concerns federal statutes with national implications. Not only is this Court presumed to be just as familiar with federal statutes as the Eastern District of Michigan, this Court is capable of "fairly and adequately consider[ing]" any interest local to the Eastern District of Michigan and the nation as a whole, "consistent with the fair administration of justice." *Fund For Animals v. Norton*, 352 F. Supp. 2d 1, 2 (D.D.C. 2005) (Sullivan, J.). The national import of this case outweighs the need to transfer this case to address any local concerns. This Court, as it has done in the past, is more than capable of respecting and addressing local concerns.

[INTENTIONALLY LEFT BLANK]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants'

Motion to Transfer Venue.

Dated:  February 23, 2021

Respectfully submitted,

/s/ Jason M. Bradford

Jason M. Bradford (D.D.C Bar No. IL0073)

Samuel Spital (D.D.C Bar No. SS4839)
Janai S. Nelson*
Monique N. Lin-Luse*
NAACP LEGAL DEFENSE & EDUCATIONAL
FUND, INC.
40 Rector St., 5th Floor
New York, NY 10006
(212) 965-2200

Stephen L. Ascher*
JENNER & BLOCK LLP
919 3rd Avenue
New York, NY 10022
(212) 891-1600

Jason M. Bradford (D.D.C Bar No. IL0073)
William L. Von Hoene*
Jonathan A. Enfield (D.D.C Bar No. IL0074)
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350

*Counsel for Plaintiffs*

*Application for admission or for pro hac vice admission
pending or forthcoming*

19

**CERTIFICATE OF SERVICE**

I certify that on February 23, 2021, I electronically filed the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) and the accompanying proposed order with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.


Dated: February 23, 2021                          /s/ Jason M. Bradford
                                                  Jason M. Bradford
                                                  Attorney for Plaintiffs