**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHIGAN WELFARE RIGHTS ORGANIZATION, *et al.* ) ) ) ) *Plaintiffs*, ) ) v. ) ) ) DONALD J. TRUMP, *et al.*, ) ) *Defendants*. ) | No. 1:20-cv-3388-EGS |

**REPUBLICAN NATIONAL COMMITTEE'S MOTION TO**
**DISMISS PLAINTIFFS' AMENDED COMPLAINT AND**
**STATEMENT OF POINTS AND AUTHORITIES**

Harmeet K. Dhillon
Mark P. Meuser
DHILLON LAW GROUP INC.
177 Post Street, Ste. 700
San Francisco, CA 94108
(415) 433-1700
harmeet@dhillonlaw.com
mmeuser@dhillonlaw.com

Tyler R. Green (982312)
Cameron T. Norris (VA083)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tyler@consovoymccarthy.com
cam@consovoymccarthy.com

*Counsel for Defendant Republican National Committee*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................. ii

INTRODUCTION AND BACKGROUND ...........................................................1

ARGUMENT ....................................................................................................2

    I.    Plaintiffs' Claim Under §11(b) of the Voting Rights Act Fails. ............................2

        A.    Plaintiffs fail to state a claim because there is no private right of action under §11(b) of the Voting Rights Act............................................................2

        B.    Relief under the Voting Rights Act is limited to injunctive relief, which Plaintiffs lack standing to seek. ........................................................................4

        C.    Plaintiffs fail to state a claim because none of the conduct alleged in the Amended Complaint amounts to a violation of the Voting Rights Act. ........7

            1.    The First Amendment .........................................................................9

            2.    Deficiency of the allegations..............................................................11

            3.    Particular deficiency of the allegations against the RNC .................15

    II.    Plaintiffs' Second Cause of Action Fails to State a Claim. ...................................16

        A.    Plaintiffs fail to allege that the RNC was party to a conspiracy to use force, intimidation, or threat to prevent any person who was lawfully entitled to vote from doing so.......................................................................................18

        B.    Plaintiffs fail to allege that any of Defendants' conduct caused a deprivation or other injury related to their right to vote. .................................................20

CONCLUSION ......................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ...................................................................................................3, 4

*Allen v. State Board of Elections*,
   393 U.S. 544 (1989) ........................................................................................................4

*Arizona Democratic Party v. Arizona Republican Party*,
   2016 WL 8669978 (D. Ariz. Nov. 4, 2016) ...............................................12, 13, 19

*Arnold v. Int'l Bus. Machines Corp.*,
   637 F.2d 1350 (9th Cir. 1981) ......................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................2

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969) ...........................................................................................9, 11, 12

*Bray v. Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993) ...........................................................................................18, 19, 20

*Brooks v. Nacrelli*,
   331 F. Supp. 1350 (E.D. Pa. 1971)...............................................................................21

*Buckley v. Valeo*,
   424 U.S. 1 (1976) .........................................................................................................1, 9

*Bush v. Butler*,
   521 F. Supp. 2d 63 (D.D.C. 2007) ........................................................................16, 19

*Chambers v. Omaha Girls Club*,
   629 F. Supp. 925 (D. Neb. 1986) .................................................................................21

*Chang v. United States*,
   738 F. Supp. 2d 83 (D.D.C. 2010) .............................................................................6, 7

*Chaplinsky v. New Hampshire*,
   315 U.S. 568 (1942) ........................................................................................................9

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ........................................................................................................9

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ....................................................................................................5, 6, 7

ii

*Cohen v. California*,
   403 U.S. 15 (1971) ...................................................................................... 9

*\*Cook v. Randolph Cty., Ga.*,
   573 F.3d 1143 (11th Cir. 2009) ............................................................... 4, 21

*Crawford v. Marion Cty. Election Bd.*,
   553 U.S. 181 (2008) ............................................................................. 11, 13

*Cruz v. Am. Airlines, Inc.*,
   356 F.3d 320 (D.C. Cir. 2004) .................................................................... 5

*Dace v. Smith-Vasquez*,
   658 F. Supp. 2d 865 (S.D. Ill. 2009) ........................................................ 21

*Damon v. Hukowicz*,
   964 F. Supp. 2d 120 (D. Mass. 2013) ......................................................... 8

*Dekom v. Nassau Cnty.*,
   595 F. App'x 12 (2d Cir. 2014) ................................................................. 16

*DNC v. RNC*,
   2016 WL 6584915 (D.N.J. Nov. 5, 2016) ................................................. 15

*DNC v. RNC*,
   671 F. Supp. 2d 575 (D.N.J. 2009) ........................................................... 15

*Elonis v. United States*,
   135 S. Ct. 2001 (2015) ............................................................................... 8

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
   489 U.S. 214 (1989) ................................................................................... 1

*Federer v. Gephardt*,
   363 F.3d 754 (8th Cir. 2004) .................................................................... 17

*Flynt v. Weinberger*,
   762 F.2d 134 (D.C. Cir. 1985) .................................................................... 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ........................................................................... 5, 6, 7

*Glass v. City of Philadelphia*,
   455 F. Supp. 2d 302 (E.D. Pa. 2006) ........................................................ 21

*\*Graves v. United States*,
   961 F. Supp. 314 (D.D.C. 1997) ......................................................... 18, 20

*Great Am. Fed. Savings & Loan Assn. v. Novotny*,
   442 U.S. 366 (1979) ..................................................................................................... 16

*Henderson v. Obama*,
   2010 WL 2931195 (D.D.C. July 22, 2010) ................................................................. 11

*Hurd v. D.C., Gov't*,
   864 F.3d 671 (D.C. Cir. 2017) ...................................................................................... 2

*\*Johnson v. Interstate Mgmt. Co., LLC*,
   849 F.3d 1093 (D.C. Cir. 2017) .................................................................................... 4

*Jones v. Dalton*,
   867 F. Supp. 2d 572 (D.N.J. 2012) .............................................................................. 19

*Keane v. Nat'l Democratic Party*,
   475 F.2d 1287 (D.C. Cir. 1973) ..................................................................................... 6

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) .................................................................................................... 21

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................. 5, 7

*McCutcheon v. Fed. Election Comm'n*,
   134 S. Ct. 1434 (2014) ................................................................................................ 15

*McManus v. District of Columbia*,
   530 F. Supp. 2d 46 (D.D.C. 2007) ......................................................................... 19, 20

