**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| ) | |
| MICHIGAN WELFARE RIGHTS ) | |
| ORGANIZATION, *et al.* ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | No. 1:20-cv-3388-EGS |
| v. ) | |
| ) | |
| ) | |
| DONALD J. TRUMP, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

_____

**REPUBLICAN NATIONAL COMMITTEE'S REPLY IN SUPPORT OF ITS**
**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

Pages

I.    Introduction ................................................................................................... 1

II.   Argument ....................................................................................................... 2

      a.    Plaintiffs' Actual Allegations State Almost No Connections Between this Case
            and Washington, D.C. ....................................................................... 3

      b.    The Private Interest Factors Favor Transfer ......................................... 5

            i.    No Significant Events Giving Rise to Plaintiffs' Claims Occurred in
                  Washington, D.C. ..................................................................... 5

            ii.   The Convenience of the Parties and Witnesses Strongly Supports Transfer .. 9

            iii.  Plaintiffs' Forum Choice Is Not Entitled To Deference .............................. 11

      c.    The Public Interest Factors Favor Transfer ......................................... 12

Conclusion ................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                      **Pages**

*Abusadeh v. Chertoff*,
   No. 06-2014 (CKK), 2007 WL 2111036 (D.D.C. 2007).....................................4, 5

*Accurso v. Fed. Bureau of Prisons*,
   Case No. 17-CV-02626 (APM), 2018 WL 4964501 (D.D.C. Oct. 15, 2018) ..................7, 8, 9

*Aracely, R., et al. v. Nielsen*,
   319 F. Supp. 3d 110 (D.D.C. 2018)...........................................5, 7, 8, 9, 10

*Beall v. Edwards Lifesciences LLC*,
   310 F. Supp. 3d 97 (D.D.C. 2018)..............................................12

*Bergmann v. U.S. Dept. of Transp.*,
   710 F. Supp. 2d 65 (D.D.C. 2010)...........................................3, 8, 11, 12

*Cameron v. Thornburgh*,
   983 F.2d 253 (D.C. Cir. 1993).................................................2

*Chung v. Chrysler Corp.*,
   903 F. Supp. 160 (D.D.C. 1995).................................................9

*Coltrane v. Lappin*,
   885 F. Supp. 2d 228 (D.D.C. 2012)..............................................2

*Dean v. Eli Lilly & Co.*,
   515 F. Supp. 2d 18 (D.D.C. 2007)..............................................12

*Devaughn v. Inphonic, Inc.*,
   403 F. Supp. 2d 68 (D.D.C. 2005)..............................................2, 3

*Garcia v. Acosta*,
   393 F. Supp. 3d 93 (D.D.C. 2019)...............................................9

*Hi Tech Pharmaceuticals, Inc. v. Federal Trade Commission*,
   6 F. Supp. 3d 95 (D.D.C. 2013).................................................8

*Jalloh v. Underwood*,
   300 F. Supp. 3d 151 (D.D.C. 2018)..............................................11

*Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.*,
   485 F. Supp. 2d 387 (S.D.N.Y. 2007) .........................................4, 5

*Pyrocap Int'l. Corp. v. Ford Motor Co.*,
   259 F. Supp. 2d 92 (D.D.C. 2003)...........................................8, 9, 11

*Reiffin v. Microsoft Corp.*,
    104 F. Supp. 2d 48 (D.D.C. 2000) ........................................................................................... 11

*Winmar Construction, Inc. v. JK Moving & Storage, Inc.*,
    291 F. Supp. 3d 88, 93 (D.D.C. 2018). ..................................................................................... 9

## I.      INTRODUCTION

This Court should grant the Republican National Committee's (RNC) Motion to Transfer and reject Plaintiffs' attempt to tie this case to Washington, D.C. by mischaracterizing the Amended Complaint and making brand new factual allegations in their Opposition. As discussed more fully in the RNC's memorandum in support of its Motion, a large majority of the allegations actually pled in the Amended Complaint center in the Eastern District of Michigan. *See* RNC's Mem. in Support of its Mot. to Transfer ("Mem. in Support"), Dkt. No. 21-1 at 5-6, 8-9. Further, the public and private factors heavily favor transfer because (1) Defendants' choice of forum, (2) where the claim arose, (3) the convenience of the parties, and (4) the interest in having local controversies decided at home, all support transfer. Only a single factor—Plaintiffs' choice of forum—weighs against transfer, but that factor is entitled to little deference here given the absence of any meaningful connection between this district, Plaintiffs, and Plaintiffs' claims. Against this analytical backdrop, the interests of justice and convenience of the parties all favor transfer.

