## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
MICHIGAN WELFARE RIGHTS                             )
ORGANIZATION, *et al.*                              )
                                                    )
            *Plaintiffs*,                           )
                                                    )     No. 1:20-cv-3388-EGS
v.                                                  )
                                                    )
                                                    )
 DONALD J. TRUMP, *et al.*,                         )
                                                    )
            *Defendants*.                           )
_____           )

## REPUBLICAN NATIONAL COMMITTEE'S
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Harmeet K. Dhillon                    Tyler R. Green (982312)
Mark P. Meuser                        Cameron T. Norris (VA083)
DHILLON LAW GROUP INC.                CONSOVOY MCCARTHY PLLC
177 Post Street, Ste. 700             1600 Wilson Blvd., Ste. 700
San Francisco, CA 94108               Arlington, VA 22209
(415) 433-1700                        (703) 243-9423
harmeet@dhillonlaw.com                tyler@consovoymccarthy.com
mmeuser@dhillonlaw.com                cam@consovoymccarthy.com

*Counsel for Defendant Republican National Committee*

# TABLE OF CONTENTS

Table of Authorities.................................................................................................... iii

Introduction .................................................................................................................1

Argument.....................................................................................................................1

    I.      Plaintiffs' claim under §11(b) of the Voting Rights Act is nonjusticiable..............1

    II.     Plaintiffs' have no private right of action under §11(b) of the VRA. ....................8

    III.    Plaintiffs fail to allege facts supporting a civil conspiracy under §1985(3)..........11

    IV.    To the extent Plaintiffs allege violations of §1985(3) based on a deprivation of
            constitutional rights, they fail to allege the requisite state action.........................12

    V.     All of the allegations involving the RNC are protected under the First
            Amendment. ...................................................................................................13

Conclusion ................................................................................................................22

# TABLE OF AUTHORITIES

## **Cases**

*281 Care Comm. v. Arneson*,
   638 F.3d 621 (8th Cir. 2011) ...................................................................................14

*Acosta Orellana v. CropLife Int'l*,
   711 F. Supp. 2d 81 (D.D.C. 2010) ...........................................................................15

*Afr. Growth Corp. v. Republic of Angola*,
   2019 WL 3253367 (D.D.C. July 19, 2019) ..............................................................15

*\*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ...................................................................................................8

*Allen v. State Board of Elections*,
   393 U.S. 544 (1969) ...................................................................................................8

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983) ...................................................................................................6

*Animal Legal Defense Fund, Inc. v. Espy*,
   23 F.3d 496 (D.C. Cir. 1994).....................................................................................3

*Ashcroft v. Free Speech Coalition*,
   535 U.S. 234 (2002) .................................................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................11

*Bauer v. Marmara*,
   942 F. Supp. 2d 31 (D.D.C. 2013) .............................................................................9

*Bell v. Itawamba Cnty Sch. Bd.*,
   799 F.3d 379 (5th Cir. 2015)....................................................................................18

*Bigio v. Coca-Cola Co.*,
   675 F.3d 163 (2d Cir. 2012).....................................................................................15

*\*Brandenburg v. Ohio*,
   395 U.S. 444 (1969) .................................................................................................19

*Brown v. Ent. Merchants Ass'n*,
   564 U.S. 786 (2011) .................................................................................................18

\*Chief authority

*Buckley v. Valeo*,
424 U.S. 1 (1976) ......................................................................................................14

*Chang v. United States*,
738 F. Supp. 2d 83 (D.D.C. 2010) ...........................................................................3

*Chaplinsky v. New Hampshire*,
315 U.S. 568 (1942) ..................................................................................................18

*Chebli v. Boardman*,
2011 WL 3555843 (D.D.C. Aug. 12, 2011) ............................................................15

*Citizens United v.*
*FEC*, 558 U.S. 310 (2010) .......................................................................................14

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ................................................................................................2, 3

*Cook v. Randolph Cnty, GA*,
573 F.3d 1143 (11th Cir. 2009) ...............................................................................12

*Dunn v. Blumstein*,
405 U.S. 330 (1972) ...................................................................................................7

*Eggum v. Holbrook*,
467 F. Supp. 3d 968 (W.D. Wash. 2020) ................................................................18

*Eu v. San Francisco Cnty Democratic Cent. Comm.*,
489 U.S. 214 (1989) ..................................................................................................14

*Federer v. Gephardt*,
363 F.2d 754 (8th Cir. 2004) ...................................................................................12

*Foremost-McKesson, Inc. v. Islamic Republic of Angola*,
905 F.2d 438 (D.C. Cir. 1990) .................................................................................16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ...........................................................................................2, 3, 6

*Great Am. Fed. Savings & Loan Assn. v. Novotny*,
442 U.S. 366 (1979) ..................................................................................................12

*Griffin v. Roupas*,
385 F.3d 1128 (7th Cir. 2004) .................................................................................21

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983)................................................11

*Herron for Congress v. FEC*,
    903 F. Supp. 2d 9 (D.D.C. 2012) ........................................7, 8

*Hess v. Indiana*,
    414 U.S. 105 (1973) ............................................................20

*Hutchins v. District of Columbia*,
    188 F.3d 531 (D.C. Cir. 1999) (en banc)............................21

*Int'l Union, United Gov't Sec. Officers of Am. v. Clark*,
    704 F. Supp. 2d 54 (D.D.C. 2010) .......................................2

*Jackson v. Loews Washington Cinemas, Inc.*,
    944 A.2d 1088 (D.C. 2008)................................................15

*Jefferson v. Collins*,
    905 F. Supp. 2d 269 (D.D.C. 2012) ..............................15, 16

*Johnson v. Interstate Mgmt. Co.*,
    849 F.3d 1093 (D.C. Cir. 2017)........................................9, 10

*McKay v. Thompson*,
    226 F.3d 752 (6th Cir. 2000)..............................................10

*McManus v. District of Columbia*,
    530 F. Supp. 2d 46 (D.D.C. 2007) .....................................11

*Moore v. Ogilvie*,
    394 U.S. 814 (1969) ..............................................................7

*Moose v. Clark*,
    453 P.2d 176 (Or. 1969)......................................................21

*Morse v. Republican Party of Virginia*,
    517 U.S. 186 (1996) ........................................................8, 10

*NCBCP v. Wohl*,
    2020 WL 6305325 (S.D.N.Y. Oct. 28, 2020).....................17

