**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MICHIGAN WELFARE RIGHTS ORGANIZATION, NAACP, MAUREEN TAYLOR, NICOLE L. HILL, and TEASHA K. JONES,

*Plaintiffs*,

v.

DONALD J. TRUMP; DONALD J. TRUMP FOR PRESIDENT, INC.; and REPUBLICAN NATIONAL COMMITTEE,

*Defendants*.

Civil Case No. 1:20-cv-03388-EGS

**REPLY IN SUPPORT OF TRUMP DEFENDANTS' MOTION TO DISMISS**

Jesse R. Binnall (VA022)
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
*Attorney for Donald J. Trump and Donald J. Trump for President, Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

ARGUMENT ..... 1

I. THE FIRST AMENDMENT PRECLUDES PLAINTIFFS CLAIMS. ..... 1

II. THIS COURT LACKS PERSONAL JURISDICTION OVER DONALD J. TRUMP AND HIS CAMPAIGN. ..... 4

III. PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY. ..... 6

IV. THE NAACP AND THE MWRO LACK INSTITUTIONAL STANDING. ..... 7

V. FORMER PRESIDENT TRUMP HAS ABSOLUTE IMMUNITY FROM THIS ACTION. ..... 8

VI. PLAINTIFFS FAILED TO ALLEGE ANY INTIMIDATION. ..... 9

VII. PLAINTIFFS' ALLEGATION OF AGENCY ARE ALSO INSUFFICIENT. ..... 9

VIII. THE ALLEGATIONS OF ANY § 1985(3) CONSPIRACY ARE HOPELESSLY FLAWED AND INSUFFICIENT. ..... 10

CONCLUSION ..... 12

CERTIFICATE OF SERVICE ..... 13

# TABLE OF AUTHORITIES

## Cases

*Acosta Orellana v. CropLife Int'l,* 711 F.Supp.2d 81, 110 (D.D.C. 2010)..................10

* *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969) ..........................................................3

* *Clark v. Martinez,* 543 U.S. 371, 381 (2005) .................................................................9

*County of Santa Clara v. Trump,* 250 F. Supp. 3d 497, 539 (7th Cir. 2017) ..............9

*National Coalition on Black Civic Participation v. Wohl,* 2020 WL 6305325 (S.D.N.Y. 2020 ..............................................................................................................................2

* *R.A.V. v. St. Paul*, 505 U.S. 377, 402 n.4 ......................................................................2

*Second Amendment Foundation v. U.S. Conference of Mayors,* 274 F.3d 521, 525 (D.C. Cir. 2001)...................................................................................................6

* *Tri-Corp Housing Inc. v. Bauman,* 826 F.3d 446, 449 (7th Cir. 2016) .....................9

* *Virginia v. Black,* 538 U.S. 343, 366 (2003)..................................................................2

## Statutes and Constitutional Provisions

§222.17, Fl. Stat. (2020)...................................................................................................5

3 U.S.C. § 15 ......................................................................................................................8

* U.S. Const. Art. II Sect. 1 ...............................................................................................8

* U.S. Const. Art. II Sect. 3 ...............................................................................................8

## Other Authorities

Alex Seitz-Wald, Chauvin trial judge says Maxine Waters' 'confrontational' protest remarks could fuel appeal, NBC News, April 19, 2021 available at:

https://www.nbcnews.com/politics/congress/confrontational-maxine-waters-undeterred-marjorie-taylor-greene-criticism-chauvin-trial-n1264534.....................3

Jaime Ehrlich, Maxine Waters Encourages Supporters to Harass Trump Administration Officials, CNN, June 25, 2018 2:02pm available at: https://www.cnn.com/2018/06/25/politics/maxine-waters-trump-officials/index.html. ..........................................................................................3

Joe Guillen, Election Challengers sign up to watch polls in Detroit, November 4, 2016 available at: https://www.freep.com/story/news/local/michigan/detroit/2016/11/04/election-challengers-sign-up-watch-polls-detroit/93301126/..................................................7

Plaintiffs invite this Court to weaken critical First Amendment protections by expanding the *true threats* and *incitement* doctrines beyond recognition. They do so without pleading any threatening behavior or incitement at all against former President Trump or his campaign, and certainly none that would survive First Amendment scrutiny.

