**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MICHIGAN WELFARE RIGHTS ORGANIZATION, NAACP, MAUREEN TAYLOR, NICOLE L. HILL, and TEASHA K. JONES,

*Plaintiffs*,

v.

DONALD J. TRUMP; DONALD J. TRUMP FOR PRESIDENT, INC.; and REPUBLICAN NATIONAL COMMITTEE,

*Defendants*.

Civil Case No. 1:20-cv-03388-EGS

**DEFENDANTS DONALD J. TRUMP AND DONALD J. TRUMP FOR PRESIDENT, INC.'S OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL AUTHORITY**

**TABLE OF CONTENTS**


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

BACKGROUND ........ 1

ARGUMENT ........ 2

I. Plaintiffs are incorrect that *Thompson* is relevant to this case as persuasive authority. ........ 2

a. The decision in *Thompson* was based on distinguishable facts. ........ 3
b. The decision in *Thompson* was erroneous and is on appeal. ........ 6
c. The First Amendment issues in *Thompson* are fundamentally different than those alleged by Plaintiffs. ........ 8

CONCLUSION ........ 9

CERTIFICATE OF SERVICE ........ 10

## TABLE OF AUTHORITIES

### Cases

*Blassingame et al. v. Trump,*
No. 22-5069 (D.C. Cir. 2022) .................... 6

*Brandenburg v. Ohio,*
395 U.S. 444 (1969) .................... 2, 9

*Clinton v. Jones*,
520 U.S. 681 (1997) .................... 7

*Hess v. State of Indiana*,
414 U.S. 105 (1973) .................... 2, 9

*Lynch v. President of the United States*,
2009 WL 2949776, at * 1 (N.D. Tex. Sept. 14, 2009) .................... 4

*NAACP v. Claiborne Hardware Co.,*
458 U.S. 886 (1982) .................... 2, 9

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982) .................... 5, 7

*Thompson et al. v. Trump,*
No. 21-cv-00400, ECF No. 66, 2022 WL 503384 (D.D.C. Feb. 18, 2022) .......... 1, 4, 5

### Statutes

42 U.S.C. § 1985(3) .................... 6

Plaintiffs seek to muddy the water by citing an opinion based in large part upon independent facts and a different statutory claim from this case to save their floundering allegations of a conspiracy of voter disenfranchisement. Further, the case cited by Plaintiffs is on appeal for erroneous application of well-established Supreme Court precedent.

## BACKGROUND

In *Thompson,* Judge Amit Mehta issued an opinion that addressed three partially consolidated cases against President Trump based on § 1985(1) and state law claims that alleged a conspiracy to interfere with the counting of electoral votes. *Thompson et al. v. Trump,* No. 21-cv-00400, ECF No. 66, 2022 WL 503384 (D.D.C. Feb. 18, 2022). The court ultimately denied President Trump's motions to dismiss with respect to the § 1985(1) claims, but the opinion did not go as far as Plaintiffs suggest.

Rather, Judge Mehta described that the court's approach was to "determine whether President Trump's words were spoken in furtherance of a presidential function." *Id.* at 36. That (flawed) functionalist approach requires a nuanced analysis of the speech in question and the official function the President is performing. Thus, it is misleading for Plaintiffs to assert that the opinion of a fellow judge on the District of Columbia district court is conclusive and persuasive for the case herein—particularly when that judgment is on appeal.

## ARGUMENT

### I. Plaintiffs are incorrect that *Thompson* is relevant to this case as persuasive authority.

Plaintiffs seek to brush over the fact that they "assert different allegations than the plaintiffs in the *Thompson* cases—and bring a claim under 42 U.S.C. § 1985(3) rather than § 1985(1)[.]" Pls.' Notice of Supplemental Authority ("Pls.' NSA"), ECF No. 46, at 2. The simple truth is the facts in *Thompson* and its related cases are significantly different than those alleged here, rendering those cases easily distinguishable and inapplicable to support Plaintiffs' claims.

Plaintiffs allege two ways that the opinion in *Thompson* is relevant to their claims. First, Plaintiffs claim that merely because the defense of absolute immunity is raised in both cases, *Thompson's* resolution of that issue should be controlling. *Id.* Plaintiffs claim that the Defendant's course of conduct in the two cases is similar, but their insistence on that conclusion without support betrays the lack of substance of that argument. *Id.* at 3.

Second, Plaintiffs claim that *Thompson's* analysis of the First Amendment issues should be equally applicable in this case, despite the First Amendment tests under *Brandenburg v. Ohio,* 395 U.S. 444 (1969), *Hess v. State of Indiana*, 414 U.S. 105 (1973), and *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886 (1982) require an inherently factual determination. *See* Pls.' NSA at 3. Plaintiffs, however, have failed to show how these cases are similar in any legally material way.

