UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHIGAN WELFARE RIGHTS
ORGANIZATION, *et al.*,

    *Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

    *Defendants*.

Case No. 1:20-cv-03388-EGS

**PLAINTIFFS' MOTION FOR CLARIFICATION
AND STATEMENT OF POINTS AND AUTHORITIES**

Plaintiffs Michigan Welfare Rights Organization ("MWRO"), NAACP, Maureen Taylor, Nicole L. Hill, and Teasha K. Jones, by counsel, respectfully move this Court to clarify whether they have leave to amend their Amended Complaint (Dkt. 8) as to their claim under 52 U.S.C. § 10307(b) ("Section 11(b)"). This Court's March 31, 2022 Order (Dkt. 48) and April 1, 2022 Opinion (Dkt. 49) partially granted the motions to dismiss the Amended Complaint filed by Defendant Republican National Committee ("RNC") (Dkt. 24) and Defendants Donald J. Trump and Donald J. Trump for President, Inc. (Dkt. 25) (respectively, "Trump" and the "Trump Campaign"). Specifically, the Order and Opinion dismissed Plaintiffs' claim under Section 11(b) on standing grounds and held in abeyance their claim under 42 U.S.C. § 1985(3). Dkt. 48; Dkt. 49 at 41–42.

The Order and Opinion did not specify whether Plaintiffs have leave to amend their Section 11(b) claim. Plaintiffs respectfully request that this Court (i) confirm that Plaintiffs do have leave to so amend, and (ii) further clarify that Plaintiffs should not file a Second Amended Complaint until they have the benefit of the Court's ruling on their 42 U.S.C. § 1985(3) claim.

1

### I. Leave To Amend Is Appropriate.

At the motion to dismiss stage, complaints generally should not be dismissed with prejudice absent an opportunity to amend. *See, e.g.*, *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Prac. Litig.*, 275 F. Supp. 3d 218, 223 (D.D.C. 2017) (noting "dismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency" and providing leave to amend) (quoting *Belizan v. Hershorn*, 434 F.3d 579, 583 (D.C. Cir. 2006) (internal quotation marks omitted)). Granting such leave is consistent with the principle that "[d]ismissal with prejudice is the exception, not the rule, in federal practice because it operates as a rejection of the plaintiff's claims on the merits and [ultimately] precludes further litigation." *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012) (internal quotation marks omitted).

Plaintiffs submit that leave to amend will permit them to further establish that, unless the Court grants the injunctive relief sought under their Section 11(b) claim, there is a "substantial risk" that they will suffer future harm caused by Defendants. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013); *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017).

**A.  Plaintiffs Will Be Able To Allege Additional Facts Further Showing A Risk Of Substantial Harm.**

In a Second Amended Complaint, Plaintiffs can add allegations showing that the harms they face from Defendants unless this Court grants injunctive relief are both imminent and *ongoing*. Defendants' illegal attempts to disenfranchise Plaintiffs have continued since Plaintiffs filed the Amended Complaint, and the harms from that conduct are also continuing, including the risk of disenfranchisement resulting from coercion and intimidation of state and local election officials.

Among other things, Plaintiffs will be able to plead the following additional facts (many of which directly implicate upcoming elections in states where the individual Plaintiffs and members of the organizational Plaintiffs reside and vote):

- Former President Trump's efforts to overturn the results of the 2020 election are still ongoing.  As recently as March 2022, President Trump's allies met with Wisconsin Assembly Speaker Robin Vos and attempted to pressure him to nullify the 2020 election results, which Speaker Vos is not legally permitted to do.[1]  Following the meeting, President Trump said in a statement: "Speaker Vos should do the right thing and correct the Crime of the Century—immediately!  It is my opinion that other states will be doing this, Wisconsin should lead the way!"[2]

- President Trump has called for Michigan to elect a "new Legislature" in 2022 in order to attack the 2020 election results and has endorsed several Michigan officials who were involved in efforts to overturn the state's 2020 results.[3]  President Trump has endorsed or provided financial support to candidates in other states that have expressed similar interest in once again trying to overturn the 2020 election results.[4]

- This ongoing conduct is consistent with Defendants' efforts in the aftermath of the 2020 election to overturn the result of that election and thereby disenfranchise Plaintiffs.  On January 2, 2021, then-President Trump called Georgia Secretary of State Brad Raffensperger

