## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHIGAN WELFARE RIGHTS ORGANIZATION, NAACP, MAUREEN TAYLOR, NICOLE L. HILL, and TEASHA K. JONES,<br><br>*Plaintiffs,*<br><br>v.<br><br>DONALD J. TRUMP; DONALD J. TRUMP FOR PRESIDENT, INC.; and REPUBLICAN NATIONAL COMMITTEE,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Case No. 1:20-cv-03388-EGS |

**TRUMP DEFENDANTS' RESPOSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

None of the additional facts or politically charged rhetoric alleged by Plaintiffs changes the legal conclusion at the heart of the Court's holding dismissing their claim under Section 11(b) of the Voting Rights Act: Plaintiffs lack standing to pursue a claim. Therefore, it would be futile to permit Plaintiffs to amend their complaint a second time; the Court should deny Plaintiffs' Motion.

In dismissing the claim, the Court correctly held, "Plaintiffs lack standing to bring their VRA claim because they have failed to demonstrate that, 'if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury is certainly impending.'" Memorandum Opinion, ECF No. 49 at 42 (citing *Friends of the Earth, Inc., et al. v. Laidlaw Env't Services, Inc.*, 528 U.S. 167, 190 (2000)). Specifically, the Court found that Plaintiffs had not "demonstrated, as required when seeking injunctive relief premised on past harm, that they are 'sufficiently likely to be *personally* subjected to the challenged conduct again in order to have standing.' *Chang v. United States*, 738 F. Supp. 2d 83, 90 (D.D.C. 2010) (Sullivan, J.) (emphasis added)." *Id.*

Plaintiffs' new allegations are largely a more verbose repeat of their previous allegations that this Court deemed to be insufficient. The 'new' allegations includes President Trump meeting with and taking calls with election officials in Wisconsin, *see* Pls.' Mtn. for Leave, ECF No. 55 at 5, supporting candidates in Michigan that support election integrity legislation, *id.*, calls and meetings with election officials in Georgia and Arizona while President Trump was in office, *id.*, the actions of unrelated third parties towards election officials and Congress unrelated to this case, *id.*, and

organizing for poll watchers for the 2022 midterm elections, *id.* at 7. This is simply a reiteration of Plaintiffs' Amended Complaint in which they complained of President Trump's public statements on election integrity, the questioning of the election results in Michigan, Wisconsin, Arizona, and Georgia, and the actions of unrelated third parties toward election officials unrelated to this case, calling and speaking with election officials, and recruiting poll watchers. *See generally*, Pls.' Am. Compl., ECF No. 8.

Like the allegations in the Amended Complaint, these 'new' allegations do not show a sufficient likelihood that Plaintiffs will be personally harmed. Indeed, Plaintiffs fail to show how their 'new' facts could clear the well-established hurdle of standing. Instead, they simply repeat the same allegations and political rhetoric, while improperly inviting the Court to interject itself in forthcoming elections.

Nothing can cure the deficiency of Plaintiffs' pleading as to their claim under Section 11(b) of the Voting Rights Act, and the Court should deny Plaintiffs' Motion for Leave and hold that Plaintiffs' claim under the Voting Rights Act is dismissed with prejudice.

## ARGUMENT

### I.      Further Amendment to the Section 11(b) Claim Would be Futile.

Plaintiffs have already taken advantage of their ability to amend their original complaint yet still failed to establish standing. Plaintiffs now seek leave to amend

their complaint a second time alleging, 'new' information. Plaintiffs' 'new' information, however, does nothing to cure their standing deficiency.

"[A] motion to amend should be denied if the amendment would be futile because the proposed claim would not survive a motion to dismiss." *Nextel Spectrum Acquisition Corp. v. Hispanic Info. And Telecomm. Network, Inc.*, 571 F. Supp. 2d 59, 62 (D.D.C. 2008) (citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996)). Standing, of course, is an essential element. As this Court noted in its opinion, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Memorandum Opinion, ECF No. 49 at 39 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Further, because Plaintiffs are seeking injunctive relief, they must show that they are "sufficiently likely to be *personally* subjected to the challenged conduct again in order to have standing." *Id.* at 42 (quoting *Chang*, 738 F. Supp. 2d at 90) (emphasis added).

The additional facts that Plaintiffs allege in their Motion for Leave do not give them standing. As the Court found, this is a case where "circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Id.* at 42 (quoting *Laidlaw, Inc.*, 528 U.S. at 170). Plaintiffs' alleged injuries remain too speculative to satisfy the standing requirements even considering their 'new' allegations.

