UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHIGAN WELFARE RIGHTS ORGANIZATION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Case No. 1:20-cv-03388-EGS |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Samuel Spital (D.D.C. Bar No. SS4839)
Janai S. Nelson (*pro hac vice*)
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St., 5th Floor
New York, NY 10006
(212) 965-2200

Anuja D. Thatte (D.D.C. Bar No. 1742276)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
(202) 682-1300

Jason M. Bradford (D.D.C. Bar No. IL0073)
Jonathan A. Enfield (D.D.C. Bar No. IL0074)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350

Stephen L. Ascher (*pro hac vice*)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

*Counsel for Plaintiffs*

Plaintiffs MWRO, NAACP, Maureen Taylor, Nicole L. Hill, and Teasha K. Jones, by counsel, respectfully submit this Reply in Support of their Motion for Leave to File Second Amended Complaint (Dkt. 55) (the "Motion").[1]

Defendants do not dispute that "[t]he court should freely give leave [to amend]," *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (quoting Fed. R. Civ. P. 15(a)(2)) (alteration in original), or that "[d]ismissal with prejudice is the exception, not the rule," *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012) (quotation marks and citation omitted). Defendants instead raise misplaced arguments regarding futility (all Defendants) and absolute immunity (Defendant Trump) that do not justify denying Plaintiffs the opportunity to amend.

**I.     Amendment Is Not Futile.**

Defendants' arguments about futility ignore the bulk of Plaintiffs' amended allegations as well as the relevant legal standards. As detailed in Plaintiffs' Motion (*see* pp. 3-9), amendment is not futile because their proposed SAC adds significant factual allegations to address the Section 11(b) standing concerns raised in the Court's April 1, 2022 opinion (Dkt. 49 at 42), including conduct that has occurred or otherwise come to light since their December 21, 2020 Amended Complaint (Dkt. 8). Indeed, even since the filing of Plaintiffs' Motion, sworn testimony before the United States House Select Committee on the January 6th Attack (the "January 6th Committee") ("the January 6th Hearings") has provided significant additional facts of which this Court is entitled to take judicial notice.

In particular, the proposed SAC fully and plausibly pleads a "substantial risk" of future harm to Plaintiffs' right to have their votes "counted properly and included in the appropriate totals

---

[1] Capitalized terms and abbreviations not defined herein have the same meaning as set forth in Plaintiffs' Motion.

of votes cast" under Section 11(b)—including based on conduct by Defendants that is recent or ongoing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013); *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017). The proposed SAC (Dkt. 55-2) adds allegations including: (i) President Trump's continued efforts in 2022 to overturn and subvert the 2020 presidential election results in Wisconsin, Alabama, and Michigan (*see* SAC ¶¶ 112-114); (ii) other conduct by Defendants and their agents to pressure Georgia and Arizona election officials and members of Congress not to certify the same election results, including the January 6, 2021 insurrection and the promotion of illegitimate "alternate slates of electors" (*see id.* ¶¶ 1, 59-60, 75-78, 95-108); and (iii) ongoing denials by RNC state officials of the 2020 election results and ongoing efforts by the RNC and state Republican organizations to undertake large-scale "election integrity" efforts— spearheaded by individuals who have publicly encouraged election interference and intimidation—to influence vote counting in 2022 and beyond (*see id.* ¶¶ 116-119). Plaintiffs—*i.e.*, the individual Plaintiffs and MWRO based in Michigan, a key state targeted by Defendants' disenfranchisement efforts, and NAACP which has members nationwide (*see id.* ¶¶ 7-12)—thus face a "substantial risk" of concrete harm in violation of Section 11(b), *Clapper*, 568 U.S. at 414 n.5; *see Attias*, 865 F.3d at 627.

Plaintiffs' claims have only been bolstered by judicially noticeable testimony from the January 6th Hearings, presented last month after Plaintiffs' Motion and proposed SAC were filed. *See, e.g.*, *Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 185 n.2 (D.D.C. 2021) ("Courts may take judicial notice of congressional testimony because the testimony is 'not subject to reasonable dispute.'") (quoting Fed. R. Evid. 201(b)). For example, in video testimony shown on June 21, 2022, RNC Chairwoman Ronna McDaniel testified that Defendant Trump called her after the 2020 election to seek the RNC's assistance with assembling "contingent electors" and that it was her

2

"understanding that the [Defendant Trump Campaign] did take the lead and we just were helping them in that role." January 6th Committee, *6/21/22 Select Committee Hearing*, YouTube, https://www.youtube.com/watch?v=xa43_z_82Og at 1:07:17-52. Likewise, Rusty Bowers, Republican Speaker of the Arizona House of Representatives, testified to repeatedly receiving calls from Defendant Trump and his associates pushing alternate electors in that state as well, including as late as June 2021. *See id.* at 40:54-59:49. If the Court declines to take judicial notice of these recently elicited facts, Plaintiffs respectfully request the opportunity to further amend the proposed SAC to incorporate them.

