IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**MICHIGAN WELFARE RIGHTS
ORGANIZATION,** *et al.*

                    *Plaintiffs,*

v.                                                          Civil Case No. 1:20-cv-03388-EGS

**DONALD J. TRUMP,** *et al.*

                    *Defendants.*

MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR STAY</u>

President Trump and Donald J. Trump for President, Inc., previously moved to dismiss all of Plaintiffs' claims. This Court granted that motion as to one count of Plaintiffs' Amended Complaint and held in abeyance a decision on the other count. Plaintiffs then sought leave to file a second amended complaint, which this Court granted. In that decision, this Court specifically found "that Former President Trump is not immune from monetary damages in this suit." Dkt. No. 59 at 13.

Due to this Court's ruling that President Trump is not entitled to absolute immunity, President Trump immediately filed his timely appeal of that ruling. It is, therefore, inappropriate to continue with any further pretrial litigation. Absolute presidential immunity is meant to guard against Article III courts making value

1

determinations affecting presidential actions. It is also meant to avoid all the costs of litigation, including pretrial discovery obligations.

Therefore, President Trump and Donald J. Trump for President, Inc. respectfully request this Court stay all further pretrial activity of this case in the District Court, including all potential discovery, for all parties, until President Trump's appeal stemming from this Court's decision on absolute immunity is finally resolved.

## BACKGROUND

President Trump, and Donald J. Trump for President Inc. (the "Trump Campaign"), moved to dismiss Plaintiffs' Amended Complaint on February 24, 2021. *See* Dkt. No. 25. The Court dismissed one of Plaintiffs' claims and held a decision on the other in abeyance on April 1, 2022. *See* Dkt. No. 49. Plaintiffs then moved for leave to file a second amended complaint. *See* Dkt. No. 55. This Court granted leave on November 28, 2022, in a Memorandum Opinion and Order. *See* Dkt. No. 59. In the memorandum opinion and order granting leave, this Court held that President Trump was not taking an "executive action" and, therefore, "Former President Trump is not immune from monetary damages in this suit." *See* Dkt. No. 59 at 13.

Earlier this year, a court in this district entered an order granting the motions to dismiss in part and denying them in part. *Thompson v. Trump*, 590 F. Supp 3d. 46, 53 (D.D.C. Feb. 18, 2022). In that order, the court declined, in part, to afford President Trump

the constitutional protections of absolute immunity. *Id.* at \*18. Consequently, those orders are now being considered on appeal before the U.S. Court of Appeals for the D.C. Circuit. *See generally Blassingame, et al. v. Trump*, No. 22-5069, ECF No. 1940608 (D.C. Cir. *appeal docketed* Mar. 22, 2022) (ordering that the three cases be consolidated for consideration of the appeal on the court's own motion). The Circuit heard argument on those cases on December 7, 2022.

Even though this Court has only issued a ruling that President Trump's claim of absolute immunity is inapplicable in an opinion on a motion for leave, it is appropriate for appeal because absolute immunity is a right to prevent all the burdens of litigation. Therefore, this Court must stay any further action in this case pending the outcome of President Trump's appeal of this Court's decision on absolute immunity.

Recently, it was revealed that Twitter was coordinating with the FBI, various other parts of the Government, and the Democrat Party, to skew the election in favor of Joe Biden and to deplatform and censor President Trump. Further, President Trump has just been reinstated on Twitter, and his previous tweets were again made public. Two of the tweets from President Trump, which were posted in the early afternoon of January 6, 2021, clearly state his desire that all protests be peaceful.



These tweets were consistent with a major theme of President Trump's speech on the Ellipse—that the attendees were there to "peacefully and patriotically make [their] voices heard." It is doubtful that any President has ever been so clear or concise about wanting peace and harmony, and certainly not conflict. Indeed, in addition to being constitutionally immune from liability, President Trump's statements and tweets make it clear that he acted completely legally and appropriately.

These tweets were hidden from the public for almost two years, because they were cancelled by Twitter when cancelling President Trump's account. Now that they have reemerged, having widespread positive impact, it is paramount for the Court to be aware of this information, as nothing can be more obvious as to its meaning—a meaning that was withdrawn from the public by Twitter's censorship. Nevertheless, these vital and determinative statements have now been made available again for all to see, most critically this Court, whose decision on this matter is vital.

