# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MICHIGAN WELFARE RIGHTS
ORGANIZATION, *et al.*,

        *Plaintiffs,*

v.

DONALD J. TRUMP, *et al.*,

        *Defendants.*

Case No. 1:20-cv-03388-EGS

---

### PLAINTIFFS' STATEMENT OF POINTS AND AUTHORITIES
### IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY AND
### STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
### <u>CROSS-MOTION TO COMMENCE DISCOVERY</u>

Samuel Spital (D.D.C Bar No. SS4839)
Janai S. Nelson (*pro hac vice*)
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St., 5th Floor
New York, NY 10006
(212) 965-2200

Anuja D. Thatte (D.D.C. Bar No.
1742276)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
(202) 682-1300

Jason M. Bradford (D.D.C Bar No. IL0073)
Jonathan A. Enfield (D.D.C Bar No. IL0074)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350

Stephen L. Ascher (*pro hac vice*)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

BACKGROUND ........................................................................................................... 3

ARGUMENT .............................................................................................................. 6

I.    A Stay Is Not Appropriate Where an Immunity Defense Applies to a Narrow
Issue Affecting Only One Claim Against a Single Defendant in a Case with
Multiple Claims Against Multiple Defendants. ................................................. 6

      A.    Former President Trump Is Not Entitled to a Stay. ................................. 6

      B.    The Trump Campaign and RNC Are Not Entitled to a Stay. ................... 9

II.    Defendants Do Not Meet Their Burden for a Stay Pending Appeal .................... 9

      A.    Former President Trump's Appeal Is Not Likely to Succeed on the Merits. ....... 10

      B.    Plaintiffs and the Public Interest Would Be Harmed by a Stay. ........................... 12

      C.    A Stay Would Not Irreparably Harm Defendants .................................................. 13

III.    The Court Should Authorize the Commencement of Pre-Answer Discovery. ................. 14

CONCLUSION ............................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice L. v. Dusek*,
    492 F.3d 563 (5th Cir. 2007) ...................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................8, 9

*Briody Cap. Mgmt. LLC v. Muzin*,
    2022 WL 2157047 (D.D.C. June 15, 2022) ..........................................................9

*Clinton v. Jones*,
    520 U.S. 681 (1997).............................................................................................10

*Comm. on the Judiciary v. McGahn*,
    407 F.Supp.3d 35 (D.D.C. 2019) ...................................................................10, 11

*Cuomo v. U.S. Nuclear Regulatory Comm'n*,
    772 F.2d 972 (D.C. Cir. 1985)......................................................................10, 13

*In re Flint Water Cases*,
    960 F.3d 820 (6th Cir. 2020) ................................................................................8

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)...............................................................................................8

*Lugo v. Alvarado*,
    819 F.2d 5 (1st Cir. 1987) .................................................................................7, 8

*Mendia v. Garcia*,
    No. 10-CV-03910, 2016 WL 3249485 (N.D. Cal. June 14, 2016)..........................9

*Meredith v. Fed. Mine Safety & Health Review Comm'n*,
    177 F.3d 1042 (D.C. Cir. 1999) ............................................................................7

*Mi Familia Vota v. Ogg*,
    No. 22-50732 (5th Cir. Oct. 7, 2022).....................................................................7

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)...............................................................................................8

*Saenz v. City of El Paso, Tex.*,
    No. EP-14-CV-244, 2015 WL 4590309 (W.D. Tex. Jan. 26, 2015) ........................9

*Thompson v. Trump*,
    590 F. Supp. 3d 46 (D.D.C. 2022) ........................................................................................1, 11

*WP Co. LLC v. U.S. Small Bus. Admin.*,
    No. 20-1240, 2020 WL 6887623 (D.D.C. Nov. 24, 2020) ......................................................12

