IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**MICHIGAN WELFARE RIGHTS**
**ORGANIZATION,** *et al.*

                *Plaintiffs,*

v.

**DONALD J. TRUMP,** *et al.*

                *Defendants.*

Civil Case No. 1:20-cv-03388-EGS

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR STAY AND**
**OPPOSITION TO PLAINTIFFS' CROSS-MOTION TO COMMENCE DISCOVERY**

Jesse R. Binnall (VA022)
THE BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com

*Attorney for Donald J. Trump and*
*Donald J. Trump for President, Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

ARGUMENT ........................................................................................................ 1

    I.     Plaintiffs' attempt to open discovery is contrary to procedural rules and caselaw. .............................................. 1

    II.    Plaintiffs are incorrect that they should be able to commence discovery now because they bring a claim for injunctive relief. ................................................. 7

          a.   Any decision on absolute immunity will inform what is going to be discoverable. .................................. 7
          b.   Plaintiffs manufactured a claim for injunctive relief as an end run around immunity. ....................................... 7

    III.   President Trump and other defendants are entitled to a stay pending appeal. ......................................... 9

          a.   President Trump's appeal is likely to succeed on the merits. ............................................................... 9
          b.   Denial of a stay would irreparably harm President Trump and other Defendants. ................................. 10
          c.   The public interest would not be harmed by a stay, nor would Plaintiffs. ........................................... 10

    IV.   The stay would apply to all parties. ................................... 12

CONCLUSION ................................................................................................. 13

CERTIFICATE OF SERVICE ....................................................................... 15

# TABLE OF AUTHORITIES

### Cases

*Alexander v. United States*,

>509 U.S. 544, 550 (1993) ........................................................................8

*Anderson v. United States Attorneys Office*,

>Civ. A. No. 91–2262–LFO, 1992 WL 159186, at *1 (D.D.C. Jun. 19, 1992) ......5

*Ashcroft v. Iqbal,*

>556 U.S. 662, 685-686 (2009) .............................................................13

*Associated Mortg. Bankers Inc. v. Carson*,

>No. 1:17-cv-75, 2017 WL 6001733, at *6 (D.D.C. Dec. 1, 2017) ........................2

*Blassingame, et al. v. Trump*,

>No. 22-5069, ECF No. 1940608 (D.C. Cir. *appeal docketed* Mar. 22, 2022)......9

*Chang v. United States*,

>246 F.R.D. 372, 374 (D.D.C. 2007) ....................................................6

*Crawford-El v. Britton*,

>523 U.S. 574, 598 (1998) ......................................................................6

*Disability Rts. Council of Greater Wa. v. Wa. Metro. Area Transit Auth.*,

>234 F.R.D. 4, 6 (D.D.C. 2006) ...........................................................3

*District of Columbia v. Jones*,

>919 A.2d 604, 611 (D.C. 2007) ...........................................................6

*Edwards v. District of Columbia,*

    765 F.Supp.2d 3, 14 (D.D.C. 2011) ...................................................................9

*Guttenberg v. Emery,*

    26 F. Supp. 3d 88, 97 (D.D.C. 2014) .............................................................3, 4

*Hanley v. Donoghue,*

    116 U.S. 1, 6 (1885) ......................................................................................12

*Harlow v. Fitzgerald,*

    457 U.S. 800, 818 (1982) ..................................................................................6

*In re Fannie Mae,*

    227 F.R.D. 142 (D.D.C. 2005) ...........................................................................4

*Institut Pasteur v. Chiron Corp.,*

    315 F. Supp. 2d 33, 37 (D.D.C. 2004) ..............................................................5

*Legend Night Club v. Miller,*

    637 F.3d 291, 303 (4th Cir. 2011) ..................................................................10

*Mitchell v. Forsyth,*

    472 U.S. 511, 526 (1985) ............................................................................6, 10

*Moore v. Castro,*

    Civil Action No. 14–2109 (JDB), 2016 WL 10674309, at *1

    (D.C. Cir. Jan. 14, 2016).....................................................................................5

