**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MICHIGAN WELFARE RIGHTS ORGANIZATION, *et al.*, ) ) ) ) | |
| *Plaintiffs*, ) ) | No. 1:20-cv-3388-EGS |
| v. ) ) | |
| DONALD J. TRUMP, *et al.*, ) ) | |
| *Defendants.* ) ) | |

**REPUBLICAN NATIONAL COMMITTEE'S MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND
STATEMENT OF POINTS AND AUTHORITIES**

David A. Warrington (1616846)
Gary M. Lawkowski (VA125)
Harmeet K. Dhillon
Mark P. Meuser
DHILLON LAW GROUP INC.
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
(703) 574-1206
dwarrington@dhillonlaw.com
glawkowski@dhillonlaw.com
harmeet@dhillonlaw.com
mmeuser@dhillonlaw.com

Tyler R. Green (982312)
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com

Cameron T. Norris (VA083)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

*Counsel for Defendant Republican National Committee*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ii

INTRODUCTION ..................................................................................................................... 1

STANDARD OF REVIEW ......................................................................................................... 2

ARGUMENT ............................................................................................................................ 2

    I.    The First Amendment Requires Dismissing the RNC As a Defendant. ............................ 2

        A.    The RNC's speech is protected by the First Amendment. ........................................ 3

        B.    The RNC's speech does not fall into any category of speech that is beyond First Amendment protection.......................................................................................... 4

    II.    Plaintiffs Fail to State a Claim Under the Voting Rights Act............................................ 8

        A.    There is no private right of action under §11(b) of the Voting Rights Act. ............. 8

        B.    Relief under the Voting Rights Act is limited to injunctive relief, which Plaintiffs lack standing to seek. ........................................................................................ 10

        C.    None of the alleged conduct violates the Voting Rights Act.................................. 15

    III.    Plaintiffs Fail to State a Claim Under 42 U.S.C. §1985. ............................................. 19

        A.    Plaintiffs fail to allege that the RNC was party to any agreement.......................... 20

        B.    Plaintiffs fail to allege intent. ............................................................................ 21

        C.    Plaintiffs fail to allege an act in furtherance of the conspiracy.............................. 23

        D.    Plaintiffs fail to allege a deprivation or other injury............................................. 23

CONCLUSION........................................................................................................................ 24

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ........................................................................................... 8, 9, 10

*Ariz. Democratic Party v. Ariz. Republican Party*,
No. 2:16-cv-3752, 2016 WL 8669978 (D. Ariz. Nov. 4, 2016) .............................. 18

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*,
564 U.S. 721 (2011) ................................................................................................... 4

*Arnold v. Int'l Bus. Machs. Corp.*,
637 F.2d 1350 (9th Cir. 1981) ................................................................................. 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................... 2

*Brandenburg v. Ohio*,
395 U.S. 444 (1969) ................................................................................................ 5, 6

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993) ..................................................................................... 20, 22, 23

*Bush v. Butler*,
521 F. Supp. 2d 63 (D.D.C. 2007) ..................................................................... 20, 23

*Chang v. United States*,
738 F. Supp. 2d 83 (D.D.C. 2010) ........................................................................... 12

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ..................................................................................... 11, 12, 13, 14

*Cook v. Randolph Cnty.*,
573 F.3d 1143 (11th Cir. 2009) ............................................................................... 24

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008) ................................................................................................... 6

*Democratic Nat'l Comm. v. Republican Nat'l Comm.*,
No. 2:81-cv-3876, 2016 WL 6584915 (D.N.J. Nov. 5, 2016) ........................... 16, 17

*Eu v. S.F. Cnty. Democratic Cent. Comm.*,
489 U.S. 214 (1989) ................................................................................................... 1

*Fair Fight Action, Inc. v. Raffensperger*,
No. 1:18-cv-5391, 2022 WL 4725887 (N.D. Ga. Sept. 30, 2022).............................................. 7

*Flynt v. Weinberger*,
762 F.2d 134 (D.C. Cir. 1985) ..................................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)................................................................................... 11, 12, 15

*Glass v. City of Phila.*,
455 F. Supp. 2d 302 (E.D. Pa. 2006) ........................................................................ 24

*Graves v. United States*,
961 F. Supp. 314 (D.D.C. 1997) ........................................................................ 20, 22

*Jibril v. Mayorkas*,
20 F.4th 804 (D.C. Cir. 2021)...................................................................... 12, 13, 14

*Johnson v. Interstate Mgmt. Co.*,
849 F.3d 1093 (D.C. Cir. 2017) .................................................................................. 9

*Jones v. Dalton*,
867 F. Supp. 2d 572 (D.N.J. 2012) ........................................................................... 21

*Keane v. Nat'l Democratic Party*,
475 F.2d 1287 (D.C. Cir. 1973) ................................................................................ 14

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014).................................................................................................. 24

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................................ 11, 14

*McCutcheon v. FEC*,
572 U.S. 185 (2014)............................................................................................. 3, 15

*McManus v. Dist. of Columbia*,
530 F. Supp. 2d 46 (D.D.C. 2007) ............................................................................ 21

*Meng v. Schwartz*,
305 F. Supp. 2d 49 (D.D.C. 2004)............................................................................ 24

*Mills v. Alabama*,
384 U.S. 214 (1966).................................................................................................... 1

*Morgan v. Dist. of Columbia*,
550 F. Supp. 465 (D.D.C. 1982)............................................................................... 21

*Morpurgo v. Inc. Vill. of Sag Harbor*,
   697 F. Supp. 2d 309 (E.D.N.Y. 2010) ...................................................................... 21

*Morse v. Republican Party of Va.*,
   517 U.S. 186, 233 (1996) .................................................................................... 9, 10

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ....................................................................................... 1, 4, 6

*Parson v. Alcorn*,
   157 F. Supp. 3d 479 (E.D. Va. 2016) ............................................................... 15, 18

*Penn. Democratic Party v. Republican Party of Penn.*,
   No. 2:16-cv-5664, 2016 WL 6582659 (E.D. Pa. Nov. 7, 2016) ........................... 7, 18

*Pope v. Bond*,
   641 F. Supp. 489 (D.D.C. 1986) ............................................................................ 20

*Republican Nat'l Comm. v. Pelosi*, Doc. 1964512,
   No. 22-5123 (D.C. Cir. Sept. 16, 2022) ................................................................. 14

*Simmons v. Poe*,
   47 F.3d 1370 (4th Cir. 1995) ................................................................................. 20

*Snyder v. Phelps*,
   562 U.S. 443 (2011) .................................................................................... 1, 3, 4, 6

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .......................................................................................... 11

*Todd v. City of Natchitoches*,
   238 F. Supp. 2d 793 (W.D. La 2002) ...................................................................... 21

