UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHIGAN WELFARE RIGHTS
ORGANIZATION, *et al.*,

    *Plaintiffs,*

v.

DONALD J. TRUMP, *et al.*,

    *Defendants.*

Case No. 1:20-cv-03388-EGS

## PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CROSS-MOTION TO COMMENCE DISCOVERY

Samuel Spital (D.D.C Bar No. SS4839)
Janai S. Nelson (*pro hac vice*)
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St., 5th Floor
New York, NY 10006
(212) 965-2200

Anuja D. Thatte (D.D.C. Bar No. 1742276)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street NW, Ste. 600
Washington, DC 20005
(202) 682-1300

Jason M. Bradford (D.D.C Bar No. IL0073)
Jonathan A. Enfield (D.D.C Bar No. IL0074)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350

Stephen L. Ascher (*pro hac vice*)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

    *Counsel for Plaintiffs*

Defendants' papers distort and ignore the context in which Plaintiffs seek to commence discovery. Plaintiffs seek injunctive relief under Section 11(b) of the Voting Rights Act requiring all Defendants to, *inter alia*, refrain from intimidating or coercing election officials to disregard lawful votes or overturn the result of an election.[1] Plaintiffs must receive this relief in advance of the 2024 presidential election to protect Plaintiffs and their members from having their fundamental right to vote taken away. In order to obtain this relief, Plaintiffs need this case to promptly proceed with discovery.

Although discovery has not begun in the over two years this case has been pending—despite Plaintiffs' March 2022 motion for a discovery conference, *see* Dkt. 47—recent developments demonstrate the strength of Plaintiffs' claims, underscoring why Plaintiffs should be permitted to commence discovery while Defendants' motions to dismiss are still pending.

*First*, after this Court dismissed Plaintiffs' claim for injunctive relief for lack of standing, Plaintiffs moved for leave to file a Second Amended Complaint (the "SAC"), which included the same claim for injunctive relief, but incorporated new allegations of conduct by Defendants that had occurred or been publicized after Plaintiffs filed the First Amended Complaint. Dkt. 55. In November 2022, this Court granted Plaintiffs' motion, holding that the SAC adequately alleged that Plaintiffs had standing to pursue their claim for injunctive relief because it alleged a "substantial risk" that Plaintiffs' "votes will not be counted or that Plaintiffs will be personally injured due to the actions of Defendants in the future." Dkt. 59 at 15.

*Second,* in November 2022, former President Trump announced his intent to run for

---

[1] Plaintiffs also seek monetary damages to compensate Plaintiffs for Defendants' conspiracy to interfere with Plaintiffs' civil rights in violation of 42 U.S.C. § 1985(3). In this Reply, Plaintiffs focus on their claim for injunctive relief, the claim for which Plaintiffs seek to commence discovery. Defendants have not raised immunity as a defense to Plaintiffs' claim for injunctive relief.

1

president in 2024, underscoring the substantial risk that the Trump Defendants will repeat in the 2024 election the same efforts they used in the 2020 election to prevent lawful votes from being counted.

*Third,* more information has become publicly available about Defendants' attempts to interfere with vote counting in the 2020 election, and Defendants' efforts to do so have continued through today.  Most significantly, in December 2022, the Select Committee to Investigate the January 6th Attack on the United States Capitol published its final report, which includes the Committee's detailed findings of Defendants' attempts to prevent the lawful counting of votes after the 2020 election, including efforts by former President Trump to coordinate with the RNC to organize alternate slates of electors, and former President Trump's personal efforts to pressure election officials to alter official lawful election results.[2]

Although Plaintiffs have demonstrated a strong legal and factual basis for their claim for injunctive relief, it will take months or years to litigate this case to the final entry of an injunction. If discovery does not begin soon, Plaintiffs may not be able to obtain the injunctive relief they seek in advance of the 2024 presidential election, which will allow Defendants to interfere with Plaintiffs' right to vote in yet another election, causing irreparable harm to Plaintiffs.  Accordingly, under either of the tests for expedited discovery that Defendants cite, commencing discovery now is appropriate here, where Plaintiffs have an urgent need to begin the discovery process and there is little, if any, corresponding harm to Defendants.

## ARGUMENT

Under this Court's Local Rules, discovery does not typically begin until at least one

---

[2] *See, e.g.,* House of Representatives, *Final Report of the Select Committee to Investigate the January 6th Attack on the United States Capitol* (Dec. 22, 2022) ("Select Committee Report") at 41-45, 346-354.

defendant has answered the complaint. *See* Local Civil Rule 16.3(b). But in many other jurisdictions, it is standard for discovery to take place before any party has answered, and while motions to dismiss are pending. That is all that Plaintiffs seek here—to commence discovery in a case that has been pending for two years.

