UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHIGAN WELFARE RIGHTS
ORGANIZATION, et al,

       *Plaintiffs*,

v.

DONALD J. TRUMP, et al.
       *Defendants*.

Civil Case No. 1:20-cv-03388-EGS

**REPLY IN SUPPORT OF TRUMP DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
*Attorney for Donald J. Trump and
Donald J. Trump for President, Inc.*

TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ............................................................................................ ii

ARGUMENT ................................................................................................................ 2

    I.   PLAINTIFFS MISCONSTRUE IMPORTANT FIRST AMENDMENT CASELAW...................2

    II.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE
        GRANTED. .................................................................................................................5

    III. PLAINTIFFS ADDITIONAL EVIDENCE IS INAPPROPRIATE AND EVINCES PLAINTIFFS'
        LACK OF CONFIDENCE IN THEIR OWN SECOND AMENDED COMPLAINT. ................10

CONCLUSION............................................................................................................ 11

CERTIFICATE OF SERVICE........................................................................................ 12

i

## TABLE OF AUTHORITIES

### Cases

*Acosta Orellana v. CropLife Int'l,*
711 F.Supp.2d 81, 110 (D.D.C. 2010) ........................................................................9

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) ..........................................................................................1

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................................1

*Brandenburg v. Ohio,*
395 U.S. 444, 447 (1969) ..........................................................................................5

*Bush v. Gore,*
531 U.S. 98, 127 (2000) ............................................................................................2

*Clark v. Martinez,*
543 U.S. 371, 381 (2005) ..........................................................................................8

*Hurd v. District of Columbia,*
864 F.3d 671, 686 (D.C. Cir. 2017) ........................................................................11

*Mjema v. United States,*
881 F. Supp. 2d 89, 92 n 2 (D.D.C. 2012) ..............................................................8

*National Coalition on Black Civic Participation v. Wohl,*
2020 WL 6305325 (S.D.N.Y. 2020) ........................................................................3

*R.A.V. v. St. Paul,*
505 U.S. 377, 402 n. 4 (1992) ..................................................................................4

*United States v. MacAndrew,*
2023 WL 196132, at 2 n 1 (D.D.C. Jan. 17, 2023) ................................................11

*Virginia v. Black,*
538 U.S. 343, 366 (2003) ..........................................................................................4

**Statutes**

GA CODE § 21-2-408 (2021)..............................................................................................9

**Other Authorities**

Alex Seitz-Wald, *Chauvin trial judge says Maxine Waters' 'confrontational' protest remarks could fuel appeal*, NBC News (Apr. 19, 2021), https://www.nbcnews.com/politics/congress/confrontational-maxine-wa-ters-undeterred-marjorie-taylor-greene-criticism-chauvin-trial-n1264534.....................5

Jaime Ehrlich, *Maxine Waters Encourages Supporters to Harass Trump Administration Officials*, CNN (Jun. 25, 2018), https://www.cnn.com/2018/06/25/politics/maxine-waters-trump-officials/index.html .................................................................................................5

Plaintiffs invite this Court to intrude upon critical First Amendment protections by expanding the true threats and incitement doctrines beyond recognition. They do so without pleading any threatening behavior or incitement by former President Trump or his campaign, and certainly none that would survive First Amendment scrutiny.

Plaintiffs largely misconstrue both the Trump Defendants and the RNC's positions in order to try to convince this Court that they have stated a claim upon which relief may be granted. Case in point, Plaintiffs begin their response with a citation that everything in their brief must be taken as true. This, however, is not the full and correct legal standard in this case. While Plaintiffs need not include "detailed factual allegations," they must do more than state an unadorned "the-defendant-unlawfully-harmed-me" accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Here, Plaintiffs have alleged, at most, facts that are merely consistent with potential liability. This is not sufficient.

Plaintiffs' allegations of intimidation or unlawful conspiracy are woefully deficient because Plaintiffs have failed to plead sufficient facts that could sustain either a Section 11(b) claim or a Section 1985(3) claim. Plaintiffs' opposition brief attempts bluster and insinuation while trying in vain to nudge their Second Amended

1

Complaint over the plausibility finish line, which they fail to do. The Second Amended

Complaint should be dismissed, with prejudice.

## ARGUMENT

### I.   Plaintiffs misconstrue important First Amendment caselaw.

Plaintiffs' claims rely on tweets, press conferences, speeches, and meetings

that offend them. Knowing the high bar that the First Amendment requires them to

clear, they assert a frontal assault on well-established *true threats, incitement,* and

*prior restraints* doctrines. The assaults fail, however, as each alleged act of wrongdo-

ing is well within the clear protections of the Constitution.

