## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MICHIGAN WELFARE RIGHTS ORGANIZATION, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Civil Case No. 1:20-cv-03388-TSC |
| DONALD J. TRUMP, *et al.*, | ) ) ) | |
| *Defendants.* | ) ) | |

## DEFENDANTS DONALD J. TRUMP AND DONALD J. TRUMP FOR PRESIDENT, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Plaintiffs seek leave to amend their operative Complaint for a third time to drop one of their two causes of action. This Court should deny this request for multiple reasons: it would be futile, it would be prejudicial to Defendants, and Plaintiffs failed to comply with the local rules of this Court.

First, Plaintiffs' proposed amendment does not cure the fatal issues presented by their Second Amended Complaint. Rather, they seek to only drop the claim under 42 U.S.C. § 1985(3), the only claim this Court has not previously dismissed. None of the facts or politically charged rhetoric Plaintiffs allege changes the legal conclusion at the heart of the Court's prior holding dismissing their relevant claim under Section 11(b) of the Voting Rights Act: Plaintiffs lack standing to pursue a claim. Therefore, it would be futile to allow Plaintiffs to amend their Complaint a third time, and the Court should deny Plaintiffs' Motion.

Second, it would be prejudicial to Defendants to not finally resolve the pending issue after causing costly briefing on these issues. Defendants have spent significant efforts and expense to present their defense to the 42 U.S.C. § 1985(3) claim and the immunity issue. Allowing Plaintiffs to abandon that claim without prejudice would be prejudicial at this junction.

Third, Plaintiffs did not attach a copy of the proposed amended pleading to their Motion as required by Local Rules 7(i) and 15.1. In addition, Plaintiffs neither conferred with any Defendant nor included a certificate of conference in their Motion.

1

## BACKGROUND

Plaintiffs sued under Section 11(b) of the Voting Rights Act and 42 U.S.C. § 1985(3). *See* Dkt. No. 1. President Trump, Donald J. Trump for President, and the Republican National Committee all moved to dismiss Plaintiffs' claims in their entirety. The Court held on April 1, 2022, that Plaintiffs lacked standing to pursue their claims under Section 11(b) of the Voting Rights Act and held in abeyance its decision on the 42 U.S.C. § 1985(3) claims. Memorandum Opinion, Dkt. No. 49, at 3. On June 16, 2022, Plaintiffs moved to amend their Complaint. *See* Dkt. No. 55. Defendants opposed this motion. *See* Dkt. No. 56, 57. On November 28, 2022, the Court granted Plaintiffs' motion. *See* Dkt. No. 59. Plaintiffs subsequently filed their Second Amended Complaint. *See* Dkt. No. 60. All Defendants subsequently moved to dismiss Plaintiffs' Second Amended Complaint, which is still pending. *See* Dkt. No. 71, 72. Now, Plaintiffs are seeking leave to amend their Complaint a third time, which this Court should deny for the reasons below.

## ARGUMENT

### I.   The Section 11(b) claim is futile.

Plaintiffs took advantage of their ability to amend their original Complaint yet still failed to establish standing or correct fatal flaws in their allegations. Plaintiffs then sought leave to amend their Complaint a second time, alleging 'new' information. Plaintiffs' 'new' information, however, did nothing to cure their standing

or other deficiencies, as argued in President Trump's and Donald J. Trump for President's pending motion to dismiss. *See* Dkt. No. 72.

"[A] motion to amend should be denied if the amendment would be futile because the proposed claim would not survive a motion to dismiss." *Nextel Spectrum Acquisition Corp. v. Hispanic Info. And Telecomm. Network, Inc.*, 571 F. Supp. 2d 59, 62 (D.D.C. 2008) (citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996)). Standing, of course, is an essential element. As this Court noted in its previous opinion, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Memorandum Opinion, Dkt. No. 49 at 39 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). Further, because Plaintiffs are seeking injunctive relief, they must show they are "sufficiently likely to be *personally* subjected to the challenged conduct again in order to have standing." *Id.* at 42 (quoting *Chang v. United States*, 738 F. Supp. 2d 83, 90 (D.D.C. 2010)) (emphasis added).