*Meng v. Schwartz*,
   305 F. Supp. 2d 49 (D.D.C. 2004) .............................................................................. 21

*Morgan v. District of Columbia*,
   550 F. Supp. 465 (D.D.C. 1982) ................................................................................. 19

*Morpurgo v. Inc. Vill. of Sag Harbor*,
   697 F. Supp. 2d 309 (E.D.N.Y. 2010) ........................................................................ 19

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ...................................................................................................... 5

*Olagues v. Russoniello*,
   770 F.2d 791 (9th Cir. 1985) ......................................................................................... 4

*Parson v. Alcorn*,
   157 F. Supp. 3d 479 (E.D. Va. 2016) ........................................................................... 7

*Pennsylvania Democratic Party v. Republican Party of Pennsylvania*,
2016 WL 6582659 (E.D. Pa. Nov. 7, 2016) ............................................................... 10

*Polidi v. Bannon*,
226 F. Supp. 3d 615 (E.D. Va. 2016) ...................................................................... 18

*\*Pope v. Bond*,
641 F. Supp. 489 (D.D.C. 1986) ........................................................... 16, 17, 18, 20

*RAV v. City of St. Paul*,
505 U.S. 377 (1992) ................................................................................................... 9

*Renne v. Geary*,
501 U.S. 312 (1991) ................................................................................................... 6

*Rios v. Navarro*,
766 F. Supp. 1158 (S.D. Fla. 1991) ......................................................................... 18

*Simmons v. Poe*,
47 F.3d 1370 (4th Cir. 1995) ................................................................................... 18

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ............................................................................................ 5, 6

*Tax Analysts v. IRS*,
214 F.3d 179 (D.C. Cir. 2000) .................................................................................... 4

*Texas v. Johnson*,
491 U.S. 397 (1989) ................................................................................................... 9

*Todd v. City of Natchitoches*,
238 F. Supp. 2d 793 (W.D. La 2002) ....................................................................... 19

*United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*,
463 U.S. 825 (1983) ................................................................................................. 16

*United States v. Ballard*,
322 U.S. 78 (1944) ..................................................................................................... 9

*United States v. Brown*,
494 F. Supp. 2d 440 (S.D. Miss. 2007) ...................................................................... 7

*United States v. Pettaway*,
297 F. Supp. 3d 137 (D.D.C. 2018) .................................................................... 10, 14

*United States v. Syring*,
522 F. Supp. 2d 125 (D.D.C. 2007) .......................................................................... 10

*Virginia v. Black,*
   538 U.S. 343 (2003) ...................................................................8, 9, 10, 12, 14

*Virginians Against a Corrupt Congress v. Moran,*
   1993 WL 260710 (D.C. Cir. 1993)...........................................................6

*Volunteer Med. Clinic, Inc. v. Operation Rescue,*
   948 F.2d 218 (6th Cir. 1991) ..............................................................16, 17

*Watts v. United States,*
   394 U.S. 705 (1969) ..................................................................8, 9, 10, 12, 14

*Webber v. White,*
   422 F. Supp. 416 (N.D. Tex. 1976) ...........................................................4

*Willingham v. Cnty. of Albany,*
   593 F. Supp. 2d 446 (N.D.N.Y. 2006) .......................................................10

*Windy Boy v. Big Horn County,*
   647 F. Supp. 1002 (D. Mont. 1986) ...........................................................4

*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) ......................................................................3, 4

## Statutes

42 U.S.C. §1985 ...........................................................................16, 20

52 U.S.C. §10307 ..............................................................................2

52 U.S.C. §10308 ..............................................................................2

52 U.S.C. §30104 .............................................................................15

52 U.S.C. §30116 .............................................................................15

## Other Authorities

U.S. Department of Justice, Federal Prosecution on Election Offenses (2017)............................10

## INTRODUCTION AND BACKGROUND

Political campaigns can be intense and emotional. They can simultaneously excite, offend, inspire, and disgust. They are competitive and relentless, and candidates are often slow to concede. This is evident not only from the 2020 election cycle, but from countless others in recent history. Why? Elections matter, and the two major political parties often have very different views about who will best lead the country. All that helps to explain why the First Amendment "'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989); *see also Buckley v. Valeo*, 424 U.S. 1, 39 (1976).

Even so, seven weeks after the November 2020 election—and long after all states had certified their election results—Plaintiffs filed an amended complaint based on numerous constitutionally protected statements made by Defendants after the 2020 election. Plaintiffs invoke some of our most critical civil-rights laws to cast scattered and generalized public statements by their political opponents—President Trump, the Trump Campaign, and the Republican National Committee—as intimidation to "disenfranchis[e] voters, in particular voters of color." Am. Compl. (Doc. 8) ¶¶1-2. Most of Plaintiffs' specific allegations concern the President and his campaign, not the RNC. Yet the amended complaint is also full of allegations about rogue, unnamed, and unidentified individuals, including individuals not named as defendants here. And when Plaintiffs allege facts about any of the Defendants, these allegations are focused on Defendants' protected First Amendment speech.

The Voting Rights Act and 42 U.S.C. §1985(3) serve many important purposes. Having a federal court take sides in a now-completed political campaign is not one of them. Plaintiffs' amended complaint should be dismissed because §11(b) of the Voting Rights Act has no private right of action; §1985(3) creates no substantive rights; Plaintiffs allege no intimidation, threat, or

1

coercion under either statute; Plaintiffs' allegations concern speech protected by the First Amendment and actions that are not attributable to the RNC; and Plaintiffs identify no past, present, or future injury to voting rights that they have fully exercised.

## ARGUMENT

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.* "'In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice.'" *Hurd v. D.C., Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017).

I.     **Plaintiffs' Claim Under §11(b) of the Voting Rights Act Fails.**

Plaintiffs' first cause of action fails for three independent reasons. First, there is no private right of action to enforce §11(b). Second, Plaintiffs lack standing to seek injunctive relief—the only relief available under the VRA. And third, even accepting Plaintiffs' allegations as true, the alleged conduct would not violate §11(b).