Recognizing that the allegations in their Amended Complaint lack any real connection to Washington, D.C., Plaintiffs fill their Opposition with new allegations never pled in the Amended Complaint in a last-ditch effort to shift the locus of this case and defeat transfer. For example, Plaintiffs' Opposition asserts for the first time that an alleged "conspiracy was developed in and directed from the District of Columbia." Plaintiffs' Response in Opposition to Defendants' Mot. to Transfer Venue ("Opposition"), Dkt. No. 23 at 1. This allegation is found nowhere in the Amended Complaint. Plaintiffs also claim for the first time in their Opposition that the RNC participated in the conspiracy from its headquarters in Washington, D.C., (in the middle of a pandemic when the RNC's headquarters were closed for part of the time) and that former President Trump committed complained-of acts while residing in Washington, D.C. *Id.*

The Amended Complaint, however, contains no such allegations. The D.C. Circuit has cautioned that "[c]ourts in this circuit must … guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993); *see also Coltrane v. Lappin*, 885 F. Supp. 2d 228, 236 (D.D.C. 2012). The RNC's Motion is based upon the allegations actually in the Amended Complaint, and the Court should reject Plaintiffs' sham pleading-by-Opposition approach that seeks to restyle their Amended Complaint to avoid the transfer compelled by the facts actually alleged.

Plaintiffs' characterization of the RNC's Motion as an "effort to forum shop" is baseless and distracts from the real issue here—namely, that *Plaintiffs* forum-shopped by filing this lawsuit in a legally and factually inapt forum. The private and public interest factors analyzed based on the allegations in Plaintiffs' Amended Complaint strongly favor transfer. And Plaintiffs' attempt to backdoor new allegations into their Amended Complaint via their Opposition only underscores the validity of the RNC's transfer arguments. In sum, the Court should transfer this case to the Eastern District of Michigan in the interest of justice and for the convenience of the parties.

## II.    ARGUMENT

Plaintiffs never dispute that this case could have been brought in the Eastern District of Michigan. Instead, they spill much ink in their Opposition reconstruing and reconstructing the Amended Complaint in a futile effort to shift the locus of this case to Washington, D.C. *See*, *e.g.*, Opposition at 3-5. By contrast, the RNC's Motion acknowledges the nationwide character of Plaintiffs' claims, analyzes Plaintiffs' allegations as actually pled, tallies them up by location, and identifies a large list of potential witnesses and witness locations. This analysis and witness identification confirms that the interest of justice and convenience of the parties favor transfer. *See Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 72-73 (D.D.C. 2005) (finding transfer

appropriate where the events and witnesses related to a plaintiff's claims were located in the transferee forum). Plaintiffs also oddly claim that their *own* locations are essentially irrelevant for purposes of transfer analysis, suggesting that they possess little if any information regarding this case. *See* Opposition at 5-6. But Plaintiffs themselves must ultimately testify regarding their injuries and the facts relevant to their claims. And the caselaw regarding transfer places special emphasis on Plaintiffs' home forum. *See Bergmann v. U.S. Dept. of Transp.*, 710 F. Supp. 2d 65, 71-72 (D.D.C. 2010). In the end, the private and public interest factors confirm that the Court should transfer this case to the Eastern District of Michigan. *See Devaughn*, 403 F. Supp. 2d at 72-73.

a.   **Plaintiffs' Actual Allegations State Almost No Connections Between this Case and Washington, D.C.**