*NCBCP v. Wohl*,
    2021 WL 480818 (S.D.N.Y. Jan. 12, 2021) ........................12

*Norman v. Reed*,
  502 U.S. 279 (1992) ..................................................................................6

*Nwanguma v. Trump*,
  903 F.3d 604 (6th Cir. 2018) ...........................................................19, 20

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992) ................................................................................18

*Renne v. Geary*,
  501 U.S. 312 (1991) ..................................................................................2

*Simmons v. Poe*,
  47 F.3d 1370 (4th Cir. 1995) .................................................................11

*Slinski v. Bank of Am., N.A.*,
  981 F. Supp. 2d 19 (D.D.C. 2013) .........................................................15

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ................................................................................2, 6

*Storer v. Brown*,
  415 U.S. 724 (1974) ..............................................................................6, 7

*Texas Children's Hosp. v. Burwell*,
  76 F. Supp. 3d 224 (D.D.C. 2014) .........................................................21

*Texas v. Johnson*,
  491 U.S. 397 (1989) ................................................................................14

*Town of Chester v. Laroe Ests., Inc.*,
  137 S. Ct. 1645 (2017) ..............................................................................2

*\*United States v. Alverez*,
  567 U.S. 709 (2012) ...................................................................20, 21, 22

*United States v. Hays*,
  515 U.S. 737 (1995). .................................................................................3

*United States v. Or. State Med. Soc'y*,
  343 U.S. 326 (1952) ..................................................................................2

*United States v. Skoien*,
  614 F.3d 638 (7th Cir. 2010) .................................................................18

*United States v. Stevens*,
   559 U.S. 460 (2010) ............................................................................22

*Virginia House of Delegates v. Bethune-Hill*,
   139 S. Ct. 1945 (2019) ..........................................................................4

*\*Virginia v. Black*,
   538 U.S. 343 (2003) ...........................................................14, 17, 18

*Virginians Against a Corrupt Congress v. Moran*,
   1993 WL 260710 (D.C. Cir. 1993) .........................................................5

*Watts v. United States*,
   394 U.S. 705 (1969) ............................................................................18

*West Virginia Bd. of Ed. v. Barnette*,
   319 U.S. 624 (1943) ............................................................................20

*Whitney v. California*,
   274 U.S. 357 (1927) ............................................................................20

*Youming Jin v. Ministry of State Sec.*,
   335 F. Supp. 2d 72 (D.D.C. 2004) .......................................................12

*\*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) .......................................................................8, 9

## **Statutes**

42 U.S.C. §1985(3) ....................................................................................1

52 U.S.C. §10302 .....................................................................................10

52 U.S.C. §10308(d) .................................................................................10

**<u>Other Authorities</u>**

*Building Confidence in U.S. Elections*, bit.ly/2KF3WUE.............................................................21

Fed. R. Civ. P. 15(c)(1)(C) ...............................................................................................3

Oxford English Dictionary, bit.ly/3tygylk.........................................................................17

Panetta, *The Electoral College Is Formally Voting on Monday, Finalizing Trump's Presidential Election Defeat*, Business Insider (Dec. 14, 2020), bit.ly/327ylDO ...........................................4

Stark & Cohen, *All 50 States and DC Have Now Certified Their Presidential Election Results*, CNN Politics (Dec. 9, 2020), cnn.it/2OKCU3Z.........................................................................4

*The Appointment, Rights, and Duties of Election Challengers and Poll Watchers,* Michigan Dep't of State Bureau of Elections, at 5 (Oct. 2020), bit.ly/3aXyQEA ....................................17

## INTRODUCTION

Plaintiffs cannot maintain a federal lawsuit based on the campaign speech of a political party or candidate, about a campaign that no longer exists, in the name of counting votes that have already been counted, concerning an election that has been over for months. Basic rules on justiciability, causes of action, liability, and free speech disallow it. Nothing in Plaintiffs' opposition overcomes this fundamental problem.

Nor does their opposition overcome the specific problems with each claim. In the RNC's motion to dismiss, it explained, in detail, why Plaintiffs lack standing to seek injunctive relief under §11(b) of the Voting Rights Act; lack a private cause of action to bring a §11(b) claim; failed to allege a conspiracy to support a claim under 42 U.S.C. §1985(3); failed to allege an injury under §1985(3); failed to allege (where necessary) state action to support a claim under §1985(3); and failed to identify any conduct or speech covered by §11(b) or §1985(3). In response, Plaintiffs blur everything together—as if standing to bring a §1985(3) claim saves a §11(b) claim, or §11(b)'s inclusion of "attempts" saves a defective §1985(3) claim. That approach fails. The amended complaint should be dismissed.

## ARGUMENT

**I.      Plaintiffs' claim under §11(b) of the Voting Rights Act is nonjusticiable.**

Plaintiffs devote one sentence to the RNC's standing arguments, summarily asserting that they "have established standing with allegations showing they had a personal interest at the time they filed suit." Opp. (Doc. 35) 10. Plaintiffs otherwise assume that the RNC "improperly conflate[d] … mootness and standing" and frame the relevant inquiry as one of mootness. Opp. 8. That's wrong; the RNC is not confused. Plaintiffs lack standing to bring a claim for injunctive relief under §11(b) of the Voting Rights Act. MTD (Doc. 24) 4-7. But Plaintiffs do have something of a point: this claim is also moot.

1

Because "standing is not dispensed in gross," a plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017) (cleaned up). Plaintiffs profess (at 8) to be raising "claims for declaratory judgment and for damages under the KKK Act" and "an injunction to prevent future voter intimidation" under §11(b). They don't even attempt to argue that they are seeking damages under §11(b)—offering no response to the RNC's arguments for why damages are unavailable under that provision. *See* MTD 4-5. The point is thus conceded. *See Int'l Union, United Gov't Sec. Officers of Am. v. Clark*, 704 F. Supp. 2d 54, 60 (D.D.C. 2010) ("It is a long-established policy that when a party's opposition to a motion fails to respond to arguments raised by the opposing party, a court may treat those unopposed arguments as conceded."). With respect to the §11(b) claim, then, Plaintiffs must prove standing to seek injunctive relief.