Any allegations of intimidation or unlawful conspiracy are woefully deficient; Plaintiffs have failed to plead sufficient facts that could sustain either a Section 11(b) claim or a Section 1985(3) claim. Instead, their opposition brief attempts bluster and insinuation while trying in vain to nudge their Amended Complaint over the plausibility finish line. Moreover, they lack the standing or jurisdiction necessary to sustain the action. The Amended Complaint should be dismissed, with prejudice.

## ARGUMENT

### I. The First Amendment precludes Plaintiffs claims.

Plaintiffs' claims rely on tweets, press conferences, speeches, and meetings that offend them. Knowing the high bar that the First Amendment requires them to clear, they assert a frontal assault on the well-established *true threats, incitement,* and *prior restraint* doctrines. Each novel argument fails, however, as the alleged speech at issue falls squarely within the solemn protections of the Constitution.

Plaintiffs argue that the alleged utterance of former President Trump and his campaign, Donald J. Trump for President, Inc. ("Campaign" or collectively, "Trump Defendants") are exempt from First Amendment protection because of the *true threats* doctrine. Yet, they fail cite any allegation in the Amended Complaint that can

be fairly described as a threat of any sort. Further, they claim that the *true threats* doctrine is far broader than the Supreme Court or any known appellate court has ever recognized. They are wrong.

In support of their argument, they advance a single out of district and factually distinct case, *National Coalition on Black Civic Participation v. Wohl,* 2020 WL 6305325 (S.D.N.Y. 2020) (holding that a range of activities, including allegations of non-violent threats, under specific statutes could be enforceable, notwithstanding the protections of the First Amendment). *Wohl*, 2020 WL 6305325 at *17-18. *Wohl* is wrongly decided on First Amendment grounds. But even that court did not hold that Section 11(b) encompassed the purely political statements that these Plaintiffs challenge here. That case specifically considered threatening robocalls. *Wohl,* 2020 WL 6305325 at *1. That is far different than an action to challenge the political activities and speech of a political candidate and his campaign, contesting purported election results. This aggressive theory runs directly contrary to longstanding and settled Supreme Court law. *Virginia v. Black,* 538 U.S. 343, 366 (2003) (holding that speech and expression in the political context is deserving of expanded constitutional protections) (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 402 n.4).

Plaintiffs also attempt to rescue their claims by bootstrapping the alleged threats of unaffiliated individuals and groups to the claims against the Trump Defendants. Aside from their failure to plausibly allege agency, as discussed below, they advance an exception that would swallow the rule when it comes to the protections of political speech, hopelessly watering down the uniquely American protections of the

First Amendment. Indeed, holding that political candidates are vicariously liable for the acts of supporters would open wide the floodgates of litigation and severely chill political speech.

Second, Plaintiffs attempt to weaken the important protections found in *Brandenburg v. Ohio*, when they argue that the alleged statements at issue somehow incited violence and therefore were outside the protection of the First Amendment. This argument is perhaps even weaker than their *true threats* argument. As Plaintiffs admit, the incitement standard is dependent on context. *Brandenburg* held that speech or advocacy "directed to inciting or producing *imminent* lawless action and [] likely to incite or produce such action" is outside the protection of the First Amendment. *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969). President Trump's utterance did nothing of the sort, he simply engaged in political speech about election contests and those involved.

To hold that his statements would cause him to be civilly liable would turn district courts into arbiters of political speech. By Plaintiffs logic, Congresswoman Maxine Waters is far more culpable for inciting violence when she encouraged people to harass Trump Administration appointees[1] and when she recently encouraged rioters to "get more confrontational" if her favored verdict was not retuned in the *State v. Chavin* case in Minnesota.[2] While Americans may disagree with the tone and

[1] Jaime Ehrlich, Maxine Waters Encourages Supporters to Harass Trump Administration Officials, CNN, June 25, 2018 2:02pm available at: https://www.cnn.com/2018/06/25/politics/maxine-waters-trump-officials/index.html.