**a. The decision in *Thompson* was based on distinguishable facts.**

*Thompson* is a decision issued by another court in this district. Any persuasive effect is greatly undermined by the lack of factual similarity between the cases.

In broad strokes, Plaintiffs allege that absolute immunity "has been raised in the present case regarding similar conduct." Pls.' NSA at 2 (citing Dkt. No. 25.1 at 16-17). Despite the appearance of a citation, Plaintiffs do not specify how the conduct in this case is remotely similar to that in *Thompson*. Plaintiffs allege that a First Amendment defense was raised by President Trump in *Thompson,* but again they fail to explain how the speech at issue might be similar enough that this Court should be guided by the judgment in *Thompson*.

This is likely because Plaintiffs cannot draw any relevant similarities. Plaintiffs Amended Complaint succinctly sums up the entirety of their allegations as to a claim under § 1985(3):

> By coordinating their actions in an effort to pressure state and local officials to discard votes cast by Plaintiffs, their constituents, and other voters in cities with large Black populations, Defendants engaged in a conspiracy to deny the equal protection of the laws and to prevent Plaintiffs and others from giving their support to electors for President and Vice President.

Am. Compl. at ¶ 83. Plaintiffs allege that, like Judge Mehta determined in *Thompson,* the actions of President Trump are not within the scope of the Presidential authority. These actions include discussions with election officials, public commentary, and tweets. *See* Am. Compl., ECF No. 8, ¶¶ 48, 22, 39, (among others).

All of these actions fall well within the outer perimeter of the President's Office. President Trump had an obligation to take care that the laws be faithfully

executed. *See* U.S. Const. art. II, § 3. President Trump also had a duty to uphold the Constitution. *See* U.S. Const. art. II, § 1, cl. 8. Speaking publicly, whether in person or through a public social media forum, is quintessential to the President's Office. *See, e.g., Lynch v. President of the United States*, 2009 WL 2949776, at * 1 (N.D. Tex. Sept. 14, 2009) (finding that the President enjoyed absolute immunity because the "[t]elevised publication of the President's views on various topical items is within the outer perimeter of his official duties"). Meeting with state officials is also a routine part of every President's administration to manage the relationship between the federal and state governments.

In *Thompson*, Judge Mehta erroneously distinguished the speech at the Ellipse from speech that was within the scope of President Trump's duties, concluding that the speech was made with the purpose of remaining in office and thus was not protected as petitioning activity like advocating for legislation or policy changes. *Thompson,* 2022 WL 503384 at *38. Judge Mehta's analysis and conclusion is inapplicable to Plaintiffs' claims because their allegations do not involve President Trump's speech at the Ellipse rally, but instead involve public statements on traditional and social media, lawsuits, and recounts. Am. Compl. at ¶¶ 23, 25, 26. Put simply, the facts here fall even more towards the center of presidential duties than the facts in the *Thompson* opinion.

As Judge Mehta admits, "speech is unquestionably a critical function of the presidency," and President Trump's speech and actions surrounding the integrity of the 2020 election "plainly were matters of public concern." *Thompson*, 2022 WL

503384, at *32. His judgment regarding the inapplicability of presidential immunity was based on an erroneous conclusion about the *purpose* of President Trump's speech. Such an analysis is inappropriate for the court, as it requires judges to cross a barrier and determine whether the content of presidential conversations warrants the applicability of immunity.

Even if this Court were to follow Judge Mehta's approach, the allegations here are even more subject to immunity than those in *Thompson*. First, phone calls to state officials regarding the legal administration of elections are clearly official action protected from court scrutiny by absolute immunity. Presidents must be free to speak with officers of States as part of their duties. The *Fitzgerald* Court was clear that whether this Court or any court approves of the content of the communication, or the action is irrelevant to the consideration of whether the action is within the outer bounds of the official duties of the President. *See Nixon v. Fitzgerald*, 457 U.S. 731, 756–57 (1982). Here, the actions (speaking with State and local officials about election issues and public statements about the veracity of the election) are well within the outer bounds of the President's duties.

Plaintiffs' own allegations undercut their theory of liability. President Trump's meetings and conversations with state and local election officials centered around whether any votes were fraudulent and the proper election security procedures for ensuring that the votes counted were legitimate. *See, e.g.,* Am. Compl. ¶¶ 44–47 (alleging discussions with Republican canvassers in Michigan about election results); ¶ 48 (alleging a meeting with Michigan Speaker of the House of Representatives and

Michigan Senate Majority Leader); ¶ 49 (alleging tweet about the Michigan State Board of Canvassers); ¶ 52 (alleging tweet about the Georgia Secretary of State); ¶ 53 (alleging calls to the Pennsylvania Speaker of the House).