---

[1] Will Steakin, Katherine Faulders, and Laura Romero, *Former Trump lawyer, amid clash with Jan. 6 committee, pushing to decertify 2020 election*, ABC NEWS, Apr. 11, 2022, https://abcnews.go.com/Politics/trump-lawyer-amid-clash-jan-committee-pushing-decertify/story?id=83965757.
[2] *Id.*
[3] Malachi Barrett, *Trump gave $65K to Michigan Republicans who challenged 2020 election*, MLIVE, Feb. 2, 2022, https://www.mlive.com/public-interest/2022/02/trump-gave-30k-to-michigan-republicans-who-challenged-2020-election.html.
[4] Brittany Shepherd, *Some Republicans continue to push for 'decertification' of 2020 election*, ABC NEWS, Apr. 2, 2022, https://abcnews.go.com/Politics/republicans-continue-push-decertification-2020-election/story?id=83794526.

and pressured him to "find 11,780 votes [for Trump], which is one more than we have" and threatened him with a "criminal offense" if he declined do so.[5]

- Recently released records also show that around the same time, then-President Trump placed two calls to Clint Hickman, Chair of the Maricopa County, Arizona Board of Supervisors.[6] President Trump's then-personal lawyer Rudy Giuliani also called Mr. Hickman and three other supervisors on the Maricopa County Board of Supervisors, including to leave a voicemail to Supervisor Bill Gates stating, inter alia, "Maybe we can get this thing fixed up."[7] Additionally, in text messages sent shortly after the election, Arizona Republican Party Chairwoman and RNC member Dr. Kelli Ward told Mr. Hickman, "We need you to stop the counting."[8]

- Recent testimony by David Shafer, Chairman of the Georgia Republican Party and RNC member, revealed that the Trump Campaign directly coordinated the creation of "alternate slates of electors"—*i.e.*, groups with no legal status that were created to interfere with, and cast doubt upon, the certification of election results by the actual, legally appointed electors.[9]

- Further, the onslaught of threats and intimidation directed at election officials following the 2020 presidential election has led to an exodus of election officials as they retire early or

---

[5] Michael D. Shear and Stephanie Shaul, *Trump, in Taped Call, Pressured Georgia Official to 'Find' Votes to Overturn Election*, N.Y. TIMES, Jan. 3, 2021, https://www.nytimes.com/2021/01/03/us/politics/trump-raffensperger-call-georgia.html.
[6] Brahm Resnik, *'Stop the Counting': Records Show Trump and Allies Pressured Top Maricopa County Officials over Election Results*, 12 NEWS, July 2, 2021 (updated July 7, 2021), https://www.12news.com/article/news/politics/stop-the-counting-records-show-trump-and-allies-pressured-top-maricopa-county-officials-over-election-results/75-61a93e63-36c4-4137-b65e-d3f8bde846a7.
[7] *Id.*
[8] *Id.*
[9] Katelyn Polantz, Annie Grayer, and Holmes Lybrand, *Georgia GOP Chair Tells January 6 Committee that Trump Campaign Directed Alternate Elector Effort*, CNN, Feb. 25, 2022, https://www.cnn.com/2022/02/25/politics/georgia-gop-chair-january-6-committee-trump-campaign/index.html.

- simply quit.¹⁰  A recent poll of election officials revealed that nearly two-thirds of election officials are worried about political leaders' interfering how they do their jobs in future elections, and nearly one in five fear that they will face pressure to certify election results in favor of a specific candidate or party.¹¹

- Given Defendants' ongoing conduct, those fears are well-founded.  One in six election officials have experienced threats because of their jobs.¹²  In this fraught and dangerous climate, twenty percent of election officials polled plan to leave before the 2024 election, in large part due to political leaders' attacks.¹³  Thirty percent of officials already know of one or more election workers who have left their job because of fear for their safety, increased threats, or intimidation.¹⁴

- The RNC has continued to amplify false claims about the 2020 election.  RNC Chairwoman Ronna McDaniel has publicly stated there were "lots of problems with the election" and raised questions about the legitimacy of the results.¹⁵  On February 4, 2022, the RNC passed a resolution censuring Republican legislators Liz Cheney and Adam Kinzinger for their involvement in investigating the January 6 insurrection.¹⁶  The resolution, defended by RNC

---

¹⁰ Anthony Izaguirre, *Exodus of Elections Officials Raises Concerns of Partisanship,* ASSOCIATED PRESS, June 13, 2021, https://apnews.com/article/election-officials-retire-trump-2020-threats-misinformation-3b810d8b3b3adee2ca409689788b863f.