Plaintiffs have simply repackaged the same allegations from their Amended Complaint and added more political rhetoric. There is simply no evidence that President Trump's actions, or those of his previous campaign, will *personally* impact Plaintiffs in the future. Past wrongs (real or imagined) do not, in themselves, amount to a "real and immediate threat," and threatened harm that is not real and immediate is "too speculative" to support standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

Plaintiffs broadly (and baselessly) asserted in their Amended Complaint that President Trump sought to prevent the counting and certification of validly cast ballots, thus, disenfranchising voters. Pls.' Am. Compl., ECF No. 8 at ¶¶ 7-12. Plaintiffs' suggestion that President Trump or his campaign will attempt to disenfranchise voters in the future is simple and pure speculation and a reiteration of allegations already made. Plaintiffs fail to show any "substantial risk" that Plaintiffs' votes will not be counted or that Plaintiffs will be personally injured due to the actions of Defendants in the future. What's more, President Trump has, in fact, said the opposite and has fought for counting *all* legally cast votes. If all legally cast votes are counted, then Plaintiffs cannot be injured in the manner they allege.

Discussions with election officials and state government leaders about maintaining the integrity of the election, preventing the counting of *illegal* votes, and implementing measures to prevent *illegal* votes do nothing to impact valid, legal votes. Further, President's Trump encouragement of poll watchers does not mean that Plaintiffs will be prevented from voting. Rather, poll watchers are a normal part

of the election process in many states, and it is perfectly legal for campaigns to encourage poll watchers to oversee elections. Poll watchers are included in many election codes as an additional safeguard to ensure that elections are conducted properly. Plaintiffs' attempts to argue that the encouragement of citizens to utilize their statutory rights to observe the election process is somehow evidence of future disenfranchisement is incredible. Plaintiffs have repackaged the same broad allegations that were insufficient in the Amended Complaint, and they are still insufficient now.

Plaintiffs' vague suggestions of fear or intimidation do not rise to the level of "imminent" harm under Article III as opposed to a hypothetical or conjectural concern. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Even in their Motion for Leave to File a Second Amended Complaint, Plaintiffs fail to so much as specifying a single election or candidate that concerns them. *See generally*, ECF No. 55.

Plaintiffs also merely allege that their allegations are continuing and ongoing. ECF No. 55 at 4. Plaintiffs then immediately fall back to allegations of past conduct. ECF No. 55 at 5. Plaintiffs are unable to show that any action that may affect their members personally is ongoing or imminent, which is why the Court (correctly) dismissed this claim in the first place.

Plaintiffs also ask this Court to consider the RNC's February 2022 resolution censuring two republican representatives in Congress. ECF No. 55 at 7. Not only are Plaintiffs grasping at straws by invoking events with no relation to this case, but Plaintiffs are also asking this Court to stray into considering non-justiciable political

5

questions. *See Rangel v. Boehner*, 785 F.3d 19, 22 (D.C. Cir. 2015) (affirming that the question of whether the House of Representatives properly disciplined a congressman was a non-justiciable political question). The censure is not within the purview of this case, but it provides another striking example of the Plaintiffs' attempts to twist the words of others.

Plaintiffs repeatedly infer that any effort by anyone of a different political ideology than themselves to ensure election integrity is secretly an effort to disenfranchise voters. *See, e.g.,* ECF No. 55 at 7 (claiming that election integrity efforts are being spearheaded by persons that have encouraged election interference). Plaintiffs are reiterating a tired trope that any effort to ensure the integrity of the election is an illegal attempt to suppress legitimate votes. Unfortunately for the Plaintiffs' argument, the Voting Rights Act was designed to ensure the integrity of election processes and the elections themselves, which means that election integrity is an important aim under the statute that may be carried out by actions aimed at ensuring proper processes and pure, fair elections.

Finally, and perhaps most importantly, the purported Amended Complaint fails as to President Trump because it is barred by the President's absolute immunity, as has been fully briefed previously. *See, e.g.,* ECF No. 51. Because immunity is a threshold issue, it must be resolved before this matter is further litigated, as immunity is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation. *Ashcroft v. Iqbal,* 556 U.S. 662, 672, 129 S. Ct. 1937, 1946, 173 L. Ed. 2d 868 (2009) (*quoting Mitchell v. Forsyth,* 472 U.S. 511, 526

(1985)); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) ("until a threshold immunity question is resolved, discovery should not be allowed."); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (requiring that district courts resolve immunity disputes before allowing discovery to proceed). Consequently, even if the Court were inclined to allow Plaintiffs further amend their complaint, it must first decide the immunity question.

## CONCLUSION

This action is premised on constitutionally untenable interpretations of Section 11(b)—that is, any political pressure President Trump and his Campaign generated by exercising their First Amendment rights, to protect the integrity of the election no less, amounts to a violation of the Voting Rights Act. The Court correctly determined that Plaintiffs lack standing to bring their claims, and the Court should, under the same rationale, deny Plaintiffs' Motion for Leave to File a Second Amended Complaint.

Dated: June 30, 2022

Respectfully submitted,

/s/ Jesse R. Binnall
Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com

*Attorney for Donald J. Trump and Donald J. Trump for President, Inc.*

## CERTIFICATE OF SERVICE

I certify that on June 30, 2022, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall
*Attorney for Donald J. Trump and Donald J. Trump for President, Inc.*