Nonetheless, Defendants contend that Plaintiffs' Motion is futile, based on a cherrypicked review of Plaintiffs' amended allegations. Defendants' main argument is that Plaintiffs' allegations concern "past wrongs" and therefore do not satisfy the imminence requirement. Dkt. 56 at 3; Dkt. 57 at 4. As an initial matter, the proposed SAC also includes allegations of ongoing conduct. *See, e.g.*, SAC ¶¶ 116-119. Moreover, the imminence standard necessarily contemplates that past conduct can establish a substantial risk of future harm—and, as explained, the proposed SAC and testimony from the January 6th Hearings establish the requisite likelihood of future harm to Plaintiffs personally and to voters nationwide.[2] *See, e.g.*, *Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021) (explaining that "[p]ast wrongs may serve as evidence bearing on" standing to enjoin prospective harm) (quotation marks and citation omitted) (alteration in original). This is especially so here, where much of Defendants' past conduct seeks to provide a veneer of legitimacy for future election intimidation efforts—which only enhances the substantial risk of recurrence.

Defendants also dispute some allegations altogether (*e.g.*, the RNC and Trump Defendants

---

[2] These additional facts also further support Plaintiffs' Section 1985(3) claim, which has not yet been addressed by the Court.

3

argue that their poll watching conduct is "perfectly lawful" and "perfectly legal" (Dkt. 56 at 4; Dkt. 57 at 5), and the RNC argues that certain conduct should not be attributable to the RNC even though Plaintiffs directly plead that it was committed by RNC officials (Dkt. 56 at 3 (discussing SAC ¶¶ 74-75))).[3] Such arguments, however, are not cognizable at this stage where the motion to dismiss was granted on standing grounds alone, and the sole inquiry is whether Plaintiffs can plausibly allege their Section 11(b) claim. *Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 26-27 (D.D.C. 2020) (noting that on a motion to dismiss, "a court must assume the truth of all material factual allegations" and "grant[] plaintiff the benefit of all inferences") (citations omitted). To the extent that Defendants contest these allegations, it is premature to do so before Plaintiffs have been afforded the chance to replead, let alone conduct discovery.

## II.    Defendant Trump's Renewed Invocation of Absolute Immunity Fails and Is Not a Basis for Denying Amendment.

Separately, Defendant Trump renews his invocation of "absolute immunity" as President. Dkt. 57 at 6-7. But his asserted immunity defense was not a basis for the dismissal of Plaintiffs' Section 11(b) claim—and likewise is not a basis to oppose amendment here. This issue also has been fully briefed and submitted to the Court. As explained in Plaintiffs' Opposition to Defendants' Motion to Dismiss and Judge Mehta's recent decision in *Thompson v. Trump*, Defendant Trump's at-issue conduct is purely political and therefore well beyond the contours of

---

[3] Defendants also make misplaced arguments about allegations regarding the RNC's February 2022 censure of two of its members for participating in the January 6th Committee, which described the January 6, 2021 insurrection as "legitimate political discourse" (SAC ¶ 116). *See* Dkt. 56 at 3 (RNC stating that "[t]he Voting Rights Act does not apply to internal proceedings of a House Committee"); Dkt. 57 at 5-6 (Trump Defendants describing this censure as a "non-justiciable political question"). Plaintiffs do not ask the Court to assess the propriety of this censure; these allegations concern the RNC's stated position regarding the attempt on January 6, 2021 to disrupt the certification process, which again goes to the substantial risk of future harm to Plaintiffs' right to have their votes "counted properly and included in the appropriate totals of votes cast."

4

presidential immunity. *See* Dkt. 35 at 15-16; *see also Thompson v. Trump*, Nos. 21 Civ. 400, 21 Civ. 586, and 21 Civ. 858, 2022 WL 503384, at *18 (D.D.C. Feb. 18, 2022) (Mehta, J.) (denying immunity defense for "unofficial acts" which "entirely concern his efforts to remain in office for a second term"). In any event, this is an affirmative defense to be proven by Defendant Trump, *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1141 (D.C. Cir. 2015), and it concerns civil damages, *see* Dkt. 25-1 (Trump Defs. Mem. in Support of Mot. To Dismiss) at 16-17 (arguing immunity for damages liability only); *see also Thompson*, 2022 WL 503384, at *11-*12. Thus, Defendant Trump's attempt to distort the doctrine of presidential immunity should be rejected altogether, but at minimum provides no basis for denying leave to amend Plaintiffs' Section 11(b) claim for injunctive relief now.

\*     \*     \*

For the foregoing reasons, Plaintiffs respectfully request that the Court grant leave to file their proposed Second Amended Complaint.

| | |
|---|---|
| Dated:  July 7, 2022 | Respectfully submitted, |
| | /s/ *Samuel Spital* |
| | Samuel Spital (D.D.C. Bar No. SS4839) |
| *Full counsel information on cover page.* | *Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

      I certify that on July 7, 2022, I electronically filed the foregoing Plaintiffs' Reply in Support of Motion for Leave to File Second Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

Dated:  July 7, 2022                                                           /s/ *Samuel Spital*
                                                                               Samuel Spital (D.D.C. Bar No. SS4839)
                                                                               *Counsel for Plaintiffs*