President Trump's statements encouraging peace and patriotism can be easily contrasted with those of other government officials who have consistently and irresponsibly called for violence and extremism.[1] For example, Maxine Waters encouraged her supporters to "get more confrontational," and Chuck Schumer exclaimed to the Supreme Court, "you have released the whirlwind and you will pay the price" and "you won't know what hit you if you go forward with these awful decisions." The referenced videos show many other incendiary remarks, many of which preceded extraordinary violence. Yet, despite that violence, there has never been any effort to hold these politicians responsible or accountable for their wrongful statements.

## ARGUMENT

### I.    Discovery Cannot Begin Until President Trump's Appeal is Resolved.

This matter is premature for any further proceedings, including discovery, as to any party until the question of immunity is fully resolved.[2] The Supreme Court has been

---

[1]    *See* Tom, "Inciting Rhetoric from Democrats," YOUTUBE, available at https://www.youtube.com/watch?v=gcVlsq2x79g and Caldron Pool, "How did you think it would end? Democrats and Progressives Inciting Violence." YOUTUBE, available at https://www.youtube.com/watch?v=7yYplnEkbqU for a representative compilation of incendiary remarks from other political and governmental officials that has been ignored by the media and the legal system.

[2]    Even without a stay, discovery in this matter would be premature. The D.C. Circuit has already determined that it is "generally considered inappropriate" to begin discovery "while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 37 (D.D.C. 2004) (quoting *Anderson v. United States*, Civ. No. 91-CV-2262-LFO, 1992 WL 159186, at *1

clear: "until a threshold immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (requiring that district courts resolve immunity disputes before allowing discovery to proceed). Absolute immunity is designed to entitle a President (and other specific defendants such as members of Congress and the Judiciary) to be spared from all the burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (recognizing that immunity is an entitlement to avoid the burdens of litigation); *Nixon v. Fitzgerald*, 457 U.S. 731, 746 (1982) (finding that immunity exists in qualified and absolute form depending on the executive branch officials function and protects from the burdens of litigation).

Indeed, "the purpose of conferring absolute immunity is to protect officials not only from the ultimate liability but also from the time-consuming, distracting, and unpleasant aspects of a lawsuit, including discovery." *District of Columbia v. Jones*, 919

---

(D.D.C. Jun. 19, 1992)). Here, the Trump Defendants will be filing a motion to dismiss in response to the Second Amended Complaint.

Also, it is common for courts to grant stays where the resolution of a pending dispositive motion could obviate the need for discovery entirely. *See, e.g., White v. Fraternal Order of the Police*, 909 F.2d 512, 516–17 (D.C. Cir. 1990) (upholding the district court's stay of discovery pending resolution of defendants' motion for summary judgment); *U.S. v. Manigault Newman*, No. 19-CV-1868-RJL (Minute Order Dec. 6, 2019) (staying discovery pending resolution of a motion to dismiss); *Moore v. Castro*, 2016 WL 10674309, at *1 (staying initiation of discovery as well as the Rule 26(f) conference and Rule 16(b) scheduling order pending resolution of defendants' motion to dismiss). Further, Local Civil Rule 16-3(c) of this Court requires parties to a case to discuss whether the parties should jointly suggest a stay to the Court when dispositive motions are pending.

A.2d 604, 611 (D.C. 2007); *see also Chang v. United States,* 246 F.R.D. 372, 374 (D.D.C. 2007) (early adjudication of immunity disputes is necessary "to spare the official of the tribulation and expense of defending the suit at all").

This stay does not apply simply to President Trump, but rather to all further proceedings in this case, as to all parties, while the question of immunity is considered on appeal. The Supreme Court specifically declined to provide for allowing pretrial proceedings to continue for other defendants while it is deferred as to the party seeking immunity. *Ashcroft v. Iqbal,* 556 U.S. 662, 685-86 (2009). The Court was quite clear on this question when it held it "quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery." *Id.* Consequently, this Court is obligated to stay this case pending the resolution of President Trump's appeal of the Court's ruling that he is not entitled to absolute immunity.

## II.      President Trump is likely to prevail on the merits of his appeal

A movant in a stay pending appeal must meet a four-part test: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4)

7

where the public interest lies.'" *Clean Air Council v. Pruitt,* 862 F.3d 1, 8 (D.C. Cir. 2017) (citing *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 173 L.Ed.2d 550 (2009)).

The manner in which the courts in this Circuit should weigh the factors is an open question. *Nora v. Wolf*, No. 20-cv-0993, 2020 WL 3469670, at *6 (D.D.C. Jun. 25, 2020) (citing *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014)). "[I]n the absence of clear guidance, courts in this Circuit have continued to analyze the factors on a sliding scale whereby a strong showing on one factor could make up for a weaker showing on another." *NAACP v. Trump*, 321 F. Supp. 3d 143, 146 (D.D.C. 2018) (internal quotation marks omitted).