**Other Authorities**

Ashley Parker, Josh Dawsey, Tom Hamburger and Jacqueline Alemany, The
    Washington Post,
    https://www.washingtonpost.com/politics/2022/02/05/trump-ripping-
    documents/ ............................................................................................................................13

House of Representatives, *Final Report of the Select Committee to Investigate the
    January 6th Attack on the United States Capitol* (Dec. 22, 2022)...........................................12

Kristen Holmes, CNN, *Trump calls for the termination of the Constitution in
    Truth Social post*, https://www.cnn.com/2022/12/03/politics/trump-
    constitution-truth-social/index.html ..........................................................................................2

Local Civil Rule 16.3(b) ....................................................................................................2, 13

Local Civil Rule 7(m) ............................................................................................................14

The New York Times, *Jan. 6 Committee Refers Former President Trump for
    Criminal Prosecution*, https://www.nytimes.com/live/2022/12/19/us/jan-6-
    committee-trump#jan-6-trump-criminal-justice-dept .................................................................4

Defendants are asking this Court for a stay of this action while former President Donald J. Trump appeals the ruling that he does not have absolute immunity from damages in this case. They argue a stay is appropriate because former President Trump should not be subject to the burdens of discovery when he may be entitled to immunity.  But that rationale for a stay is not applicable here, where there is no question that former President Trump will be subject to the same discovery process, regardless of the outcome of his appeal.  Former President Trump has asserted immunity from damages, but does not appear to contend that he is immune from claims for injunctive relief.  And here, Plaintiffs have brought a claim for injunctive relief under Section 11(b) of the Voting Rights Act.  This claim seeks an injunction requiring all Defendants to, *inter alia*, refrain from intimidating or coercing officials to disregard lawful votes or overturn the result of an election.  Thus, former President Trump will have to engage in discovery on Plaintiffs' claim seeking equitable injunctive relief, regardless of the outcome of his appeal, and the discovery from Defendants would substantially, and perhaps entirely, overlap with the discovery of Plaintiffs' claims for monetary damages.[1]  A stay here would delay these proceedings without good cause.

Further, Defendants fail to meet the high burden required for a stay pending appeal.  First, former President Trump's appeal of his claim of absolute immunity is not likely to succeed on the merits.  Both this Court and another judge in this District have held that former President Trump's attempts to intimidate and coerce election officials are not actions taken within the scope of his role as president and are, therefore, not protected by presidential immunity.  *See Thompson v. Trump*, 590 F. Supp. 3d 46, 84 (D.D.C. 2022).  To hold otherwise—that a current or former

---

[1] Discovery that would be relevant to only Plaintiffs' claim for monetary damages would be limited to the calculation of Plaintiffs' damages, which is information in Plaintiffs' possession, not Defendants'.  If, while discovery is in progress, former President Trump believes a discovery request issued to him would require him to provide discovery relevant only to the Ku Klux Klan Act claim, he could object and raise it with the Court at that time.

president *can* intimidate election officials and seek to overturn valid election results merely because he has served as president—would be at war with the foundational principles of our constitutional democracy, and finds no support in the case law former President Trump relies upon.

Second, issuing a stay would be harmful to Plaintiffs.  Former President Trump has announced that he is running for president again, and he continues to make false claims about the 2020 election in an effort to throw out the election results.  In fact, as recently as December 3, 2022, former President Trump made a social media post seeking to throw out the results of the 2020 election and terminate the Constitution.[2]

Granting a stay now would delay Plaintiffs' ability to obtain an injunction to prevent Defendants from further violating the Voting Rights Act.  The public interest would be similarly harmed by a stay, as voters nationwide who want their votes fairly counted will be harmed if Defendants are not prevented from attempting to throw out valid election results and intimidating voters and election officials.  Defendants' motion for a stay should be denied so that this case can move forward and Plaintiffs can obtain the relief they have been seeking since this case was filed over two years ago.