*Neb. Press Ass'n v. Stuart,*

    427 U.S. 539, 559 (1976) ..................................................................................8

*New York Times v. United States,*

    403 U.S. 713, 714 (1971) ...................................................................8

*Nixon v. Fitzgerald,*

    457 U.S. 731, 746 (1982) ...................................................................6

*Notaro v. Koch,*

    95 F.R.D. 403, 405 (S.D.N.Y. 1982) ...................................................3

*Org. for a Better Austin v. Keefe,*

    402 U.S. 415, 419 (1971) ...................................................................8

*Reed v. Town of Gilbert, Ariz.,*

    576 U.S. 155, 163 (2015) ...................................................................9

*U.S. v. Manigault Newman,*

    No. 19-CV-1868-RJL (Minute Order Dec. 6, 2019)...........................5

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.,*

    301 F.R.D. 5, 8 (D.D.C. 2013) ............................................................2

*White v. Fraternal Order of the Police,*

    909 F.2d 512, 516–17 (D.C. Cir. 1990) ..............................................5

**Statutes**

25 Pa. Stat. and Cons. Stat. Ann. § 2687 (West 2004)............................11

Ga. Code Ann. § 21-2-408 (West 2021).......................................................11

Mich. Comp. Laws Ann. § 168.733 (1995) ................................................11

Mich. Comp. Laws Ann. § 168.874 (1995) ................................................11

Wis. Stat. Ann. § 7.41(1) (West 2019) ......................................................11

## Rules

LCvR 16.3(b)...................................................................................................................2

LCvR 16.3(c)...................................................................................................................6

In direct opposition to this Court's rules and without any caselaw in support of their position, Plaintiffs expose the political purpose of their lawsuit—obtaining discovery against a current candidate for President of the United States, his campaign, and the Republican National Committee. To this end, Plaintiffs boldly seek to initiate discovery before motions to dismiss their entire case are decided, and before an appeal on a dispositive threshold immunity issue is considered by the D.C. Circuit.

In support of their request for expedited, pre-answer discovery, Plaintiffs offer no caselaw and minimal argument. Rather, Plaintiffs seek to brush aside issues with the scope of their potential discovery and seek an illusory injunctive relief that would merely require President Trump, his campaign, and the RNC to follow the law, a requirement that already applies to them. In doing so, Plaintiffs are seeking to make an end run around the restriction on absolute immunity and obtain discovery on their political adversaries.

Therefore, President Trump and Donald J. Trump for President, Inc. respectfully request this Court deny Plaintiffs' cross-motion to commence discovery and grant their motion to stay all proceedings pending the resolution of the motions to dismiss and President Trump's appeal.

## ARGUMENT

### I.   Plaintiffs' attempt to open discovery is contrary to procedural rules and caselaw.

Plaintiffs seek to downplay the simple fact that their request to commence discovery flies in the face of this Court's rules of procedure, seeks to short-circuit the

Federal Rules of Civil Procedure, and ignores precedent. Plaintiffs claim that filing a motion to dismiss their second amended complaint would be a "delay tactic." Dkt. No. 68.1 at 7. Apparently, Plaintiffs assume that, by Defendants utilizing their option to file to dismiss an amended complaint, they are only seeking delay. The simple truth, however, is that the Court, in its consideration of whether to grant leave for Plaintiffs to file the Second Amended Complaint, did not fully consider the issues that would be presented in a motion to dismiss.

The "generous standard" for granting leave to amend is not the same standard this Court applies to a motion to dismiss. *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 8 (D.D.C. 2013). A Court is not "prejudging the merits of … a motion to dismiss" when it considers a motion for leave to amend. *Associated Mortg. Bankers Inc. v. Carson*, No. 1:17-cv-75, 2017 WL 6001733, at *6 (D.D.C. Dec. 1, 2017). The Court certainly was not prejudging the merits of Plaintiffs' entitlement to relief in this case when it considered whether to grant them leave to amend.

Therefore, Plaintiffs are incorrect that there are "limited grounds" upon which Defendants may seek to dismiss their lawsuit and that there is a "low likelihood" that the motions to dismiss may be successful. Dkt. No. 68.1 at 14. This Court has not yet fully considered the issues in the forthcoming motion to dismiss the second amended complaint, as the motion to dismiss has not yet been filed.

In addition, this Court has promulgated clear rules of procedure that limit the beginning of discovery until after an answer has been filed. LCvR 16.3(b). These

Court rules comply with the Federal Rules of Civil procedure and are also supported by precedent from this judicial district, as well as other courts.

First, "expedited discovery is not the norm, particularly where defendants have filed a motion to dismiss." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014) (emphasis added). Courts generally take one of two approaches to determine whether expedited discovery is appropriate: "(1) the *Notaro* test and (2) the reasonableness, or good cause, test." *Disability Rts. Council of Greater Wa. v. Wa. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006).

To satisfy the *Notaro* test, "a moving party must demonstrate":

'(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.'

*Guttenberg*, 26 F. Supp. 3d at 97 (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)).