*United Bhd. of Carpenters v. Scott*,
   463 U.S. 825 (1983) .............................................................................................. 20

*United States v. Alvarez*,
   567 U.S. 709 (2012) ................................................................................................ 6

*United States v. Stevens*,
   559 U.S. 460 (2010) ................................................................................................ 4

*Virginia v. Black*,
   538 U.S. 343 (2003) ............................................................................................ 3, 5

*Virginians Against a Corrupt Congress v. Moran*,
   No. 1:92-cv-5498, 1993 WL 260710 (D.C. Cir. 1993) ............................................ 13

*Watts v. United States*,
   394 U.S. 705 (1969) ........................................................................................... 1, 5

*Willingham v. Cnty. of Albany*,
   593 F. Supp. 2d 446 (N.D.N.Y. 2006) ..................................................................... 18

*York v. Karbah*,
   No. 1:20-cv-3669, 2021 WL 5998390 (D.D.C. Dec. 19, 2021) ............................... 17

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ....................................................................................... 9, 10

## Statutes

42 U.S.C. §1985(3) ............................................................................................... passim

52 U.S.C. §10307 .................................................................................................. passim

52 U.S.C. §10308 ................................................................................................... 8, 10

52 U.S.C. §30104 ...................................................................................................... 15

52 U.S.C. §30116 ...................................................................................................... 15

Mich. Comp. Laws §168.730 ....................................................................................... 18

## Treatises

Restatement (Second) of Agency §219 (1958) .............................................................. 16

## Other Authorities

Alex Koppelman, *Election Fraud Charges Swirl Even Before Election Day*, ABC News
   (Oct. 28, 2010), https://perma.cc/R7ET-YYMD ....................................................... 8

Alison Mitchell, *Over Some Objections, Congress Certifies Electoral Vote*, NY Times
   (Jan. 7, 2001), nyti.ms/2LJJZ35 ............................................................................. 7

Amita Kelly, *Where Voters Are: The 8 Key Places That Will Explain the 2020 Election*, NPR
   (Feb. 26, 2020), https://perma.cc/9RWG-42KS ......................................................... 7

Arpan Lobo, *3 Things to Know As Michigan Moves to Certify 2022 Midterm Election Results*,
   Detroit Free Press (Nov. 27, 2022), https://perma.cc/F4NY-FF82 .......................... 13

Brenna Williams, *11 Times VP Biden Was Interrupted During Trump's Electoral Vote
   Certification*, CNN (Jan. 6, 2017), https://perma.cc/UC9G-JCGE .......................... 7

Colby Itkowitz, *Hillary Clinton: Trump Is an 'Illegitimate President'*, Wash. Post
   (Sept. 26, 2019), https://perma.cc/Y3AX-D8AX ...................................................... 7

David Cicilline, Twitter (Sept. 19, 2020), https://perma.cc/FQ6V-9CD8 ...................................... 7

Federal Election Commission, *Official 2020 Presidential General Election Results*,
 https://perma.cc/WX2U-VWPT ................................................................................ 17

*Leadership*, Mich. GOP, https://migop.org/about/ (Feb. 23, 2021 version archived at
 https://web.archive.org/web/20210223100344/https://www.migop.org/about) ....................... 14

Maura Reynolds, *Boxer Poses a Challenge, Briefly*, LA Times
 (Jan. 7, 2005), https://perma.cc/E3FH-E6BU ............................................................. 7

*RNC Members Condemn Violence at U.S. Capitol*, Republican Nat'l Comm.
 (Jan. 6, 2021), https://perma.cc/Y2KZ-6JRS .............................................................. 19

*Ronna Mcdaniel Says RNC Would Stay "Neutral" in Primaries If Trump Ran in 2024*, Axios
 (Jan. 27, 2021), https://perma.cc/Y5MQ-W7ZA .......................................................... 16

S.A. Miller, Stacey Abrams, *Democrats Cry Illegality After Loss in Elections*, AP News
 (Nov. 22, 2018), https://perma.cc/RZZ6-TJ6K ............................................................. 7

*Voting Was Largely Uneventful Despite Fears of Intimidation and Conspiracies*, Nat'l Pub.
 Radio (Nov. 9, 2022), https://perma.cc/2LWN-HXN2 ..................................................... 13

**INTRODUCTION**

If the District of Columbia's Anti-SLAPP law applied in this Court, the Republican National Committee would be moving for relief under that statute, not just moving to dismiss. Through a nakedly partisan lawsuit that does little more than string together speech from past elections that Plaintiffs dislike, Plaintiffs seek to thwart the rights of political parties to speak freely on matters of public concern. The First Amendment forbids this. "The language of the political arena … is often vituperative, abusive, and inexact." *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam). Yet "[w]hatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966). That "is because 'speech concerning public affairs is more than self-expression; it is the essence of self-government.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964)). Accordingly, the First Amendment "'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989). Even controversial political speech—*especially* controversial political speech—must be considered "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Plaintiffs disregard our constitutional commitment to uninhibited debate. They invoke some of the darkest chapters of our Nation's history to vilify controversial opinions on matters of public concern, casting Defendants' statements as voter intimidation and conspiracy to deprive citizens of the right to vote. But their argument by innuendo and speculation cannot justify disregarding the First Amendment.

The Voting Rights Act and 42 U.S.C. §1985(3) serve many important purposes. But those purposes do not include having a federal court take sides in the now-completed 2020 political campaign. Especially now, after *another* federal election has revealed that Plaintiffs' dire warnings about the 2022 midterm elections were baseless. Plaintiffs point to no action by Defendants in the last two elections that prevented voters from voting, intimidated voters, or otherwise violates federal law. Plaintiffs cannot sustain this suit on unrealized fears of what *could have* happened in past elections. The Court should dismiss Plaintiffs' second amended complaint because the First Amendment bars Plaintiffs' action, Plaintiffs allege no cognizable intimidation, threat, or coercion under either statute, and they allege no conspiracy to deprive anyone of their rights.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests," and contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555 (citation omitted). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). Though the Court must take the factual allegations as true, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I.    The First Amendment Requires Dismissing the RNC As a Defendant.

"If the First Amendment protects flag burning, funeral protests, and Nazi parades—despite the profound offense such spectacles cause—it surely protects political campaign speech despite

popular opposition." *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014). "Speech on matters of public concern is at the heart of the First Amendment's protection" and "is entitled to special protection" from civil liability. *Snyder*, 562 U.S. at 451-52 (cleaned up). "Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Id.* at 453 (citations omitted). That Plaintiffs and others might find such speech objectionable is "irrelevant." *Id.* That is because "the point of all speech protection is to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Id.* at 458 (cleaned up). To that end, "[t]he hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)).