Defendants articulate two standards for evaluating whether to grant pre-answer discovery. The less stringent "good-cause" standard is the appropriate standard here because it "is more suited to the application of the Court's broad discretion in handling discovery." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (Sullivan, J.). In any event, Plaintiffs satisfy both standards for obtaining pre-answer discovery.

**A. Plaintiffs Are Entitled to Pre-Answer Discovery Under the Good-Cause Standard.**

Plaintiffs easily meet the good-cause standard, which is the "more liberal approach." *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 3 (D.D.C. 2010). Courts typically consider five factors when evaluating a motion for pre-answer discovery under the good-cause standard: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Attkisson*, 113 F. Supp. 3d at 162 (cleaned up).

*First*, although no preliminary injunction is currently pending, Plaintiffs seek injunctive relief which needs to be in place in advance of the 2024 election in order for the relief they seek to be meaningful. This provides the urgency that justifies Plaintiffs' request to commence pre-answer discovery.

*Second,* the breadth of the requests is reasonable here. Contrary to the RNC's assertion, Plaintiffs are not trying to "gather all the evidence . . . on an expedited basis," Dkt. 69 at 3; they are merely seeking to commence the discovery process before it is too late to obtain injunctive

3

relief in advance of the 2024 election. Plaintiffs only seek discovery with respect to one of their two claims. *See* Dkt. 68-1 at 1 n.1. Moreover, Plaintiffs are willing to further narrow the scope of pre-answer discovery to only document discovery without further leave of Court.

The RNC contends that the discovery Plaintiffs seek is "brutally unfair" because Plaintiffs have added allegations to their complaint. Dkt. 69 at 4-5 (citing *Disability Rts. Council of Greater Washington v. Washington Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006)). But the RNC relies on a case where the plaintiffs sought discovery to support a preliminary injunction that was *broader* than the relief they sought in their complaint; in contrast here, Plaintiffs seek document discovery to support the precise injunction sought in the SAC. It is not unfair for Defendants to have to produce documents relevant to a claim in a complaint that has been properly served on them.

*Third*, the burden of compliance for Defendants is low. Proceeding with document discovery on Plaintiffs' claim for injunctive relief will not cause harm to Defendants. Defendants across the country are frequently subject to discovery before they have answered a complaint. And Defendants' claims that they should be immune from discovery until former President Trump's appeal of his immunity defense are not applicable to Plaintiffs' claim for injunctive relief. *See* Dkt. 68-1 at 6-9.

*Fourth,* the purpose of commencing discovery promptly is to ensure that Plaintiffs can obtain an injunction in advance of the 2024 presidential election. Plaintiffs make this motion now because the Court granted leave for Plaintiffs to file the SAC, the Select Committee Report highlighted the merits of Plaintiffs' claims, the 2024 election is fast approaching, and this case will take time to resolve.

The RNC's contention "that Plaintiffs seek expedited discovery to save their second

amended complaint from the defects that resulted in the dismissal of their first amended complaint," Dkt. 69 at 6, is unfounded and inconsistent with the record in this matter. If the same defect that caused the FAC to be dismissed—failure to allege standing—was present in the SAC, then the Court would have denied Plaintiffs' contested motion to amend. Instead, the Court granted the motion for leave to amend, concluding that the SAC was not futile and the claim for injunctive relief in the SAC established standing. *See* Dkt. 59.

*Finally*, the RNC's accusations of "delay" ring hollow. The RNC claims that Plaintiffs did not seek discovery "at any point until now." Dkt. 69 at 6. This is false. Plaintiffs moved for a status conference to set a schedule for discovery in March 2022, while Defendants' initial motions to dismiss were pending. Dkt. 47. That motion was denied without prejudice. Plaintiffs have moved for discovery again in light of recent developments, including the Court's recent order on Plaintiffs' motion to file the SAC and former President Trump's announcement that he is running for president again.

### B. Plaintiffs Are Entitled to Pre-Answer Discovery Under the *Notaro* Standard.

Even if the Court applies the *Notaro* standard, Plaintiffs are still entitled to pre-answer discovery. Under the *Notaro* standard, a party seeking pre-answer discovery must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014). Plaintiffs meet all four elements.

*First,* Plaintiffs will be irreparably harmed if they do not obtain the injunctive relief they seek in time for the 2024 election. The Court has already held that Plaintiffs have alleged future harm through allegations that the Trump Defendants "pose a very substantial risk in the future to

5

Plaintiffs' fundamental right to vote," Dkt. 59 at 18, and that the RNC similarly poses a "substantial risk" of future harm to Plaintiffs through the RNC's "militaristic and adversarial" recruitment and training of poll watchers that is "likely to encourage poll watchers to assume that votes cast by voters of color are presumptively illegitimate," *id*. at 21-22.  These future harms are irreparable because they affect Plaintiffs' right to have their lawful votes fairly counted.