#### a.  Plaintiffs have not adequately alleged a true threat.

In support of their argument that the Defendants' actions constitute "true

threats," Plaintiffs rely entirely upon an erroneously decided district court case from

a different jurisdiction. In support of their argument, Plaintiffs cite *National Coali-*

*tion on Black Civic Participation v. Wohl*, 2020 WL 6305325 (S.D.N.Y. 2020) (holding

that a range of activities, including allegations of non-violent threats under specific

statutes, could be enforceable, notwithstanding the protections of the First Amend-

ment). *Wohl*, 2020 WL 6305325 at *17-18.  This is not a binding authority upon this

Court, nor should it even be instructive as it is the only example provided from any

jurisdiction.

Moreover, *Wohl* was wrongly decided on First Amendment grounds. But even

that court did not hold that Section 11(b) encompassed the purely political statements

that these Plaintiffs challenge here. That case specifically considered threatening

robocalls. *Wohl*, 2020 WL 6305325 at *1. That is far different than an action challenging the political activities and speech of a political candidate and his campaign, including contesting purported election results. Plaintiffs' aggressive theory runs directly contrary to longstanding and settled Supreme Court law. *Virginia v. Black*, 538 U.S. 343, 366 (2003) (holding that speech and expression in the political context is deserving of expanded constitutional protections) (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 402 n. 4 (1992)).

Plaintiffs seek to bolster their true threats argument by claiming that Defendants' speech is outside protection of the First Amendment because it was false. Oppo. Br. at 11. Plaintiffs, however, appear to forget that they are not the arbiters of truth or falsity, and it is nigh impossible to prove something is false. Plaintiffs' Second Amended Complaint and their opposition motion certainly do not provide any support showing the alleged statements were false.

Finally, Plaintiffs again try to bootstrap liability to President Trump and his Campaign via the alleged actions of unaffiliated third parties. This must fail. Aside from their failure to plausibly allege agency, as discussed below, they advance an exception that would swallow the rule when it comes to the protections of political speech, hopelessly watering down the uniquely American protections of the First Amendment. Indeed, holding that political candidates are vicariously liable for the acts of supporters would open wide the floodgates of litigation and severely chill political speech.

### b. Plaintiffs have not adequately alleged incitement.

3

Plaintiffs attempt to weaken the important protections found in *Brandenburg v. Ohio* by arguing that the alleged statements at issue somehow incited violence and therefore were outside the protection of the First Amendment. This argument is perhaps even weaker than their true threats argument. As Plaintiffs admit, the incitement standard is dependent on context. *Brandenburg* held that speech or advocacy "directed to inciting or producing imminent lawless action and [] likely to incite or produce such action" is outside the protection of the First Amendment. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).

President Trump's statements did nothing of the sort; he simply engaged in political speech about election contests and those involved. To hold that his statements would cause him to be civilly liable would turn district courts into arbiters of political speech. By Plaintiffs' logic, Congresswoman Maxine Waters is far more culpable for inciting violence when she encouraged people to harass Trump Administration appointees[1] and when she recently encouraged rioters to "get more confrontational" if her favored verdict was not returned in the *State v. Chavin* case in Minnesota.[2] While Americans may disagree with the tone and language used by their political adversaries, turning political actors loose in the courts to police that speech is forbidden by the First Amendment, except in the most severe circumstance not

[1] Jaime Ehrlich, *Maxine Waters Encourages Supporters to Harass Trump Administration Officials*, CNN (Jun. 25, 2018), https://www.cnn.com/2018/06/25/politics/maxine-waters-trump-officials/index.html.
[2] Alex Seitz-Wald, *Chauvin trial judge says Maxine Waters' 'confrontational' protest remarks could fuel appeal*, NBC News (Apr. 19, 2021), https://www.nbcnews.com/politics/congress/confrontational-maxine-wa-ters-undeterred-marjorie-taylor-greene-criticism-chauvin-trial-n1264534.

present here. The Court should eschew Plaintiffs' incitement arguments as being of-
fensive to the core protections of the First Amendment.

### c.  Plaintiff ask for a prior restraint.

Plaintiffs attempt to disguise their blatant attempt to require court-ordered
preclearance of the Defendants' political speech. The request, however, is a textbook
example of an unconstitutional prior restraint against speech. Here, Plaintiffs are
requesting this Court, "subject to hearing and review," preclear the speech of the
Trump Defendants and their training materials. Dkt. No. 75 at 16. Requiring a fed-
eral court to review political speech and approve training materials for election pro-
cesses during an ongoing campaign and election would impermissibly intertwine the
judicial function of this court in the political sphere.