The additional facts that Plaintiffs pleaded in their Second Amended Complaint, and presumably in their proposed, but not attached, Third Amended Complaint, do not give them standing. As the Court previously found, this is a case where "circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Id.* at 42 (quoting *Friends of Earth, Inc. v. Laidlaw*

*Environmental Services (TOC), Inc.*, 528 U.S. 167, 170 (2000)). Plaintiffs' alleged injuries remain too speculative to satisfy the standing requirements.

Plaintiffs simply repackaged the same allegations from their Amended Complaint into their Second Amended Complaint with added political rhetoric, and now seek to amend only to remove their 1985(3) claim. There is simply no non-conclusory allegation that President Trump's actions, or those of his previous campaign, will *personally* impact Plaintiffs in the future that would amount to a "real and immediate threat." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Threatened harm that is not real and immediate is "too speculative" to support standing. *Id.*

Plaintiffs broadly (and baselessly) asserted in their Second Amended Complaint that President Trump sought to prevent the counting and certification of validly cast ballots, thus, disenfranchising voters. Pls.' Am. Compl., Dkt. No. 8 at ¶¶ 7-12. Plaintiffs' suggestion that President Trump or his campaign will attempt to disenfranchise voters in the future is pure speculation and a conclusory reiteration of allegations already made. Plaintiffs fail to show any "substantial risk" that Plaintiffs' votes will not be counted or that Plaintiffs will be personally injured due to the actions of Defendants in the future. What's more, President Trump has, in fact, said the opposite and has fought for counting *all* legally cast votes. If all legally cast votes are counted, then Plaintiffs cannot be injured in the manner they allege.

Discussions with election officials and state government leaders about maintaining the integrity of the election, preventing the counting of *illegal* votes, and

implementing measures to prevent future *illegal* votes does nothing to impact valid, legal votes. Further, President Trump's encouragement of poll watchers does not mean that Plaintiffs will be prevented from voting. Rather, poll watchers are a normal part of the election process in many states, and it is perfectly legal for campaigns to encourage poll watchers to oversee elections. Poll watchers are included in many election codes as an additional safeguard to ensure that elections are conducted properly. Plaintiffs' attempts to argue that the encouragement of citizens to utilize their statutory rights to observe the election process is somehow evidence of future disenfranchisement is incredible and conclusory.

Plaintiffs claim that Defendants create a "climate of fear and uncertainty" about whether the votes of Plaintiffs and their members will be counted in upcoming elections. Dkt. No. 55 at 4. Plaintiffs' subjectively vague suggestions, however, do not give rise to the level of "imminent" harm under Article III as opposed to a hypothetical or conjectural concern. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Even in Plaintiffs' previously filed Motion for Leave to File a Second Amended Complaint, Plaintiffs fail to so much as specify a single election or candidate that concerns them. *See generally*, Dkt. No. 55.

Plaintiffs merely claimed their allegations are continuing and ongoing. *See id.* at 4. Plaintiffs then immediately fell back to allegations of past conduct. *See id.* at 5. Plaintiffs are unable to show that any action that may affect their members personally is ongoing or imminent, which is why the Court (correctly) dismissed this claim in the first place and should do so again.

Plaintiffs also asked this Court to consider the RNC's February 2022 resolution censuring two republican representatives in Congress. *See id.* at 7. Not only are Plaintiffs grasping at straws by invoking events with no relation to this case, but Plaintiffs are also asking this Court to encroach on the First Amendment. The censure is not within the purview of this case, but it provides another striking example of Plaintiffs' attempts to twist the words of others.

Plaintiffs repeatedly infer that any effort by anyone of a different political ideology than themselves to ensure election integrity is secretly an effort to disenfranchise voters. *See, e.g., Dkt. No. 55* at 7 (claiming that election integrity efforts are being spearheaded by persons that have encouraged election interference). Plaintiffs are reiterating a tired, incredible trope that any effort to ensure the integrity of the election is an illegal attempt to suppress legitimate votes. Unfortunately for Plaintiffs' argument, the Voting Rights Act was designed to ensure the integrity of election processes and the elections themselves, which means that election integrity is an important aim under the statute that may be carried out by actions aimed at ensuring proper processes and pure, fair elections.