A.  **Plaintiffs fail to state a claim because there is no private right of action under §11(b) of the Voting Rights Act.**

Section 11(b) of the Voting Rights Act, 52 U.S.C. §10307(b), contains no private right of action. Section 12 of the Act, 52 U.S.C. §10308, provides the exclusive methods for enforcing §11. It provides that violations of certain sections of the Act can be criminally prosecuted, *id.* §10308(a)-(c), and that *the Attorney General* can bring civil actions for injunctive relief against persons who have engaged or are about to engage in the conduct that §11 prohibits, *id.* §10308(d). Section 12's text is plain: it authorizes only the Attorney General, and not a private party, to seek

equitable relief. *See Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."). Even the Department of Justice agrees: It recently argued that "the VRA incorporates no express private right of action to enforce Section 11(b) at all." DOJ Brief, *Mi Familia Vota Education Fund v. Trump*, No. 1:20-cv-3030-RJL (D.D.C.), Doc. 18 at 19.

That ends the inquiry. No private right of action can be implied. To be sure, there was a time when courts demonstrated a willingness to "create[]" private causes of action "through judicial mandate" grounded loosely in broad notions of congressional purpose. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855-56 (2017). But that time has long since passed. *See id.* at 1855 ("In the mid-20th century, the Court followed a different approach to recognizing implied causes of action than it follows now."); *Sandoval*, 532 U.S. at 287 (similar). "[S]eparation-of-powers principles" now make the Supreme Court "cauti[ous]" about recognizing implied causes of action. *Ziglar*, 137 S. Ct. at 1856.

This is especially true for implied causes of action under federal statutes: "When Congress enacts a statute, there are specific procedures and times for considering its terms and the proper means for its enforcement. It is logical, then, to assume that Congress will be explicit if it intends to create a private cause of action." *Id.*; *see also Sandoval*, 532 U.S. at 287 ("'Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.'") Thus, "[h]aving sworn off the habit of venturing beyond Congress's intent," *Sandoval*, 532 U.S. at 287, the Court now asks whether "the statute itself"—that is, the text—"'displa[ys] an intent' to create 'a private remedy,'" *Ziglar*, 137 S. Ct. at 1856 (quoting *Sandoval*, 532 U.S. at 286-87).

Private rights of action identified under the earlier interpretive regime are limited to their specific facts and have no persuasive value when assessing new private rights of action. *See*

3

*Sandoval*, 532 U.S. at 279, 293 (holding that Congress created no "freestanding private right of action to enforce regulations promulgated under §602" of Title VI, even though it accepted that a private right existed under §601); *id.* at 287 (noting that after the Court abandoned the practice of identifying private causes of action to "make effective the congressional purpose," it was unwilling to "revert" to that practice in interpreting the Securities Exchange Act of 1934, even though that same statute had been already subjected to the earlier regime). Thus, *Allen v. State Board of Elections*, 393 U.S. 544, 554-56 (1989), which held that private citizens may bring certain claims for declaratory relief under *section 5* of the Voting Rights Act, is inapposite here. *Allen* is a product of an earlier, "abandoned" era—its approach to implied rights of action has been overruled. *Sandoval*, 532 U.S. at 287; *see Ziglar*, 137 S. Ct. at 1855 (citing *Allen* as an example of the "different approach to recognizing implied causes of action" that's no longer "in place").

Neither the Supreme Court nor the D.C. Circuit has found a private right of action for injunctive or declaratory relief in §11(b) of the Voting Rights Act. And under the approach that this Court applies today, §11(b) plainly lacks a private right of action. *See Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1097-98 (D.C. Cir. 2017). Plaintiffs' first cause of action must be dismissed for this reason alone. *Id.* at 1096, 1098; *see also Tax Analysts v. IRS*, 214 F.3d 179, 186 (D.C. Cir. 2000) (affirming Rule 12(b)(6) dismissal where the plaintiff lacked a private right of action under the statute).

### B. Relief under the Voting Rights Act is limited to injunctive relief, which Plaintiffs lack standing to seek.

Even if §11(b) had a private right of action, Plaintiffs lack standing to bring such a claim. Equitable relief is the only relief available under the VRA. *See Cook v. Randolph Cty., Ga.*, 573 F.3d 1143, 1155 (11th Cir. 2009); *Olagues v. Russoniello*, 770 F.2d 791, 804-05 (9th Cir. 1985); *Windy Boy v. Big Horn County*, 647 F. Supp. 1002, 1023 (D. Mont. 1986); *Webber v. White*, 422 F. Supp. 416, 426 (N.D. Tex. 1976). Thus, Plaintiffs' request for damages cannot apply to their

4

first cause of action, and they must prove standing to pursue prospective relief. *See Cruz v. Am. Airlines, Inc.*, 356 F.3d 320, 328-29 (D.C. Cir. 2004) (analyzing injunctive and declaratory relief together when considering whether plaintiffs had standing).

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy" under Article III. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements." *Id.* "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Id.*

Here, standing turns on injury in fact, "the first and foremost of standing's three elements." *Id*. (cleaned up). An injury in fact must be "concrete and particularized" and "'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Forward-looking claims for equitable relief often falter on the "actual and imminent" prong. Plaintiffs seeking injunctive or declaratory relief must "establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury is *certainly impending*.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (cleaned up; emphasis added). In other words, "past wrongs" do not "themselves amount" to the kind of "real and immediate threat" of future injury "necessary to make out a case or controversy" for a claim seeking only equitable relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). When plaintiffs seek injunctive relief premised on past harm, they "must show that [they are] sufficiently likely to be *personally*

subjected to the challenged conduct *again* in order to have standing." *Chang v. United States*, 738 F. Supp. 2d 83, 90 (D.D.C. 2010) (Sullivan, J.) (emphasis added). Any threatened harm that is not both "real and immediate" is "too speculative" to support standing. *Lyons*, 461 U.S. at 103; *Friends of the Earth*, 528 U.S. at 190.

Plaintiffs failed to "'clearly … allege'" facts supporting a real and immediate threat of future harm. *Spokeo*, 136 S. Ct. at 1547. Section 11(b) makes it illegal to attempt to "intimidate, threaten, or coerce … any person for voting or attempting to vote." 52 U.S.C. §10307(b). Even if Defendants' alleged past conduct violated §11(b), *but see infra* 7-16, there is no threat of imminent future harm. The election took place on November 3, 2020. All voting and observation took place by that date (or in the days immediately following). Plaintiffs did not file this lawsuit until weeks later, Doc. 1, and they didn't file the amended complaint until seven weeks after the election, Doc. 8. Thus, their claims for injunctive relief "became moot before the action commenced." *Renne v. Geary*, 501 U.S. 312, 320 (1991).