Seeking to bolster the tenuous connection between this lawsuit and Washington, D.C., Plaintiffs' Opposition repeatedly cites to allegations that do not appear in the Amended Complaint or are untrue or irrelevant to Plaintiffs' claims. For example, Plaintiffs allege for the first time in their Opposition that President Trump, the Trump campaign, and the RNC "coordinated their efforts" from Washington. Opposition at 2. But Plaintiffs never made this allegation in their Amended Complaint, never identify any individuals associated with the Trump campaign or RNC involved in these efforts, and never identify any specific meetings or activities related to these efforts. Plaintiffs also repeatedly point out that President Trump used to live in Washington, D.C. *See*, *e.g.*, *id.* at 2, 6, 15. True, but Plaintiffs have failed to identify any specific evidence or witnesses located there. Plaintiffs also erroneously claim that the Trump campaign "had substantial operations in Washington, D.C." *Id.* at 2. In fact, the campaign is headquartered in New York. Mem. in Support at 2. And finally, while the RNC is headquartered in Washington, D.C., very few if any relevant witnesses for the RNC reside there. *Id.* at 3-6.

Highlighting the dearth of alleged events in this district, the Opposition cites to a single paragraph in the Amended Complaint to support its threadbare assertion that Defendants' alleged conduct included "a variety of activities in and related to Washington, D.C." Opposition at 2. That paragraph concerns the alleged activities of an individual, Rudy Giuliani, who is not a party to this case. And in the same sentence, Plaintiffs cite to numerous paragraphs in their Amended Complaint that contain allegations that occurred in numerous other states, including more than fifteen paragraphs in their Amended Complaint that contain allegations related to Michigan. *Id.*

Plaintiffs' Opposition next tries to effectively amend the complaint again to add in the allegation that a number of Defendants' actions occurred "in the District of Columbia." *Id.* This amendment-via-Opposition is improper and should be rejected. *See Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 393 (S.D.N.Y. 2007) ("[P]arties cannot amend their pleadings through issues raised solely in their briefs."); *Abusadeh v. Chertoff*, No. 06-2014 (CKK), 2007 WL 2111036, at *7 (D.D.C. 2007). None of the allegations cited by Plaintiffs were actually pled as occurring in Washington, D.C., and a good number of the paragraphs in the Amended Complaint cited by Plaintiffs contain allegations that occurred elsewhere. *See*, *e.g.*, Am. Compl. ¶¶ 26-32. And even if the events underlying the allegations actually occurred in Washington, D.C., the evidence and witnesses associated with those allegations can now be found in other districts, as more fully discussed in the RNC's Motion. Mem. in Support at 3-6. And while the RNC agrees with Plaintiffs that the allegations in the Amended Complaint concern multiple states including Michigan, *see* Opposition at 3, Plaintiffs nowhere allege that Defendants' training or fundraising activities occurred in Washington, D.C. Thus the Court should reject Plaintiffs' post-hoc attempt to tie Defendants' alleged conduct to this district.

Plaintiffs point to only two events that allegedly occurred in Washington, D.C. to buttress their Opposition, but neither alleged event, assumed to be true for purposes of this analysis, cuts against transfer. First, Plaintiffs cite an alleged meeting between President Trump and Michigan lawmakers, *see* Opposition at 3, but President Trump no longer lives in Washington, D.C., and the Michigan lawmakers who allegedly attended that meeting reside in Michigan, providing further support for transfer. Second, Plaintiffs point to a press conference held by Rudy Giuliani at the RNC's headquarters in the District of Columbia, *see id.* As previously mentioned, Mr. Giuliani is not a defendant in this case, and Plaintiffs have failed to identify a single Washington, D.C.-based witness or piece of evidence related to this event that would plausibly be relevant to their claims.