As Plaintiffs seem to concede, to bring a claim for injunctive relief under §11(b), they must establish "'a real threat of future violation or a contemporary violation of a nature likely to continue or recur.'" Opp. 8 (quoting *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952)). A "real threat" is "'immediate'"; the threatened injury must be "'certainly impending.'" *City of L.A. v. Lyons*, 461 U.S. 95, 102-03 (1983); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Plaintiffs are correct that, unlike mootness, standing is measured at the time the plaintiff commences suit against the defendant. *See Friends of the Earth*, 528 U.S. at 189. But that principle doesn't help Plaintiffs here. As the RNC explained, Plaintiffs' claim under §11(b) "'became moot before the action commenced.'" MTD 6 (quoting *Renne v. Geary*, 501 U.S. 312, 320 (1991)). In other words, Plaintiffs lack *standing* to press this claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998); *Friends of the Earth*, 528 U.S. at 191. But because mootness is largely

"'the doctrine of standing set in a time frame,'" *Friends of the Earth*, 528 U.S. at 189, Plaintiffs' claim is also moot.

### A.  Standing

Conduct that occurs before an action commences cannot establish a threat of future injury. *See Lyons*, 461 U.S. at 102-03; *Animal Legal Defense Fund, Inc. v. Espy*, 23 F.3d 496, 500 (D.C. Cir. 1994); MTD 5-7. If the event that gave rise to the injury is over, then it can't be considered "'contemporary.'" Opp. 8. And the mere fact that an event occurred is not evidence that it will occur again, let alone evidence that it will occur again in the same way to the same particular people. *See Chang v. United States*, 738 F. Supp. 2d 83, 90 (D.D.C. 2010) (Sullivan, J.). It is not even enough for a plaintiff to establish that the conduct and injury *plausibly could* occur again; allegations of future harm must be "'concrete'" and "immedia[te]"—not "vague" or "'speculative'"—and so "likely" to occur that the injury is "certainly impending." *Espy*, 23 F.3d at 500; *Friends of the Earth*, 528 U.S. at 190; *see Lyons*, 461 U.S. at 101-02 (plaintiffs must show they are "'immediately in danger of sustaining some direct injury'"). The burden is on Plaintiffs to "'clearly … allege facts demonstrating'" this kind of injury. *United States v. Hays*, 515 U.S. 737, 743 (1995).

Here, the conduct and injury alleged were complete before the lawsuit against the RNC began. Plaintiffs first filed suit against the RNC on December 21, 2020, when they added the RNC as a defendant in their amended complaint. That is the date when Plaintiffs' suit against the RNC commenced, and thus the date when standing to sue the RNC must be measured.[1] *See* Fed. R. Civ. P. 15(c)(1)(C). By that time—seven weeks after the November 2020 election—every state had

---

[1] Even if this Court were to measure standing from the date that Plaintiffs filed the original complaint, Plaintiffs would lack standing for many of the same reasons. By November 20, 2020, all voting and observation was complete. And Plaintiffs' §11(b) claims became moot shortly thereafter. *See infra* 5-8.

certified the election results, the electors in every state had met and voted, and all vote counting and tallying was over. Stark & Cohen, *All 50 States and DC Have Now Certified Their Presidential Election Results*, CNN Politics (Dec. 9, 2020), cnn.it/2OKCU3Z; *see also* Panetta, *The Electoral College Is Formally Voting on Monday, Finalizing Trump's Presidential Election Defeat*, Business Insider (Dec. 14, 2020), bit.ly/327ylDO (explaining that the electors gather and vote on December 14 and that their certification would "bring[] an end" to the "unsuccessful" efforts to challenge the election's outcome). In short, there is no way that Plaintiffs were suffering a "contemporary" injury at the time they initiated the suit against the RNC. And whatever "resources" that were "expend[ed]" or "dignitary harm" or "fear" that was allegedly felt before their votes were conclusively tallied, Opp. 35-36, is backward-looking harm that cannot support a claim for equitable relief.

Nor can Plaintiffs credibly argue that, on December 21, there was a *certainly impending* threat that the same people will again be harmed in the same way. *See* Opp. 8 (phrasing the standard as "significant likelihood of recurrence"). Plaintiffs' speculative allegations about what the RNC or President Trump might do four years from now in an election that will take place under dramatically different circumstances are insufficient. These allegations come nowhere close to carrying Plaintiffs' burden of clearly identifying a personal, immediate, real, concrete, and certainly impending injury.

Plaintiffs instead argue that, because the RNC is defending this case on the merits, "the wrongful behavior will … be repeated." Opp. 9. In Plaintiffs' view, the RNC's refusal to take a default judgment gave them standing to seek an injunction. That's obviously not the law. No defendant can waive or argue a federal court into (or out of) jurisdiction. *See Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). And standing is evaluated at the time the

lawsuit is filed—not months later, based on what appears or does not appear in a defendant's motion to dismiss.

Put simply, when an election ends, so too do legal disputes about mobilizing and counting votes in that election. The D.C. Circuit said so in *Virginians Against a Corrupt Congress v. Moran*, 1993 WL 260710, at *1 (D.C. Cir. 1993). Plaintiffs think *Moran* is irrelevant because the relief requested there "was tied to a past election." Opp. 8. But so is Plaintiffs'. And in addition to noting its inability to "grant meaningful relief with respect to [the concluded] election," the D.C. Circuit went on to explain that "the claimed continuing effects on subsequent election campaigns are insufficiently tangible, concrete and nonspeculative to save this case from mootness." *Moran*, 1993 WL 260710, at *1. That is exactly right. Because those "effects" are all Plaintiffs had when they filed this case, they lack standing to seek an injunction under §11(b).

### B. Mootness

Even if Plaintiffs initially had standing, they don't now, and their §11(b) claim has become moot. Plaintiffs understand this. In their original complaint, they used present-tense allegations, claiming that the Trump Defendants "*are* openly *seeking* to disenfranchise" and "*are pressuring*" officials. Doc. 1 ¶¶1-2 (emphasis added). In their amended complaint, they shift to the past tense, alleging that President Trump had "*sought* to overturn the result of the election" and that all such attempts had been "unsuccessful." Doc. 8 ¶1 (emphasis added). Now the 2020 election is even further in the past, the new administration has been in power for three months, and any suggestion that the election remains ongoing is unserious.