[2] Alex Seitz-Wald, Chauvin trial judge says Maxine Waters' 'confrontational' protest remarks could fuel appeal, NBC News, April 19, 2021 available at: https://www.nbcnews.com/politics/congress/confrontational-maxine-waters-undeterred-marjorie-taylor-greene-criticism-chauvin-trial-n1264534.

language used by their political adversaries, turning courts loose to police that speech is forbidden by the First Amendment, except in the most severe circumstance, not present here. The Court should eschew Plaintiffs' incitement arguments as being offensive to the critical protections of the First Amendment.

Third, Plaintiffs attempt to disguise their blatant attempt to require court ordered preclearance of the Trump Defendant's political speech. The request is a textbook example of an unconstitutional prior restraint against speech. Here, Plaintiffs are requesting this Court "subject to hearing and review" preclear the speech of the Trump Defendants and their *training materials*. (Pl. Mem. at 31, Dkt. 8, p. 30). Requiring a federal court to review political speech and approve training materials for election processes would impermissibly intertwine the judicial function of this court in the political sphere.

## II. This Court lacks personal jurisdiction over Donald J. Trump and his campaign.

In claiming that this Court has general jurisdiction over the Campaign, Plaintiffs argue that its principal place of business was the District of Columbia. Their argument is devoid of factual or legal support. Rather, the Plaintiffs advance a threadbare conclusion that the location of the candidate is the primary place of business, or "nerve center" for a campaign. A campaign is an incorporated entity, entitled to the same due process and jurisdictional protections of any other entity. The Campaign had a principal place of business of New York and an office in Virginia. The "nerve center" of the corporation would be in one of those jurisdictions, not the

District of Columbia. It is unsurprising that Plaintiffs offer no authority for their curious jurisdictional argument.

In support of general jurisdiction against former President Trump, the Plaintiffs argue that he was domiciled in the District of Columbia. Under Florida law, an individual may declare their domicile within the State of Florida by filing a form (as former President Trump has done) with the appropriate county clerk recognizing that "he or she resides in and maintains a place of abode in that county which he or she recognizes and intends to maintain as his or her permanent home." §222.17, Fl. Stat. (2020). The former President regularly went to his beloved home state of Florida. The White House was his duty station as President, but his chosen home was in the Sunshine State.

The Trump Defendants previously explained that any constitutionally protected acts alleged against the former President or his supposed agents cannot be used to assert specific jurisdiction. (Trump Mem. 24-25). Plaintiffs responded with conclusions rather than arguments. (Pl. Mem. at 13). Because the acts alleged to have occurred in the District of Columbia are constitutionally protected, the Complaint fails for lack of personal jurisdiction, even if other acts alleged to have occurred outside of D.C. were not constitutionally protected.

The District of Columbia acts are almost exclusively press conferences, social media posts, meetings with political supporters, and phone calls to election officials. Because these activities are all protected by the First Amendment, using them to subject the Trump Defendants to the jurisdiction of the Court offends traditional

notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

**III. Plaintiffs are not entitled to jurisdictional discovery.**

Plaintiffs seek a jurisdictional fishing expedition through an inadequate discovery request. For a plaintiff to merit jurisdictional discovery, the request must "detail what discovery she wishes to conduct and what results she anticipates it would produce." *Cockrum v. Donald J. Trump for President, Inc.*, 319 F.Supp.3d 158, 188 (D.D.C. 2018) (citing *Second Amendment Foundation v. U.S. Conference of Mayors,* 274 F.3d 521, 525 (D.C. Cir. 2001)). "The request must also come at the right time – generally in the response to the motion to dismiss and must request 'jurisdictional discovery in a detailed manner'." *Id.* At 187 (citing *Second Amendment Found.,* 274 F.3d at 525).