None of the above examples are plausible allegations under 42 U.S.C. § 1985(3). Plaintiffs are asking this Court to pass political judgment on the actions of a President while executing his duties of office. That is precisely what the *Fitzgerald* Court specifically warned against, 457 U.S. at 756; it must be firmly rejected. To hold otherwise would invite other courts to ignore executive privilege when that court disagrees with the perceived motive of a particular President's acts. President Trump's actions were well within the outer perimeter of his official duties and are protected by absolute immunity. Consequently, this action must be dismissed as to President Trump.

**b. The decision in *Thompson* was erroneous and is on appeal.**

Plaintiffs attempt to rely on *Thompson* and its related cases in opposing President Trump's motion to dismiss, even though those cases are on appeal before the D.C. Circuit. *See Blassingame et al. v. Trump,* No. 22-5069 (D.C. Cir. 2022). Further, the Court should not rely on the decision in *Thompson* and its related cases because it is incorrect. Indeed, the Court declined to follow the Supreme Court's clear dictates from *Fitzgerald*, 457 U.S. 731, and instead cited *Clinton v. Jones*, 520 U.S. 681 (1997), in concluding that presidential immunity is strictly functional in nature. *Id.* at 26-27.

In truth, *Clinton v. Jones* sheds very little light on the dispute before the Court today. The subject of that suit was Paula Jones's allegations that Bill Clinton sexually assaulted her. *Id.* at 685. That conduct is easily classified as unofficial both because of the purely private or unofficial nature of the alleged action—sexual assault—and the timing—it indisputably took place before Clinton assumed the office of President.

Although, as the *Thompson* decision noted, the *Fitzgerald* court held that presidential immunity is "a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers," the substance of *Fitzgerald's* reasoning described a broader immunity. *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982). The Court rejected "an inquiry into the President's motives," which would be unavoidable "under the kind of 'functional' theory asserted both by respondent and the dissent." *Id.* at 756.

The *Fitzgerald* Court reasoned that because the President holds such "a unique office" in our system of government, and because "[t]here are incidental powers, belonging to the executive department, which are necessarily implied from the nature of the functions confided to it," *id.* at 748–49, the functions merge into a capacious immunity sufficient to cover most of the activity of a President so long as he undertakes the activity as President.

This far broader interpretation is aptly, albeit critically, explained by the dissent, which bemoans that the majority abandoned the stricter functional approach. *Id.* at 770 (White, J., dissenting). The dissent's preference is the too narrow interpretation employed by the district court in *Thompson*. Moreover, the actions in

this case are even further removed from unofficial actions as they consist of communications with other government officials and public statements.

**c. The First Amendment issues in *Thompson* are fundamentally different than those alleged by Plaintiffs.**

Plaintiffs allege that the First Amendment defenses raised by President Trump in *Thompson* are "similar to the arguments raised by Defendants in this case." Pls.' NSA at 3 (citing Dkt. No. 24 at 9–11; Dkt. No. 25-1 at 17–22). Again, Plaintiffs have only cited First Amendment arguments that have been raised by the Defendants with no allegations of how the conduct in their Amended Complaint is similar to the conduct involved in *Thompson*.

Plaintiffs elaborate that Judge Mehta's analysis of *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969), *Hess v. State of Indiana,* 414 U.S. 105, 105–06 (1973), and *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913 (1982), "is particularly instructive—both for its application to substantially similar conduct alleged in this case and for the guidance it offers regarding non-protected incitement." Pls.' NSA at 3. Plaintiffs omit from their analysis the drastically different circumstances of their case. Not so.

In *Thompson* and its related cases, the plaintiffs, in their flawed analysis, alleged that President Trump was at the rally on the Ellipse, near the Capitol, and spoke to supporters gathered there. Here, Plaintiffs have made no substantial allegations regarding substantive remarks by President Trump made at a time and place that immediately preceded the unlawful acts of others. Instead, Plaintiffs have

struggled to cobble together random strings of remarks and tweets by President Trump, lawyers, and other Trump campaign or Trump administration officials. Indeed, even though the *Thompson* analysis did not go far enough in protecting our sacred First Amendment freedoms, even that case supports dismissal here. Just as Judge Mehta dismissed those complaints against various defendants because of the lack of any alleged imminency, this Court should dismiss this action because the Plaintiffs' allegations cannot even meet the standard laid down by that analysis.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be granted in its entirety.

Dated: April 14, 2022

Respectfully submitted,

*/s/ Jesse R. Binnall*

Jesse R. Binnall (Bar # VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com

*Attorney for Donald J. Trump and Donald J. Trump for President, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on April 14, 2022, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall

*Attorney for Donald J. Trump and Donald J. Trump for President, Inc.*