¹¹ *Local Election Officials Survey*, BRENNAN CENTER FOR JUSTICE, Mar. 10, 2022, https://www.brennancenter.org/our-work/research-reports/local-election-officials-survey-march-2022.

¹² *Id.*

¹³ *Id.*

¹⁴ *Id.*

¹⁵ S.V. Date, *RNC Chair McDaniel Still Refuses To Say If Biden Was Legitimately Elected*, HUFFPOST, Nov. 18, 2021, https://www.huffpost.com/entry/mcdaniel-trump-election_n_61968854e4b0ae9a429da0ad.

¹⁶ Gabby Or, *In censure of Cheney and Kinzinger, RNC calls events of January 6 'legitimate political discourse,'* CNN, Feb. 4, 2022, https://www.cnn.com/2022/02/04/politics/liz-cheney-adam-kinzinger-censure-rnc/index.html.

Chair McDaniel, described the insurrection as "legitimate political discourse," and criticized the investigation as "persecution of ordinary citizens."[17]

- Ahead of the 2022 midterm elections, the RNC and state Republican organizations are undertaking large-scale "election integrity" efforts, spearheaded by individuals who publicly encouraged interference and intimidation of officials involved with the certification of the 2020 election results.[18] For example, the Michigan Republican Party has funded a website to recruit potential poll watchers that lists among its "sponsors" groups that have challenged the 2020 election results, led by individuals calling the 2020 election "stolen," an "occupation," or a "coup."[19] Michigan Republican Party Co-Chair and RNC member Meshawn Maddock, herself an "alternate elector" in the effort to undermine Michigan's 2020 election certification, is now involved in recruiting thousands of poll watchers to "flood the system" in forthcoming elections.[20] In Texas, state Republican officials have administered virtual trainings likely to encourage poll watchers to assume that votes cast by non-White voters are presumptively illegitimate by instructing those poll watchers that "fraud is occurring" in "densely populated, largely Black, Latino, and Asian neighborhoods."[21]

- Defendants' actions have already further imperiled free and fair elections in this country, posing a direct threat to all voters intending to cast their ballots for someone other than

---

[17] *Id.*
[18] Nick Corasaniti and Reid J. Epstein, *G.O.P. and Allies Draft 'Best Practices' for Restricting Voting*, N.Y. TIMES, Apr. 7, 2021, https://www.nytimes.com/2021/03/23/us/politics/republican-voter-laws.html.
[19] Malachi Barrett, *Michigan Republicans expand recruitment of poll challengers for 2022 elections*, MLIVE, Jan. 20, 2022, https://www.mlive.com/public-interest/2022/01/michigan-republicans-expand-recruitment-of-poll-challengers-for-2022-elections.html.
[20] Malachi Barrett, *One year after Jan. 6 riot, Michigan election deniers hold more influence in Republican politics*, MLIVE, Jan. 6, 2022, https://www.mlive.com/public-interest/2022/01/one-year-after-jan-6-riot-michigan-election-deniers-hold-more-influence-in-republican-politics.html.
[21] Nick Corasaniti, *G.O.P. Seeks to Empower Poll Watchers, Raising Intimidation Worries*, N.Y. TIMES, May 1, 2021, https://www.nytimes.com/2021/05/01/us/politics/republican-pollwatchers.html.

Defendants' chosen candidate—including Plaintiffs, who either are Black voters in states targeted by Defendants' actions or who work on behalf of many such voters. Undermining voters' confidence that their validly cast ballots will be properly counted is an attack on those voters' franchise. So is undermining their confidence that their validly cast and counted ballots will actually be relevant to determining their states' slates of electors.

These and other examples show that Defendants' attempts to disenfranchise Plaintiffs in violation of Section 11(b) have continued well after the conclusion of the 2020 presidential election—and specifically, that the harm to Plaintiffs is in fact imminent or ongoing, including continuing efforts to illegally overturn the 2020 presidential election and intimidation of election officials that has already sparked widespread resignations by officials and continues to do so as the next round of elections draws closer.