This framework allows a movant to make up for a "lower likelihood of success on the merits 'with a strong showing as to the other three factors, provided that the issue on appeal presents a 'serious legal question' on the merits. *Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 560 (D.D.C. 2018) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 844 (D.C. Cir. 1977)).

### a.  President Trump is likely to prevail on the merits of an appeal.

The Court determined that "[i]f Former President Trump disrupted the certification of the electoral vote count, as Plaintiffs allege here, such actions would not constitute executive action in defense of the Constitution. For these reasons, the Court concludes that President Trump is not immune from monetary damages in this suit. Dkt. No. 59 at 13.

8

The proper limit of the inquiry is that President Trump's actions involved speech on matters of public concern, namely the veracity and sanctity of the 2020 election results. Millions of Americans were concerned about the outcome of the election in the fact of the irregularities of the 2020 election. President Trump was speaking to the American public on an issue of public concern in all of the allegations made by the Plaintiffs. It is of no moment as to whether Plaintiffs, or even this Court, agreed with arguments made in that Presidential statements. It is enough that the nature of the activity, a speech by the President, is the type of activity normal and customary to the presidency. Therefore, it is likely that the appeals court will reconsider this decision on appeal.

Moreover, the application of the law of absolute immunity to the facts of this case—specifically, what presidential action falls within the outer perimeter of official conduct—will have serious implications for every future President. This Court's decision, if not reversed on appeal, will chill the speech of all future Presidents because the decision nullifies a President's absolute immunity. Thus, there is a very strong likelihood that an appellate court reviewing this Court's decision will agree with President Trump that a President's absolute immunity cannot be so narrowed that it no longer protects a President's public about such core political matters as elections.

### b.      President Trump will suffer irreparable harm absent stay relief.

As previously discussed in Section I, President Trump will lose the intended constitutional protections of absolute immunity absent a stay of proceedings in this Court

while his appeal is pending. Immunity is designed to protect a defendant not only from judgment but from the burdens of litigation.

### c.      Plaintiffs will suffer insubstantial injuries, if any, if a stay is granted.

Plaintiffs alleged evidence of the case has all been preserved. Plaintiffs' sources for their claims appear to be (1) their own recollections of the events; (2) congressional records; and (3) public records including tweets, news coverage of President Trump's remarks, and news coverage of the events of January 6, 2021, and other specific dates. All these sources of information are not subject to spoilage as they have been preserved or are in the possession of Plaintiffs to ensure that they are not spoiled pending the resolution of the appeal.

In contrast, President Trump's, and potentially every future presidents', absolute immunity would be damaged by allowing these cases to proceed during the pendency of this appeal. The balance of harms points decidedly towards granting President Trump's request for a stay.

### d.      Granting a stay is firmly in the public interest.

It is always in the public interest for the Constitution of the United States to be fully enforced and properly interpreted. *See Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011) (determining that "upholding constitutional rights is in the public interest. Moreover, it is also in the public interest that the President be left free to act effectively.

This case likely will be integral to the future of absolute immunity doctrine as it relates to the determination of what actions are or are not within the outer perimeter of presidential duties. Such a determination will, at least in part, determine the scope of absolute immunity as applied to the President of the United States for years to come. This scope will inform presidential decision-making on critical issues and effect every aspect of the public interest. It is crucial that the scope be properly determined to prevent stripping absolute immunity of its practical effect. Without absolute immunity, a president could be forced to face the burdens of litigation including lengthy pretrial discovery and depositions. This would erode the public interest underlying the creation and purpose of creating the doctrine of absolute immunity.

## CERTIFICATE OF CONFERENCE

Counsel attempted to confer with the parties in good faith prior to bringing this motion. The other Defendants consent to the stay. The Plaintiffs oppose it.

## CONCLUSION

All activities in this matter, as to all parties, should be stayed until President Trump's claim of absolute immunity is finally resolved.

Dated: December 12, 2022                          Respectfully submitted,

*/s/ Jesse R. Binnall*

Jesse R. Binnall (VA022)

BINNALL LAW GROUP, PLLC

717 King Street, Suite 200

Alexandria, Virginia 22314

Phone: (703) 888-1943

Fax: (703) 888-1930

Email: jesse@binnall.com

*Attorney for Donald J. Trump and Donald J. Trump for President, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on December 12, 2022, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ *Jesse R. Binnall*
Jesse R. Binnall
*Attorney for Donald J. Trump* and *Donald J. Trump for President, Inc.,*