In fact, given how important it is that this litigation be resolved before the 2024 presidential election, Plaintiffs respectfully renew their request to commence discovery.  Discovery has not been able to proceed under this Court's Local Rules because Defendants have not yet filed an answer to the complaint.  *See* Local Civil Rule 16.3(b).  Now that the Court has granted Plaintiffs' contested motion for leave to file the Second Amended Complaint, and in so doing concluded that the Second Amended Complaint is not futile, Plaintiffs should be able to commence discovery.

---

[2] Kristen Holmes, CNN, *Trump calls for the termination of the Constitution in Truth Social post*, https://www.cnn.com/2022/12/03/politics/trump-constitution-truth-social/index.html.

But Defendants are attempting to continue to delay discovery by seeking a stay and filing a new motion to dismiss.  The Court should not permit this delay tactic to succeed.  Rather, it should deny Defendants' motion for a stay and issue an order allowing discovery to proceed.

## BACKGROUND

The operative complaint in this action is the Second Amended Complaint (Dkt. 60) (the "SAC").  The SAC includes two claims: a claim arising under Section 11(b) of the Voting Rights Act, seeking injunctive relief, and a claim arising under the Ku Klux Klan Act, seeking monetary damages.  Both claims are asserted against all three defendants in this action: former President Trump, Donald J. Trump for President, Inc. ("Trump Campaign"), and the Republican National Committee ("RNC").

Plaintiffs allege that Defendants have, among other things, sought to prevent the counting of legally cast ballots through intimidation and coercion of election officials; recruited and trained volunteers to engage in such intimidation and coercion of election officials, and to launch challenges designed to prevent voters from casting their ballots; attempted to interfere with the certification of election results; and incited supporters to engage in lawless action against election officials.  SAC ¶¶ 20-120.

With respect to former President Trump, the SAC alleges that he:

- publicly attacked Philadelphia City Commissioner Al Schmidt, falsely asserting that the Election in Philadelphia was characterized by "a mountain of corruption & dishonesty," *id.* ¶ 24;

- publicly branded Georgia's Secretary of State as "an enemy of the people," suggested the Georgia Secretary of State and Governor were implicated in "massive voter fraud in Georgia," and amplified a tweet from a supporter saying that they "will soon be going to jail," *id.* ¶ 58;

- made phone calls to the Governor of Georgia and speaker of the Pennsylvania House of Representatives pressuring them to overturn election results, *id.* ¶¶ 58, 61;

- pressured Arizona election officials to stop counting validly cast votes and, on December 24, 2020, to get the election results "fixed up" in former President Trump's favor, *id.* ¶ 60;

- baselessly threatened Georgia Secretary of State Brad Raffensperger with criminal charges if he refused to "find" enough non-existent Trump votes to swing Georgia's electoral votes to former President Trump, *id.* ¶ 59;

- on January 6, 2021, incited followers to use violence and the threat of violence in the United States Capitol building to disrupt the Congress' certification of the states' electoral votes, *id.* ¶¶ 1, 95–108;[3]

- pressured the Speaker of the Wisconsin Assembly to nullify the 2020 election results in March 2022, *id.* ¶ 112, which the Speaker is not legally permitted to do;

- continued in 2022 to pressure, behind the scenes, Alabama Representative Mo Brooks and other lawmakers to "rescind" the 2020 presidential election results, *id.* ¶ 113, which there is no legal basis for doing;

- backed candidates in 2022 elections in order to have a "new Legislature" in Michigan that would, baselessly, try to undermine the 2020 presidential election results, and backed other

---

[3] Since the filing of the Second Amended Complaint, the Select Committee to Investigate the January 6 Attack on the United States Capitol made a criminal referral of former President Trump to the Department of Justice. *See* The New York Times, *Jan. 6 Committee Refers Former President Trump for Criminal Prosecution*, https://www.nytimes.com/live/2022/12/19/us/jan-6-committee-trump#jan-6-trump-criminal-justice-dept. After an investigation that involved interviewing more than 1,000 witnesses and obtaining more than one million documents, the committee accused former President Trump of inciting insurrection and conspiracy to defraud the United States, among other charges.