Plaintiffs have not and cannot show irreparable injury as required by the *Notaro* test. This Court dismissed Plaintiffs' first amended complaint because Plaintiffs failed to allege future harm. Dkt. No. 49 at 42. Their second amended complaint also fails to allege future harm, as well as irreparable harm. Plaintiffs also fail to demonstrate a "connection between the expedited discovery and the avoidance of the irreparable injury," and "evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Guttenberg*, 26 F. Supp. 3d at 97. Plaintiffs put forth no

argument on how expedited discovery would avoid irreparable injury or outweigh the burden of such expedited discovery to Defendants. Plaintiffs also have not provided any analysis of how the burden of expedited discovery on Defendants is less than any harm Plaintiffs face without expedited discovery. Therefore, Plaintiffs have failed the *Notaro* test.

Second, courts may apply a different test—the "good cause" test—"when a plaintiff requests expedited discovery for the purpose of fleshing out a preliminary injunction motion." *Guttenberg*, 26 F. Supp. 3d at 97. Despite, Plaintiffs' decision not to move for a preliminary injunction, their request would fail this test as well. The good-cause test considers:

> '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'

*Guttenberg*, 26 F. Supp. 3d at 98 (quoting *In re Fannie Mae*, 227 F.R.D. 142 (D.D.C. 2005)). Plaintiffs, however, have not filed for a preliminary injunction and have not shown a probability of success on the merits. In fact, Plaintiffs have not advanced any support for their request. Moreover, Plaintiffs have failed to put forth any argument or consideration of the burden on Defendants of responding to discovery while there are ongoing appeals and motions to dismiss, far in advance of the normal timeframe for discovery. The likely breadth of their proposed discovery will also weigh against their claim of expedited discovery.

Finally, Plaintiffs have demonstrated a lack of urgency. Plaintiffs did not seek expedited discovery when they filed their original complaint or their amended complaint, yet they now seek to tell this Court that it is imperative that discovery commence immediately. Both Plaintiffs and Defendants have received extensions of deadlines in this case already, weighing further against any claim of urgency. Therefore, Plaintiffs have failed this test as well, and their motion should be denied.

Moreover, the D.C. Circuit has already determined that it is "generally considered inappropriate" to begin discovery "while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 37 (D.D.C. 2004) (quoting *Anderson v. United States Attorneys Office*, Civ. A. No. 91–2262–LFO, 1992 WL 159186, at *1 (D.D.C. Jun. 19, 1992)). Because of this, it is common for courts to grant stays where the resolution of a pending dispositive motion could obviate the need for discovery entirely. *See, e.g., White v. Fraternal Order of the Police*, 909 F.2d 512, 516–17 (D.C. Cir. 1990) (upholding the district court's stay of discovery pending resolution of defendants' motion for summary judgment); *U.S. v. Manigault Newman*, No. 19-CV-1868-RJL (Minute Order Dec. 6, 2019) (staying discovery pending resolution of a motion to dismiss); *Moore v. Castro*, Civil Action No. 14–2109 (JDB), 2016 WL 10674309, at *1 (D.C. Cir. Jan. 14, 2016) (staying initiation of discovery as well as the Rule 26(f) conference and Rule 16(b) scheduling order pending resolution of defendants' motion to dismiss). Further, Local Civil Rule 16.3(c) of this Court requires

parties to a case to discuss whether the parties should jointly suggest a stay to the Court when dispositive motions are pending. LCvR 16.3(c).

More importantly, the Supreme Court has been clear: "until a threshold immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (requiring that district courts resolve immunity disputes before allowing discovery to proceed). Absolute immunity is designed to entitle a President (and other specific defendants such as members of Congress and the Judiciary) to be spared from all the burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (recognizing that immunity is an entitlement to avoid the burdens of litigation); *Nixon v. Fitzgerald*, 457 U.S. 731, 746 (1982) (finding that immunity exists in qualified and absolute form depending on the executive branch officials function and protects from the burdens of litigation).

Indeed, "the purpose of conferring absolute immunity is to protect officials not only from the ultimate liability but also from the time-consuming, distracting, and unpleasant aspects of a lawsuit, including discovery." *District of Columbia v. Jones*, 919 A.2d 604, 611 (D.C. 2007); *see also Chang v. United States*, 246 F.R.D. 372, 374 (D.D.C. 2007) (early adjudication of immunity disputes is necessary "to spare the official of the tribulation and expense of defending the suit at all").

Plaintiffs do not cite a single case in support of their argument that they are entitled to expedited, pre-answer discovery in this case. Rather, they make a policy argument that without discovery now, they may be harmed by Defendants' actions.