### A.  The RNC's speech is protected by the First Amendment.

Plaintiffs allege that the RNC's speech violated the VRA and §1985(3). But the RNC's alleged speech plainly concerns matters of "political, social, or other concern to the community" and thus falls squarely within the First Amendment's protections. *Snyder*, 562 U.S. at 453. There can be no dispute that Plaintiffs' lawsuit concerns Defendants' "public statements and actions," Doc. 60 ¶26, that are of "political, social, or other concern to the community," and the "subject of legitimate news interest," *Snyder*, 562 U.S. at 453 (citations omitted). That's why they filed this lawsuit. Plaintiffs' claims thus attack speech that lies "at the heart of the First Amendment's protection." *Id.* at 451-52. And *all* the allegations against the RNC rest on the RNC's speech, which means the Court should dismiss all claims against the RNC as protected by the First Amendment. At the very least, to the extent Plaintiffs' allegations concern non-speech conduct, the Court should narrow Plaintiffs' claims to those allegations.

The allegations against the RNC rest entirely on protected speech. Plaintiffs allege Defendants ran "an aggressive media campaign" that included press conferences, "hundreds of emails," tweets, and retweets. Doc. 60 ¶¶22, 25, 41-43, 94. But even "vehement, caustic" media advertisements on "public issues" receive First Amendment protection. *N.Y. Times*, 376 U.S. at 270. Plaintiffs likewise allege that Defendants "aggressively argued that mail-in ballots received after polls closed should not be counted." Doc. 60 ¶23. But the First Amendment "protect[s] even hurtful speech on public issues to ensure that we do not stifle public debate," *Snyder*, 562 U.S. at 452, which must remain "uninhibited, robust, and wide-open," *N.Y. Times*, 376 U.S. at 270. Plaintiffs complain the RNC engaged in "fundraising efforts." Doc. 60 ¶89, 93. Those, too, are protected. *See Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734-36 (2011). At bottom, all the allegations against the RNC concern the RNC's "speech on matters of public concern," which "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection" from civil liability. *Snyder*, 562 U.S. at 451-52 (cleaned up).

### B. The RNC's speech does not fall into any category of speech that is beyond First Amendment protection.

Against this backdrop of robust speech protections, "the First Amendment has 'permitted restrictions upon the content of speech in a few limited areas'" such as obscenity, fraud, incitement, and speech integral to criminal conduct. *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83 (1992)). None of those limited exceptions applies here.

The complaint is filled with conclusory statements that Defendants' speech constituted "intimidation and coercion of election officials and volunteers." Doc. 60 ¶20. But "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily

harm or death." *Black*, 538 U.S. at 360. That is a high bar—one that significantly constrains the meaning of "intimidate, threaten, or coerce" in §11(b) of the VRA and "intimidation, or threat" in 42 U.S.C. §1985(3). And the new complaint does not clear that bar. The only "threatened violence" in the complaint is attributed to "supporters of former President Trump." Doc. 60 ¶33-34. Plaintiffs do not allege those unidentified individuals are associated with the RNC—let alone acted at the direction of the RNC—and thus cannot plausibly claim that the RNC itself demonstrated "a serious expression of an intent to commit an act of unlawful violence." *Black*, 538 U.S. at 359.

The allegations also do not support an inference that the RNC's speech was directed to inciting imminent lawless action. The First Amendment prevents the government from "forbid[ding] or proscrib[ing] advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (holding unconstitutional a statute that punished persons who "'advocate or teach the duty, necessity, or propriety' of violence 'as a means of accomplishing industrial or political reform'"). Plaintiffs complain of "militaristic rhetoric" by RNC officials, such as tweets to "defend" election integrity and "fight back" against voter fraud. Doc. 60 ¶93, 99. But even "vituperative, abusive" language and "very crude offensive method[s] of stating a political opposition" are protected. *Watts*, 394 U.S. at 708. The First Amendment protects statements like "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* at 706. Plaintiffs complain that RNC Chairman Ronna McDaniel said, "We need all the help we can get to defend the integrity of this election." Doc. 60 ¶93. The two statements are hardly comparable. Both are protected.

Even if the RNC's statements were coercive, Plaintiffs allege no facts supporting an inference that the RNC *intended* those statements to "prepar[e] a group for violent action and

5

steeling it to such action." *Brandenburg*, 395 U.S. at 448. As for the events of January 6, 2021, the only allegation even mentioning the RNC claims that "speakers organized by the Trump campaign invoked and amplified the militaristic rhetoric the Trump campaign and RNC had been propagating over the course of the prior several months." Doc. 60 ¶99. The allegation exemplifies the tenuous nature of Plaintiffs' suit: that (1) other people, (2) not under the RNC's direction, (3) used "militaristic rhetoric" about (4) important public, political events that (5) "encouraged" other people to act. Those thin allegations do not state a claim that survives the First Amendment.

After all, far from being threats or intimidation, efforts to discourage voter fraud and ensure election integrity are "legitima[te]" because, according to the U.S. Supreme Court, "the risk of voter fraud" is "real" and "could affect the outcome of a close election." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008). Whether Plaintiffs agree is "irrelevant." *Snyder*, 562 U.S. at 453. Plaintiffs also rely heavily on claims that Defendants made "false" statements about the election. Doc. 60 ¶¶21, 23-25, 35, 41-42, 51, 56, 62-63, 67, 77, 116, 118. But courts "have consistently refused to recognize an exception for any test of truth … and especially one that puts the burden of proving truth on the speaker." *N.Y. Times*, 376 U.S. at 271. Though Plaintiffs attempt to create a new exception to the First Amendment for "false public statements," the Supreme Court has consistently held that "[a]bsent from those few categories where the law allows content-based regulation of speech is any general exception to the First Amendment for false statements." *United States v. Alvarez*, 567 U.S. 709, 718 (2012).

Rejecting the RNC's First Amendment protections risks opening the floodgates to litigation across the political spectrum. For example:

- In 2019, Hillary Clinton said that Donald Trump was an "illegitimate president" who "stole" the 2016 election from her. Colby Itkowitz, *Hillary Clinton: Trump Is an 'Illegitimate President'*, Wash. Post (Sept. 26, 2019), https://perma.cc/Y3AX-D8AX.

6

- In 2018, Democrat Stacey Abrams refused to concede the Georgia governor race, claiming "[i]t was not a free and fair election." S.A. Miller, Stacey Abrams, *Democrats Cry Illegality After Loss in Elections*, AP News (Nov. 22, 2018), https://perma.cc/RZZ6-TJ6K. A federal court recently dismissed the lawsuit filed by Abrams' organization alleging discriminatory and suppressive election practices. *See Fair Fight Action, Inc. v. Raffensperger*, No. 1:18-cv-5391, 2022 WL 4725887, at *94 (N.D. Ga. Sept. 30, 2022).