The injunction Plaintiffs seek would address these harms by requiring Defendants to, *inter alia*, secure approval from this Court prior to engaging in certain activities related to recounts, certifications, or similar post-election activities; refrain from intimidating or coercing state and local officials involved in counting votes, recounts, or the certification process; and train all official volunteers on the Voting Rights Act and on activities prohibited by the Voting Rights Act, with all training materials approved by the Court.  Dkt. 60 at 48-49.  This injunction is not "manufactured . . . as an end run around immunity." Dkt. 70 at 7.  It seeks real relief.  In fact, the RNC itself has previously entered a consent decree which similarly included requirements that it, *inter alia,* "comply with all applicable state and federal laws protecting the rights of duly qualified citizens to vote for the candidate(s) of their choice" and "refrain from giving any directions to or permitting their employees to campaign within restricted polling areas or to interrogate prospective voters as to their qualifications to vote prior to their entry to a polling place." *Democratic Nat'l Comm. v. Republican Nat'l Comm.,* No. 81-3876 (D.N.J. Nov. 1, 1982).

The Trump Defendants' attempts to downplay the importance of the injunctive relief Plaintiffs seek are undermined by the inconsistencies in their arguments—somehow the Trump Defendants are concerned that the requested injunction both "would merely require [Defendants] to abide by the law as decided by the Court" and also "would plainly be a prior restraint on political

speech deemed unconstitutional by the First Amendment."[3]  Dkt. 70 at 8.  In fact, the injunction would provide Plaintiffs real, lawful relief by protecting their right to have their votes counted.  In any event, the Trump Defendants' arguments about the proper scope of the injunctive relief are not appropriate at this stage of the litigation.

*Second,* Plaintiffs have shown a probability of success on the merits.  Although the Court has not yet ruled on Defendants' pending motions to dismiss (which were filed earlier this week), the reasoning in this Court's order concluding the SAC was not futile demonstrates why many of Defendants' arguments will not succeed.  For example, the Court already concluded that the SAC includes sufficient allegations to establish that Plaintiffs have standing to bring their claim for injunctive relief.  Dkt. 59 at 13-23.  The Court also stated that it must accept at the pleading stage the SAC's allegations that actions of the RNC's officials are attributable to the RNC.  *Id.* at 20-21.

The RNC stresses the fact that the Court has not yet addressed Plaintiffs' claim for monetary damages under the Ku Klux Klan Act.  Dkt. 69 at 5.  But the merits of that claim are not relevant to the Court's analysis of Plaintiffs' discovery motion, since at this time Plaintiffs only seek discovery on their claim for injunctive relief.

Plaintiffs also have a likelihood of success on the merits because the allegations in the SAC are not "only allegations."  Dkt. 69 at 3.  To the contrary, the SAC is supported by numerous news articles and corroborated by findings in the Select Committee Report.  For example, the Select Committee Report concluded that former President Trump was "personally and substantially involved in multiple efforts to pressure State election officials and State legislatures to alter official lawful election results."  Select Committee Report at 43.  It also concludes that "efforts to mobilize

---

[3] Plaintiffs will address in detail the flaws in the Trump Defendants' First Amendment arguments in Plaintiffs' forthcoming opposition to the Trump Defendant's motion to dismiss.

fake electors benefitted from support from the RNC" even though "RNC leadership knew that President Trump was lying to the American people." *Id.* at 351, 780.

*Third,* the connection between commencing discovery now and avoiding irreparable harm to Plaintiffs is straightforward: the sooner discovery commences, the more likely it is that Plaintiffs can obtain the injunction they seek in time for it to have an effect during the 2024 presidential election.

Commencing document discovery promptly will also help prevent the loss or destruction of key documents. As noted in Plaintiffs' opening brief, they are concerned about a loss of documents, especially given reports that former President Trump has destroyed documents. Dkt. 68-1 at 13. Defendants did not address this point in their opposition.

*Fourth*, proceeding with document discovery on Plaintiffs' claim for injunctive relief will not cause harm to Defendants. As discussed *supra*, it is not prejudicial to begin document discovery while motions to dismiss are pending, a practice which is common in courts across the country.

## CONCLUSION

For the foregoing reasons, and the reasons in Plaintiffs' December 23, 2022 Statement of Points and Authorities, Plaintiffs respectfully request that this Court grant Plaintiffs' Cross-Motion to Commence Discovery.

Dated: January 6, 2023

*Full counsel information on cover page.*

Respectfully submitted,
/s/ *Jason M. Bradford*

Jason M. Bradford (D.D.C. Bar No. IL0073)
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on January 6, 2023, I electronically filed the foregoing Plaintiffs' Reply in Support of Plaintiffs' Cross-Motion to Commence Discovery with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

Dated:  January 6, 2023                              /s/ *Jason M. Bradford*
                                                                    Jason M. Bradford
                                                                    Attorney for Plaintiffs