### II.    Plaintiffs have failed to state a claim upon which relief may be granted.

Plaintiffs break their own case down to three issues: (1) "private coercion and
intimidation of election officials (by the Trump Defendants); [(2)] public intimidation
targeting election officials, including through false allegations and implications of
criminality and incitement of illegal activity by others (by all Defendants, including
in conspiracy with one another); and [(3)] physical violence and/or obstruction of
counting lawful votes by agents (by all Defendants, including in conspiracy with one
another)." Dkt. No. 75 at 2. Plaintiffs further state that the overarching "objective of
Defendants' conspiracy was to intimidate election officials, disenfranchise and over-
turn the will of voters, and ensure that then-President Trump stayed in power despite
losing the 2020 presidential election." *Id.* at 1-2 (citations omitted).

### a.  Plaintiffs failed to allege intimidation necessary for their claims.

Plaintiffs' discussion of the Defendants' alleged private and public coercion and intimidation of election officials is all conclusory and requires this Court to accept as true that Plaintiffs have accurately predicted the motive of President Trump or his Campaign in these contacts. Plaintiffs have tried, incredibly, to downplay the legitimate reasons that President Trump or his Campaign may have engaged in these actions.

Plaintiffs list five alleged actions of the Trump Defendants, none of which, however, demonstrate private coercion and intimidation of election officials. *Id.* at 2-3. These allegations all center on private conversations with campaign officials in various states regarding the status of the election results in those states, which is protected by the First Amendment. Similarly, the Defendants' alleged public intimidation targeting election officials, including through false allegations and implications of criminality and incitement of illegal activity by others, also fails. *Id.* at 3-4. These allegations center on public, political speech, likewise protected by the First Amendment.

The conduct Plaintiffs allege is more naturally and more likely explained by a campaign and candidate attempting to exercise the right to seek redress for wrongs, electoral victory, and ensuring that all – and only – legal votes were counted. The allegations do not constitute intimidation, just advocacy. Any finding that Plaintiffs plausibly allege acts of intimidation prohibited by Section 11(b) would subject an important federal statute to a facial constitutional challenge based on (at least) breadth

and vagueness. The Court should avoid such an interpretation and correctly find that the alleged conduct does not even come close to a plausible claim of intimidation under Section 11(b). *See Clark v. Martinez*, 543 U.S. 371, 381 (2005) (holding that the constitutional avoidance canon rests on the reasonable presumption that Congress did not intend for its acts to be interpreted so as to raise "serious constitutional doubts"). The same analysis holds true for the portion of Plaintiffs 1985(3) claim requiring a showing of intimidation.

### b. Plaintiffs failed to properly allege agency.

Plaintiffs further allege that the actions of volunteers may be imputed to President Trump, the Campaign, and the RNC. Plaintiffs have not, however, squared this with either the requirements of the law in multiple states or plausibly alleged that these individual actors were agents of President Trump, his Campaign, or the RNC. Agency is a legal standard, and the Plaintiffs do not even attempt to grapple with that standard in their opposition. Therefore, Plaintiffs have forfeited any argument that these volunteers were agents. *See Mjema v. United States*, 881 F. Supp. 2d 89, 92 n 2 (D.D.C. 2012) (holding that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded).

Plaintiffs fall woefully short of alleging an agency relationship between the Trump Defendants and the volunteers that engaged as poll challengers in Michigan or in similar capacities in other states. Courts consider five factors in analyzing whether "agency" has been sufficiently established or alleged: (1) the selection and

7

engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, and (5) whether the work is part of the regular business of the employer. *Acosta Orellana v. CropLife Int'l*, 711 F.Supp.2d 81, 110 (D.D.C. 2010). The determinative factor is usually the right to control the employee in the performance of the task and its result. *Id.* Plaintiffs focus on the method of recruitment and training provided with instruction by Defendants. Dkt. No. 75 at 31. These actions fail to demonstrate an agency relationship. The Trump Defendants were not, nor do Plaintiffs allege they were, able to discharge poll watchers once they were certified, able to control them once they began their service, nor able to alter their service other than by asking them to change their actions, nor do Plaintiffs allege poll challengers were paid by the Trump Defendants. And finally, their work was not part of the regular business of the alleged "employer." Plaintiffs have failed to allege anything beyond normal campaign language used to energize and motivate supporters to support their deficient allegations of agency.