In addition, as argued in detail in President Trump's motion to dismiss the Second Amended Complaint, Plaintiffs have failed to state a claim for violation of the Voting Rights Act, *see* Dkt. No. 72 at 17-18, failed to cure pleading issues relating to the First Amendment, *see id.* at 9-13, 15, failed to adequately allege agency, *see id.* At 20-22, failed to demonstrate that the Voting Rights Act applies to President Trump, *see id.* at 22-25, and do not have standing. *See id.* at 25-27.

## II.    There would be prejudice to Defendants.

While Plaintiffs broadly assert that President Trump would not be prejudiced by this amendment, that is not so. When Plaintiffs brought their claims against President Trump, they knew immunity would be an issue. As such, Plaintiffs could have dropped their conspiracy claim against President Trump at any time. Instead, Plaintiffs waited until now, after nearly four years of litigation, to move to drop this claim. Plaintiffs have not provided any good faith excuse for their undue delay. Allowing Plaintiffs to amend their Complaint would shift the legal theory of the case and result in wasted resources on behalf of President Trump. Such reasons are sufficient prejudice to deny Plaintiffs' Motion.

It is likely Plaintiffs will seek to bring their conspiracy claim against President Trump at a later date. President Trump, however, has already expended a great deal of resources in defending the conspiracy claim in this case, which would go to waste should the Court grant Plaintiffs' Motion. He would have to utilize additional resources in any future litigation regarding the same issue, resulting in a complete waste of resources and prejudice. The issues are already briefed. President Trump should not be forced to relitigate this issue at a later date, wasting additional resources, when it is already briefed. Dismissing this count now without prejudice would prejudice President Trump in the long run. *See Parker v. Case Farms, LLC*, No. 1:20-cv-11, 2020 WL 10758596, at *3 (W.D.N.C. Sept. 11, 2020) (holding that a motion for leave to amend may be denied where it would result in wasted resources to both the defendant and the court).

As this Court has noted in the context of a plaintiff bringing federal claims with state claims, and the defendant thereafter removed the case to federal court, when a plaintiff seeks to amend their complaint and eliminate certain claims in order to remand the case to state court, the motion should only be granted if it is conditioned on the eliminated claims being dismissed *with* prejudice. *Barnes v. District of Columbia*, 42 F. Supp. 3d 111, 120 (D.D.C. 2014) (collecting cases). This is because the plaintiff already made the tactical decision to bring the case that they brought, the defendant is currently ready to defend the claims, and allowing the dismissal of claims that will be refiled later would result "in a repetitive waste of resources and time on the part of the parties" and the court. *Id.* Thus, to the extent this Court is inclined to granted Plaintiffs' Motion, President Trump respectfully requests that the Court dismiss the eliminated claim against him with prejudice to avoid this waste of resources.

Further grounds for denying Plaintiffs' Motion is the fact that it shifts the legal theory of the case. Plaintiffs' proposed amendment adopts a contradictory theory by alleging conspiracy between Defendants but essentially dropping the conspiracy claim against President Trump. The parties have already expended substantial resources on Plaintiffs' same theory of the case since 2020. Allowing Plaintiffs to adopt a new theory of the case at this point would result in substantial prejudice. *See Sharkey IRO/IRA v. Franklin Resources*, 263 F.R.D. 298, 301 (D. Md. 2009) ("A motion to amend may prejudice the non-moving party when the motion would shift the theory of the case.") In *Sharkey*, this was in the context of a party previously

engaging in discovery, rendering it moot and requiring additional discovery. Here, this is in the context of President Trump engaging in nearly four years of research and investigation, likewise rendering those resources wasted.