True, certification of the 2020 election was pending in some States when the lawsuit was originally filed. But the election has since been certified—not only by the States but by Congress— and a new administration took office over a month ago. Any claims asserting the need for injunctive relief concerning certification are thus moot. *See Virginians Against a Corrupt Congress v. Moran*, 1993 WL 260710 (D.C. Cir. 1993) (granting a motion to dismiss for mootness because "[t]he passage into history of the 1992 election makes it impossible for this or any court to grant meaningful relief with respect to that election"); *see also Keane v. Nat'l Democratic Party*, 475 F.2d 1287, 1288 (D.C. Cir. 1973); *Flynt v. Weinberger*, 762 F.2d 134, 135 (D.C. Cir. 1985).

Indeed, Plaintiffs acknowledge that "the 2020 presidential election is over." Doc. 8 ¶75. But according to them, that does not matter because Defendants "will likely engage in similar activities for the foreseeable future." *Id.* Their basis for such an assertion? A decades-old allegation

about the RNC stemming from a 1981 New Jersey election; "President Trump's reported interest in campaigning for President in 2024"; "the fact that he has raised at least $207.5 million since the election"; and the fact that "Defendant RNC is involved in most elections for key offices." *Id.* ¶¶74-75. But "past" actions do not establish a "real and immediate threat" of future injury, *Lyons*, 461 U.S. at 103, and speculation about who might run for President in 2024 and the possible uses for post-election funds is precisely the kind of conjecture that the "injury in fact" requirement rejects, *Lujan*, 504 U.S. at 560. It is also "no more than conjecture to suggest that in every" election similar conduct will occur, and it is "no more than speculation to assert … that [Plaintiffs themselves] will again be involved." *Lyons*, 461 U.S. at 108.

Put simply, Plaintiffs fail to allege facts supporting a sufficient likelihood that Plaintiffs "personally" will be subject to the same alleged conduct "again," *Chang*, 738 F. Supp. 2d at 90, or that any alleged §11(b) harm caused by the RNC or any defendant is "'certainly impending,'" *Friends of the Earth*, 528 U.S. at 190; *Lyons*, 461 U.S. at 103. Thus, Plaintiffs lack standing to pursue their first cause of action under the VRA, and this Court lacks jurisdiction to entertain it.

### C. Plaintiffs fail to state a claim because none of the conduct alleged in the Amended Complaint amounts to a violation of the Voting Rights Act.

Plaintiffs' amended complaint throws a panoply of 2020 grievances at Defendants in an attempt to state a claim under the VRA. But none of the allegations—alone or together—amounts to the "intimidat[ion], threat[s], or coerc[ion]" that §11(b) proscribes. Indeed, claims under this provision are exceedingly difficult to establish. *See United States v. Brown*, 494 F. Supp. 2d 440, 477 n.56 (S.D. Miss. 2007), *aff'd*, 561 F.3d 420 (5th Cir. 2009).

The precise meaning of the terms "intimidate, threaten, or coerce" in §11(b) is underdeveloped. *See Parson v. Alcorn*, 157 F. Supp. 3d 479, 498 (E.D. Va. 2016) (noting the "[l]imited precedent on Section 11(b)"). But generally speaking, "intimidation" means instilling fear of harm to influence conduct, "threat" means communicating an explicit exertion of pressure

to induce fear and influence conduct, and "coercion" means applying physical or psychological force to deprive a person of his own will and thereby influence conduct. *See Damon v. Hukowicz*, 964 F. Supp. 2d 120, 149 (D. Mass. 2013) (defining the same terms in the Massachusetts Civil Rights Act).

These terms, however, do not exist in a legal vacuum. Because "intimidate," "threaten," and "coerce" are often accomplished through speech, these definitions must be understood with reference to well-known First Amendment limitations. *See Watts v. United States*, 394 U.S. 705, 707 (1969) (statutes that restrict threatening speech "must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech."); *see also Virginia v. Black*, 538 U.S. 343, 357 (2003) (interpreting a state statute that prohibited cross burning with "an intent to intimidate" and using the words "intimidate," "threaten," and "coerce" interchangeably in evaluating whether the statute banned only constitutionally unprotected speech); *Elonis v. United States*, 135 S. Ct. 2001, 2018-19 (2015) (Thomas, J., dissenting) (explaining that when a statute prohibits speech, "the First Amendment requires" that its terms "be limited to a narrow class of historically unprotected communications"). In other words, only the "constitutionally proscribable sense of the word[s]" matters. *Virginia*, 538 U.S. at 360. And courts "must interpret the language Congress chose 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" *Watts*, 394 U.S. at 708.

Here, none of the allegations against Defendants identifies attempts to "intimidate, threaten, or coerce." If this alleged conduct were covered by the statute, then §11(b) would be an unconstitutional restriction on speech.

### 1. The First Amendment

As general rule, the First Amendment protects against content-based prohibitions on speech. *RAV v. City of St. Paul*, 505 U.S. 377, 382 (1992); *Virginia*, 538 U.S. at 358. "The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia*, 538 U.S. at 358 (collecting cases). From "the sacred" to "the profane," with "a good deal of rubbish" in between, people and organizations have a right to speak their minds, no matter the offense or disagreement it may cause—that is "the price" of the freedom guaranteed by the First Amendment. *United States v. Ballard*, 322 U.S. 78, 95 (1944) (Jackson, J., dissenting); *Virginia*, 538 U.S. at 388 (Thomas, J., dissenting); *see Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). It is a price worth paying because "[s]peech is an essential mechanism of democracy." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010). Little wonder, then, that "[t]he First Amendment 'has its fullest and most urgent application to speech uttered during a campaign for political office.'" *Id.*; *see also Buckley*, 424 U.S. at 39 ("[C]ampaign speech by individuals, groups, and candidates" is "'at the core of our electoral process and of the First Amendment freedoms.'").

The Supreme Court has cautiously carved out narrow categories of speech or expression that the government can regulate consistent with the Constitution. *Virginia*, 538 U.S. at 358; *see Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) (noting the "certain well-defined and narrowly limited classes of speech" that can be regulated consistent with the Constitution). Thus, the government can prohibit "true threats," *Watts*, 394 U.S. at 708; speech that incites imminent lawless action or violence, *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); and fighting words, *Cohen v. California*, 403 U.S. 15, 20 (1971); *Chaplinsky*, 315 U.S. at 573. In analyzing the import

of a statutory prohibition on "intimidat[ion], threat[s], or coerc[ion]," there is only relevant one category: true threats. *See United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); *cf.* U.S. Department of Justice, Federal Prosecution on Election Offenses 49-50 (2017), bit.ly/3sm8MKg ("The goal of voter intimidation … is to deter or influence voting activity *through threats* to deprive voters of something they already have, such as jobs, government benefits, or, in extreme cases, their personal safety." (emphasis added)).