In their most brazen attempt to defeat the RNC's Motion by dressing up the Amended Complaint with brand new allegations related to Washington, D.C., Plaintiffs cite to new facts contained in multiple news articles never mentioned in the Amended Complaint. *See* Opposition at 3-4, 9. Plaintiffs may move for leave to amend their complaint a second time to add these allegations if they wish, but they may not add these facts to the four corners of the Amended Complaint by simply citing them in their Opposition. *See Olde Monmouth Stock Transfer Co.*, 485 F. Supp. 2d at 393, *Abusadeh*, 2007 WL 2111036 at *7; *Aracely, R., et al. v. Nielsen*, 319 F. Supp. 3d 110, 129 (D.D.C. 2018). And these new facts certainly cannot be used to defeat the RNC's Motion.

      **b.**    **The Private Interest Factors Favor Transfer**

        **i.**    **No Significant Events Giving Rise to Plaintiffs' Claims Occurred in Washington, D.C.**

Plaintiffs contend that they have alleged that Defendants' efforts "were developed in and directed from Washington, D.C." and that Defendants ignore these allegations. Opposition at 6-7. Plaintiffs are wrong on both counts. As discussed above, Plaintiffs never alleged that

Defendants' actions were somehow centered in Washington, D.C. in their Amended Complaint, making this allegation for the first time in their Opposition. Their late attempt to bootstrap the stray Washington, D.C.-related allegations to their Amended Complaint and argue that the events giving rise to their claims are centered in Washington, D.C. is disingenuous. Indeed, Plaintiffs cite only three paragraphs from the Amended Complaint in support of their position. Opposition at 7. And Defendants have hardly ignored these sparse allegations, tallying them up and comparing them to the much larger number of Plaintiffs' own allegations that occurred in the Eastern District of Michigan. *See* Mem. in Support at 5-6 (showing that Michigan has almost ten times the number of allegations as Washington, D.C.). Regarding the allegations themselves, Defendants again point out that while President Trump may have been in Washington, D.C. during the time of his alleged statements, invitations, and phone calls, he did not and does not reside there. And few if any witnesses associated with the alleged press conference at RNC headquarters are located in Washington, D.C.

Notwithstanding Plaintiffs' recent contentions, the majority of the alleged events underlying Plaintiffs' claims occurred in Michigan. *See* Mem. in Support at 2-6, 8-10. Almost all Plaintiffs reside in Michigan, the individual Plaintiffs voted there, and the other Plaintiffs have members who voted there. *See*, *e.g.*, Am. Compl. ¶¶ 7-12. Plaintiffs contend that Defendants' actions in the days immediately following the 2020 General Election ultimately harmed Plaintiffs and their members in Michigan. *See*, *e.g.*, *id.* ¶¶ 7-12, 80, 83-85. Plaintiffs also claim that the actions of Defendants and their supporters in Michigan harmed Plaintiffs and form the basis for Plaintiffs' claims in this case. *See*, *e.g.*, *id.* ¶¶ 33, 34, 35, 38. Plaintiffs use eight paragraphs of their Amended Complaint to describe events alleged to have occurred in Wayne County, Michigan, relating to the certification of the vote in that county. *See id.* ¶¶ 41-47, 49. Plaintiffs also allege that fundraising dollars were directed to the Michigan Republican Party and that one

Defendant produced and distributed training materials in Michigan. *See id.* ¶¶ 64, 68. And Plaintiffs allege that Defendants' actions underlying Plaintiffs' claims were "directed at" Detroit. *Id.* ¶ 78. These allegations are greater in number and substance than those related to Washington, D.C. and confirm that the case should be transferred to the Eastern District of Michigan.

Plaintiffs' arguments based on *Aracely, R., et al. v. Nielsen*, 319 F. Supp. 3d 110 (D.D.C. 2018) and *Accurso v. Fed. Bureau of Prisons*, Case No. 17-CV-02626 (APM), 2018 WL 4964501 (D.D.C. Oct. 15, 2018), *see* Opposition at 7-8, are unpersuasive. In *Aracely*, the court found that plaintiffs' claims arose in Washington, D.C. because plaintiffs were "challenging the application of a purported policy that supposedly emanated from an agency located in the District of Columbia." 319 F. Supp. 3d at 129. Here, by contrast, Plaintiffs do not challenge any general governmental policy that was developed and promulgated in Washington, D.C. and then applied without discretion across the United States. Rather, Plaintiffs complain of specific actions and statements by private actors made in their own discretion apart from any government dictate. And as discussed above and in the RNC's Motion, a large majority of Plaintiffs' core allegations concern events that arose in the Eastern District of Michigan, where Plaintiffs reside and vote, and where, as discussed above, a majority of the alleged events underlying Plaintiffs' claims took place. The *Aracely* court also confirmed that allegations raised in briefing but not in a complaint cannot "sustain venue in the District when the plaintiff's core allegations" relate to activities in another venue. *Id.* The Court should thus give no weight to Plaintiffs' attempts to inject new allegations and theories into this case via their Opposition.