Thus, this claim is moot unless the alleged injury is capable of repetition yet evading review.[2] *Friends of the Earth*, 528 U.S. at 190-91. It is not, and Plaintiffs' two attempts to argue otherwise are unavailing. First, Plaintiffs' suggestion (at 1, 9) that this claim is capable of repetition yet evading review because Defendants are defending the merits remains unpersuasive. *See supra* 4. Second, Plaintiffs' string of four cases (at 9 n.6) applying the exception to mootness for election-related challenges are all distinguishable for one basic reason: those cases involve challenges to state laws—regulating ballot access and candidate and voter qualifications—that would apply in future elections absent review. Consider them in turn.

*Norman v. Reed* involved a challenge to the constitutionality of a state law that had excluded a party from the ballot. 502 U.S. 279, 282-88 (1992). Without review, the law would remain on the books and be applied again. And "of even greater significance," in the Court's view, was the fact that the party's ballot access in the now-concluded election would alter that party's status and ballot-access requirements in future elections. *Id.* at 288.

*Anderson v. Celebrezze* involved a statutory filing deadline for independent candidates to appear on the ballot. 460 U.S. 780, 782 (1983). In holding that the case was not moot, the Court did not explain its decision but instead simply cited *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974). *Anderson*, 460 U.S. at 784 n.3. Tellingly, *Storer* focused on the ongoing effects of election *statutes*:

> [t]he 'capable of repetition, yet evading review' doctrine, in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks. The *construction of the statute, and understanding of its operation, and possible constitutional limits on its application,* will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held.

---

[2] Notably, "[s]tanding admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Friends of the Earth*, 528 U.S. at 191 (citing *Steel Co.*, 523 U.S. at 109).

415 U.S.at 737 n.8 (emphasis added). In short, the Court explained that the "effects" of the statute on future candidates "*will* persist" so long as it remains on the books. *Id.* (emphasis added).

*Dunn v. Blumstein* involved a challenge to Tennessee's durational residency requirements. 405 U.S. 330, 331 (1972). The Court explained that even though the 1970 election was over, "the problem to voters posed by the Tennessee residence requirements is 'capable of repetition, yet evading review'" because "the laws in question remain on the books." *Id.* at 333 n.2.

Finally, *Moore v. Ogilvie* involved a challenge to an Illinois law that set a signature threshold and county-distribution requirement for independent candidates to be certified. 394 U.S. 814, 815 (1969). The Court held that even though the 1968 election was over, "the burden … allowed to be placed on the nomination of candidates for statewide offices remains and controls future elections, as long as Illinois maintains her present system as she had done since 1935." *Id.* at 816. Thus, "[t]he problem" was "'capable of repetition, yet evading review.'" *Id.*

Plaintiffs' claim, by contrast, is not a challenge to the constitutionality of a state law on the books. None of Plaintiffs' cases involved requests to enjoin past conduct or speech. *See Herron for Congress v. FEC*, 903 F. Supp. 2d 9, 14-15 (D.D.C. 2012) (collecting cases and distinguishing between challenges to laws that "remain on the books" and "one-time event[s]"). This case is thus much more analogous to *Herron*, where a candidate for Congress claimed that his opponent had violated the law by failing to make certain disclosures. *Id.* at 11. The election had been over for two years, but the candidate claimed to be "*considering* a run for office in the future." *Id.* at 14 (emphasis in original). Because it had "no power to alter the past," the court explained that the candidate would have to show "the controversy is 'capable of repetition, yet evading review'" to avoid a finding that the case was moot. *Id.* at 13-14. The candidate failed to do so for two reasons. First, mere "*consider*[*ation of*] a run for office in the future" is too speculative. *Id.* at 14. Second,

"[e]ven if [the candidate] were to run for office again, he must still show a demonstrable probability that he will be 'subjected to the *same action* again.'" *Id.* (emphasis in original). The candidate claimed he would be subjected to the same harm in the future because the FEC would act as it had acted in the past. *Id.* at 15. But the court rejected that are argument as "at best" a "'theoretical possibility'" that "does not create a justiciable controversy." *Id.*

So too here. Unsubstantiated notions that a former President might possibly run for office again and that his campaign might possibly do and say the exact same things in a future election do not satisfy the capable-of-repetition exception. Plaintiffs' §11(b) claim is moot.

## II.    Plaintiffs' have no private right of action under §11(b) of the VRA.

The lack of a private right of action independently dooms Plaintiffs' §11(b) claim. An implied private right of action for these claims is hardly "well established." *Cf.* Opp. 17. Plaintiffs cite only two district-court decisions that addressed and found a private right of action, and both are of recent vintage—decided within the last year. *See* Opp. 17. Both decisions also stand in stark contrast to the text of §11(b) and the clear approach taken by the Supreme Court and the D.C. Circuit to implied rights of action. *See* MTD 2-4.

Plaintiffs fall back on *Allen v. State Board of Elections*, 393 U.S. 544 (1969), and *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996). Opp. 17-19. But those cases no longer describe how courts must determine whether a statute grants a private right of action. The RNC explained in its opening brief that *Allen* is part of a bygone era where courts found implied causes of action when Congress had provided none. MTD 3-4. *Allen*'s method of reasoning—separate from its direct holding that section 5 of the VRA includes a private right of action—has lost all force. MTD 2-4; *see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855-56 (2017); *Alexander v. Sandoval*, 532 U.S. 275, 287-90 (2001). It is "a prime example of the [Supreme] Court's 'previous willingness to imply a cause of action where Congress has not provided one,' from which the [Supreme] Court has

emphatically 'retreated,'" and this Court cannot return for "'one last drink.'" *Bauer v. Marmara*, 942 F. Supp. 2d 31, 41 n.6 (D.D.C. 2013).