Plaintiffs' entire statement regarding jurisdiction discovery amounts to one sentence claiming that if granted, Plaintiffs will use jurisdiction discovery to inquire into "the timing and content of communications and actions undertaken by Defendants in the District of Columbia to ascertain the scope of Defendants' conspiracy." (Pl. Mem. At 15). This is an inherently vague statement, however, and does not provide a detailed description of what Plaintiffs would be looking for and what they would be likely to find.

In *Cockrum v. Donald J. Trump for President, Inc.,* 319 F.Supp.3d 158 (D.D.C. 2018), the court found that an identical request was too vague to warrant

jurisdictional discovery. *Cockrum*, 319 F.Supp.3d at 188. There, plaintiffs requested discovery on

> any in-person meeting, telephone conversation, or other communication, including electronic communications, conducted in the District of Columbia involving any Defendant, or between any Defendant and any Russian or Russian agent or any agent of WikiLeaks, in which any form of assistance by Russia or Russian agents to the Trump Campaign was discussed or facilitated, including but not limited to any discussions of the DNC emails, publication of the DNC emails by WikiLeaks, or the resulting impact on the Clinton campaign.

*Id.* Plaintiffs' request is too vague to sufficiently support a grant of jurisdictional discovery.

## IV. The NAACP and the MWRO lack institutional standing.

Plaintiffs continue to rely on a premise for institutional standing that is incredible on its face. The National Association for the Advancement of Colored People has expended resources on election public information campaigns for election past and will continue in election to come. Further, they have also expended resources to monitor the actions of the other campaigns including appointing poll challengers in previous elections.[3]

A conclusory allegation that this election resulted in a higher drain on its resources is not entitled to a presumption of legitimacy when it is inherently incredible based on the NAACPs involvement and expenditures on past campaigns nationwide and in Michigan. Neither the Michigan Welfare Rights Organization nor the NAACP

[3] Joe Guillen, Election Challengers sign up to watch polls in Detroit, November 4, 2016 available at: https://www.freep.com/story/news/local/michigan/detroit/2016/11/04/election-challengers-sign-up-watch-polls-detroit/93301126/ ("groups registered to appoint challenger in Detroit" in 2016 include "the NAACP").

can have representational standing as no injury is properly alleged by any individual plaintiff.

## V. Former President Trump has absolute immunity from this action.

Plaintiffs argue that then-President Trump was not acting within the scope of his official office when contesting election results so as to preserve, protect, and defend the Constitution of the United States. (Pl. Mem. at 16.) The duty of the states to appoint presidential electors is delineated in the Constitution. U.S. Const. Art. II Sect. 1. Likewise, the requirement that those electoral votes be certified by Congress is required by the Twelfth Amendment and the Electoral Count Act. 3 U.S.C. § 15. The Constitution entrusts the president with preserving, protecting, and defending the Constitution of the United States, U.S. Const. Art. II Sect. 1, and seeing that the laws are faithfully executed, U.S. Const. Art. II Sect. 3.

Plaintiffs may not have agreed with the way former President Trump executed his constitutional duties, but it was not for them to decide. The executive power rests with the President and him alone. U.S. Const. Art. II Sect. 1. While holding that office, former President Trump was free to advocate for the appointment and certification of electors, just as he was entitled to advocate for the passage or defeat of a constitutional amendment or the reconsideration of a congressional act over his veto, even though the president does not directly participate in those constitutional acts. "Speech is a large part of any elected official's job, in addition to being the means by which the official *gets* elected (or re-elected). Teddy Roosevelt called the presidency a "bully pulpit," and all public officials urge their constituents and other public bodies

to act in particular ways." *Tri-Corp Housing Inc. v. Bauman,* 826 F.3d 446, 449 (2016); *see also, County of Santa Clara v. Trump,* 250 F. Supp. 3d 497, 539 (2017) (recognizing that "the "President certainly has the right to use the bully pulpit to encourage his policies").