**B.     Plaintiffs' Second Amended Complaint Would Add To Their Existing Allegations Supporting A Substantial Risk Of Harm.**

The new allegations set forth above would establish that, without injunctive relief, Plaintiffs face a substantial risk of harm, and that reality becomes even clearer when considered in the context of allegations in Plaintiffs' existing Amended Complaint. The three individual Plaintiffs live in Michigan, a state where Defendants have repeatedly undertaken efforts to disenfranchise voters through targeted harassment, intimidation, and efforts to prevent the complete counting and certification of validly cast ballots. *See* Dkt. 8 ¶¶ 8–10. In the weeks following the election, President Trump sought to sow specific distrust in Michigan's elections, beyond 2020, claiming "voter fraud in Detroit is rampant, and has been for many years," *id.* ¶ 39, and "nothing can be done to cure that giant scam," *id.* ¶ 24. President Trump publicized, and the RNC hosted, a press conference where Mr. Giuliani falsely claimed that Michigan elections officials counted "illegitimate ballots." *Id.* ¶ 38. These statements spurred real, targeted

intimidation against Michigan election officials. In December 2020, dozens of armed Trump supporters descended on Michigan Secretary of State Jocelyn Benson's home. *Id.* ¶ 33.

Further, the individual Plaintiffs are Black voters particularly targeted by those baseless allegations of election fraud. *Id.* ¶¶ 8–10. Even in large and diverse states, Defendants targeted their intimidation and interference toward those cities representing the largest populations of Black voters, including Detroit, Milwaukee, Philadelphia, and Atlanta. *Id.* ¶ 3. In their statements, pressure campaigns, and legal strategy, Defendants repeatedly focused on disenfranchising Black voters. *See*, *e.g.*, *id.* ¶ 24 ("[T]he Trump Campaign-initiated recount was limited to the two counties in Wisconsin with the largest percentage of Black voters, covering the cities of Milwaukee and Madison."), *id.* ¶¶ 43–49 (describing the Trump Campaign's efforts to lobby Republican canvassers to prevent certification of Detroit's results), *id.* ¶ 24 (describing President Trump's false statement that the election in Philadelphia was characterized by a "mountain of corruption & dishonesty").

Such conduct not only attacked the individual Plaintiffs' right to have their validly cast votes counted during the 2020 presidential election but also created a climate of fear and uncertainty that imperils that right going forward. Thus, absent injunctive relief, the individual Plaintiffs are forced to contemplate voting in future elections knowing that they may be harassed for casting their votes and their election officials are likely to be harassed for attempting to count those votes.

The organizational Plaintiffs are similarly at risk. Many of MWRO's members are Black voters similarly situated to the individual Plaintiffs in that they voted for President in the 2020 election and reside in Wayne County, Michigan, where Detroit is the county seat and Defendants have sought to prevent the complete counting and certification of validly cast ballots for

.
.
.
.
.

president.  *Id.* ¶ 7.  NAACP's members live nationwide, including many in Michigan, Wisconsin, Pennsylvania, Georgia, Arizona, and Nevada—all states where Defendants have sought to prevent the complete counting and certification of validly cast ballots for president by NAACP members and other voters.  *Id.* ¶ 12.  Absent injunctive relief, NAACP also has been forced to divert further resources to protect their members' right to vote, including the members' right to have their validly cast votes properly counted.  *Id.* ¶ 84.

Indeed, in finding that Plaintiffs' Section 11(b) claim is not moot, the Court held "that Plaintiffs have sufficiently pled a risk of future harm to voting rights involving the same actors in this case."  Dkt. 49 at 29.  In so holding, the Court "dr[ew] all inferences in Plaintiffs' favor" and rejected the RNC's argument that "'it is speculation to assert . . . that [Defendants themselves' will again by involved in disenfranchising voters, including Plaintiffs, and intimidating and coercing election officials."  *Id.* (quoting RNC's Mot. To Dismiss, Dkt. 24 at 14).  Although there are cases where "the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000), Plaintiffs respectfully submit that this is not such a case and that the allegations in their Amended Complaint likewise plead standing.

In reaching a contrary conclusion, the Court emphasized the Supreme Court's language regarding the requirement of "imminent" harm for equitable relief.  *See* Dkt. 48 at 39 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  But as the Supreme Court and D.C. Circuit have explained, such imminence is satisfied where there is a "substantial risk" of future harm.  *See, e.g.*, *Clapper*, 568 U.S. at 414 n.5; *Attias*, 865 F.3d at 627.  Courts in this District have similarly stressed that "substantial risk" is the touchstone in analyzing imminence.  *See*, *e.g.*, *Richardson v.*

9

*Trump*, 496 F. Supp. 3d 165, 178 (D.D.C. 2020). Plaintiffs submit that for the reasons recognized in the mootness portion of the Court's Opinion, the Amended Complaint's allegations establish the requisite substantial risk—particularly given the pleading threshold at this early stage. *See, e.g.*, *Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 28 (D.D.C. 2020) ("Plaintiffs' bar at the motion to dismiss stage is low. They must only 'plausibly allege' standing." (citation omitted)).