2022 candidates because they endorse his false claims that the 2020 presidential election was stolen from him, *id.* ¶ 114; and

- acted in concert with other Defendants to pressure state and local officials to discard votes cast by Plaintiffs, their constituents, and other voters in cities with large Black populations, and sought to incite and amplify efforts by former President Trump's supporters to interfere with vote counting, the slating of electors, and the final certification of the election, *id.* ¶ 128.

The conduct outlined above, and further detailed in the SAC, supports both the claim under Section 11(b) of the Voting Rights Act and the claim arising under the Ku Klux Klan Act.

When Plaintiffs moved for leave to file the SAC, Defendants opposed Plaintiffs' motion, arguing that amendment would be futile because the SAC failed to establish that Plaintiffs had standing to pursue their VRA claim and because the SAC would be barred by former President Trump's defense of absolute immunity. Dkt. 56, 57. The Court rejected these arguments, holding that the SAC is not futile. Dkt. 59 at 9-23.

With respect to the Trump Defendants' standing argument, the Court concluded that the SAC adequately showed a "substantial risk" that Plaintiffs' "votes will not be counted or that Plaintiffs will be personally injured due to the actions of Defendants in the future" because the allegations in the SAC "support severe, substantial harm from Former President Trump's ongoing and continued efforts to intimidate officials, spread false claims of fraud, and imperil the right to vote." *Id.* at 18. The Court concluded the allegations demonstrated that "the Trump Defendants not only caused great harm to Plaintiffs in the past but also pose a very substantial risk in the future to Plaintiffs' fundamental right to vote." *Id.*

The Court also concluded the SAC's allegations established the RNC posed a "substantial risk" of future harm to Plaintiffs, based on allegations that (1) the RNC's recruitment is

5

"spearheaded by individuals who publicly encouraged interference and intimidation of officials involved with the certification"; the RNC's trainings "continue the militaristic and adversarial character of the 2020 efforts and frequently refer to the need to create an army of volunteers, resembling the rhetoric of the 2020 intimidation efforts"; and that "state Republican officials have administered virtual trainings likely to encourage poll watchers to assume that votes cast by voters of color are presumptively illegitimate by instructing those poll watchers that fraud is occurring in densely populated, largely Black, Latino, and Asian neighborhoods." *Id.* at 21-22.

With respect to former President Trump's immunity argument, this Court held that "Former President Trump is not immune from monetary damages in this suit." *Id.* at 13. After analyzing the conduct alleged in the SAC, this Court concluded that "Former President Trump's at-issue conduct is purely political and therefore well beyond the contours of presidential immunity," and "[i]f Former President Trump disrupted the certification of the electoral vote count, as Plaintiffs allege here, such actions would not constitute executive action in defense of the Constitution." *Id.* at 11, 13.

On November 30, 2022, former President Trump filed a notice of appeal. Dkt. 61. Former President Trump and the Trump Campaign (collectively, the "Trump Defendants") filed a motion to stay all pretrial proceedings as to all parties "until resolution of President Trump's claim of absolute immunity is finally resolved on appeal." Dkt. 66. The RNC joined the Trump Defendants' motion. Dkt. 67.

## ARGUMENT

**I.  A Stay Is Not Appropriate Where an Immunity Defense Applies to a Narrow Issue Affecting Only One Claim Against a Single Defendant in a Case with Multiple Claims Against Multiple Defendants.**

### A.  Former President Trump Is Not Entitled to a Stay.

Defendants contend that because former President Trump is claiming immunity from suit,

the entire action must be stayed to ensure he "be spared from all the burdens of litigation." Dkt. 66-1 at 6. But former President Trump cannot be spared from all the burdens of litigation here, where his immunity defense applies to only one of two claims brought against him.