Dkt. No. 68.1 at 14. This, however, is misleading at best. The 2022 elections are already over, and the next federal elections are many months away. There is no immediate danger to Plaintiffs at this time, thus, expedited discovery is improper.

## II.    Plaintiffs are also incorrect that they should be able to commence discovery now because they bring a claim for injunctive relief.

Plaintiffs argue that because President Trump may be subject to discovery on their VRA claim, which only seeks injunctive relief, to which immunity does not generally apply, they should be able to commence full discovery now. This is incorrect for several reasons.

### a.    Any decision on absolute immunity will inform what is going to be discoverable.

As an initial matter, the scope of discovery will be different. Even Plaintiffs admit this, although they attempt to explain it away. Dkt. 68.1 at 1 n.1. Plaintiffs, however, cannot know what discovery will be protected by absolute immunity, or for that matter, if they will even be able to commence discovery once this Court considers Defendants' forthcoming motions to dismiss. Thus, beginning discovery at this time is improper as the scope of discovery may be influenced by any decision on absolute immunity.

### b.    Plaintiffs manufactured a claim for injunctive relief as an end run around immunity.

Plaintiffs' so-called request for injunctive relief is a thinly veiled pretense to attach a claim that is facially outside of the protection of absolute immunity. By

bringing a claim for injunctive relief that would merely require President Trump and his campaign to abide by the law as decided by this Court, they are seeking to make an end run around President Trump's immunity.

Allowing such an action to succeed in commencing discovery during the pendency of an appeal of absolute immunity would open the floodgates in all future cases. This would signal that if you wish to obtain discovery in such cases, merely attaching a claim for injunctive relief requiring adherence to the law would be enough to destroy the protections of immunity.

The Court should not reward this cursory claim with serious consideration, especially as the VRA claim has previously been dismissed by this Court. Further, the injunction that Plaintiffs seek would plainly be a prior restraint on political speech deemed unconstitutional by the First Amendment.

Court orders that proscriptively forbid speech activities are classic examples of prior restraints. *Alexander v. United States*, 509 U.S. 544, 550 (1993). Prior restraints "are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

Prior restraints are presumed to be constitutionally invalid, and the government's burden of justifying such a restraint is heavy. *New York Times v. United States*, 403 U.S. 713, 714 (1971) (the Pentagon Papers case). Indeed, any prior restraint on expression comes to this Court with a "heavy presumption" against its constitutional validity. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). Content-based laws—those that target speech based on its communicative content—

are presumptively unconstitutional and may only be justified if the government proves that they are narrowly tailored to serve compelling governmental interests. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *see also Edwards v. District of Columbia*, 765 F. Supp. 2d 3, 14 (D.D.C. 2011).

No conceivable issue of public concern could justify the issuance of a prior restraint against a candidate for any public office, and certainly not when the office being sought is that of President of the United States; Plaintiffs have certainly not pled one here. If a prior restraint was not appropriate to stop the dissemination of classified information found in the Pentagon Papers, it is certainly not appropriate here. Therefore, Plaintiffs' request for pre-answer discovery should be denied.

### III. President Trump and other defendants are entitled to a stay pending appeal.

#### a. President Trump's appeal is likely to succeed on the merits.

The Court determined that "[i]f Former President Trump disrupted the certification of the electoral vote count, as Plaintiffs allege here, such actions would not constitute executive action in defense of the Constitution. For these reasons, the Court concludes that President Trump is not immune from monetary damages in this suit." Dkt. No. 59 at 13. The proper limit of the inquiry, however, is that President Trump's actions involved speech on matters of public concern, namely the veracity and sanctity of the 2020 election results. This exact issue is currently on appeal before the D.C. Circuit. *Blassingame, et al. v. Trump*, No. 22-5069, ECF No. 1940608 (D.C. Cir. *appeal docketed* Mar. 22, 2022).

Millions of Americans were concerned about the outcome of the election in 2020. President Trump was speaking to the American public on an issue of public concern in all the allegations made by Plaintiffs. It is of no moment whether Plaintiffs, or even this Court, agreed with arguments made in those Presidential statements. It is enough that the nature of the activity, a speech by the President on a matter of public concern, is the type of activity normal and customary to the presidency. Therefore, it is likely that the appeals court will reconsider this decision on appeal.

>   b.   **Denial of a stay would irreparably harm President Trump and other Defendants.**

First, President Trump would be irreparably injured without a stay because he would be denied his protection from the burdens of litigation while his appeal is pending. This right to be free from the burdens of litigation is fundamental to the absolute immunity invested in the President. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

All the other Defendants would also be harmed by initiating discovery before motions to dismiss are decided because they would be required to expend resources and attorneys' fees preparing discovery that may not be needed or warranted.