- After the 2016 election, "President-elect Donald Trump's 304 electoral votes weren't counted without incident…. During the course of the certification, House Democrats tried to object to electoral votes from multiple states…." Brenna Williams, *11 Times VP Biden Was Interrupted During Trump's Electoral Vote Certification*, CNN (Jan. 6, 2017), https://perma.cc/UC9G-JCGE.

- After the 2004 election, "California Sen. Barbara Boxer and an Ohio congresswoman forced a delay of the ceremonial count of electoral votes … in a joint session of Congress called to certify President Bush's reelection victory." Maura Reynolds, *Boxer Poses a Challenge, Briefly*, LA Times (Jan. 7, 2005), https://perma.cc/E3FH-E6BU.

- After the 2000 election, the "rancor lingering from the bitterly contested presidential election spilled over during a joint session of Congress," where over a dozen members "tried in vain to block the counting of Florida's 25 electoral votes" before Congress could "make official the election of … George W. Bush." Alison Mitchell, *Over Some Objections, Congress Certifies Electoral Vote*, NY Times (Jan. 7, 2001), nyti.ms/2LJJZ35.

- In the 2020 election—as in most elections—both Democrats and Republicans encouraged supporters to "fight" for their side. *See, e.g.*, David Cicilline, Twitter (Sept. 19, 2020), https://perma.cc/FQ6V-9CD8 ("This is the most important election in our lifetimes. Our democracy is at stake in 45 days. Let's fight like hell to save it."); Amita Kelly, *Where Voters Are: The 8 Key Places That Will Explain the 2020 Election*, NPR (Feb. 26, 2020), https://perma.cc/9RWG-42KS ("Democrats also acknowledge that they'll have to 'recruit and fight like hell' to keep up their momentum, as Democratic Rep. Gil Cisneros put it."); *see also Penn. Democratic Party v. Republican Party of Penn.*, No. 2:16-cv-5664, 2016 WL 6582659, at *6 (E.D. Pa. Nov. 7, 2016) (explaining that in 2016, the Clinton campaign, just like the Trump campaign, recruited poll watchers and volunteers to "protect the vote").

- Concerns about voter fraud and other election illegitimacies are commonly voiced by actors from both major political parties. The "accusations at times have been supercharged," but as election-professor Rick Hasen put it back in 2010, allegations of "voter fraud and voter suppression is now just part of the normal pre-election conversation." Alex Koppelman, *Election Fraud Charges Swirl Even Before Election Day*, ABC News (Oct. 28, 2010), https://perma.cc/R7ET-YYMD.

Plaintiffs' selective indignation about the RNC's statements regarding a bitterly contested election ignores the long history of parallel statements coming from their own side of the aisle. This lawsuit targets political speech of a type that is well within the American political tradition—

7

and well within the scope of speech protected by the First Amendment. The complaint fails to allege facts that would overcome the RNC's First Amendment rights. The Court should thus dismiss the RNC as a defendant in this suit.

## II.      Plaintiffs Fail to State a Claim Under the Voting Rights Act.

First Amendment protections aside, Plaintiffs' first cause of action fails for three more reasons. First, there is no private right of action to enforce §11(b). Second, Plaintiffs lack standing to seek injunctive relief—the only relief available under the VRA. And third, even accepting Plaintiffs' allegations as true, the alleged conduct would not violate §11(b).

### A.  There is no private right of action under §11(b) of the Voting Rights Act.

Section 11(b) of the Voting Rights Act, 52 U.S.C. §10307(b), contains no private right of action. This Court ruled that §11(b) "indisputably contains no express private right of action." Doc. 49 at 31. The Court also recognized that §12 of the VRA, 52 U.S.C. §10308, provides that violations of the Act can be criminally prosecuted, *id.* §10308(a)-(c), and that the Attorney General can bring civil actions for injunctive relief against persons who have engaged or are about to engage in the conduct that §11 prohibits, *id.* §10308(d). *See* Doc. 49 at 31. That should end the inquiry, because the plain text of §12 authorizes only the Attorney General, and not a private party, to seek equitable relief. Section 12 provides the exclusive methods for enforcing §11, so there can be no implied private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").

Precedent reinforces the plain meaning of the text. At one time, courts demonstrated a willingness to "create[]" private causes of action "through judicial mandate" grounded loosely in broad notions of congressional purpose. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855-56 (2017). But the Supreme Court "abandoned that understanding" decades ago and has "not returned to it since."

*Sandoval*, 532 U.S. at 287. Recently, the Supreme Court has been "very hostile to implied causes of action." *Johnson v. Interstate Mgmt. Co.*, 849 F.3d 1093, 1097 (D.C. Cir. 2017). Now, "[t]he judicial task is to interpret *the statute* Congress has passed to determine whether *it* displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286 (emphasis added). Courts now must "assume that Congress will be explicit if it intends to create a private cause of action." *Ziglar*, 137 S. Ct. at 1856. And §11, as this Court said, "indisputably contains no express private right of action." Doc. 49 at 31.

This Court nevertheless found that §11 does create a private right action. *See* Doc. 49 at 34. The Court primarily relied on *Morse v. Republican Party of Virginia*, 517 U.S. 186, 233 (1996) (plurality op.), in which the Supreme Court ruled that §10 of the VRA created a private cause of action. *See* Doc. 49 at 35. The plurality in *Morse* pointed out that Congress amended §3 of the VRA to recognize that some claims can be brought by the Attorney General "or an aggrieved person." *Morse*, 517 U.S. at 233. But that does not mean that private parties can sue under any section of the VRA. Rather, "[t]he most logical deduction from the inclusion of 'aggrieved person' in [Section 3] is that Congress meant to address those cases brought pursuant to the private right of action that this Court had recognized as of 1975, i.e., suits under §5, as well as any rights of action that [the Court] might recognize in the future." *Id.* at 289 (Thomas, J., dissenting); *see also id.* (explaining that the same holds true for attorney's fees in Section 14). In other words, there is no textual evidence that in amending the VRA Congress intended to create *new* causes of action rather than simply affirm the *existing* judicially created causes of action. Indeed, §12 gives the "Attorney General" alone §11 enforcement authority. 52 U.S.C. §10308(d). And though it amended the VRA many times, Congress never added the words "or an aggrieved person" to §12, as it did to §3.