Moreover, in states such as Georgia, it is a legal obligation to provide training and credentials to volunteers that are overseeing any part of the election process. *See* GA CODE § 21-2-408 (2021). Plaintiffs seek to use the trainings and credentials as evidence that these individuals were operating as agents, yet this does not fit within the legal standard for agency. Nor could these legal obligations impute an agency relationship because it is impossible for any candidate or campaign to oversee all of their volunteers, let alone control them, with the requisite level of control to establish an agency relationship. Finally, Plaintiffs attack the trainings provided by the

8

Defendants, but they do not cite to any specific examples within any training that is not a correct statement of law or an opinion that is not actionable. Rather, Plaintiffs generally and in conclusory fashion allege that the trainings encourage illegal actions without any citations to the training or a section of law that it allegedly violates.

### c.  Plaintiffs did not meet the pleading standard for conspiracy.

In all their discussion of conspiracies, Plaintiffs attempt to gloss over the requirement that they plead a plausible factual basis for their allegations. Plaintiffs broadly claim that they alleged a conspiratorial agreement, but they fail to allege any illegal purpose. As discussed above, every action that they have alleged has a legitimate plausible explanation which, under the familiar pleading standard, this Court cannot find sufficient to form the basis of a conspiracy claim. Plaintiffs argue that Defendants sought jointly to prevent votes from being counted, yet every allegation is explained by a focus on every legal vote, and only legal votes, being counted.

In fact, Plaintiffs have not alleged a single instance where a legal vote was interfered with, prevented, improperly contested, or otherwise not counted. Challenging election results is a necessary part of free and open elections. Without challenge procedures, elections lose legitimacy, as the transparency of process and veracity of results become unverifiable. Such challenges are simply a part of the democratic process, not a conspiratorial agreement to do an unlawful act. Here again, Plaintiffs have not, and cannot, plausibly claim a conspiracy in violation of § 1985(3).

Plaintiffs, therefore, have failed to state a claim upon which relief may be granted under their own terms and their Second Amended Complaint should be dismissed in its entirety.

### III.   Plaintiffs additional evidence is inappropriate and evinces Plaintiffs' lack of confidence in their own Second Amended Complaint.

As if Plaintiffs wish to further exemplify that their Second Amended Complaint is without merit, they attempt to add additional information that is not within the Complaint for this Court to consider instead of providing analysis of what they actually included. Dkt. No. 75 at 7-8.

While Defendants acknowledge this Court's recent opinion holding that the Court may take judicial notice of the Select Committee Report, *United States v. MacAndrew*, 2023 WL 196132, at 2 n 1 (D.D.C. Jan. 17, 2023), Defendants' position remains that the Committee Report is not something this Court can properly take judicial notice of because it is not readily determinable as true nor is it from a source that is unquestionable. *See Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017). The simple fact is that it is a report from a partisan political body, specifically one that excluded from its membership any voice of disagreement with its central premise: that President Donald J. Trump was responsible for the events of January 6, 2021. This conclusion was baked into the beginning of the January 6 Committee, the focus of all its work, and its preconceived conclusion.

Moreover, as discussed prior, many of the allegations in the Report cited by Plaintiffs also have a legitimate, equally plausible explanation.

10

CONCLUSION

Plaintiffs have failed to state a cause of action to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Viewing all factual allegations in the light most favorable to the Plaintiffs, their Amended Complaint fails to state a valid and sufficient cause of action under Section 11(b) of the Voting Rights Act or § 1985(3), and important First Amendment considerations foreclose Plaintiffs' claims. Accordingly, this action should be dismissed, with prejudice.

Dated: January 31, 2023                     Respectfully submitted,

                                            /s/ Jesse R. Binnall
                                            Jesse R. Binnall (VA022)
                                            BINNALL LAW GROUP, PLLC
                                            717 King Street, Suite 200
                                            Alexandria, Virginia 22314
                                            Tel: (703) 888-1943
                                            Fax: (703) 888-1930
                                            jesse@binnall.com

                                            *Attorney for Donald J. Trump and
                                            Donald J. Trump for President, Inc.*

11

## CERTIFICATE OF SERVICE

I certify that on January 31, 2023, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a copy to all counsel and parties of record.

/s/ Jesse R. Binnall
Jesse R. Binnall

*Attorney for Donald J. Trump and*
*Donald J. Trump for President, Inc.*

12