Finally, the amendment would also result in additional, unnecessary costs on behalf of the parties. It would result in new rounds of motion to dismiss briefing nearly four years into the case. Again, Plaintiffs have not explained why they took nearly four years to adopt this new legal theory. Instead, Plaintiffs solely seek this dilatory amendment so that they can attempt to circumvent the immunity issues and obtain fact-intensive discovery before a crucial election, solely for political reasons. To reiterate, Plaintiffs knew immunity would be at issue. They did not, however, attempt to alter their theory of the case until realizing they might not get the discovery they seek within the timeframe they want due to the election. There is no good faith basis for this amendment. Instead, it is brought solely for political reasons. It would result in substantial prejudice to the parties and the Court instead of allowing this case to resolve in its natural course.

### III.   Plaintiffs failed to comply with the local rules.

Local Civil Rule 7(i) provides: "A motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended." Local Civil Rule 15.1 provides: "A motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended." Plaintiffs neither attached an exhibit of the proposed pleading as amended nor an original of the proposed pleading as amended.

This Court has repeatedly found that this error should result in the denial of Plaintiffs' Motion. *See e.g., Parker v. D.C.*, No. CV 21-2523 (CKK), 2024 WL 68239, at *3 (D.D.C. Jan. 5, 2024); *Gu v. Mayorkas*, No. 19-CV-02496 (TSC), 2022 WL 4464904, at *9 (D.D.C. Sept. 26, 2022) (denying leave to amend even where opposing party did not object due to failure to comply with local civil rule 7(i)); *Singleton v. D.C.*, No. CV 21-1914 (RJL), 2022 WL 4235128, at *6 (D.D.C. Sept. 14, 2022) (finding that a motion to amend not in compliance with local civil rule 7(i) was bare and not sufficient to meet the requirements of Federal Rule of Civil Procedure 15); *Brown v. JP Morgan Chase*, No. CV 14-2031 (ABJ), 2018 WL 4193638, at *2 (D.D.C. June 5, 2018). This error precludes the opposing party from reviewing the proposed amendment to be fairly apprised of its contents.

In the same vein, Local Civil Rule 7(m) requires parties to confer on non-dispositive motions in an attempt to resolve the issues, and the moving party to include in their motion a certificate certifying that the conference occurred. Plaintiffs' Motion plainly lacks such a certificate, and there was no contact with undersigned counsel regarding such a conference. While this Court has found that motions to amend are subject to this provision previously, this particular motion to amend may be considered dispositive since it would result in the elimination of a particular claim from the case. *Compare Haynes v. Navy Fed. Credit Union*, 282 F.R.D. 17, 19 (D.D.C. 2012) ("In this case, Haynes has failed to certify his compliance with Local Civil Rule 7(m) and his Motion to Amend shall be DENIED on that basis alone.") *with Steele v. United States*, No. 1:14-CV-1523-RCL, 2023 WL 6215790, at *3 (D.D.C. Sept. 25,

10

2023) ("The D.C. Circuit has defined "dispositive motion" to "include[ ] a motion that, if granted, would result either in the determination of a particular claim on the merits or elimination of such a claim from the case." (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1215 (D.C. Cir. 1997)). Regardless of the applicability of Local Civil Rule 7(m), Plaintiffs have failed to comply with Local Civil Rule 7(i) and 15.1, and their Motion should be denied on that basis alone.

## CONCLUSION

Allowing Plaintiffs to amend their Complaint for a third time would be futile, prejudicial, and would not be judicially economical. Accordingly, Plaintiffs' Motion for Leave should be denied. To the extent this Court grants Plaintiff's Motion, President Trump respectfully requests the dropped claim be dismissed with prejudice.

Dated: September 3, 2024

Respectfully submitted,

*/s/    Jesse R. Binnall*
Jesse R. Binnall (Bar # VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com

*Attorney for Donald J. Trump and Donald J. Trump for President, Inc.*

## CERTIFICATE OF SERVICE

I certify that on September 3, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/     Jesse R. Binnall*
Jesse R. Binnall

*Attorney for Donald J. Trump and Donald J. Trump for President, Inc.*

12