A "true threat" is a communication that conveys "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia*, 538 U.S. at 359. Speech qualifies as a "constitutionally proscribable" "true threat" only "where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Id*. at 360. "[C]rude" or "offensive" "method[s] of stating a political opposition," "political hyperbole," and even "vituperative, abusive" language all fall short of a "true threat." *Watts*, 394 U.S. at 708; *see also United States v. Pettaway*, 297 F. Supp. 3d 137, 150 (D.D.C. 2018) ("A 'true threat' is 'a serious threat as distinguished from words as mere political argument, idle talk or jest.' Whether speech constitutes a 'true threat' outside the scope of First Amendment protection thus turns on the speaker's mental state—whether the speaker acted with intent to commit unlawful violence or place a victim in fear of the same." (citations omitted)).

This is a high bar—one that significantly constrains the meaning of "intimidate, threaten, or coerce" in §11(b). Consistent with that constraint, courts have recognized that statements about the illegality of voter fraud and warnings against illegal voting—however inflammatory—do not rise to the proscribable level of intimidation, threats, or coercion. *See Parson v. Alcorn*, 157 F. Supp. 3d 479, 498 (E.D. Va. 2016); *Pennsylvania Democratic Party v. Republican Party of Pennsylvania*, 2016 WL 6582659, at *6 (E.D. Pa. Nov. 7, 2016); *see also, e.g.*, *Willingham v. Cnty. of Albany*, 593 F. Supp. 2d 446, 463 (N.D.N.Y. 2006) (even if the party could prove that the

defendants "misinformed, defrauded, tricked, or deceived these [voters]," it would "provide no sufficient basis for a finder of fact to conclude that [the defendants] committed any acts of compulsion as required to prove intimidation, threats, or coercion"). According to the Supreme Court, efforts to discourage, weed out, and otherwise remedy fraud are "legitima[te]" because "the risk of voter fraud" is "real" and "could affect the outcome of a close election." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (lead op. of Stevens, J.).

### 2. Deficiency of the allegations

Plaintiffs' allegations about Defendants' conduct do not and could not constitute "intimidat[ion], threat[s] or coerc[ion]." For starters, many of the allegations are not about Defendants' conduct at all. Instead, Plaintiffs largely identify conduct by unidentified "volunteers and supporters" and "observers supporting President Trump." Doc. 8 ¶¶27-30, 32-34. Neither "threats of violence *by supporters of President Trump*," *id.* ¶33 (emphasis added), nor "inappropriate pressure, physical aggression, and explicit threats of violence that *Defendants' volunteers and supporters* directed toward [others]," *id.* ¶34 (emphasis added), nor actions by "Republican members of the [Wayne County, Michigan] canvassing board," *id.* ¶¶41-43, 45-47, nor "suggest[ions]" from Michael Flynn, *id.* ¶59, nor conduct by any other independent third parties are relevant to a claim of voter intimidation *against Defendants*. *See Henderson v. Obama*, 2010 WL 2931195, at *1 (D.D.C. July 22, 2010) (allegations that are "unrelated to the defendants" fail to state a claim upon which relief can be granted).

Nor are allegations that Defendants "encouraged" those third parties or that the third parties took action "due to the efforts" of Defendants, *id.* ¶¶ 17, 44, relevant. Section 11(b) prohibits "intimidat[ion], threat[s], and coerc[ion]." It does not reach attenuated encouragement of the same. Nor could it. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (explaining that the constitutional guarantee of free speech prevents the government even from "forbid[ding] or proscrib[ing]"

advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."); *id.* at 448 (finding unconstitutional a statute that punished persons who "'advocate or teach the duty, necessity, or propriety' of violence 'as a means of accomplishing industrial or political reform'").

As to Defendants' alleged conduct, Plaintiffs' allegations boil down to complaints that Defendants (1) encouraged poll watchers to watch for fraud; (2) publicly expressed dissatisfaction with the integrity of ballot counting in various states; (3) publicly and privately called on various leaders to delay certification until the election results could be recounted, audited, or otherwise verified; and (4) encouraged others to do the same. Crucially, no statement was directed at voting—it was directed at perceived fraud, illegitimacies, and irregularities. Such statements are neither unlawful nor uncommon in close elections by candidates and parties across the spectrum. They cannot support a claim for relief for several reasons.

First, all of the alleged statements fall well within the protection of the First Amendment. Indeed, there is no allegation that any Defendant conveyed "a serious expression of an intent to commit an act of unlawful violence," *Virginia*, 538 U.S. at 359, or "direct[ed] a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death," *id.* at 360. At most, Plaintiffs can say that, in their opinion, Defendants' reactions to the 2020 election were "crude" or "offensive" "method[s] of stating a political opposition." But the Supreme Court has specifically identified just that kind of speech as protected. *See Watts*, 394 U.S. at 708; *see also Arizona Democratic Party v. Arizona Republican Party*, 2016 WL 8669978, at *9 (D. Ariz. Nov. 4, 2016) ("[W]hether true or false, and whether appealing or repugnant to the listener, Mr. Trump's and his agents' statements that the election is rigged, that voter fraud is being perpetrated *en masse* …, and that his supporters should go to polls and watch to ensure a fair election, without more, simply do not prove actual or likely intimidation.").

After all, far from constituting threats or intimidation, efforts to discourage fraud and ensure election integrity are "legitima[te]" because, according to the U.S. Supreme Court, "the risk of voter fraud" is "real" and "could affect the outcome of a close election." *Crawford*, 553 U.S. at 196; *see Parson*, 157 F. Supp. 3d at 498. Plaintiffs don't have to agree. Even if they "seriously question the wisdom of stirring up supporters" or "encouraging them to … look for 'voter fraud,'" Plaintiffs fail to state a claim because "simply arguing there is voter fraud and urging people to watch out for it" does not violate §11(b). *Arizona Democratic Party*, 2016 WL 8669978, at *9; DOJ Brief, *Mi Familia Vota Education Fund v. Trump*, No. 1:20-cv-3030-RJL, Doc. 18 at 38 (arguing that describing monitors as an "'Army for Trump'" and accusing those involved with elections of "'thieving and stealing'" is protected speech and does not constitute a violation of §11(b)).