In *Accurso*, the court denied a transfer motion where plaintiffs challenged a national policy promulgated from Washington, D.C. and applied by local officials with zero discretion. 2018 WL 4964501, at *2. Here, by contrast, Plaintiffs challenge numerous discretionary actions by entities and individuals domiciled outside Washington, D.C., and Plaintiffs do not challenge

any policies developed in Washington, D.C. and applied nationwide. Instead, Plaintiffs' core-pled allegations involve Plaintiffs' voting activities in Michigan and other states, Defendants' activities across the country related to voting, and the actions of public and private actors outside of Washington, D.C. There is no challenge to a centrally promulgated government policy in this case and thus *Accurso* is inapposite.

To summarize, both *Aracely* and *Accurso* involved challenges to rote applications of national policies promulgated from Washington, D.C. The courts in those cases reasoned that a single private interest factor—where a claim arises—weighed against transfer because the plaintiffs challenged policies developed in Washington, D.C. by national policymakers located there. Plaintiffs in this case, by contrast, have not sued a single government entity, and instead challenge discretionary statements and actions by private actors that allegedly occurred in a number of states and impacted Plaintiffs' and their members' voting rights, according to the pleadings. Neither case is analogous to this case. Finally, even if Plaintiffs were correct regarding their reading of these cases, the most important private interest factor is the convenience of the witnesses, which weighs in favor of transfer in this case. *See Pyrocap Int'l. Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 97 (D.D.C. 2003); Mem. in Support at 9-10.

Plaintiffs also fail to distinguish this case from *Bergmann v. United States Department of Transportation*, 710 F. Supp. 2d 65 (D.D.C. 2010) and *Hi Tech Pharmaceuticals, Inc. v. Federal Trade Commission*, 6 F. Supp. 3d 95 (D.D.C. 2013). Opposition at 8-9. Both cases stand for the uncontroversial principle that transfer is appropriate where a lawsuit has almost no connection to the lawsuit's current venue. *See Bergmann*, 710 F. Supp. 2d at 73; *Hi Tech*, 6 F. Supp. 3d at 100. Suing an entity with headquarters in Washington, D.C. does not preclude the grant of a motion to transfer where, as here, a large majority of the relevant events giving rise to a plaintiffs' claims occurred outside the District of Columbia. And notwithstanding Plaintiffs' claim that they "have

alleged that the District of Columbia was the operational center of Defendants' scheme," Opposition at 8—a bare allegation that appears nowhere in their Amended Complaint— Plaintiffs' claims arose in Michigan. Finally, that Plaintiffs' allegations involve multiple states does not somehow weigh against transfer in this case. As Defendants have shown, *see* Mem. in Support at 5-6, the large majority of events giving rise to Plaintiffs' claims occurred in Michigan, which weighs in favor of transfer. *See Winmar Construction, Inc. v. JK Moving & Storage, Inc.*, 291 F. Supp. 3d 88, 93 (D.D.C. 2018).

       ii.       **The Convenience of the Parties and Witnesses Strongly Supports Transfer**

Plaintiffs contend that convenience weighs against transfer, arguing that "much of Defendants'" alleged conduct was based in Washington, D.C. *See* Opposition at 10. This argument fails because almost all of the material witnesses, including many of the Plaintiffs as well as the relevant evidence, are located in the Eastern District of Michigan. *See* Mem. in Support at 5-6, 9-10. Indeed, Plaintiffs failed to identify a single potential witness located in this district. "The most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses." *Pyrocap*, 259 F. Supp. 2d at 97 (quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995)). And Defendants have identified numerous witnesses and evidence located in the Eastern District of Michigan. Thus, the convenience factors weigh in favor of transfer.