   *Morse* falls into the same category, as the D.C. Circuit has recognized. True, *Morse* found a private right of action in Section 10 in 1996, after the transition away from *Allen* had begun. *See* Opp. 19. But it was before the definitive shift in *Sandoval* and later cases, and long before the Court's most recent affirmations of its view. Contrary to Plaintiffs' suggestion, the D.C. Circuit has not cited *Morse* as a basis to revive the old regime. Opp. 19 (quoting *Johnson v. Interstate Mgmt. Co.*, 849 F.3d 1093, 1097 (D.C. Cir. 2017)). Exactly the opposite. The D.C. Circuit explained that the "high-water mark for implied causes of action came in the period before the Supreme Court's 1975 decision in *Cort v. Ash*," but that "since *Cort v. Ash*, the Supreme Court has been very hostile to implied causes of action." *Johnson*, 849 F.3d at 1097. It then string cited ten Supreme Court cases to support that proposition, followed by a "cf." citation to *Morse*—identifying it as an aberration—before concluding that "implied causes of action are 'isolated, remote possibilities' under Supreme Court case law." *Id.*

   Plaintiffs accurately note that "statutory intent remains the guiding principle in the implied right of action analysis," Opp. 19, but they ignore the law on how to determine that intent. *See* MTD 3. Statutory intent may be the test, but statutory text is the lodestar. *See Ziglar*, 137 S. Ct. at 1855-56 (confining the search for statutory intent to "the statute itself"). And Plaintiffs don't argue that the text of §11(b) creates a private right of action, because they can't. Nor is there anything in the rest of the statute that purports to create a private right of action for §11(b). Indeed, the very "reason for the Supreme Court's hostility to implied causes of action" is that "[t]o recognize an implied cause of action, [a court must] conclude that Congress *intended* to provide a cause of

action even though Congress did not expressly say as much in the text of the statute. Especially as statutes are interpreted these days, that is a high bar to clear." *Johnson*, 849 F.3d at 1097-98.

The fact that Section 3 of the VRA generally recognizes that some claims can be brought by the Attorney General *or* an aggrieved person, Opp. 18 (citing 52 U.S.C. §10302), does not mean that private parties can sue under *any* section of the VRA. "The most logical deduction from the inclusion of 'aggrieved person' in [Section 3] is that Congress meant to address those cases brought pursuant to the private right of action that this Court had recognized as of 1975, *i.e.*, suits under §5, as well as any rights of action that [the Court] might recognize in the future." *Morse*, 517 U.S. at 289 (Thomas, J., dissenting); *see also id.* (explaining that the same holds true for attorney's fees in Section 14). Far more telling is Section 12, which explicitly references Section 11 and gives the Attorney General alone the power to "institute … an action for preventative relief." 52 U.S.C. §10308(d); *cf. McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000) ("Section 1971 is enforceable by the Attorney General, not by private citizens.").

Finally, the RNC never suggested that the direct holdings of *Allen* or other similar cases had been overruled, *compare* Opp. 20 *with* MTD 3-4 ("Private rights of action identified under the earlier interpretive regime are limited to their specific facts …."), or that it wouldn't be "'anomalous'" to allow private lawsuits under some provisions of the VRA but not others, *compare* Opp. 18-19 *with* MTD 4. But that is the exact kind of anomaly that the Supreme Court has said is preferrable to perpetuating the *Allen-* or *Morse*-like approach to recognizing implied causes of action. *See* MTD 4 (explaining the apparent anomaly of, and cases discussed within, *Sandoval*). A few rogue district courts and some outdated caselaw provide no basis to depart from this clear and binding direction from the Supreme Court and the D.C. Circuit. Even if Plaintiffs' §11(b) claim were justiciable, it should be dismissed for lack of a private right of action.

III.    **Plaintiffs fail to allege facts supporting a civil conspiracy under §1985(3).**

None of Plaintiffs' factual allegations demonstrate an agreement between the RNC and anyone else to prevent people from voting or exercising any other rights. MTD 18-20. And Plaintiffs concede that no one was actually prevented from voting or deprived of a right. MTD 20-22. Their failure to allege a relevant agreement or a relevant injury provides two independent grounds to dismiss their §1985(3) claim.

*Agreement*: An agreement to deprive a person of a right can be implicit, Opp. 35 nn.21-22, but it cannot be inferred from conclusory allegations or speculation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In other words, an agreement to do something legal— say, win an election or ensure that legal votes are counted—does not give rise to an inference that there is also an agreement to do something illegal. *See* MTD 17-18 (explaining that the agreement must be "'aimed at'" and "for the purpose of" depriving rights); MTD 19 (collecting cases holding that legal relationships, common interests, and common goals do not demonstrate an agreement to form a conspiracy to do something illegal). Plaintiffs' suggestion that every candidate and every political party—by virtue of their mere nature—have such agreements flies in the face of the "stringent" and well-established standard for alleging a civil conspiracy. *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995); *McManus v. Dist. of Columbia*, 530 F. Supp. 2d 46, 75 (D.D.C. 2007).[3]

---

[3] That the RNC and the Trump Defendants both participated in the same election does not plausibly suggest the existence of any illicit agreement. *Cf.* Opp. 7, 35 (claiming temporal proximity of events established an agreement). Plaintiffs' cases are far afield, involving crimes and a definitive "scene" that made it reasonable to infer the parties were working together. *See Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983) ("The easiest situation in which to draw the inference of agreement is where the parties are on the scene together at the same time performing acts in support of one another[; *e.g.*,] two armed persons travel together to a building, both break in, and both shoot when confronted by police … [or] driving the getaway vehicle and breaking in."); *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 82 (D.D.C. 2004) (quoting *Halberstam*).

*Injury*: Because Plaintiffs have conceded that no one was actually deprived of their right to vote, they assert—in a single sentence—that §1985(3) does not "require[] that Defendants achieved their ultimate goal." Opp. 35. But their only authority for this point—*NCBCP v. Wohl*—addresses *standing*. *See* 2021 WL 480818, *10 (S.D.N.Y. Jan. 12, 2021). A theory of injury can be enough for purposes of Article III, but not enough to state a claim when the relevant statute requires a greater showing of injury and proximate causation. Section 1985(3) does that. MTD 20-22. Under §1985(3), "attempted deprivation of constitutional or statutory rights is not the same as an actual deprivation." *Cook v. Randolph Cnty, GA*, 573 F.3d 1143, 1157 (11th Cir. 2009). The cause of action "requires proof" of a violated right. *Id.*; *see* MTD 21. Plaintiffs failed to allege that such proof exists. In fact, they affirmatively concede that every alleged attempt to "prevent" voting or "deprive" rights was unsuccessful. Doc. 8 ¶1; Opp. 35.

IV.   **To the extent Plaintiffs allege violations of §1985(3) based on a deprivation of constitutional rights, they fail to allege the requisite state action.**

Plaintiffs overly complicate the meaning and implications of the various prohibitions in §1985(3). Opp. 36-44. Two points are key.