### VI. Plaintiffs failed to allege any intimidation.

Plaintiffs attempt to justify their claims of intimidation are woefully deficient. The conduct alleged by Plaintiffs is more likely explained by a campaign and candidate attempting to exercise the right to seek a redress for wrongs, electoral victory, and ensuring that all – and only – legal votes were counted. The allegations do not amount to intimidation, just advocacy. Any finding that Plaintiffs plausibly allege acts of intimidation prohibited by Section 11(b) would subject an important statute to a facial constitutional challenge based on (at least) breadth and vagueness. The Court should avoid such an interpretation and correctly find that the alleged conduct does not even come close to a plausible claim of intimidation under Section 11(b). *See Clark v. Martinez,* 543 U.S. 371, 381 (2005) (the constitutional avoidance cannon rests on the reasonable presumption that Congress did not intend for its acts to be interpreted so as to raise "serious constitutional doubts").

### VII. Plaintiffs' allegation of agency are also insufficient.

As to agency, Plaintiffs fall woefully short of alleging an agency relationship between the Trump Defendants and the volunteers that engaged as poll challengers in Michigan or in similar capacities in other states. Five factors are considered when analyzing agency: (1) the selection and engagement of the servant, (2) the payment

of wages, (3) the power to discharge, (4) the power to control the servants conduct, and (5) whether the work is part of the regular business of the employer. *Acosta Orellana v. CropLife Int'l,* 711 F.Supp.2d 81, 110 (D.D.C. 2010). The determinative factor is usually the right to control the employee in the performance of the task and its result. *Id.*

Plaintiffs focus on training provided with instruction by the Defendants. This falls far short of showing an agency relationship. The Trump Defendants were not, nor do Plaintiffs allege they were, able to discharge poll watchers once they were certified, able to control them once they began their service nor able to alter their service other than by asking them to change their actions, nor do Plaintiffs allege poll challengers were paid by the Trump Defendants. And finally, their work was not part of the regular business of the alleged "employer." Plaintiffs have failed to allege anything beyond normal campaign language used to energize and motivate supporters to support their allegations of agency that are specious, at best.

## VIII. The allegations of any § 1985(3) conspiracy are hopelessly flawed and insufficient.

In all their discussion of conspiracies, Plaintiffs attempt to gloss over the requirement that they plead a plausible factual basis for their allegations. Plaintiffs broadly claim that they alleged a conspiratorial agreement, but they fail to allege any illegal purpose.

As discussed above, every action that they have alleged has a legitimate plausible explanation which means under the familiar pleading standard, this Court cannot find that sufficient to form the basis of a conspiracy claim. Plaintiffs argue that

the Defendants sought jointly to prevent votes from being counted, yet every allegation is explained by a focus on every *legal* vote, and only *legal* votes, being counted. In fact, the Plaintiffs have not alleged a single instance where a legal vote was interfered with, prevented, improperly contested, or otherwise not counted.

Challenging election results is a necessary part of free and open elections. Without challenge procedures, elections lose legitimacy, as the transparency of process and veracity of results become unverifiable. Such challenges are simply a part of the democratic process, not a conspiratorial agreement to do an unlawful act. Here again, Plaintiffs have not, and cannot, plausibly claim a conspiracy in violation of § 1985(3).

## CONCLUSION

Plaintiffs have failed to state a cause of action to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Viewing all factual allegations in the light most favorable to the Plaintiffs, their Amended Complaint does not state a cause of action under Section 11(b) of the Voting Rights Act or § 1985(3) and important First Amendment considerations foreclose Plaintiffs' claims. This action should be dismissed, with prejudice.

Dated: April 21, 2021

Respectfully submitted,

/s/ Jesse R. Binnall
Jesse R. Binnall (VA022)
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com

*Attorney for Donald J. Trump and Donald J. Trump for President, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on April 21, 2021, I electronically filed the foregoing Reply in Support of Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

Dated: April 21, 2021

/s/ Jesse R. Binnall
Jesse R. Binnall

*Attorney for Donald J. Trump and Donald J. Trump for President, Inc.*