Specifically, in their Amended Complaint Plaintiffs have already pleaded facts that plausibly allege that they are at substantial risk of being personally subjected to "future harm to voting rights involving the same actors in this case." Taken together with the additional facts set forth above (§ I.A), Plaintiffs have alleged that they or their members live in areas where Defendants have repeatedly attacked the validity of election results and intimidated election officials—including Plaintiff NAACP, whose membership includes registered voters nationwide. *See* Dkt. 24 ¶¶ 3, 7–10, 12, 24, 26, 33, 40, 43–47. Additionally, Plaintiffs have set forth allegations regarding (i) the RNC's decades-long history of voter intimidation and ongoing involvement in future elections, Dkt. 8 ¶¶ 73–75, (ii) the Trump Defendants' expressed interest in and fundraising for future elections, *id.*, and (iii) former President Trump's repeated refusal to withdraw falsehoods about voter fraud and intimidation of elections officials, *id.* ¶¶ 51–55— facts which the Court cited in its mootness analysis, *see* Dkt. 49 at 29.[22] These facts plead a substantial risk of recurring harm to Plaintiffs' voting rights. Plaintiffs therefore request that this Court confirm that they have leave to file a Second Amended Complaint.

---

[22] Courts have permitted Section 11(b) claims to go forward in contexts where the risk of recurrence was less clear. For example, in *National Coalition on Black Civic Participation v. Wohl*, the court found standing in a Section 11(b) challenge to robocalls conveying intimidating messages to "thousands of voters in the United States, including voters in Illinois, Ohio, New York, and Pennsylvania"—even without analyzing whether those same voters were at risk of receiving such robocalls from Defendants again. 512 F. Supp. 3d 500, 505, 515 (S.D.N.Y. 2021).

10

Pursuant to LCvR 7(m), on May 12, 2022 at approximately 1:00 p.m. ET, Plaintiffs' counsel contacted Defendants' counsel via email to let them know that Plaintiffs anticipated filing this motion on May 13, 2022 and asked whether Defendants oppose the relief sought in this motion. Shortly thereafter, Plaintiffs' counsel spoke with the RNC's counsel by phone, who said they would tell Plaintiffs' counsel on May 12, 2022 whether the RNC opposes the motion after conferring with their client. Plaintiffs' counsel has yet to hear back from the RNC's counsel. Plaintiffs' counsel received no response from counsel for Trump and the Trump Campaign. Plaintiffs have been unable to learn whether Defendants oppose the motion, but are willing to further meet and confer with the Defendants and apprise the Court of the Defendants' respective positions once they hear back.

## II.    Request For Relief.

WHEREFORE, Plaintiffs respectfully request that this Court confirm that (1) they have leave to file a Second Amended Complaint and (2) in the interest of judicial economy, they should wait to file that amended complaint until such time as the Court rules upon their 42 U.S.C. § 1985(3) claim.

| | |
|---|---|
| Dated: May 16, 2022 | Respectfully submitted,<br>/s/ *Jason M. Bradford*<br>Jason M. Bradford (D.D.C Bar No. IL0073) |
| Samuel Spital (D.D.C Bar No. SS4839)<br>Janai S. Nelson (*pro hac vice*)<br>NAACP LEGAL DEFENSE &<br>EDUCATIONAL FUND, INC.<br>40 Rector St., 5th Floor<br>New York, NY 10006<br>(212) 965-2200 | Jason M. Bradford (D.D.C Bar No. IL0073)<br>Jonathan A. Enfield (D.D.C Bar No. IL0074)<br>Jenner & Block LLP<br>353 N. Clark St.<br>Chicago, IL 60654<br>(312) 222-9350 |
| Anuja D. Thatte (D.D.C. Bar No. 1742276)<br>NAACP LEGAL DEFENSE AND<br>EDUCATIONAL FUND, INC.<br>700 14th Street NW, Ste. 600<br>Washington, DC 20005<br>(202) 682-1300 | Stephen L. Ascher (*pro hac vice*)<br>JENNER & BLOCK LLP<br>1155 Avenue of the Americas<br>New York, NY 10036<br>(212) 891-1600 |
| | *Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I certify that on May 16, 2022, I electronically filed the foregoing Plaintiffs' Motion for Clarification and Statement of Points and Authorities with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

Dated: May 16, 2022                                            /s/ *Jason M. Bradford*
                                                                              Jason M. Bradford
                                                                              Attorney for Plaintiffs