"[I]mmunity does not extend to a suit seeking equitable relief." *Meredith v. Fed. Mine Safety & Health Review Comm'n*, 177 F.3d 1042, 1049 (D.C. Cir. 1999). Former President Trump does not appear to contend that he is immune from injunctive relief, *see* Dkt. 25-1 at 16-17 (arguing immunity for damages liability only), which is what the Plaintiffs seek for their VRA claim. This means that even if former President Trump were to succeed on his appeal of his immunity defense, he would be immune only from Plaintiffs' damages claim under the Ku Klux Klan Act; former President Trump would still be forced to litigate Plaintiffs' VRA claim.

Thus, it does not benefit former President Trump to shield him from discovery now when he will be subject to the same discovery process on Plaintiffs' VRA claim regardless of the outcome of his appeal. Courts facing similar circumstances have permitted cases to proceed even where there was a potential immunity defense because it was clear that the parties would be subject to discovery with respect to claims where they were not immune. In *Lugo v. Alvarado*, 819 F.2d 5 (1st Cir. 1987), the plaintiff sought both money damages and equitable relief. The defendant claimed he was entitled to qualified immunity and sought a stay of all proceedings until the immunity issue was resolved. *Id.* at 6. The District Court refused to stay discovery with respect to the equitable claim. *Id.* On appeal, the First Circuit also declined to issue a stay, emphasizing that the defendant would be subject to discovery on the equitable claim no matter what happened:

> Regardless of what happens to the damage claim in this case, the equitable requests stand on a different footing. [. . .] [T]he suspension of discovery proceedings on the equitable claims, solely because of an allegation of qualified immunity, only delays the case unnecessarily, because sooner or later the parties will have the right to engage in discovery as to the equitable claims, irrespective of

whether there is a surviving damage action.

*Id.* at 7.  As another example, in *Mi Familia Vota v. Ogg*, No. 22-50732 (5th Cir. Oct. 7, 2022), the defendant sought to stay a case involving constitutional, VRA, and other claims while she appealed the denial of her sovereign immunity defense.  Because the defendant's sovereign immunity defense could not bar the VRA claims against her, the court denied the stay.  Or, as the Sixth Circuit Court of Appeals recently explained in denying a motion to stay all discovery pending resolution of an immunity defense, the "right to immunity is a right to immunity *from certain claims*, not from litigation in general."  *In re Flint Water Cases*, 960 F.3d 820, 826 (6th Cir. 2020) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996)) (Sixth Circuit's emphasis; *see also Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007) (denying stay of discovery pending appeal of a qualified immunity defense because the plaintiff had also brought a claim for which there was no such defense, and even though the factual basis of the claims overlapped, they were "legally distinct"  and  "[t]o the extent that [the defendant] is subject to discovery requests on claims for which she does not or cannot assert qualified immunity, such discovery requests do not implicate her right to qualified immunity.").  Here, where there is one claim that could be subject to former President Trump's immunity defense and one claim that cannot, and where the claims are based on the same underlying conduct and will involve the same discovery, there is no basis to issue a stay; former President Trump, and the other defendants in this case, will be required to participate in discovery in this matter regardless of the outcome of his appeal.  These circumstances demonstrate why the Trump Defendants' authorities are inapposite.  Their reliance on *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), and *Mitchell v. Forsyth*, 472 U.S. 511 (1985), is misplaced because "[t]hose cases were suits for damages only, unlike this case, where the plaintiff[s] also requested injunctive relief, as to which a defense of . . . immunity is totally immaterial."  *Lugo*,

8

819 F.2d at 7.

**B. The Trump Campaign and RNC Are Not Entitled to a Stay.**

Defendants rely on language from *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to argue that a stay should apply not only to former President Trump, but to all defendants.  Dkt. 66-1 at 7; Dkt. 67 at 1.  But the language in *Iqbal* is not applicable to the circumstances here.