>   c.   **The public interest would not be harmed by a stay, nor would Plaintiffs.**

It is always in the public interest for the Constitution of the United States to be fully enforced and properly interpreted. *See Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011) (determining that "upholding constitutional rights is in the public interest.)

Moreover, it is also in the public interest that every President be left free to act effectively. This case likely will be integral to the future of the absolute immunity doctrine as it relates to the determination of what actions are or are not within the outer perimeter of presidential duties. Such a determination will, at least in part, determine the scope of absolute immunity as applied to every President of the United States for years to come.

This scope will inform presidential decision-making on critical issues and affect every aspect of the public interest. It is crucial that the scope be properly determined to prevent stripping absolute immunity of its practical effect. Without absolute immunity, every future President could be forced to face the burdens of litigation, including lengthy pretrial discovery and depositions, despite acting within the bounds of the presidency. This would erode the public interest underlying the purpose of absolute immunity.

Further, contrary to their contention, Plaintiffs would not be harmed by a stay of their claims. First, all the actions taken by Defendants, and complained of by Plaintiffs, are related to the administration of elections, which are authorized by law. The States that Plaintiffs discuss—Michigan, Wisconsin, Pennsylvania, and Georgia—all have laws on the books allowing election supervision by campaigns and individuals that volunteer to oversee the elections. *See* MICH. COMP. LAWS ANN. § 168.733 (1995); MICH. COMP. LAWS ANN. § 168.874 (1995); WIS. STAT. ANN. § 7.41(1) (West 2019); 25 PA. STAT. AND CONS. STAT. ANN. § 2687 (West 2004); GA. CODE ANN. § 21-2-408 (West 2021). This Court, of course, may take judicial notice of these

11

provisions of law that specifically allow many of the actions of which Plaintiffs complain. *See Hanley v. Donoghue*, 116 U.S. 1, 6 (1885) ("When exercising an original jurisdiction under the constitution and laws of the United States, this court, as well as every other court of the national government, doubtless takes notice, without proof, of the laws of each of the United States.").

Further, as explained above, the injunctive relief that Plaintiffs seek is nothing more than a requirement that Defendants follow the law, which they already must and do. Finally, the next federal elections are many months away, and there is no immediate harm to Plaintiffs in staying this case pending consideration of Defendants' motions to dismiss and President Trump's appeal, particularly as this Court has previously issued one opinion on prior motions to dismiss and the D.C. Circuit Court of Appeals has already heard a similar appeal on President Trump's absolute immunity.

Therefore, Plaintiffs will not be harmed by a stay, and the public interest is firmly in favor of a stay preserving absolute immunities protections for all future presidents.

## IV.    The stay would apply to all parties.

Regardless of whether this Court issues a stay pending resolution of the forthcoming motions to dismiss or pending resolution of President Trump's appeal or both, the stay would apply to all parties.

First, the RNC has indicated that it will also be filing a motion to dismiss, and regardless, the Trump Defendants' pending motion to dismiss would prevent discovery from beginning until it is resolved.

Second, Plaintiffs are incorrect in their analysis of whether *Ashcroft v. Iqbal* is informative in this case. *See* Dkt. No. 68.1 at 9. Plaintiffs seem to imply that *Iqbal* is only about pleading standards and that the language of the case is inapposite because it is only about current government officials. *Id.* This, however, is misleading. While the *Iqbal* Court was discussing whether the complaint in that case was sufficient to survive a motion to dismiss and begin discovery, this is clearly applicable to this case for two reasons: (1) there will soon be pending motions to dismiss, which preclude discovery, and (2) the *Iqbal* Court was considering the issues before this Court, whether discovery can commence against one defendant while another's immunity issue is pending and found that it could not. *Ashcroft v. Iqbal,* 556 U.S. 662, 685-686 (2009). This is especially persuasive because the exact same concerns outlined by the *Iqbal* Court are in play in *any* consideration of beginning discovery while an immunity issue is pending. Therefore, a stay for all parties is proper.

## CONCLUSION

All activities in this matter, as to all parties, should be stayed until Defendants' motions to dismiss are decided and President Trump's claim of absolute immunity is finally resolved.

Dated: December 30, 2022                              Respectfully submitted,

                                                     /s/ Jesse R. Binnall

13

Jesse R. Binnall (VA022)
THE BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com

*Attorney for Donald J. Trump and
Donald J. Trump for President, Inc.*

14

## CERTIFICATE OF SERVICE

I certify that on December 30, 2022, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall

*Attorney for Donald J. Trump and*
*Donald J. Trump for President, Inc.*

15