9

In any event, *Morse* was decided before the Court firmly "swor[e] off the habit of venturing beyond Congress's intent." *Sandoval*, 532 U.S. at 287. "The Court has since adopted a far more cautious course, clarifying that, when deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent." *Ziglar*, 137 S. Ct. at 1849. In its memorandum opinion on the motions to dismiss Plaintiffs' first amended complaint, this Court relied on statutory amendments as contextual evidence of congressional intent. But none of those amendments "establishes (or even assumes) the private right of action at issue here." *Sandoval*, 532 U.S. at 291. The Supreme Court has implored courts not to give "dispositive weight to the expectations that the enacting Congress had formed in light of the contemporary legal context." *Id.* at 287-88 (cleaned up). Rather, "contemporary legal context" such as amendments "matters only to the extent it clarifies text." *Id.* at 288. And here, legal context confirms what §12 has always said: the Attorney General alone can enforce §11(b) through civil actions for injunctive relief. 52 U.S.C. §10308(d). No amendment has changed that. Plaintiffs are not the Attorney General, so their VRA claim must be dismissed.

### B. Relief under the Voting Rights Act is limited to injunctive relief, which Plaintiffs lack standing to seek.

The Court dismissed Plaintiffs' VRA claim in the first amended complaint because Plaintiffs did not allege future harm. The Court should do so again for the same reason—reasoning that has only gotten stronger after the passage of *another* federal election. As the Court ruled, Plaintiffs cannot obtain damages under the VRA. *See* Doc. 49 at 38-39. That narrows Plaintiffs' VRA claim to injunctive relief, for which they must allege future harm. And because Plaintiffs once again fail to allege future harm, the Court should dismiss Plaintiffs' VRA claim in its entirety.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy" under Article III. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The Supreme

10

Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements." *Id.* "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Id.*

Here, standing turns on injury in fact, which must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). Forward-looking claims for equitable relief often falter on the "actual and imminent" prong. Plaintiffs seeking injunctive or declaratory relief must "establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is *certainly impending*." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (cleaned up) (emphasis added). In other words, "past wrongs" do not "themselves amount" to the kind of "real and immediate threat" of future injury "necessary to make out a case or controversy" for a claim seeking only equitable relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (citations omitted).

In its order granting Plaintiffs leave to amend, the Court primarily relied on Plaintiffs' allegations of past injury to support their claims of future injury. *See* Doc. 59 at 21-23. Although "past wrongs may serve as evidence bearing on whether there is a real and immediate threat of repeated injury," "a plaintiff seeking prospective declaratory and injunctive relief may not rest on past injury alone." *Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021) (cleaned up). Rather, when plaintiffs seek injunctive relief premised on past harm, they "must show that [they are]

11

sufficiently likely to be *personally* subjected to the challenged conduct *again* in order to have standing." *Chang v. United States*, 738 F. Supp. 2d 83, 90 (D.D.C. 2010) (Sullivan, J.) (emphasis added). Any threatened harm that is not both "real and immediate" is "too speculative" to support standing. *Lyons*, 461 U.S. at 103; *Friends of the Earth*, 528 U.S. at 190.

Plaintiffs' first amended complaint contained only backward-looking allegations pertaining to the 2020 election. This Court thus ruled that Plaintiffs failed to allege future injury necessary for injunctive relief. *See* Doc. 49 at 42. Plaintiffs have amended their complaint with a few new allegations pertaining to the recent 2022 midterm election. But that election is over. Every allegation against the RNC in the second amended complaint concerns past events, which, as this Court ruled, dooms Plaintiffs' claim for injunctive relief. *See Jibril*, 20 F.4th at 814; *Lyons*, 461 U.S. at 103. This Court should again "conclude[] that Plaintiffs lack standing to bring their VRA claim because they have failed to demonstrate that, 'if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the "threatened injury is certainly impending."'" Doc. 49 at 42 (quoting *Friends of the Earth*, 528 U.S. at 190).

Plaintiffs first new allegation points to an RNC resolution from February censuring two Republican members of the House of Representatives for their participation in the House Select Committee on January 6. *See* Doc. 60 ¶¶2, 116. As an initial matter, the RNC's internal censure of two of its members couldn't possibly violate *Plaintiffs'* rights under the VRA. *See infra* Section II.C. More importantly, what does the RNC's censure decision demonstrate about the RNC's future actions or anything banned by federal law? Plaintiffs do not say. An internal, lawful, prior decision does not present a "real and immediate threat" of future injury "necessary to make out a case or controversy" for a claim seeking prospective relief under the VRA. *Lyons*, 461 U.S. at 103.

12

Plaintiffs cannot sustain *their* suit on a fear that the RNC might censure other Republican congressmen sometime in the future.

The second amended complaint also raises efforts by Republican officials to recruit and train poll watchers. *See* Doc. 60 ¶¶117-19. These allegations anticipated election integrity efforts by Republican organizations "ahead of the 2022 midterm elections." *Id.* ¶117. This Court identified those claims as the only "future looking" allegations in the second amended complaint. *See* Doc. 59 at 20. But the midterm elections have come and gone, and "all 83 of Michigan's counties certified their elections, largely without issue." Arpan Lobo, *3 Things to Know As Michigan Moves to Certify 2022 Midterm Election Results*, Detroit Free Press (Nov. 27, 2022), https://perma.cc/F4NY-FF82. Plaintiffs' fears of "chaos" have thus proven unfounded, as "voting on Election Day seems to have gone off without any major incidents." *Voting Was Largely Uneventful Despite Fears of Intimidation and Conspiracies*, Nat'l Pub. Radio (Nov. 9, 2022), https://perma.cc/2LWN-HXN2. Nothing in Plaintiffs' second amended complaint alleges otherwise. Regardless, the 2022 election is now history, and Plaintiffs' speculations as to what could have happened cannot support injunctive relief. *See Jibril*, 20 F.4th at 814; *Virginians Against a Corrupt Congress v. Moran*, No. 1:92-cv-5498, 1993 WL 260710, at *1 (D.C. Cir. 1993) (granting a motion to dismiss for mootness because "[t]he passage into history of the 1992 election makes it impossible for this or any court to grant meaningful relief with respect to that election"); *see also Keane v. Nat'l Democratic Party*, 475 F.2d 1287, 1288 (D.C. Cir. 1973); *Flynt v. Weinberger*, 762 F.2d 134, 135 (D.C. Cir. 1985).

Plaintiffs raise other past events with no explanation as to why they support a prospective injunction. For example, the second amended complaint highlights the subpoenas that the January 6 Committee sent to several individuals affiliated with the RNC. *See* Doc. 60 ¶¶74-75. The

13

Committee has since abandoned the most high-profile of those subpoenas directed to Salesforce, representing "that it is not currently seeking, and will not in the future seek, the RNC's data from Salesforce." *Republican Nat'l Comm. v. Pelosi*, Doc. 1964512, No. 22-5123 (D.C. Cir. Sept. 16, 2022). The complaint also references statements by RNC Chairman Ronna McDaniel and statements of others that McDaniel "amplified." Doc. 60 ¶¶25, 47, 48, 53, 116. But these "past" actions do not establish a "real and immediate threat" of future injury. *Lyons*, 461 U.S. at 103. Underscoring Plaintiffs' outdated allegations, *see* Doc. 60 ¶47, Laura Cox has not even been the Michigan Republican Party Chairman for nearly two years, *see Leadership*, Mich. GOP, https://migop.org/about/ (Feb. 23, 2021 version archived at https://web.archive.org/web/20210223100344/https://www.migop.org/about). The remaining allegations are merely conclusory assertions that "Defendants will likely continue to violate the VRA," Doc. 60 ¶111, which are "no more than conjecture" that similar conduct will occur "in every" election, *Lyons*, 461 U.S. at 108. It is also "no more than speculation to assert … that [Plaintiffs themselves] will again be involved." *Id.* These are precisely the kinds of allegations that the "injury in fact" requirement rejects. *Lujan*, 504 U.S. at 560.