Second, the breadth and depth of similar statements and challenges by candidates and campaigns across the political spectrum underscore the danger of adopting Plaintiffs' reading of the Voting Rights Act.

- Democrat Rita Hart is currently challenging the results of an Iowa election for U.S. House. Hart filed a formal petition to contest the election and insists that she would have "won if all the votes had been counted." Marisa Schultz, *Iowa Congressional Contest Heats Up as House Takes First Step to Consider Election Challenge,* Fox News (Feb. 7, 2021), fxn.ws/3aYnLTM; *see* Ryan J. Foley, *Iowa Democrat to Challenge 6-Vote Loss in Appeal to US House*, AP News (Dec. 2, 2020), bit.ly/37f7p8h (explaining that Hart requested a recount in all 24 Iowa counties in the district and quoting retiring Democrat Rep. Dave Loebsack as saying that "[a]ll ballots must be reviewed to accurately count voter intent").

- Democrat Anthony Brindisi similarly challenged the 2020 results for the U.S. House election in New York's 22nd District. He filed court motions "to order a temporary halt to the certification" "until there could be a hand audit of all the ballots cast," and he claimed discrepancies between votes tabulated by voting machines and votes counted by hand. Patrick Lohmann, *Judge Delays NY 22nd Race Another Week After Last-Minute Brindisi Effort*, Syracuse.com (Feb. 2, 2021), bit.ly/3rNTq0V.

- After the 2016 election, "President-elect Donald Trump's 304 electoral votes weren't counted without incident …. During the course of the certification, House Democrats tried to object to electoral votes from multiple states …." Brenna Williams, *11 Times*

*VP Biden Was Interrupted During Trump's Electoral Vote Certification*, CNN (Jan. 6, 2017), cnn.it/2MZKarM.

- After the 2004 election, "California Sen. Barbara Boxer and an Ohio congresswoman forced a delay of the ceremonial count of electoral votes … in a joint session of Congress called to certify President Bush's reelection victory." Maura Reynolds, *Boxer Poses a Challenges, Briefly*, LA Times (Jan. 7, 2005), lat.ms/2N38kld.

- After the 2000 election, the "rancor lingering from the bitterly contested presidential election spilled over during a joint session of Congress," where over a dozen members "tried in vain to block the counting of Florida's 25 electoral votes" before Congress could "make official the election of … George W. Bush." Alison Mitchell, *Over Some Objections, Congress Certifies Electoral Vote*, NY Times (Jan. 7, 2001), nyti.ms/2LJJZ35.

- In this election—as in most elections—both Democrats and Republicans encouraged supporters to "fight" for their side. *See, e.g.*, David Cicilline, Twitter (Sept. 19, 2020), bit.ly/3dcjlvd ("This is the most important election in our lifetimes. Our democracy is at stake in 45 days. Let's fight like hell to save it."); Amita Kelly, *Where Voters Are:The 8 Key Places That Will Explain the 2020 Election*, NPR (Feb. 26, 2020), n.pr/2Nuuuwl ("Democrats also acknowledge that they'll have to 'recruit and fight like hell' to keep up their momentum, as Democratic Rep. Gil Cisneros put it."); *see also Pennsylvania Democratic Party*, 2016 WL 6582659, at *6 (explaining that in 2016 the Clinton campaign, no different from the Trump campaign, recruited poll watchers and volunteers to "protect the vote").

- Concerns about voter fraud and other election illegitimacy are commonly voiced by actors from both major political parties. The "accusations at times have been supercharged," but as election-professor Rick Hasen put it back in 2010, allegations of "voter fraud and voter suppression is now just part of the normal pre-election conversation." Alex Koppelman, *Election Fraud Charges Swirl Even Before Election Day*, ABC News (Oct. 28, 2010), abcn.ws/2ZaXmwj.

Questioning and challenging election processes, results, and certification doesn't violate the VRA. That the party or candidate on the receiving end of those challenges has disdain for a particular candidate or takes offense at particular rhetoric changes nothing. *See Watts*, 394 U.S. at 708; *Virginia*, 538 U.S. at 360; *Pettaway*, 297 F. Supp. 3d at 150; *see also Mi Familia Vota Education Fund v. Trump*, No. 1:20-cv-3030-RJL, Doc. 25 (Transcript of Proceedings and Decision) at 33 (suggesting the absurdity of attempting to use litigation to "essentially … enjoin the President from speaking during a presidential campaign"). The First Amendment protects all

such speech, which means, as a matter of law, Plaintiffs fail to state a claim upon which relief can be granted.

### 3.   Particular deficiency of the allegations against the RNC

Finally, even assuming that certain statements or conduct by the President or his campaign were intimidating or coercive, that conduct is not attributable to the RNC, which was not even named as a defendant in the original complaint. The RNC is not the government, and it has no right to control the Trump Campaign. Conversely, President Trump has no official voice in the RNC. In fact, under the Federal Election Campaign Act, the RNC and the Trump campaign are separate entities, separately registered with the FEC and with distinct contribution limits and reporting obligations. *See* 52 U.S.C. §30116; *id.* §30104; *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1440-43 (2014). Similarly, the RNC is not responsible for statements or actions by members of state parties—even if those state-party representatives are members of the RNC—unless they were acting under the direction, and as agents, of the RNC. *See DNC v. RNC*, 2016 WL 6584915, at *15 (D.N.J. Nov. 5, 2016); *see also DNC v. RNC*, 671 F. Supp. 2d 575, 581 & n.1 (D.N.J. 2009).

In 29 pages of allegations, the sum total of the allegations specifically about the RNC's affirmative actions are five:

(1) the RNC hosted a press conference for Trump Campaign lawyers and retweeted portions of that press conference, Doc. 8 ¶¶38, 40, 72;

(2) RNC Chairwoman Ronna McDaniel "sent a letter to the [Michigan] State Board of Canvassers urging them to delay certification to audit Wayne County results," *id.* ¶49;

(3) the RNC "produced training videos for volunteers to watch" that "list[ed] and quot[ed] various election laws and regulations," *id.* ¶¶63-65;

(4) the RNC engaged in joint fundraising and recruiting with the Trump Campaign, *id.* ¶¶67-69; and

(5) the RNC retweeted or otherwise "endorsed" the Trump Campaign's concerns about voter fraud and the need to "'fight[] hard'" to "'defend the integrity of this election,'" *id.* ¶71.