Plaintiffs cite *Accurso*, *Aracely*, and *Garcia v. Acosta*, 393 F. Supp. 3d 93 (D.D.C. 2019), to support their argument regarding the convenience factors, *see* Opposition at 10, but those cases are inapposite. Each of those cases dealt with a single national policy promulgated from Washington, D.C. and applied without discretion in certain states. The national policymakers in those cases were identified as relevant witnesses located in Washington, D.C. Here, Plaintiffs challenge statements and actions by individuals and organizations located across the country. *See* Mem. in Support at 3-6.

Plaintiffs next "presume[]" that witnesses and evidence are located in Washington, D.C. because one Defendant is headquartered there and other Defendants "operated" from there at some point. Opposition at 11. To put it bluntly: Plaintiffs' presumption is wrong and contradictory to their own Amended Complaint. Defendants have previously explained that a majority of the relevant witnesses and evidence regarding Plaintiffs' claims are located in Michigan. *See* Mem.  in Support at 3-6. And while Plaintiffs allege for the first time in their Opposition that there was some type of systemic or coordinated effort by Defendants emanating from a COVID-shuttered 2020 Washington, that allegation is found nowhere in the Amended Complaint. It thus carries little if any weight for purposes of the relevant transfer analysis. *See Aracely*, 319 F. Supp. 3d at 129. Finally, Plaintiffs' claims that "material witnesses and evidence concerning" certain RNC activities are located in Washington, D.C. and that "there will be documents and key witnesses located at the RNC's headquarters in the District of Columbia" are pure conjecture. Opposition at 11, 13. The RNC has identified the location of numerous potential witnesses and relevant evidence in its Motion based on a fair reading of Plaintiffs' Amended Complaint, and none of these witnesses or evidence is located in Washington, D.C.

Much as they try, Plaintiffs, almost all of whom are located in Michigan, cannot minimize their own potential, relevant testimony and evidence. *See* Opposition at 12-13. Plaintiffs will need to testify and provide evidence regarding, among other things, voting-related matters, injury, Plaintiffs' interactions with Defendants, Plaintiffs' interactions with state and local officials, and diversion of resources. The individuals providing the relevant testimony and evidence are located in Michigan. Further, contrary to Plaintiffs' assertions, Defendants have confirmed that their relevant state and regional staff and volunteers reside in Michigan or nearby states and have made clear that the relevant state and local election officials also reside in Michigan. *See* Mem. in Support at 3-6. The level of specificity provided by Defendants is

perfectly adequate to support the RNC's Motion, and Plaintiffs cite no caselaw to the contrary. Further, no party to this case has identified a single witness residing in Washington, D.C. or a single piece of evidence located there. Finally, the Court should transfer the case given the fact that numerous relevant witnesses are located in Michigan and may not be subject to the subpoena power of the transferor court. *See Pyrocap*, 259 F. Supp. 2d at 98.

The availability in Michigan of the fact witnesses identified by Defendants, which is the most important factor in a Section 1404(a) analysis, strongly weighs in favor of transfer. The Court should disregard Plaintiffs' conjecture regarding the location of relevant witnesses and evidence and transfer the case for the convenience of the parties and witnesses.

### iii.    Plaintiffs' Forum Choice Is Not Entitled To Deference

Plaintiffs contend that their choice of forum is entitled to deference because one Plaintiff has members who reside in Washington, D.C. and because this lawsuit has meaningful ties there. Opposition at 14-16. But Washington, D.C. is clearly not the home forum for the NAACP, which is headquartered in Baltimore, and the Eastern District of Michigan is the home forum for the other Plaintiffs. *See Bergmann v. U.S. Dept. of Transp.*, 710 F. Supp. 2d 65, 71-72 (D.D.C. 2010) (Sullivan, J.) ("Substantially less deference is warranted, however, when a plaintiff chooses a forum other than his home forum."). Further, when "the forum preferred by the plaintiff is not his home forum," and the defendant prefers the plaintiff's home forum, then there is little reason to defer to the plaintiff's preference. *See Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 (D.D.C. 2000). And as discussed above, this litigation has almost no connection to Washington, D.C. Thus, Plaintiffs' forum choice is entitled to no deference.