First, contrary to Plaintiffs' assertion, §1985(3) does not create *any* substantive rights. *Great Am. Fed. Savings & Loan Assn. v. Novotny*, 442 U.S. 366, 372 (1979); *see* MTD 16-17. That holds true for all of its clauses, including the Support and Advocacy Clause. *See Federer v. Gephardt*, 363 F.2d 754, 760 (8th Cir. 2004) (explaining that "the substantive federal right that Federer wishes to vindicate [under the Support and Advocacy Clause] is a First Amendment right" and noting that "Federer's claim based on the support and advocacy provision of §1985(3) was properly dismissed" for failure to allege state action). Regardless, Plaintiffs acknowledge that at least part of their §1985(3) claim requires them to prove an independent violation and that, in an

12

effort to do so, they are invoking constitutional provisions that require state action. Opp. 40, 42-43.[4]

Second, Plaintiffs fail to allege the requisite state action. MTD 17. While state action can sometimes be established when "'a State's conduct is … arrogated,'" Opp. 43—that is, where private conduct has "'arrest[ed] or imped[ed] the State's power to protect or secure equal protection of the laws,'" Opp. 43—that didn't happen here. According to the amended complaint, Defendants' alleged efforts were "unsuccessful," and so no one was deprived of their right to vote or equal protection under the Fourteenth Amendment. Doc. 8 ¶1. Requiring state action in this context does not "render the Deprivation Clause and the Hindrance Clause nullities and absurdities." Opp. 43. It ensures that Plaintiffs actually suffer a deprivation. *See supra* 12. Thus, to the extent Plaintiffs purport to be invoking the Constitution, their §1985(3) claim fails because they do not allege the requisite state action.

## V.   All of the allegations involving the RNC are protected under the First Amendment.

Both of Plaintiffs' claims fail for the additional, and independent, reason that none of the conduct or speech alleged against the RNC can be restricted by the relevant statutes. MTD 7-16. Plaintiffs' initial response (at 20-24) misses the point. Whatever "'subtler … forms of intimidation'" §11(b) or §1985(3) reaches, Opp. 21, it can't reach speech or expressive conduct that is protected by the First Amendment. Statutes must conform to the Constitution, not the other way around. Hence only the "constitutionally proscribable sense of the word[s]" in the statutes matter. *Virginia v. Black*, 538 U.S. 343, 360 (2003).

---

[4] Further, the language of the Support and Advocacy Clause closely tracks the language of §11(b) of the VRA. Plaintiffs' failure to allege conduct supporting a claim under §11(b) would thus doom their §1985(3) challenge as well. *See infra* 13-22; *see also supra* 12 (no relevant injury).

The "bedrock principle" of the First Amendment is that the government cannot restrict "the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). And this protection for offensive or disagreeable ideas is even greater in the context of political speech. *Citizens United v. FEC*, 558 U.S. 310, 339 (2010); *Buckley v. Valeo*, 424 U.S. 1, 39 (1976); *see Eu v. San Francisco Cnty Democratic Cent. Comm.*, 489 U.S. 214, 228 (1989) (the government cannot "enhanc[e] the ability of its citizenry to make wise decisions by restricting the flow of information to them"). Indeed, "[t]he breadth of the protection afforded to political speech under the First Amendment is difficult to overstate." *281 Care Comm. v. Arneson*, 638 F.3d 621, 635 n.3 (8th Cir. 2011). None of the RNC's alleged speech or expressive conduct falls within any of the narrow exceptions to that blanket protection.

## A. Relevant Conduct

For purposes of the claims against the RNC, the only relevant allegations are those attributed directly to the RNC. As explained, Plaintiffs fail to allege a conspiracy between the RNC and the Trump Defendants and thus cannot attribute the Trump Defendants' speech or actions to the RNC. *See supra* 11-12. And neither can Plaintiffs attribute to the RNC speech or conduct by state parties or campaign "volunteers and supporters."

Plaintiffs fail to allege—in even conclusory fashion—an agency relationship between the RNC and state parties. *See* MTD 15. They cite only three paragraphs of the complaint in arguing that they pleaded such a relationship. Opp. 33 (citing Doc. 8 ¶¶2, 49, 56). In two of those paragraphs, Plaintiffs allege only that the RNC "oversees" state parties. Doc. 8 ¶2 ("the RNC—and state Republican parties whose activities it oversees—endorsed and amplified"); Doc. 8 ¶56 ("On information and belief, the RNC oversees the activities of state Republican parties"). And the third allegation merely claims that "the chairman of the Michigan Republican Party, Laura Cox is a member of the RNC." Doc. 8 ¶49.

As an initial matter neither membership nor oversight establishes an agency relationship. The existence of an agency relationship requires the would-be agent to be subject to the principal's control. *Jackson v. Loews Washington Cinemas, Inc.*, 944 A.2d 1088, 1097 (D.C. 2008). The relevant factors of control in turn include "'(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer.'" *Id.*; *see also Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 110 (D.D.C. 2010) ("Of these factors, the determinative factor is usually the right to control an employee in the performance of a task and in its result." (cleaned up; collecting cases and sources)). Neither membership nor oversight checks any one of these boxes.

But even assuming that such allegations somehow translate to conclusory allegations of "control," the amended complaint fails to allege *any* facts supporting such a conclusion. "The existence of an agency relationship is a legal conclusion, which the court need not accept unless it is supported by factual allegations." *Slinski v. Bank of Am., N.A.*, 981 F. Supp. 2d 19, 31 (D.D.C. 2013). When there are no facts to support the legal allegation, courts cannot infer that an agency relationship exists. *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175-76 (2d Cir. 2012) ("Plaintiffs argue that Defendants controlled the actions of CCE. As the District Court correctly noted, however, the Amended Complaint does not contain sufficient factual allegations to give rise to an inference of control."); *accord Jefferson v. Collins*, 905 F. Supp. 2d 269, 285 (D.D.C. 2012); *Chebli v. Boardman*, 2011 WL 3555843, at *2 (D.D.C. Aug. 12, 2011); *Afr. Growth Corp. v. Republic of Angola*, 2019 WL 3253367, at *8 (D.D.C. July 19, 2019). In other words, there can be no factual dispute, Opp. 33-34, when the Plaintiff fails to allege any facts. *See Foremost-McKesson, Inc. v. Islamic Republic of Angola*, 905 F.2d 438, 447 (D.C. Cir. 1990) ("[T]he *plaintiff*

15

bears the burden of asserting facts sufficient to withstand a motion to dismiss regarding the agency relationship."); *Jefferson*, 905 F. Supp. 2d at 285 ("[A] plaintiff must plead facts that plausibly support an inference that an agency relationship existed in order to survive a Rule 12(b)(6) motion."). Plaintiffs have failed to demonstrate an agency relationship, so none of the allegations about state parties can be attributed to the RNC.