*Iqbal* did not involve a motion for a stay pending appeal, but concerned whether pleading standards should be relaxed.  The Supreme Court noted that maintaining a robust pleading standard was "especially important" in suits against *current* government officials who may assert an immunity defense, since requiring a current government official to participate in litigation, even where discovery was proceeding only with respect to non-government parties, would divert the official's time from his or her duties as a government official.  556 U.S. at 685.  Here, there are no "costs of diversion" because former President Trump is not currently a government official.  And, as noted above, former President Trump will have to participate in this litigation regardless of the outcome of his appeal.  Because there is no basis for discovery to be stayed with respect to former President Trump, there is similarly no basis for discovery to be stayed with respect to the Trump Campaign or the RNC.

In any event, other courts have permitted discovery to proceed for non-immune parties even while a partial stay was in effect for a party asserting an immunity defense.  *See Saenz v. City of El Paso, Tex.*, No. EP-14-CV-244, 2015 WL 4590309 (W.D. Tex. Jan. 26, 2015) (refusing to stay discovery as to all parties where only one defendant raised an immunity defense); *Mendia v. Garcia*, No. 10-CV-03910, 2016 WL 3249485 (N.D. Cal. June 14, 2016) (limiting stay to discovery related to claims asserted against defendants raising immunity defense).

**II.  Defendants Do Not Meet Their Burden for a Stay Pending Appeal.**

"A stay pending appeal is an extraordinary remedy because it is an intrusion into the

ordinary processes of administration and judicial review." *Briody Cap. Mgmt. LLC v. Muzin*, 2022 WL 2157047 at \*2 (D.D.C. June 15, 2022) (cleaned up).  Accordingly, Defendants here "bear[] the 'burden of showing that exercise of the court's extraordinary injunctive powers is warranted.'" *Comm. on the Judiciary v. McGahn*, 407 F.Supp.3d 35, 38 (D.D.C. 2019) (quoting *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)).

"The factors to be considered in determining whether a stay is warranted are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).

Defendants fail to make a showing on any of the four elements.

**A.  Former President Trump's Appeal Is Not Likely to Succeed on the Merits.**

"[A] party seeking a stay pending appeal must 'raise questions going to the merits so serious, substantial, difficult, and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Comm. on the Judiciary v. McGahn*, 407 F.Supp.3d 35, 38 (D.D.C. 2019) (quoting *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C. Cir. 1977).  "[A] movant's failure to satisfy this stringent standard for demonstrating a likelihood of success on the merits is 'an arguably fatal flaw for a stay application.'" *Id.* at 38-39 (quoting *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam)).

Former President Trump's appeal fails to meet this standard.  It is well-settled that immunity does not protect acts that a president undertook outside his official duties as President. *See Clinton v. Jones*, 520 U.S. 681, 694-95 (1997) (finding that the President's "effort to construct an immunity from suit for unofficial acts grounded purely in the identity of his office is

unsupported by precedent").  Plaintiffs plainly pursue claims against former President Trump for actions taken in his personal capacity as a *candidate*, not in his official capacity as President.  SAC ¶¶ 1, 13.  Those actions include pressuring election officials to illegally overturn valid election results and inciting his followers to use violence in the Capitol to disrupt Congress's certification of electoral votes, *see supra* at 3-5.  These actions are not merely "a speech by the President," as the Trump Defendants claim.  Dkt. 66-1 at 9.  Nor would holding former President Trump liable for threatening election officials or inciting violence "chill the speech of all future Presidents," *id.*; it would merely disincentive them from interfering in elections.

This Court has already recognized that attempts to overturn election results are not protected by immunity.  Dkt. 59 at 10-13.  Another judge in this District has also held that former President Trump's actions concerning "his efforts to remain in office for a second term" are not protected by presidential immunity.  *Thompson v. Trump*, 590 F. Supp. 3d 46, 84 (D.D.C. 2022).  That two courts have come to this conclusion further undermines former President Trump's claim that he is likely to succeed on the merits of his appeal.  *See McGahn*, 407 F. Supp. at 40-41 (denying stay where "[t]wo district court judges have now addressed each of [movant]'s legal contentions on identical facts and both have reached the same conclusions").