The Court can dismiss the VRA claim on the same grounds it did before. The second amended complaint rests entirely on allegations of past injury, but "a plaintiff seeking prospective declaratory and injunctive relief 'may not rest on past injury' alone." *Jibril*, 20 F.4th at 814 (citation omitted). The second amended complaint, like the first, is devoid of allegations that "threatened injury is certainly impending." *Friends of the Earth*, 528 U.S. at 190. Plaintiffs thus lack standing to pursue injunctive relief. And because that is the only relief available under the VRA, the Court should dismiss the VRA claim entirely.

14

### C. None of the alleged conduct violates the Voting Rights Act.

Even if Plaintiffs had a cause of action, and even if they had standing to pursue that cause of action, the facts alleged do not state a claim under the VRA. Section 11(b) of the VRA prohibits actions that "intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote." 52 U.S.C. §10307(b). Courts have held that to succeed on a §11(b) claim, "a plaintiff must show both an act of intimidation or attempt to intimidate, and that the act was done with the specific intent to intimidate or attempt to intimidate." *Parson v. Alcorn*, 157 F. Supp. 3d 479, 498 (E.D. Va. 2016) (collecting cases). For starters, most of the allegations in the second amended complaint are not about the RNC at all. And the limited allegations concerning the RNC do not come close to alleging that the RNC "intimidate[d], threaten[ed], or coerce[d]" voters. 52 U.S.C. §10307. Even if they did, the complaint is entirely silent on the RNC's intent to commit those acts. Finally, Plaintiffs have not alleged any injury entitling them to relief.

*First*, allegations about the RNC are sparse. Plaintiffs instead focus on the conduct of others—President Trump and unidentified "volunteers and supporters" and "observers supporting President Trump." Doc. 60 ¶¶28-31, 33-34, 37. But their conduct is not attributable to the RNC. Even in 2020, the RNC was not the Trump campaign, and the Trump campaign was not the RNC. They were separate entities, separately registered with the FEC, with distinct contribution limits and reporting obligations. *See* 52 U.S.C. §§30116, 30104; *McCutcheon*, 134 S. Ct. at 1440-43. The RNC had no right to control the Trump Campaign, and President Trump had no official voice in the RNC. The RNC is not responsible for the statements of President Trump and President Trump is not responsible for the statements of the RNC. That fact is even clearer today, where President Trump has not secured the Republican nomination for President, and the RNC has committed to staying neutral during the Republican primary. *See Ronna McDaniel Says RNC*

15

*Would Stay "Neutral" in Primaries If Trump Ran in 2024*, Axios (Jan. 27, 2021), https://perma.cc/Y5MQ-W7ZA.

Likewise, the RNC is not responsible for statements or actions by RNC members or state parties unless they were acting under the direction, and as agents, of the RNC. Plaintiffs make much of a New Jersey consent decree from 1982. *See* Doc. 60 ¶110. But a federal court interpreting that decree found that "as a matter of law" party chairs were not acting on behalf of the RNC "if they [were] acting solely in their capacity as state party chairs," even though those individuals were "by virtue of their position, automatically members of the RNC." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. 2:81-cv-3876, 2016 WL 6584915, at *15 (D.N.J. Nov. 5, 2016). The court simply recognized a basic principle of agency law: the RNC is not liable for the torts of its members "acting outside the scope" of their positions unless the RNC "intended the conduct or the consequences," was "negligent or reckless," the conduct "violated a non-delegable duty," or the member "purported to act or to speak on behalf of the [RNC] and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." Restatement (Second) of Agency §219 (1958). Plaintiffs don't attempt to meet those elements. They don't even try to show that the members are agents of the RNC at all.

The Republican Party is a big tent. RNC members wear many different hats, bring many different perspectives, and do not always agree with one another. A statement that one individual makes while not wearing their RNC "hat" cannot be attributed to the RNC as an organization. Plaintiffs' claims against the RNC rely almost entirely on insinuations that the RNC is somehow responsible for the actions of state Republican parties. It is not, and Plaintiffs allege no facts indicating otherwise. The state parties are independent of the RNC, so "as a matter of law" the RNC is not responsible for their actions. *Democratic Nat'l Comm.*, 2016 WL 6584915, at *15. To

16

the extent Plaintiffs demand that the Court hold the RNC liable for the actions of third parties, they must link those actions to the RNC through factual allegations supported by legal authority. They have done neither. Fatal to their §11(b) claim, Plaintiffs never allege that any individual took any action described in the complaint at the direction of the RNC.

Conduct by supporters of President Trump and the Republican Party is even more attenuated. Over 74 million people voted for President Trump in 2020. *See* Federal Election Commission, *Official 2020 Presidential General Election Results*, https://perma.cc/WX2U-VWPT. The speech and actions of 74 million people are not all attributable to the RNC. Neither are "threats of violence *by supporters of former President Trump*," Doc. 60 ¶34 (emphasis added), nor "inappropriate pressure, physical aggression, and explicit threats of violence that Defendants' *volunteers and supporters* have directed to [others]," *id.* ¶37 (emphasis added), nor actions by "Republican members of the [Wayne County, Michigan] canvassing board," *id.* ¶¶44-46, 49-51, nor "suggest[ions]" from Michael Flynn, *id.* ¶81, nor conduct by any other third parties, *see York v. Karbah*, No. 1:20-cv-3669, 2021 WL 5998390, at *8 (D.D.C. Dec. 19, 2021) (dismissing a complaint under 12(b)(6) for failure to allege facts supporting *respondeat superior* liability against the defendant). Plaintiffs' guilt-by-association complaint does not state a claim against the RNC.