None of those allegations alone or together comes close to conduct that "intimidate[s], threaten[s], or coerce[s]" under §11(b). *See supra* 7-14. Thus, at the very least, Plaintiffs have failed to state a §11(b) claim against the RNC, and the RNC should be dismissed from this case.

## II.    Plaintiffs' Second Cause of Action Fails to State a Claim.

Count II alleges a violation of 42 U.S.C. §1985(3). *See* Doc. 8 ¶¶81-85. Section 1985(3) creates a cause of action with four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Pope v. Bond*, 641 F. Supp. 489, 498 (D.D.C. 1986); *see also Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007) (applying civil conspiracy principles to a §1985(3) claim). The statute also specifically prohibits conspiracies "to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner." 42 U.S.C. §1985(3).

Notably, §1985(3) does not itself create any substantive rights; to survive a motion to dismiss, Plaintiffs must state a violation of some other, substantive civil-rights statute or constitutional provision. *Great Am. Fed. Savings & Loan Assn. v. Novotny*, 442 U.S. 366, 372 (1979); *see United Broth. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983) ("The rights, privileges, and immunities that §1985(3) vindicates must be found elsewhere ...."); *see also Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 226 (6th Cir. 1991) ("[T]o fall within the remedial purview of §1985(3), a plaintiff must allege that he has suffered the violation of a right."); *Dekom v. Nassau Cnty.*, 595 F. App'x 12, 15 (2d Cir. 2014) ("Because plaintiffs' federal claims under §1983 all fail, the district court properly dismissed their

claim for conspiracy to violate civil rights under 42 U.S.C. §1985, which itself provides no substantive rights."). Whether the plaintiff is required to show state action "will turn on the nature of the predicate right": "[I]f the right exists as against all actors, private as well as state, then no showing of state action is required. If, on the other hand, the violation alleged is of a right protected only against state interference, such as the rights guaranteed under the Fourteenth Amendment, then the corresponding level of state action must be proven." *Operation Rescue*, 948 F.2d at 226.

As an initial matter, it is not clear what substantive civil-rights statute or constitutional provision Plaintiffs claim was violated. But whatever it is, Plaintiffs cannot prevail under §1985(3) because there is no underlying violation. If it's the constitutional right to vote under the First or Fourteenth Amendment, Defendants' conduct or speech could not have deprived any Plaintiffs of that right because Defendants were not state actors, *see Federer v. Gephardt*, 363 F.3d 754, 757-60 & n.5 (8th Cir. 2004); and, in any case, no deprivation occurred because Plaintiffs exercised their right to vote with no constraints whatsoever, *see supra* 6; *infra* 20-22. If it's §11(b) of the VRA or any other prohibition on "force, intimidation, or threats" regarding voting, Plaintiffs fail to state a claim for reasons already explained—none of Defendants' alleged conduct or speech rises to that level. *See supra* 7-16.

Plaintiffs' second cause of action must be dismissed under Rule 12(b)(6) for two additional reasons. First, Plaintiffs fail to allege a conspiracy "for the purpose of" preventing any legal vote through force, intimidation, or threat, or otherwise depriving any person of equal protection of the laws. *Pope*, 641 F. Supp. at 498. Second, Plaintiffs fail to allege that Defendants' conduct resulted in a relevant injury to person or property or an actual deprivation of a right. *Id.* For any and all of

these reasons, Plaintiffs cannot prevail on a damages claim under §1985(3), and the claim must be dismissed.[1]

### A. Plaintiffs fail to allege that the RNC was party to a conspiracy to use force, intimidation, or threat to prevent any person who was lawfully entitled to vote from doing so.

Plaintiffs fail to allege facts sufficient to establish a conspiracy that satisfies Rule 12(b)(6)'s plausibility standard. The "principal element" of a civil conspiracy is "agreement between parties 'to inflict a wrong against or injury upon another.'" *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997). An agreement between parties is not enough—it must be an agreement *to deprive a person of a right*, or, in this case, an agreement to prevent lawful votes from being cast. *Graves*, 961 F. Supp. at 320; *Pope*, 641 F. Supp. at 498 (noting that the conspiracy must be "for the purpose" of depriving a right); *see Rios v. Navarro*, 766 F. Supp. 1158, 1162 (S.D. Fla. 1991) ("A conspiracy is an agreement between two or more individuals *to deprive a person of some protected right*…." (emphasis added)); *Polidi v. Bannon*, 226 F. Supp. 3d 615, 623 (E.D. Va. 2016) (conspiracy requires "an agreement or a 'meeting of the minds' by defendants *to violate the claimant's constitutional rights*." (emphasis added) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995))). In other words, the right in question must be what the agreement is "'*aimed at'*; its impairment must be a conscious objective of the enterprise." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275 (1993) (quoting *Carpenters*, 463 U.S. at 833).

This is a "relatively stringent standard." *Simmons*, 47 F.3d at 1377. While the existence of an agreement can be express or implied, allegations of *agreement to violate rights* must be alleged

---

[1] On its face, §1985(3) allows only damages as a remedy. 42 U.S.C. §1985(3) ("the party so injured or deprived may have an action for the recovery of damages"); *see Wiggins v. Hitchens*, 853 F. Supp. 505, 513 (D.D.C. 1994) ("'To establish liability [for civil conspiracy], the plaintiff also must prove that an unlawful overt act produced an injury *and damages.*'" (emphasis added)). But even if the statute authorizes injunctive relief, that relief is now moot, *see supra* 4-7, and meritless, *see infra* 18-22.

in nonconclusory, plausible terms. *Bush*, 521 F. Supp. 2d at 69; *Arizona Democratic Party*, 2016 WL 8669978, at *10. Failure to allege "the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants' *to violate Plaintiffs' … civil or constitutional rights*," amounts to "a conclusory and purely speculative assertion that Defendants entered into a conspiracy." *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 75 (D.D.C. 2007) (emphasis added). Indeed, to survive a motion to dismiss, "there must at least be an accusation that defendants manifested *specific intent to agree to participate in a concerted effort to deprive* someone of their civil rights based on a racially discriminatory motive." *Morgan v. District of Columbia*, 550 F. Supp. 465, 470 (D.D.C. 1982) (emphasis added; citations omitted).