Plaintiffs' reliance on *Jalloh v. Underwood*, 300 F. Supp. 3d 151 (D.D.C. 2018), is misplaced, as that case involved a sequence of events that started in Washington, D.C. and ended in Maryland. As Plaintiffs acknowledge, the defendant in *Jalloh* was first approached by police

in Washington, D.C., which the court ultimately found created meaningful ties to the District. 300 F. Supp. 3d at 156. Here, by contrast, few, if any, relevant witnesses reside in Washington, D.C. And despite Plaintiffs' late attempts to fill in the gaps in their Amended Complaint with allegations related to Washington, D.C., a large majority of the allegations and events underlying Plaintiffs' claims in the Amended Complaint took place in Michigan.

Plaintiffs' attempt to distinguish *Beall v. Edwards Lifesciences LLC*, 310 F. Supp. 3d 97 (D.D.C. 2018), *see* Opposition at 15-16, fails because both the RNC and the Trump campaign have confirmed that they have strong ties to the proposed transferee forum. *See* Mem. in Support at 3-6, 8-10. And Plaintiffs are wrong to suggest that this case is somehow distinguishable from *Dean v. Eli Lilly & Co.*, 515 F. Supp. 2d 18 (D.D.C. 2007), *see* Opposition at 16. Here, as in *Dean*, no Plaintiff resides in Washington, D.C., almost all the Plaintiffs reside in the transferee forum, and most of the relevant events occurred in that forum. Finally, Plaintiffs' attempt to distinguish *Bergmann* and other similar cases, *see* Opposition at 15 n.9, fall flat because, as more fully discussed in the RNC's moving papers, a significant number of the events giving rise to Plaintiffs' claims occurred in the proposed transferee venue. *See* Mem. in Support at 5-6, 8-10.

     c.     **The Public Interest Factors Favor Transfer**

Plaintiffs never dispute the RNC's argument that the first two public interest factors do not weigh against transfer, contending only that the third public interest factor weighs against transfer because "it is simply not true that the weight of key events occurred in the Eastern District of Michigan." Opposition at 17-18. But as discussed more fully in Defendants' Motion and in this Reply, the Amended Complaint cites actions by numerous Michiganders, including state and local officials and volunteers as well as RNC and Trump campaign representatives and volunteers, in support of its claims.

## CONCLUSION

For the foregoing reasons and those discussed in Defendant RNC's opening memorandum in support of this motion, the Court should grant the RNC's Motion.

Dated:  March 2, 2021                                  Respectfully submitted,

                                                          *s/ Harmeet K. Dhillon*
                                                     Harmeet K. Dhillon
                                                     Mark P. Meuser
                                                     Stuart S. McCommas
                                                     DHILLON LAW GROUP INC.
                                                     177 Post Street, Suite 700
                                                     San Francisco, CA 94108
                                                     (415) 433-1700
                                                     harmeet@dhillonlaw.com
                                                     mmeuser@dhillonlaw.com

                                                     Tyler R. Green (D.C. Bar #982312)
                                                     Cameron T. Norris
                                                     CONSOVOY MCCARTHY PLLC
                                                     1600 Wilson Blvd., Ste. 700
                                                     Arlington, VA 22209
                                                     (703) 243-9423
                                                     tyler@consovoymccarthy.com
                                                     cam@consovoymccarthy.com

                                                     *Attorneys for Defendant*
                                                     *Republican National Committee*

**CERTIFICATE OF SERVICE**

I certify that on March 2, 2021, I electronically filed the foregoing Memorandum of Law with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

Dated: March 2, 2021

*/s/ Harmeet K. Dhillon*
 Harmeet K. Dhillon
*Counsel for Republican National Committee*