For similar reasons, the amended complaint does not support an inference that any of the "volunteers and supporters" responsible for the alleged conduct were acting as agents of the RNC. The complaint regularly conflates "volunteers and supporters" when making generalized allegations that Defendants (presumably meant to include the RNC) "encouraged" individuals to "interfere with vote counts." *E.g.*, Doc. 8 ¶¶ 17, 22, 25, 78, 80. That the RNC "produced training videos" for certain volunteers does not give rise to an inference that every Trump supporter everywhere was acting under the authority and control of the RNC. Doc. 8 ¶¶ 63-65. And the remaining insinuation that the RNC has an agency relationship with everyone who read a tweet or listened to a press conference cannot be serious.

The question is thus whether the five meager and already addressed affirmative allegations against the RNC, *see* MTD 15-16 (citing allegations about the press conference, the Chairwoman's letter, the training videos, joint fundraising, and retweets), can sustain a claim under either §11(b) or §1985(3). They cannot because all of that activity is protected by the First Amendment.[5]

---

[5] Separately, Plaintiffs' fixation on the fact that a training video encouraged "volunteer poll watchers to wear 'Official Poll Watcher' badges" is a red herring. Opp. 6 (citing Doc. 8 ¶¶63-66); *see* Opp. 32-33. The seventeen-minute Georgia training video—the only video identified by Plaintiffs, Doc. 8 ¶63 & n.67—meticulously walks through the relevant state election laws and provides examples to help illustrate the law. Indeed, the video tells volunteer poll watchers to wear "Official 'Poll Watcher'" badges solely because Georgia law *requires* poll watchers to wear such badges. *See* Ga. Code § 21-2-408(d) ("The superintendent shall furnish a badge to each poll watcher bearing the words 'Official Poll Watcher,' the name of the poll watcher, the primary or

### B.  True Threats

Plaintiffs contend that "recent authority makes clear" that "true threats" constitute a much broader category of unprotected speech than threats to inflict violent harm—one that includes "[a]ctions that inspire fear of … derogatory remarks" and fear of "even surveillance." Opp. 26. But the "authority" they cite is limited to a single decision from the Southern District of New York. Opp. 26-28 (citing *NCBCP v. Wohl*, 2020 WL 6305325 (S.D.N.Y. Oct. 28, 2020)). And the *Wohl* decision, in turn, is based on a strained reading of a single word in the Supreme Court's decision in *Virginia v. Black*. *See* 2020 WL 6305325, at *15. According to *Wohl*, although the Supreme Court held that true threats "'*encompass* … expression[s] of an intent to commit an act of unlawful violence,'" it "did not specify whether *only* threats of unlawful violence are true threats." *Id.* (second emphasis added; quoting *Virginia*, 538 U.S. at 359). Thus, the court felt free to expand the Supreme Court's controlling definition of "true threats." Plaintiffs would have this Court do the same. It should not for several reasons.

First, even if this Court focused myopically on the Supreme Court's use of the word "encompass," that word resolves nothing. "Encompass" has both restrictive and nonrestrictive definitions. *See Encompass*, Oxford English Dictionary, bit.ly/3tygylk (defining "encompass" to mean "[i]nclude comprehensively" and "have or hold within"); *e.g.*, *Bell v. Itawamba Cnty Sch. Bd.*, 799 F.3d 379, 434-35 (5th Cir. 2015) (en banc) (Prado, J., dissenting) (reading *Virginia v.*

---

election in which the poll watcher shall serve, and either the precinct or tabulating center in which the poll watcher shall serve or a statement that such poll watcher is a state-wide poll watcher. The poll watcher shall wear such badge at all times while serving as a poll watcher."); *see also, e.g.*, *The Appointment, Rights, and Duties of Election Challengers and Poll Watchers,* Michigan Dep't of State Bureau of Elections, at 5 (Oct. 2020), bit.ly/3aXyQEA (recommending that an election challenger "wear a badge with the words "ELECTION CHALLENGER," so long as the badge does not "refer to the challenger's political party or organization"). Accurately reciting the law does not violate section §11(b) or §1985(3).

*Black* to say "'[t]rue threats' encompass *only* those statements" discussed by the Supreme Court (emphasis added; brackets omitted)).

Second, the Court should not ignore the reasoning in *Virginia v. Black* in favor of the debatable meaning of a single word. Supreme Court opinions "must not be confused with statutes"; an "opinion is not a comprehensive code" and it is not "profitable to parse" the precise language of an opinion as if it were. *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010). Even more telling than the Court's wording of the definition of "true threats" is its explanation that "a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." *Virginia*, 538 U.S. at 360 (cleaned up) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)). That kind of conduct has nothing to do with this case.

Finally, the Supreme Court has never recognized a broader understanding of "true threats," which is consistent with its frequent reminders that the categories of speech excluded from protection are "well-defined and narrowly limited." *See id.* at 358 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)). Instead, it has held that "new categories of unprotected speech may not be added to the list [of proscribable categories of speech] by a legislature that concludes certain speech is too harmful to be tolerated." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 791 (2011). Likewise, neither the Southern District of New York nor this Court has the authority to alter the categories of unprotected speech to try to reach what it believes to be "crude," or "offensive," or "vituperative," or "abusive" speech or expression. *Watts v. United States*, 394 U.S. 705, 708 (1969); *see Eggum v. Holbrook*, 467 F. Supp. 3d 968, 989-90 (W.D. Wash. 2020) (holding unconstitutional the application of a statute that punished "intent to subject … to ridicule" and "non-bodily threat intimidation against public officials that is intended to make the officials

18

change their decisions" because a decision to the contrary could be understood as creating "a new category of proscribable speech," and in any event, "was contrary to clearly established Supreme Court precedent").

None of the RNC's conduct rises to the level of "true threats" as defined by the Supreme Court. MTD 10-16. Thus, whatever intimidation, threats, and coercion mean in the context of §11(b) or §1985(3), they do not cover the alleged conduct because the First Amendment wouldn't allow it. *See* MTD 7-16.