In their motion, the Trump Defendants' only argument that former President Trump's immunity should apply is their contention that former President Trump "desire[d] that all protests be peaceful" and "acted completely legally and appropriately," which comes from cherry-picking two tweets former President Trump wrote *after* the January 6 attack on the Capitol was well under way.  Dkt. 66-1 at 3-4.[4]  Those two tweets do not erase the inflammatory speech former President

---

[4] The Trump Defendants also cite to statements made by Representative Maxine Waters and Senator Chuck Schumer.  Dkt. 66-1 at 5 & n.1.  It is not clear how these statements could increase former President Trump's likelihood of succeeding on the merits of his appeal.

Trump made hours before which incited his followers to violently storm the Capitol.  In fact, at 2:24 PM on January 6, former President Trump tweeted in an attempt to intimidate and coerce former Vice President Pence, even after the Capitol building had been breached.  Despite the Trump Defendants' claim that former President Trump only wanted peace, he largely remained silent while the Capitol was being stormed by violent supporters.  It was not until 187 minutes after concluding his speech at the Ellipse that he finally told his supporters to leave the Capitol.

In any event, these are disputes that go to the merits of Plaintiffs' claims.  Taking Plaintiffs' allegations as true, as required on a motion to dismiss, the conduct alleged in the complaint concerns political activities by President Trump as a candidate that are not protected by absolute immunity.  Former President Trump's incitement of violence on January 6 and his prior attempts to coerce and threaten election officials, as alleged in the Second Amended Complaint, is conduct clearly not protected by presidential immunity.[5]

### B.  Plaintiffs and the Public Interest Would Be Harmed by a Stay.

Discovery should not be stayed where there is "an urgent and immediate interest" in resolving the underlying lawsuit.  *WP Co. LLC v. U.S. Small Bus. Admin.*, No. 20-1240, 2020 WL 6887623 at *4 (D.D.C. Nov. 24, 2020).  Here, such an interest exists for two reasons.

First, delays in this case will only delay the injunctive relief Plaintiffs seek.  Former President Trump has announced he is running for president again, and he has resumed making

---

[5] This conclusion is underscored by the report released yesterday by the Select Committee to Investigate the January 6th Attack on the United States Capitol, which makes clear that former President Trump's actions were entirely political actions taken in his personal capacity as a candidate.  *See, e.g.,* House of Representatives, *Final Report of the Select Committee to Investigate the January 6th Attack on the United States Capitol* (Dec. 22, 2022) at 346–354 (discussing efforts by former President Trump to coordinate with the RNC to organize alternate slates of electors in the weeks following the 2020 election); *id.* at 41–55 (discussing personal efforts by former President Trump to pressure state election officials); *id.* at 43 ("Donald Trump was also personally and substantially involved in multiple efforts to pressure State election officials and State legislatures to alter official lawful election results.").

false claims about the 2020 election in an effort to throw out the election results.  Without an injunction in place, Defendants can continue to violate the rights of Plaintiffs, Plaintiffs' members, and voters nationwide who are entitled to have their votes fairly counted. Postponement of discovery until the appeals process is fully resolved poses the very real danger that Plaintiffs would be deprived of the equitable relief they seek at the time of the 2024 election.