*Second*, even if Plaintiffs had alleged that the RNC directed the speech they complain of, that speech did not "intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote." 52 U.S.C. §10307(b). Courts have recognized that statements about the illegality of voter fraud and warnings against illegal voting—however inflammatory—do not violate §11(b). *See Parson*, 157 F. Supp. 3d at 498; *Penn. Democratic Party*, 2016 WL 6582659, at *6; *Willingham v. Cnty. of Albany*, 593 F. Supp. 2d 446, 463 (N.D.N.Y. 2006) (finding that even though defendants "misinformed, defrauded, tricked, or

17

deceived" voters, plaintiffs "provide[d] no sufficient basis for a finder of fact to conclude that [the defendants] committed any acts of compulsion as required to prove intimidation, threats, or coercion"). Plaintiffs "can seriously question the wisdom of stirring up supporters about a controversial issue," and "encouraging them … to look for 'voter fraud,'" but it does not entitle Plaintiffs to relief under §11(b). *Ariz. Democratic Party v. Ariz. Republican Party*, No. 2:16-cv-3752, 2016 WL 8669978, at *9 (D. Ariz. Nov. 4, 2016).

The second amended complaint also includes allegations that Republicans recruited and trained poll watchers. *See* Doc. 60 ¶¶ 117-19. Again, none of Plaintiffs' fears came to pass. Moreover, Michigan law endorses poll-watching by political parties: "At an election, a political party or an incorporated organization or organized committee of citizens … interested in preserving the purity of elections and in guarding against the abuse of the elective franchise, may designate challengers as provided in this act." Mich. Comp. Laws §168.730(1). Plaintiffs complain that Defendants used "militaristic" and "adversarial" language in their trainings. Doc. 60 ¶ 118. But that language violates no law, and *Michigan law* uses it too, as it expressly permits election "challengers" to "guard[] against the abuse of the elective franchise." Mich. Comp. Laws §168.730(1). "[W]hether true or false, and whether appealing or repugnant to the listener," statements "that the election is rigged, that voter fraud is being perpetrated *en masse* … and that [their] supporters should go to polls and watch to ensure a fair election, without more, simply do not prove actual or likely intimidation." *Ariz. Democratic Party*, 2016 WL 8669978, at *9.

Plaintiffs' allegations boil down to claims that RNC affiliates (1) encouraged poll watchers to watch for fraud; (2) publicly expressed dissatisfaction with the integrity of ballot counting in various states; (3) publicly and privately called on various leaders to delay certification until the election results could be recounted, audited, or otherwise verified; and (4) encouraged others to do

the same. Crucially, no statement was directed at voting—it was directed at perceived fraud, illegitimacies, and irregularities. Such statements are neither unlawful nor uncommon in close elections by candidates and parties across the spectrum and cannot support a claim for relief.

*Third*, even if the alleged conduct amounted to intimidation, Plaintiffs fail to allege that the RNC intended to intimidate voters. The only allegation even arguably touching on the RNC's intent is the censure of two Republican representatives. *See* Doc. 60 ¶¶2, 116. But contrary to Plaintiffs' implication, the RNC's censure vote concerned specific and unrelated actions by the Committee, such as refusing to include members recommended by House Republican leadership. The day of January 6, 2021, "The members of the Republican National Committee strongly condemn[ed] the violence in and around the United States Capitol Building," describing it as "an attack on our country and its founding principles." *RNC Members Condemn Violence at U.S. Capitol*, Republican Nat'l Comm. (Jan. 6, 2021), https://perma.cc/Y2KZ-6JRS. Plaintiffs' distorted inferences about the censure resolution are based on out-of-context quotes that cannot support a VRA claim. Indeed, Plaintiffs don't even allege that the censure vote violated the VRA. Nor could they, as §11(b) covers citizens voting in elections, not voting on the floor of Congress. *See* 52 U.S.C. §10307(b). Plaintiffs' concern that the RNC censured *Republican congressmen* is irrelevant to whether the RNC intimidated voters. And Plaintiffs have no other allegations of intent.

III.    **Plaintiffs Fail to State a Claim Under 42 U.S.C. §1985.**

Section 1985(3) creates a cause of action with four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Pope v. Bond*, 641 F. Supp. 489, 498 (D.D.C. 1986). Because civil conspiracy principles

19

apply to §1985(3), "[t]he rights, privileges, and immunities that §1985(3) vindicates must be found elsewhere." *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 833 (1983). Thus, "[t]here can be no recovery under §1985(3) absent a violation of a substantive federal right." *Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007) (citation omitted). And to the extent Plaintiffs allege an equal protection violation, *see* Doc. 60 ¶128, they "must show, *inter alia*, (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993) (cleaned up). The second amended complaint does not satisfy these elements.

### A.  Plaintiffs fail to allege that the RNC was party to any agreement.

The "principal element" of a civil conspiracy is an "agreement between parties 'to inflict a wrong against or injury upon another.'" *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997). For §1985 conspiracies, this is a "relatively stringent standard." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). While the existence of an agreement can be express or implied, allegations of agreement to violate rights must be alleged in nonconclusory, plausible terms. *Butler*, 521 F. Supp. 2d at 69. Failure to allege "the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants' to violate Plaintiffs' … civil or constitutional rights," amounts to "a conclusory and purely speculative assertion that Defendants entered into a conspiracy." *McManus v. Dist. of Columbia*, 530 F. Supp. 2d 46, 75 (D.D.C. 2007).

Indeed, to survive a motion to dismiss, "there must at least be an accusation that defendants manifested specific intent to agree to participate in a concerted effort to deprive someone of their civil rights based on a racially discriminatory motive." *Morgan v. Dist. of Columbia*, 550 F. Supp. 465, 470 (D.D.C. 1982) (citations omitted). It is not enough for a plaintiff to allege the defendants

20

"acted in concert" or shared a "common goal." *Todd v. City of Natchitoches*, 238 F. Supp. 2d 793, 803 (W.D. La 2002); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 337 (E.D.N.Y. 2010). Even the "occurrence of several meetings between [defendants] [does] not establish a meeting of the minds." *Jones v. Dalton*, 867 F. Supp. 2d 572, 585 (D.N.J. 2012).

Here, there is nothing beyond speculation that the RNC entered into an agreement with Defendants or anyone else. Plaintiffs allege that "Defendants acted in concert" to intimidate and coerce election officials. Doc. 60 ¶¶89-94. They point to shared fundraising and volunteer-recruitment platform to support the Trump Campaign in the election; a shared message of support for President Trump's election; warnings about voter fraud; calls to defend election integrity— including retweeting each other's material; and a press conference by the Trump Campaign's lawyers, expressing concerns about voter fraud and ballot-counting irregularities, held at RNC headquarters. *See* Doc. 60 ¶¶41-43, 89-90, 93-94. But these allegations suggest only that Defendants occasionally "acted in concert" and shared a "common goal." *Todd*, 238 F. Supp. 2d at 803. Plaintiffs fail to allege "the existence of any events, conversations, or documents indicating that there was ever an *agreement* or 'meeting of the minds' between any of the defendants.'" *McManus*, 530 F. Supp. 2d at 75 (emphasis added). As a matter of law, no conspiracy exists.