It is thus not enough for a plaintiff to allege a relationship, common interest, or common goal between the parties. *See Todd v. City of Natchitoches*, 238 F. Supp. 2d 793, 803 (W.D. La 2002) (explaining in the context of a related civil conspiracy statute that "[i]t is not enough for the plaintiff to allege that the … defendants merely acted in concert or with a common goal" (cleaned up)); *see also Jones v. Dalton*, 867 F. Supp. 2d 572, 585 (D.N.J. 2012) ("The mere occurrence of several meetings between Dalton and Porter do not establish a meeting of the minds."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 337 (E.D.N.Y. 2010) (that parties had a "common interest" in a property did not establish that they were acting "in concert" to constructively evict plaintiff "and to deprive her of purported constitutional rights"). The common goal must be the deprivation of a plaintiff's rights.

It is likewise insufficient to allege that "a protected right [has been] incidentally affected." *Bray*, 506 U.S. at 275. If there is no agreement to violate a right, then there is no conspiracy. Here of course, the right to vote *was not* affected. *See infra* 20-22. But even if it were, there is no allegation nor anything beyond speculation that Defendants—and specifically the RNC—entered

19

into an agreement to use force, intimidation, or threats to prevent any person from casting a lawful vote.

Plaintiffs devote six paragraphs in the amended complaint to allegations that "Defendants acted in concert" to intimidate and coerce election officials. *See* Doc. 8 ¶¶67-72. In those paragraphs, Plaintiffs point to a shared fundraising and volunteer-recruitment platform to support the Trump Campaign in the election, *id.* ¶¶67-68; a shared message of support for President Trump's election, warnings about voter fraud, and calls to defend election integrity—including retweeting each other's material, *id.* ¶71; and a press conference by the Trump Campaign's lawyers, expressing concerns about voter fraud and ballot-counting irregularities, held at RNC headquarters, *id.* ¶72. These allegations could be read to suggest an agreement to aid President Trump's reelection and to fight for election integrity and accuracy. But that is not illegal and cannot serve as the relevant agreement to establish a conspiracy. *See Bray*, 506 U.S. 275; *Graves*, 961 F. Supp. at 320. Plaintiffs do not allege any agreement to use force, intimidation, or threats to prevent any person's lawful vote from being counted. In other words, there is no suggestion that impairing the right to vote was the "'*aimed at*,'" "conscious objective of the enterprise." *Bray*, 506 U.S. at 275. Thus, as a matter of law, no conspiracy exists. *See Graves*, 961 F. Supp. at 320; *McManus*, 530 F. Supp. 2d at 75.

### B. Plaintiffs fail to allege that any of Defendants' conduct caused a deprivation or other injury related to their right to vote.

To establish a claim under §1985(3), Plaintiffs also must demonstrate that they were injured by a conspiracy to prevent them from supporting or advocating for—particularly through voting—a particular candidate. *Pope*, 641 F. Supp. at 498. This is a textual element of the statute that requires direct, proximate causation between the alleged intimidation or threats and the alleged resulting deprivation. *See* 42 U.S.C. §1985(3) ("if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, *whereby* another is injured

…the party *so* injured or deprived may have an action for the recovery of damages occasioned by *such* injury or deprivation"); *Meng v. Schwartz*, 305 F. Supp. 2d 49, 60 (D.D.C. 2004) (explaining that "the proximate cause issue" was "central to the civil conspiracy count"); *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Chambers v. Omaha Girls Club*, 629 F. Supp. 925, 942 (D. Neb. 1986) (noting the requisite "causal relationship between the alleged acts and the alleged harm").

The injury required to state a claim under §1985(3) is different from the injury required for Article III standing. *See Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133-34 & n.6 (2014). Plaintiffs have to show that the alleged intimidation or threats actually worked in some capacity. *See Cook*, 573 F.3d at 1157 ("[A]ttempted deprivation of constitutional or statutory rights is not the same as an actual deprivation. And incurring legal fees to vindicate rights does not itself establish that those rights were violated [as required by §1985(3)]." (citation omitted)); *id.* ("[The plaintiff] has brought a §1985(3) claim, and that requires proof of 'the violation of a serious constitutional right' as well as invidious intent."); *see Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 364 (E.D. Pa. 2006) (finding that, even if plaintiffs had proven a conspiracy to interfere with their civil rights by intimidating witnesses, the claim failed because there was no evidence that any witnesses were intimidated); *Dace v. Smith-Vasquez*, 658 F. Supp. 2d 865, 888 (S.D. Ill. 2009) ("To succeed on his civil conspiracy to deny constitutional rights claim, Plaintiff must demonstrate that (1) the defendants had an express or implied agreement to deprive plaintiff of his constitutional rights, *and (2) he was deprived of his constitutional rights by defendants' overt actions in furtherance of the agreement*." (emphasis added)); *Brooks v. Nacrelli*, 331 F. Supp. 1350, 1353 (E.D. Pa. 1971) ("Plaintiffs have failed to show that the challenged activities have, in fact, had an intimidating effect upon the voters of the City of Chester.").

Plaintiffs failed to allege deprivation or even interference with their right to vote or otherwise support a candidate. In fact, Plaintiffs affirmatively concede that they suffered no such deprivation. According to Plaintiffs, although Defendants' conduct was "designed to disenfranchise," "Defendants' actions were unsuccessful." Doc. 8 ¶1. The votes in question were counted. A new administration has been running the country for over a month. Defendants' conduct did not actually intimidate anyone from voting or otherwise deprive Plaintiffs of their rights to vote and support the candidate of their choice. Because Plaintiffs fail to allege an injury that was the direct and proximate result of Defendants' alleged agreement to intimidate and threaten people out of their right to vote, they fail to state a claim under §1985(3).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the amended complaint.

Dated: February 24, 2020

Respectfully submitted,

 */s/ Tyler R. Green*

Harmeet K. Dhillon
Mark P. Meuser
DHILLON LAW GROUP INC.
177 Post Street, Ste. 700
San Francisco, CA 94108
(415) 433-1700
harmeet@dhillonlaw.com
mmeuser@dhillonlaw.com

Tyler R. Green (982312)
Cameron T. Norris (VA083)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tyler@consovoymccarthy.com
cam@consovoymccarthy.com

*Counsel for Defendant Republican National Committee*

**CERTIFICATE OF SERVICE**

I certify that on February 24, 2021, I electronically filed the foregoing Motion to Dismiss

and Statement of Points and Authorities with the Clerk of the Court using the CM/ECF system,

which will send notification of such filing to all counsel and parties of record.


Dated: February 24, 2021                  /s/ Tyler R. Green
                                           Tyler R. Green
                                           *Counsel for Republican National Committee*