### C.  Incitement

Plaintiffs also argue that the First Amendment "does not protect" Defendants because "their speech was directed to inciting or producing imminent lawless action and did in fact incite such action." Opp. 28. But there is a disconnect between that assertion and the amended complaint. Speech that rises to the level of "incitement" must clear a very high threshold. Even "advocacy of the use of force or of law violation" or of "'the duty, necessity, or propriety' of violence" falls short of that threshold. *Brandenburg v. Ohio*, 395 U.S. 444, 447-48 (1969). Indeed, in *Brandenburg*, the Supreme Court overturned the conviction of a member of the Ku Klux Klan who had been charged under a statute that prohibited advocacy of "crime, sabotage, violence, [and] other methods of terrorism." *Id.* at 444-45, 448. Such a restriction on speech, according to the Court, would "impermissibly intrude[] upon the freedoms guaranteed by the First and Fourteenth Amendments" and "sweep[] within [their] condemnation speech which our Constitution has immunized from governmental control." *Id.* at 448.

Put differently, the "mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002); *Nwanguma v. Trump*, 903 F.3d 604, 610 (6th Cir. 2018). "What is required, to forfeit constitutional protection," is speech that (1) "specifically advocates for listeners to take unlawful action" and

(2) is likely to produce "*imminent* disorder"—not merely "illegal action at some indefinite future time." *Nwanguma*, 903 F.3d at 610 (cleaned up); *Hess v. Indiana*, 414 U.S. 105, 108-09 (1973) (emphasis added).

Yet the amended complaint is full of allegations that Defendants "encouraged" volunteers and supporters to act in a way that violated §11(b). Doc. 8 ¶¶17, 25, 32, 62, 65, 66, 78. It then cites conduct that occurred days and weeks later or at an unspecified time. *See* Opp. 29-30 (citing Doc. ¶¶32-33); *see* Doc. 8 ¶32 nn.14-15 (the cited source discusses statements "in recent weeks"); *id.*¶32 n.16 (similar); *id.*¶33 nn.17-18 (similar). Plaintiffs' attempt to frame this as incitement fails to appreciate the gravity of the doctrine.

Moreover, it is apparent that Plaintiffs are most concerned with allegations against the Trump Defendants. Opp. 29-30. When it comes to the RNC, Plaintiffs once again fall back on press conferences, retweets, and expressed frustration with the handling and outcome of the 2020 election. Opp. 30.[6] There is no serious argument that such speech contained *any* specific advocacy for lawlessness or violence or that it was at all likely to produce *immediate* incitement to riot. If a few tweets about alleged election fraud or irregularities constitute incitement, then we have given up the "vast realm of free speech and thought always protected in our tradition," *United States v. Alverez*, 567 U.S. 709, 718 (2012) (plurality opinion), in favor of "orthodox[y]" and "enforced silence," *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943); *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring).

### D.  False Statements

In a footnote, Plaintiffs argue that Defendants' statements also fall into the supposedly unprotected speech category of false statements. Opp. 27 n.15. As an initial matter, courts regularly

---

[6] Plaintiffs once again try to tag the RNC with speech by a state party and, via a conspiracy theory, the Trump Defendants. Opp. 30-31. That effort fails. *See supra* 11-12, 14-16.

decline to address "cursory arguments made only in a footnote," and the Court should do that here. *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc); *Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 242 n.6 (D.D.C. 2014) (Sullivan, J.) ("[T]he Court declines to credit an unsupported, cursory argument made only in a footnote."). But regardless, Plaintiffs' "false statements" argument has no merit.

First, statements expressing the view that there were fraudulent votes counted in the 2020 election simply cannot be considered "false" in any relevant sense. *See Moose v. Clark*, 453 P.2d 176, 177 (Or. 1969) ("A statement is not false if any reasonable inference that can be draw from the statement is a either a correct inference of fact or matter of opinion."); *Building Confidence in U.S. Elections* 46, bit.ly/2KF3WUE (absentee ballot and voter registration fraud are "difficult to detect"); *Griffin v. Roupas*, 385 F.3d 1128, 1130-31 (7th Cir. 2004) (explaining that "[v]oting fraud is a serious problem in U.S. elections" and that it can go undetected). Relatedly, Plaintiffs' footnote cites no allegations at all—let alone any allegations that would support the legal conclusion that any Defendant spoke with reckless disregard for the truth. *See* Opp. 27 n.15.

More importantly, Plaintiffs once again fail to appreciate the magnitude of the protection provided by the First Amendment. The RNC's speech *can't* fall into the unprotected category of false statements—again, assuming *arguendo* that they were false at all—because there is no such category. *See Alvarez*, 567 U.S. at 718-19, 722 (the Supreme Court "has never endorsed the categorical rule … that false statements receive no First Amendment protection," and it has gone out of its way to clarify cases that could be read to suggest otherwise). If Plaintiffs think Defendants were wrong, "[t]he remedy for speech that is false is speech that is true." *Id.* at 727. The Court has been unmoved by arguments about "social costs and benefits," rejecting "as 'startling and dangerous'" a First Amendment test that would balance the right to free expression against such

considerations. *Id.* at 717 (quoting *United States v. Stevens*, 559 U.S. 460, 470 (2010)). "Our constitutional tradition stands against the idea that we need Oceania's Ministry of Truth." *Id.* at. 723.

## CONCLUSION

For all these reasons, the Court should dismiss the amended complaint.


Dated: April 21, 2021                                Respectfully submitted,

                                                     _/s/ Tyler R. Green____

Harmeet K. Dhillon                                   Tyler R. Green (982312)
Mark P. Meuser                                       Cameron T. Norris (VA083)
DHILLON LAW GROUP INC.                               CONSOVOY MCCARTHY PLLC
177 Post Street, Ste. 700                            1600 Wilson Blvd., Ste. 700
San Francisco, CA 94108                              Arlington, VA 22209
(415) 433-1700                                       (703) 243-9423
harmeet@dhillonlaw.com                               tyler@consovoymccarthy.com
mmeuser@dhillonlaw.com                               cam@consovoymccarthy.com


*Counsel for Defendant Republican National Committee*

**CERTIFICATE OF SERVICE**

I certify that on April 21, 2021, I electronically filed this reply with the Clerk of the Court using the CM/ECF system, which will notify all counsel and parties of record.

Dated: April 21, 2021                              _/s/ Tyler R. Green_____