Second, evidence could be lost or destroyed in the time the stay is in place.  The Trump Defendants attempt to minimize the evidence necessary in this case by citing only to the evidence Plaintiffs relied upon in the SAC.  Dkt. 66-1 at 10.  Of course, Plaintiffs drafted the SAC without the benefit of discovery, and Plaintiffs will seek additional evidence to prove their claims, including evidence that is currently only in the possession of Defendants, such as internal emails and text messages.  It is important that Plaintiffs be allowed to obtain this evidence promptly, especially given evidence that former President Trump frequently destroyed official documents.[6]

### C. A Stay Would Not Irreparably Harm Defendants.

"A party moving for a stay is required to demonstrate that the injury claimed is both certain and great."  *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 976 (D.C. Cir. 1985).  Here, there will be no injury to Defendants absent a stay.

The Trump Defendants claim former President Trump would be harmed absent a stay because he would "lose the intended constitutional protections of absolute immunity."  Dkt. 66-1 at 9.  But practically speaking, as discussed in more detail above, he would not lose any protections if he is subjected to discovery now, because he will have to participate in discovery regardless of

---

[6] *See* Ashley Parker, Josh Dawsey, Tom Hamburger and Jacqueline Alemany, The Washington Post, "'He never stopped ripping things up': Inside Trump's relentless document destruction habits," Feb. 5, 2022, https://www.washingtonpost.com/politics/2022/02/05/trump-ripping-documents/.

whether he succeeds on appeal because his immunity defense applies to only one of the two claims pending against him.

The Trump Campaign and RNC do not advance any arguments why they would be harmed absent a stay.

**III.   The Court Should Authorize the Commencement of Pre-Answer Discovery.**

Discovery has not begun in this case because Local Civil Rule 16.3(b) exempts from discovery cases in which no answer has been filed.  The Trump Defendants have stated that they will file a motion to dismiss the SAC, which they claim is a further ground to delay discovery in this matter.  *Id.* at 5 n.2.  Any such motion will be futile and a waste of time.

The Court already addressed the majority of Defendants' arguments for dismissal of Plaintiffs' VRA claim, holding that the "SAC sufficiently alleges a claim for equitable relief against the RNC under the VRA" and that the SAC's "allegations support severe, substantial harm from Former President Trump's ongoing and continued efforts to intimidate officials, spread false claims of fraud, and imperil the right to vote."  Dkt. 59 at 18, 23.  The same allegations in the SAC that state a claim under the VRA also establish a conspiracy to interfere with civil rights in violation of the Ku Klux Klan Act.  As a result, there are limited grounds for Defendants to move to dismiss the SAC, and there is a low likelihood that Defendants' motions will succeed.

Any forthcoming motions to dismiss should not be a basis to further delay discovery.  It is important that this case proceed so that Plaintiffs can obtain discovery, especially as campaign efforts for the 2024 presidential election begin and Defendants resume their attempts to threaten, intimidate, and coerce voters and election officials to deny voters their right to have their votes fairly counted.  Given recent conduct by former President Trump, such as calling to "terminate" the Constitution, discovery is highly likely to lead to even more support for Plaintiffs' claims than they have already obtained from the public record.

14

Accordingly, Plaintiffs respectfully request the Court to authorize Plaintiffs to commence pre-answer discovery.

Pursuant to Local Civil Rule 7(m), undersigned counsel contacted counsel for each of Defendants on December 22, 2022 seeking their position on the relief sought by this motion. Counsel for all Defendants stated that they oppose the motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion for Stay and grant Plaintiffs' Cross-Motion to Commence Discovery.

Dated:  December 23, 2022

*Full counsel information on cover page.*

Respectfully submitted,
/s/ *Jason M. Bradford*

Jason M. Bradford (D.D.C. Bar No. IL0073)
*Counsel for Plaintiffs*

15

**CERTIFICATE OF SERVICE**

I certify that on December 23, 2022, I electronically filed the foregoing Plaintiffs' Statement of Points and Authorities in Opposition to Defendants' Motion for Stay and Statement of Points and Authorities in Support of Plaintiff's Cross-Motion to Commence Discovery with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

Dated:  December 23, 2022                    /s/ *Jason M. Bradford*
                                                     Jason M. Bradford
                                                     Attorney for Plaintiffs