### B.  Plaintiffs fail to allege intent.

Even had there been an agreement, that would not be enough. It must be an agreement "for the purpose" of depriving someone of a right. 42 U.S.C. §1985(3). "[I]t does not suffice for application of §1985(3) that a protected right be incidentally affected." *Bray*, 506 U.S. at 275. "The right must be *aimed at*; its impairment must be a conscious objective of the enterprise." *Id.* (citation omitted). If there is no intent to violate a right, then there is no conspiracy.

The complaint does not allege that impairment of any right was "a conscious objective of the enterprise." *Id.* At most, the allegations suggest an agreement to aid President Trump's

21

reelection and to advocate for election integrity and accuracy. But that is not illegal and cannot serve as the relevant agreement to establish a conspiracy. *See Graves*, 961 F. Supp. at 320. Moreover, even if anyone had been deprived of their right to vote—and Plaintiffs don't say they were—the right would have merely been "incidentally affected." *Bray*, 506 U.S. at 275. And "[t]he 'intent to deprive of a right' requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." *Id.* at 276. The complaint omits any facts demonstrating intent, *see supra* Section II.C, let alone the collective intent of Defendants "for the very purpose" of violating Plaintiffs' rights, *Bray*, 506 U.S. at 276.

Plaintiffs also allege no facts indicating that "Defendants engaged in a conspiracy to deny the equal protection of the laws." Doc. 60 ¶128. To plead a violation of §1985(3) based on equal protection, Plaintiffs must allege (1) "invidiously discriminatory animus" and (2) "that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray*, 506 U.S. at 267-68 (cleaned up). Presumably, Plaintiffs intend to argue that Defendants engaged in racial discrimination "to disenfranchise Plaintiffs and other Black voters." Doc. 60 ¶111. But the only insinuation of racial discrimination in the complaint is that "[i]n Texas, state Republican officials have administered virtual trainings likely to encourage poll watchers to assume that votes cast by voters of color are presumptively illegitimate by instructing those poll watchers that 'fraud is occurring' in 'densely populated, largely Black, Latino, and Asian neighborhoods.'" Doc. 60 ¶119. The insinuation falls short in every respect: Plaintiffs don't allege the RNC was responsible for the statements of "state Republican officials." *Id.* They don't allege the trainings discriminated by race or even encouraged discrimination by race. Rather, Plaintiffs claim that the trainings were "*likely* to encourage" *other people* to watch for fraud in

22

neighborhoods that happened to be "largely Black, Latino, and Asian." Doc. 60 ¶119 (emphasis added). In any event, Plaintiffs have no "right" to be free from poll-watching, which is expressly authorized by statute. And even if they did, nothing in the complaint resembles "invidiously discriminatory animus." *Bray*, 506 U.S. at 268. Thus, whether alleging impairment of the right to vote or of equal protection, the second amended complaint references no agreement that was "for the purpose" of impairing anyone's rights. 42 U.S.C. §1985(3).

### C. Plaintiffs fail to allege an act in furtherance of the conspiracy.

Section 1985(3) further requires Plaintiffs to allege an "act in furtherance of the object of [the] conspiracy." Plaintiffs fail this element largely for the reasons described in Sections I.B and II.C, *supra*. That is, all the alleged "acts" are protected speech under the First Amendment. Most of them do not even concern the RNC, and the few that do fail to allege that the RNC was responsible. Finally, none of the acts amounts to intimidation, coercion, or any illicit action to prohibit or discourage anyone from voting. "The mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law." *Butler*, 521 F. Supp. 2d at 69.

### D. Plaintiffs fail to allege a deprivation or other injury.

Finally, §1985(3) permits only "the party so injured or deprived" to recover "damages occasioned by such injury or deprivation." The injury required to state a claim under §1985(3) is different from the injury required for Article III standing. *See Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133-34 & n.6 (2014). Because "attempted deprivation of constitutional or statutory rights is not the same as an actual deprivation," Plaintiffs must show that the alleged intimidation or threats actually worked in some capacity. *Cook v. Randolph Cnty.*, 573 F.3d 1143, 1157 (11th Cir. 2009). Courts thus apply general principles of direct and proximate causation between the alleged intimidation or threats and the alleged resulting deprivation. *E.g.*,

23

*Meng v. Schwartz*, 305 F. Supp. 2d 49, 60 (D.D.C. 2004) (explaining that "the proximate cause issue" was "central to the civil conspiracy count"); *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 364 (E.D. Pa. 2006) (finding no liability under §1985 because "even if a conspiracy had been proven, there [was] no evidence of causation").

Plaintiffs fail to allege deprivation or even interference with their right to vote or otherwise support a candidate. In fact, Plaintiffs concede they suffered no such deprivation: according to Plaintiffs, although Defendants' conduct was "designed to disenfranchise," "Defendants' actions thus far have been unsuccessful." Doc. 60 ¶1. The votes in question were counted. A new administration has been running the country since January 2021, and *another* federal election has concluded without incident. The RNC's conduct did not actually intimidate anyone from voting or otherwise deprive Plaintiffs of their right to vote and support the candidate of their choice. Because Plaintiffs fail to allege an injury that was the direct and proximate result of the RNC's alleged agreement to intimidate and threaten people out of their right to vote, they fail to state a claim under §1985(3).

## CONCLUSION

For these reasons, the Court should dismiss the second amended complaint.

24

Dated: January 2, 2023                    Respectfully submitted,

                                           */s/ Tyler R. Green*
David A. Warrington (1616846)             Tyler R. Green (982312)
Gary M. Lawkowski (VA125)                 CONSOVOY MCCARTHY PLLC
Harmeet K. Dhillon                        222 S. Main Street, 5th Floor
Mark P. Meuser                            Salt Lake City, UT 84101
DHILLON LAW GROUP INC.                    (703) 243-9423
2121 Eisenhower Ave, Suite 608            tyler@consovoymccarthy.com
Alexandria, Virginia 22314
(703) 574-1206                            Cameron T. Norris (VA083)
dwarrington@dhillonlaw.com                CONSOVOY MCCARTHY PLLC
glawkowski@dhillonlaw.com                 1600 Wilson Blvd., Ste. 700
harmeet@dhillonlaw.com                    Arlington, VA 22209
mmeuser@dhillonlaw.com                    (703) 243-9423
                                          cam@consovoymccarthy.com


*Counsel for Defendant Republican National Committee*

25

**CERTIFICATE OF SERVICE**

I e-filed the foregoing with the Court via CM/ECF, which will notify everyone requiring notice.

Dated: January 2, 2023                     */s/ Tyler R. Green*
                                          Tyler R. Green
                                          *Counsel for Republican National Committee*